LUBIN AND ENOCH, P.C.
Stanley Lubin (AZ 003076)
349 North 4th Avenue
Phoenix, Arizona 85003-1505
Telephone:    (602) 234-0008
Facsimile:    (602) 626-3586
Email:        Stan@lubinandenoch.com

STUMPHAUZER, O'TOOLE, McLAUGHLIN,
McGLAMERY & LOUGHMAN CO., LPA
Dennis M. O'Toole (OH 0003274)
Anthony R. Pecora (OH 0069660)
Matthew A. Dooley (OH 0081482)
5455 Detroit Road
Sheffield Village, Ohio  44054
Telephone:    (440) 930-4001
Facsimile:    (440) 934-7208
Email:        dotoole@sheffieldlaw.com
              apecora@sheffieldlaw.com
              mdooley@sheffieldlaw.com

CONSUMER LITIGATION ASSOCIATES, P.C.
Leonard A. Bennett (VA 37523)
Susan M. Rotkis (VSB #40693)
763 J. Clyde Morris Blvd, Suite 1A
Newport News, Virginia 23606
Telephone:    (757) 930-3660
Facsimile:    (757) 930-3662
Email:        lenbennett@clalegal.com
              srotkis@clalegal.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Kelvin D. Daniel, et al. | |
| Plaintiffs, | **Case No.: 2:11-CV-01548-ROS** |
| vs. | |
| Swift Transportation Corporation, | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S RENEWED PARTIAL MOTION TO DISMISS COUNTS ONE THROUGH THREE OF PLAINTIFFS' COMPLAINT** |
| Defendant. | |

I.   **OVERVIEW**

The Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681, *et seq.*, imposes strict and often complex requirements on an entity that uses a "consumer report" (e.g. a criminal records background check or a credit report) for an employment purpose.

When a potential employer intends to use a report it must provide disclosure of the intended use to the consumer about whom the report will be obtained and obtain authorization from the consumer-employee. 15 U.S.C. § 1681b(b)(2).  Thereafter, before the employer may contemplate using a derogatory report to take an "adverse action" (e.g. delay, deny or terminate employment), it must advise the applicant of that possibility and provide a copy of the subject report. 15 U.S.C. §1681b(b)(3)(A).  For some trucking companies, in lieu of this "pre-adverse action" notice and report, the employer must advise the applicant that a job rejection was because of the report and of their rights to obtain the report and dispute inaccurate information in it.  15 U.S.C. §1681b(b)(3)(B).  The First Amended Complaint (FAC) (Dkt. No. 19) plausibly

alleges that Defendant willfully failed to comply with each of these requirements.

## II.     BACKGROUND

Congress enacted the Fair Credit Reporting Act ("FCRA") in 1970 to better ensure that consumer reports were accurate and to protect consumers from their arbitrary use:

> Employers were placing increasing reliance on consumer reporting agencies to obtain information on the backgrounds of prospective employees. Congress found that in too many instances agencies were reporting inaccurate information that was adversely affecting the ability of individuals to obtain employment. As Representative Sullivan remarked, "with the trend toward ... the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal 'blips' and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable." 116 Cong. Rec. 36570 (1970)."

*Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414 (4th Cir. 2001). These consumer oriented objectives support a liberal construction of the FCRA. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

In soliciting and considering employees, Swift Transportation ("Swift") obtains and uses consumer

reports containing personal information, employment histories and criminal record histories. The use of these consumer reports is not without legal limit as the FCRA imposes a rigorous regime that restricts the use of employment reports, including in the trucking industry, to limited circumstances and on very defined terms.

Though proof of "inaccuracy" is not a necessary element of the specific FCRA claims alleged in this case, the consumer reports obtained and then later used by Swift regarding the Plaintiffs were materially inaccurate. This is likely true for a large number of consumers who were the subject of an employment report obtained and used by Swift as such employment reports – usually lacking social security matches and other more sophisticated data found in conventional credit reports – are historically inaccurate.[1] For some consumers, like the named Plaintiffs, the FCRA provides a remedy

---

[1] See e.g. http://abcnews.go.com/Technology/background-check-wrongly-ids-job-applicant-sex-offender/story?id=14405696#.Ttk1bkpLofI last visited December 8, 2011 ("We see lots and lots of examples of background checks done wrong," said Dietrich, who noted

and means to correct material inaccuracies in their employment reports.

