STATE OF ARIZONA      )
                      )ss.    **DECLARATION OF JOHN F. LOMAX, JR.**
County of Maricopa    )

1. I am John F. Lomax, Jr., a partner at Snell & Wilmer L.L.P. I have personal knowledge of the facts in this declaration. To the extent I do not have first-hand knowledge of the facts, *e.g.*, the size and dates of production, I have relied on inquiries I made to other lawyers and paralegals in the firm with first-hand information of the facts.

2. Brian Foster, another partner at Snell & Wilmer L.L.P., and I are the senior lawyers on this matter. While a number of lawyers are working on this case, I had oversight responsibility for the gathering of declarations from putative class members.

3. We had hoped to depose the Plaintiffs in this matter in March 2012. Plaintiffs were not made available for depositions until June 11 and 12, 2012. We served initial deposition notices for the Plaintiffs on January 27, 2012; those notices were served approximately six weeks before the scheduled depositions in March. We served written discovery on Plaintiffs at approximately the same time.

4. Plaintiffs' counsel objected to the March depositions in an early February conference call and agreed to provide alternative dates. On February 10, 2012, I sent Plaintiffs' counsel an email requesting new dates. I did not receive a response for nearly four weeks. On March 2, 2012, I wrote Plaintiffs' counsel again seeking deposition dates. In the ensuing weeks, counsel for the parties exchanged several other communications and participated in conference calls related to deposition scheduling. Ultimately, Plaintiffs' counsel agreed to produce the Plaintiffs for depositions on June 11 and 12, 2012.

5. Swift deposed Plaintiffs on June 11 and 12, consistent with the parties' agreement and the notices filed on March 31, 2012.

6. Responding to Plaintiffs' discovery requests was a massive effort. The production of records was a rolling effort as counsel obtained, processed, reviewed, and prepared for production. To date, Swift has produced approximately 650,000 pages of documents and two databases in their native format. The bulk of the production of documents and records occurred from late June to early August. Of the paper production, approximately 400,000 pages were produced from late June to early August. The two databases, alone, contain over 17GB of data, which I understand represents over a million pages of documentation and were produced on June 29, 2012. Swift also prepared an extensive privilege log produced on July 13 and provided an extensive update of the privilege log on August 29.

7. On July 13, 2012, Plaintiffs noticed depositions for eight Swift employees. I prepared for and defended one of those depositions. Joe Kroeger and Brian Foster prepared for and defended the remaining depositions that were scheduled to occur on August 1 and 2, 2012. Plaintiffs' counsel canceled the four depositions scheduled for August 2 on the evening of August 1.

8. During July 2012, we researched whether, as counsel for Swift, we could interview putative class members and, if so, what guidelines we should follow in doing so. After confirming the propriety of doing so, we evaluated what we knew about the case to date and what we sought to obtain via declarations. We then planned, coordinated, and executed our plan to interview putative class members in several states. All interviews were conducted in-person by lawyers from Snell & Wilmer's various offices between August 2-9, 2012. Swift's counsel did not send correspondence to or survey putative class members before talking with them. As I understand it from our lawyers, all declarations were taken the day of the interview. Declarations gathered out-of-state were then forwarded to the Phoenix office for review and processing. The last batch of declarations arrived in the Phoenix office on or about August 13, 2012.

9. We gathered 123 declarations. After reviewing them, we ultimately selected 38 that we plan to use to oppose certification. Brian Foster and I agreed we would independently review the declarations but decide together which ones would be ultimately selected for use. Brian and I completed our review on Friday afternoon, September 7, 2012, and we sent them to a paralegal for review and production on the following Monday, September 10, 2012.

10. In late June, Plaintiffs' counsel insisted on the production of data related to non-driver applicants. Before then, it was unclear whether Plaintiffs were seeking such information. Swift ultimately produced 32,798 pages of documents related to non-drivers on August 30, 2012.

11. From August 14 through September 10, 2012, I was involved in other professional matters in addition to this matter. If the Court so requests, I can provide additional details about non-billable work, civic and community, and personal and family commitments during the August 14 to September 10, 2012 time period.

12. The professional matters in which I was involved during the August 14 to September 10, 2012 time period include:

- Evaluating briefs from the EEOC and Interior filed on August 6 and 8, 2012 and drafting a reply to the August 6 brief in *EEOC v. PWCC*, 01-CV-01050-JWS, a twice-remanded, complex 11-year-old case; the brief filed by counsel undersigned on August 24, 2012 represented the final brief in a series of complex briefing issues involving the four parties that dated back to December 2011.

- Prepared for a four-day unfair labor practice trial that was scheduled to begin on September 11, 2012 before an Administrative Law Judge of the NLRB in *Raytheon Technical Services Co. v. Pototsky*, 28-CA-079154. A request to continue the hearing date was denied on August 16, 2012. While an associate assisted on this matter, I was the sole trial counsel. The parties ultimately settled that case in discussions that culminated on September 6 and 7, 2012, with a call with the Administrative Law Judge and an order vacating the hearing.

- Completed discovery on August 21, 2012 in *Henry v. Universal Technical Institute*, CV-11-1773-PHX-FJM, including the filing of a motion for sanctions and preparation for an upcoming motion for summary judgment.

- Traveled to and worked in the firm's Denver, Colorado office on August 27-29, 2012.

13. It was never a consideration by Swift's counsel to time these interviews and disclosures in a manner to gain tactical advantage. The timing of the disclosures was driven solely by the intensive and cumbersome nature of this case's discovery process and counsel's schedule.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on this 18th day of September, 2012.

*/s/ John F. Lomax, Jr.*
John F. Lomax, Jr.