However, even for consumer who may suffer a derogatory, but accurate report, the FCRA employment report rights are important. *Williams v. Telespectrum, Inc.*, CIV.A.3:05CV853, 2007 WL 6787411 (E.D. Va. June 1, 2007). ("The statute contemplates a wide range of responses beyond correcting inaccuracy-to 'discuss' the report, or to 'otherwise respond.' ")

**III. Legal Argument**

**A.   The FAC plausibly alleges violations of the FCRA.**

The Plaintiffs each assert claims against Swift in its capacity as a "user" of employment purposed[2] background checks - consumer reports in FCRA parlance. *See* 15 U.S.C. § 1681a(d). Section 1681b(b) prohibits the use of a consumer report for employment decisions until and unless the employer has complied with the provisions strict mandates. Plaintiffs allege that Swift unlawfully obtained and used consumer reports about job applicants without first providing an FCRA

---

"Employment purposes" relate to the "evaluation of a consumer for employment, promotion, reassignment or retention" as an employee.  15 U.S.C. § 1681a(h).

compliant notice or obtaining a proper authorization from each applicant. (Doc. 19, ¶30); 15 U.S.C. § 1681b(b)(2). Further, Plaintiffs allege that Swift willfully ignored its obligation to provide rejected applicants an explanation that they were not hired because of their consumer report and notice of the FCRA rights and dispute remedies available to them. (Dkt. No. 19 at ¶31); 15 U.S.C. § 1681b(b)(3).

Most employment applications or positions fall within the purview of § 1681b(b)(2)(A)(i), which requires that an employer provide a clear and conspicuous disclosure in writing **before** procuring the report. This section also requires the employer to obtain a written authorization from the job applicant after making the disclosure and before obtaining the report. 15 U.S.C. § 1681b(b)(2)(A)(ii); *see also Reardon v. Closetmaid Corp.*, CIV.A. 08-1730, 2011 WL 1628041 (W.D. Pa. Apr. 27, 2011).

An employer's obligation to obtain the applicant's authorization "before the report is procured" is unambiguous and has a clear meaning. *Id.*

However, the "Clear and Conspicuous" stand-alone disclosure and "Written Authorization" requirements found under § 1681b(b)(2)(A)(i)and(ii) do not apply to applicants seeking a trucking position by mail, telephone, computer or other similar means.  Rather this narrow category of not-in-person trucking applicants is entitled to receive notice and provide authorization in writing, **_orally, or electronically_**. *See* 15 U.S.C. § 1681b(b)(2)(B). The oral, written or electronic notice that a consumer report will be obtained is coupled with a requirement that the employer notify the applicant of a right to receive a free copy of the consumer report provided by the CRA within 60 days **and** a right to dispute the accuracy and completeness of the report. *Id.* Most important, **_after_** receiving these notifications, the applicant must likewise authorize in writing, orally or electronically the procurement of the consumer report.  *See* 15 U.S.C. § 1681b(b)(2)(B)(ii).

In addition to providing applicants with consumer rights regarding the procurement of a consumer report for employment purposes, § 1681b also affords certain

rights when adverse action is taken based in whole or in part on the report. *See* 15 U.S.C. § 1681b(b)(3). Like the provisions of § 1681b(b)(2), § 1681b(b)(3) distinguishes between trucking applicants with in-person contact and those who apply by mail, telephone, computer or other similar means. As to in-person applicants, § 1681b(b)(3)(A) provides that ***before*** taking adverse action based on the consumer report, the employer must provide the applicant: (1) with a copy of the report, and (2) a written statement of rights prescribed by the Federal Trade Commission under §609 of the FCRA. Conversely, for trucking applicants who apply via mail, telephone, computer or other similar means, the employer must provide the applicant, within three (3) days of taking adverse action, an oral, written or electronic notification:

 1. that adverse action was taken in whole or in part on the report received from a CRA;

 2. of the name, address and telephone number of the CRA that furnished the report;

 3. that the CRA did not make the adverse decision and cannot provide the applicant with a specific reason the adverse action was taken; and

    4. that the consumer may, upon providing proper identification, request a free copy of the report and dispute with the CRA the accuracy or completeness of the report.

Lastly, as with § 1681b(b)(2)(B), § 1681b(b)(3)(B) provisions apply only if the applicant has had no in-person contact with the employer ***prior*** to the procurement of the report.

  **B. Dismissal of Daniel from Counts One and Two is premature and would be erroneous.**

The FAC alleges that Daniel applied for employment with Swift on-line (Dkt. No. 19 at ¶9), but had in-person contact with Swift prior to Swift procuring his consumer report (Dkt. No. 19 at ¶11). Under such circumstances, Daniel would have been entitled "in-person" application protections under § 1681b(b)(2)(A) and §1681b(b)(3)(A). Swift argues, however, that Daniel's "in-person" claims should fail because Swift procured Daniel's consumer report prior to the orientation. (Dkt. No. 24 at P.5, lns. 1-4). In support of this argument, Swift attaches an unauthenticated one page document from USIS Commercial Services, Inc. dated December 28, 2010. Though Swift may attach documents to its motion to dismiss, the

Court may not consider documents that have questionable authenticity and are relied upon by a pleading. *Kaprov v. Insight Enters.* 2010 U.S.Dist. LEXIS 128621 *5-6. Further, a court may not take judicial notice of a fact that is "subject to reasonable dispute". *Id.* This is even more equitably true in a case as this one where Defendant's alleged law-breaking is its failure to provide the Plaintiff a copy of the very report it now first discloses in its opposition.

Swift would have the Court ignore Plaintiffs' plausible claim by applying a summary judgment standard of review in appropriate at this state of the proceedings. See *Shapiro v. Matrixx Initiatives, Inc., 2011 U.S. Dist. LEXIS 111159 (D.Ariz.Sept. 26, 2011)* (citing *Iqbal*, 129 S. Ct. at 1949) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Indeed, Plaintiffs dispute that the attachment is a consumer report as it does not provide any consumer report data and rather merely makes reference to a "Widescreen Package Product Request

Information" *request* on December 28, 2010. A report typically indicates at a minimum that no results were found or contains information regarding a purported criminal background. *Compare Smith v. Waverly Ptnrs., LLC*, 2011 U.S. Dist. LEXIS 90135 (W.D.N.C. Aug. 12, 2011) ("Plaintiff's name, Social Security Number, prior addresses, date of birth, and driver's license information…does not bear on any of the seven enumerated factors in § 1681a(d), and is thus not a consumer report") *with Swift's Answer to Plaintiff's First Amended Complaint* (Dkt. No. 23 at ¶29, "Swift admits that it has obtained criminal background reports from consumer reporting agencies during the last few years.")

The FAC also alleges that Swift took adverse action against Daniel by dismissing him from orientation based upon information received in a consumer background report. (Dkt. No. 19 at ¶13) Because the protections afforded under § 1681b(b)(2)(A) and § 1681b(b)(3)(A) hinge on when Swift procured the consumer report, Plaintiffs should be provided an opportunity to conduct discovery to determine if the

attachment is in fact a true and correct copy of the alleged consumer report used by Swift to terminate Daniel. Indeed, dismissal of Daniel's claim is premature at best; rather at worst, Daniel would be reclassified as a non-in-person applicant if discovery yields information consistent with Swift's theory.[3]

Moreover, even if the attachment is a consumer report, discovery should be conducted to determine why Swift would procure applicants' consumer reports, be aware of negative content, and still haul applicants from across the country to attend orientation only to send them home midstream. This conduct also begs for fact discovery, including what incentive, if any, Swift has to drag applicants like Daniel across the United States to attend orientation only to send them home based on consumer reports procured prior to the orientation. (Dkt. No. 32 at ¶13, "Swift admits that it did not hire Daniel and that Daniel was dismissed from orientation.").

---

[3] Defendant's timing allegation are also inconsistent with the FAC allegation that the Plaintiff's disqualification did not occur until after he had been asked to and allowed to attend employment orientation. If the disqualifying report was obtained before, a fact-finder could reasonably conclude that the employer had not yet "used" the disqualifying report.

### C. Bell could not authorize the procurement of a consumer report if he was never advised that such a report would be procured.

Conceding the plausibility of almost all of Plaintiffs' remaining claims, Swift presents only one other argument in support of its motion for partial dismissal Mr. Bell's claim. Defendant argues that it did not violate § 1681b(b)(2)(B) as to Bell because it obtained his signature following the barely legible text at the end of his application. That text would have advised a comprehending reader that he or she was giving to Swift, "the right to investigate all references and to secure additional information about me, if job-related." Dkt. No. 19-2 at 3. Nothing more. It never mentions, informs or suggests the involvement of a federally regulated consumer reporting agency. It never mentions the phrase "consumer report" much less advises Bell that he could obtain a free copy of the consumer report and dispute its accuracy. §1681b(b)(2)(B)(i). Defendant's logic – its suggestion that because the language is so broad it should catch every possible type of information, including FCRA governed data – ignores the important remedial purposes

for the FCRA rights and protections. It could just as well have stated: "You agree that we can do anything at all to evaluate your application." That authorization would be just as all broad, and just as ineffective.

Swift's entire argument is rooted in its misconception that Congress somehow "relaxed" FCRA compliance in 1998 when retooling disclosure and authorization requirements for truck drivers. Rep. LaFalce explained the amendments: "The legislation would add several narrowly crafted exceptions to FCRA that would permit - where employment applications are taken by phone, mail or electronically - greater flexibility in providing required disclosures and authorizations either by 'oral, written or electronic means'" In short, the content of the disclosure and the veracity of the authorization remained intact; only the means by which the information is communicated was affected. Lynne B. Barr & Barbara J. Ellis, *The New Fcra: An Assessment of the First Year*, 54 Bus. Law. 1343, 1349 (1999)("The 1998 Amendments drew a very narrow exception to this requirement, and now permit

certain employers to provide the prior disclosure and obtain the prior authorization orally or electronically if there has been no "in-person" contact before the consumer report is procured.")

Swift argues that its application contains the necessary verbiage to constitute a general, limitless authorization to obtain any information from any source regarding applicants. Notably, Swift provides no authority for such an untenable position, as none exists. Consumer reports are a unique species of personal information, and are subject to federal regulation in part due to the notoriously convoluted way they are prepared. Thus notification of one's right to receive a copy of the consumer report together with notice of the right to dispute its accuracy remains paramount to the application and screening process.

The FCRA treats the disclosure of these rights as a condition precedent to a consumer's authorization. *See generally Lagrassa v. Gaughen*, 2011 U.S. Dist. LEXIS 34323 (M.D. Pa. Mar. 30, 2011) (in the context of § 1681b(b)(2)(A),"before obtaining a consumer report,

15

the employer must first disclose to the potential employee that the employer may obtain a report ***and then*** the employee must authorize, in writing, the procurement of the report.") Swift baldly asserts that its application satisfies the requirements of § 1681b(b)(2)(B)(ii), without attempting to address its failure to notify applicants in accordance with § 1681b(b)(2)(B)(i). Moreover, Swift does so despite the fact that its purported disclosure does not even use the terms, "criminal background", "consumer report", "dispute", "free copy", and "consumer reporting agency". *See Burghy v. Dayton Racquet Club, Inc.*, 695 F. Supp. 2d 689, 698 (S.D. Ohio 2010) (valid FCRA disclosure under § 1681b(b)(2)(A) stated certain job functions "require ***credit history checks***, and I understand ***credit-reporting agencies***, credit/bankruptcy litigation, and ***credit reports*** may also be included").

**IV.  Conclusion**

    Plaintiffs respectfully request that the Court deny Defendant's Partial Motion to Dismiss.

                      Respectfully Submitted,

                      STUMPHAUZER O'TOOLE MCLAUGHLIN
                      McGLAMERY & LOUGHMAN CO LPA

/s/ Dennis M. O'Toole
/s/ Matthew A. Dooley
/s/ Anthony R. Pecora


LUBIN AND ENOCH, P.C.

/s/ Stanley Lubin


CONSUMER LITIGATION ASSOCIATES, P.C.

/s/ Leonard A. Bennett
/s/ Susan M. Rotkis
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

This will certify that a copy of the foregoing Plaintiffs' Response to Defendant's Motion to Dismiss was filed electronically this 8th day of December, 2011. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ Susan M. Rotkis
*Counsel for Plaintiffs*

17