1  LUBIN AND ENOCH, P.C.
2  Stanley Lubin (003076)
   349 North 4th Avenue
3  Phoenix, Arizona 85003-1505
   Telephone:   (602) 234-0008
4  Facsimile:    (602) 626-3586
5  Email:    Stan@lubinandenoch.com

6  STUMPHAUZER, O'TOOLE, McLAUGHLIN,
7  McGLAMERY & LOUGHMAN CO., LPA
   Dennis M. O'Toole (0003274)
8  Anthony R. Pecora (0069660)
   Matthew A. Dooley (0081482)
9  5455 Detroit Road
10 Sheffield Village, Ohio  44054
   Telephone:   (440) 930-4001
11 Facsimile:    (440) 934-7208
12 Email:      dotoole@sheffieldlaw.com
              apecora@sheffieldlaw.com
13            mdooley@sheffieldlaw.com

14
   CONSUMER LITIGATION ASSOCIATES, P.C.
15 Leonard A. Bennett (Virginia Bar #27523)
   Susan M. Rotkis (Virginia Bar #40693)
16 763 J. Clyde Morris Blvd. 1-A
17 Newport News, Virginia 23601
   Telephone:   (757) 930-3660
18 Facsimile:    (757) 930-3662
19 Email:      lenbennett@clalegal.com

20        **IN THE UNITED STATES DISTRICT COURT**

21            **FOR THE DISTRICT OF ARIZONA**

22
23 KELVIN D. DANIEL, et al                  )
                                            )
24          Plaintiffs,                     )   **Case No.: 2:11-CV-01548-ROS**
                                            )
25      vs.                                 )
                                            )
26                                          )
   SWIFT TRANSPORTATION CO.                 )   **MEMORANDUM OF LAW IN**
27 OF ARIZONA, LLC                          )   **SUPPORT OF PLAINTIFFS' MOTION**
                                            )   **FOR CLASS CERTIFICATION**
28          Defendant.

1

# **TABLE OF CONTENTS**

I.INTRODUCTION....................................................................... P.1

II.STATEMENT OF THE CASE AND FACTUAL BACKGROUND.......P.1

   A. Swift Uniformly violates FCRA § 1681b(b)(2)(A)..................P.2

                       (Count I of SAC) as to all "not in person" applicants.

   B. Swift Uniformly violates FCRA § 1681b(b)(3)(B)..................P.5

                      (Count II of SAC) as to all "not in person" applicants.

III.CLASS CERTIFICATION IS APPROPRIATE...........................P.7

   A.     The requirements of Fed. R. Civ. P. 23(a) are satisfied..........P.7

       1.     Numerosity is established.....................................P.7

                 2.     The commonality requirement is satisfied because the claims arise from the application of identical statutory provisions to standardized forms and conduct...........................................P.9

       3.     Typicality is established.....................................P.11

       4.     Adequacy of Representation................................P.12

   B.     The requirements of Fed. R. Civ. P. 23(b)(3) are satisfied.......P.13

IV.CONCLUSION.....................................................................P.16

# TABLE OF AUTHORITIES

**Cases**

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 719 (9th Cir. 2010)...................................... 15

*Chakejian v. Equifax Info. Services LLC*, 256 F.R.D. 492, 500 (E.D. Pa. 2009) ..................... 7, 14

*Chakejian v. Equifax Information Services, LLC*, 256 F.R.D. at 498........................................ 9, 11

*Drew v. Equifax Info. Services, LLC*, 690 F.3d 1100, 1111 (9th Cir. 2012) ................................. 8

*Facciola v. Greenberg Traurig LLP*, 281 F.R.D. 363, 369 (D. Ariz. 2012) ......................... 10, 12

*Gary Plastic Packaging Corp. v. Merrill Lynch*, 903 F.2d 176, 179 (2d Cir.1990)....................... 7

*General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).............. 7

*Gillespie v. Equifax Info. Services, LLC*, 05 C 138, 2008 WL 4614327 ........................ 7, 9, 11, 14

*Grimmelmann v. Pulte Home Corp.*, 2010 WL 2744943 (D. Ariz. July 9, 2010)....................... 11

*Grimmelmann v. Pulte Home Corp.*, CV-08-1878-PHX-FJM, 2010 WL 2744943 (D.
   Ariz. July 9, 2010) ............................................................................................................... 10

*Guadiana v. State Farm Fire & Cas. Co*, 2010 WL 5071069 (D. Ariz. Dec. 7, 2010)............. 8, 9

*Hall, et al. v. Vitran Express, Inc.*, N.D. Ohio Case No. 1:09-CV-00800 ................................... 8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir.1998) ............................................... 13

*Haro v. Sebelius*, 789 F. Supp. 2d 1179, 1196 (D. Ariz. 2011)................................................... 7

*Kelchner v. Sycamor Manor Health Center*, 305 F.Supp.2d 429, 433 (M.D. Pa. 2004).............. 3

*Kelvin D. Daniel, et al v. Swift Transportation Corp.*, Civ. 2:11-cv-01548-PHX-ROS (D.
   Az. August 8, 2011) ............................................................................................................... 3

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 345 (7th Cir. 1997) ........................................... 16

*Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588-89 (9th Cir. 2012).......................... 9, 10

*McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 632 (6th Cir. 2000)........................................ 6

*Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 241 F.R.D. 185, 196
   (S.D.N.Y.2007)....................................................................................................................... 9

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).......................................... 15

*Perez v. First Am. Title Ins. Co.*, 2009 WL 2486003 (D. Ariz. Aug. 12, 2009)........................... 14

*Perez v. First American Title Ins. Co.*, 2009 WL 2486003, *2 (D.Ariz.2009)............................. 8

*Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105 (E.D.Pa. 2005)...................................... 7

*Reardon v. ClosetMaid Corp.*, 2011 U.S. Dist. LEXIS 45373 (W.D. Pa. Apr. 27, 2011) ............ 7

*Reardon v. Closetmaid Corp.*, 2011 WL 1628041 (W.D. Pa. Apr. 27, 2011).................... 3, 10, 12

*Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010)..................................................... 9, 11

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (U.S. 2007)....................................................... 14

*Salt River Pima-Maricopa Indian Cmty. v. United States*, 266 F.R.D. 375, 378 (D. Ariz.
   2010) ..................................................................................................................................... 8

*Salt River Pima-Maricopa Indian Cmty. v. United States*, 266 F.R.D. 375, 378-79 (D.
   Ariz. 2010) ........................................................................................................................... 13

*Salt River Pima-Maricopa Indian Cmty. v. United States*, 266 F.R.D. 375, 379 (D. Ariz.
   2010) ..................................................................................................................................... 15

*Shapiro v. Matrixx Initiatives, Inc.*, 2012 WL 3149925 (D. Ariz. July 31, 2012)....................... 12

*Singleton v. Domino's Pizza, LLC*, 2012 U.S. Dist. LEXIS 8626 (D. Md. Jan. 25, 2012)............ 3

*Soutter v. Equifax Info. Servs., LLC*, 2011 U.S. Dist. LEXIS 34267 (E.D. Va. Mar. 30,
   2011) ..................................................................................................................................... 7

*Summerfield v. Equifax Info. Services LLC*, 264 F.R.D. 133 (D.N.J. 2009) ............................... 7

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (U.S. 2011).................................................. 9

*Williams v. LexisNexis Risk Mgmt. Inc.*, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007).......... 9, 13

*Williams v. LexisNexis Risk Mgmt.*, 2007 U.S. Dist. LEXIS 62193 (E.D. Va. Aug. 23, 2007) ............................................................................................................................ 7

**Statutes**
15 U.S.C § 1681j ......................................................................................................... 2
15 U.S.C. § 1681m(a)(3) ........................................................................................ 2, 3
15 U.S.C. § 168 1b(b)(2) ........................................................................................ 2, 5
15 U.S.C. § 1681b(a) .................................................................................................. 1
15 U.S.C. § 1681b(b) ......................................................................................... passim
15 U.S.C. § 1681b(b)(2)(B)(i) .................................................................................... 3
15 U.S.C. § 1681b(b)(3) .............................................................................................. 2
15 U.S.C. § 1681m(a)(4) ............................................................................................. 3
15 U.S.C. § 1681n ................................................................................................. 2, 13
15 U.S.C. § 1681n(1)(A) ............................................................................................. 2
15 U.S.C. § 1681p ....................................................................................................... 8
15 U.S.C. § 1681i ................................................................................................... 2, 5
15 U.S.C. § 1681j ........................................................................................................ 5
15 U.S.C. § 1681b(b)(2)(B) ........................................................................................ 2
Section 615(a)(3) of the FCRA .................................................................................. 2

**Rules**
Fed. R. Civ. P. 23(a)(1) .............................................................................................. 8
Fed. R. Civ. P. 23(a)(4) ............................................................................................ 12
Fed. R. Civ. P. 23(b)(3) .................................................................................. 1, 12, 13
Fed.R.Civ.P. Rule 23(a) .............................................................................................. 1
Fed. R. Civ. P. Rule 23(a) ........................................................................................ 12

**MEMORANDUM IN SUPPORT**

## I.      INTRODUCTION

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b), requires employers to make certain specific disclosures and to follow specified policies and practices where they may use consumer reports to assess the qualifications of prospective and current employees.

The record evidence conclusively establishes that Swift uniformly disregards these mandates by adopting practices that are directly contrary to the FCRA, which strictly limits the circumstances under which a prospective employer may obtain a consumer report.  These practices violate the privacy rights of consumers, as well as ignore important protections designed to help consumers understand and correct the impact of potentially inaccurate derogatory information.

Tanna Hodges' and Kelvin Daniel's ("Named Plaintiffs") claims, together with those of the putative Class members arise from Swift's adoption of policies and practices that are contrary to FCRA requirements. As fully demonstrated below, the requirements of Fed. R. Civ. P. Rule 23(a) and 23(b)(3) are fully satisfied.

## II.     STATEMENT OF THE CASE AND FACTUAL BACKGROUND

The FCRA establishes the permissible purposes for accessing a consumer report about a consumer. 15 U.S.C. § 1681b(a).  An employer is not automatically entitled to access and then use the consumer report.  It must first obtain the consumer's consent to the release of the report and, if the report is found to have negative information, the employer must properly notify the consumer about that information if it is used as a

factor in the employment decision. *See* 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

The Plaintiffs' First Amended Complaint ("FAC") (ECF 19) and proposed Second Amended Complaint ("SAC")[1] assert that Swift violated these fundamental requirements and is subject to liability pursuant to 15 U.S.C. § 1681n(1)(A) FAC ¶¶ 44-55.  Under this provision, a person is liable to any consumer for willfully violating the FCRA up to $1,000.00 and unliquidated punitive damages.

### A. Swift Uniformly violates FCRA § 1681b(b)(2)(A) (Count I of the SAC) as to all "not in person" applicants.

The FCRA requires consumer consent and disclosure <u>before</u> the procurement of consumer reports for employment purposes for applicants who do not apply in person. Section 1681 b(b)(2)(B) **requires as to such applicants that** "at any time before a consumer report is procured or caused to be procured in connection with that application", (i) the employer shall provide to the consumer, by oral, written, or electronic means, notice that a "consumer report" was to be obtained for employment purposes, and "a summary of the consumer's rights under section 1681m(a)(3)[2]"; and

---

[1] Plaintiffs Daniels and Hodges contemporaneously move to file their Second Amended Complaint to conform to the evidence and to remove Counts I and II from their FAC, and facts as to now dismissed Plaintiff Bell.  Accordingly, Plaintiffs do not move for class certification as to Counts I and II of the FAC.  These claims, reserved for "in person" job applicants are thus not the subject of this Motion.

[2] During the relevant class period, Section 615(a)(3) of the FCRA, 15 U.S.C. § 1681m(a)(3) indisputably required disclosure of (1) the right to obtain within 60 days, under 15 U.S.C § 1681j, a free copy of the consumer report directly from the consumer reporting agency; and (2) the right to dispute, under 15 U.S.C. § 1681i, directly with the consumer reporting agency the accuracy or completeness of any information in the consumer report furnished by the agency. Thereafter, when

(ii) must obtain the consumer's express consent "orally, in writing, or electronically to the procurement of the report[.]"  15 U.S.C. § 1681b(b)(2)(B). Once the employer has made these disclosures and obtained the consumer's authorization, the employer is then authorized to access that person's private and personal information any time thereafter. *See Kelchner v. Sycamor Manor Health Center*, 305 F.Supp.2d 429, 433 (M.D. Pa. 2004); *see also Reardon v. ClosetMaid Corp.*, 2011 U.S. Dist. LEXIS 45373 (W.D. Pa. Apr. 27, 2011); *see also Kelvin D. Daniel, et al v. Swift Transportation Corp.*, Civ. 2:11-cv-01548-PHX-ROS (D. Az. August 8, 2011) (Doc. 33); *see also Singleton v. Domino's Pizza, LLC*, 2012 U.S. Dist. LEXIS 8626 (D. Md. Jan. 25, 2012).

Plaintiffs have forced the production of over 1,000,000 pages of Swift documents.  They have deposed the management and Rule 30(b)(6) witnesses with knowledge of Defendant's FCRA compliance system.  And through all of this, there is absolutely no evidence – no documents and no testimony -- that Swift has provided to any class member any of the disclosures required by 15 U.S.C. § 1681b(b)(2)(B)(i). *See* Declaration of Matthew A. Dooley, ¶¶ 10, 12, 13-16.   This failure is uniform throughout the class period for all "not in person" applicants.[3]

Swift accepts job applications in person, online, via fax and telephone.  While the format of Swift's application materials and disclosures has (immaterially) varied over

---

Dodd-Frank was enacted July 21, 2010, 15 U.S.C.  § 1681m(a)(3) was renumbered as 15 U.S.C. § 1681m(a)(4) with changes effective July 21, 2011.

[3] The Parties continue to dispute whether or not Swift lawfully and uniformly obtained consumer consent to the procurement of a consumer report.  However, Plaintiffs do not need and therefore do not suggest such a path to class certification or to liability. Instead Swift's complete omission of the subparagraph (i) disclosures are dispositive.

time, in every instance before post-litigation changes in 2012, these forms omitted the same FCRA disclosures mandated by the Act. *See Id.*   Once   Swift   receives   an application that does not contain disqualifying information on its face, a Swift recruiter contacts the applicant by telephone to discuss his qualifications for employment.   As evidenced by Swift's own call scripts, recruiters ***never*** mention that a consumer report will be obtained as a precondition for employment.   Nor did the recruiters or applications advise consumers of their rights to a free copy of the consumer report and to dispute the accuracy or completeness of the information with the consumer reporting agency. And these scripts ***do not*** include any communication to applicants of the name, address and toll-free number of the consumer reporting agency, and do not the required explanation that it was not the CRA that would take a potential adverse action.

Likewise, Swift "recruiters" (the only contact with applicants before FCRA reports were obtained by Defendant), in accordance with their prepared call scripts and mandated company policy, were forbidden from making such disclosures. *See* Dooley Declaration, ¶10(e). The recruiters themselves never review the applicant's report.   In fact, there is no material chance of variation in the class facts based on the occasional out of step communication from a recruiter as Swift has structured its hiring process to reserve the entire FCRA function to its "Security" department, a later stage in the application process.   Behind the scenes, Swift security staff evaluates applications and consumer reports in accordance with Swift's hiring guidelines.

And of course because these procedures and policies were consistent over time, they impacted both Hodges and Daniels in the same manner that they impacted the

Class. Daniel applied 'on-line' for a position with Swift on or about December 27, 2010. *Id.* pg 119, ln. 10-20. Daniel's on-line application did not provide him with notice that he had a right to obtain a free copy of his report from HireRight within 60 days as prescribed by 15 U.S.C. § 1681j or that he had a right to dispute the accuracy or completeness of the report under 15 U.S.C. § 1681i.

Relevant to this case and claim, Hodges applied for a Swift trucking job online on December 12, 2009. Swift procured her consumer report and determined from the report that she had failed to disclose a previous criminal conviction. *See* Cordova Dep. Exhibit 10.

### B. Swift Uniformly violates FCRA § 1681b(b)(3)(B) (Count II OF SAC) as to all "not in person" applicants.

Like the provisions of 15 U.S.C. § 1681b(b)(2), 15 U.S.C. § 1681b(b)(3) distinguishes between truck driving applicants with in-person contact and those who apply by mail, telephone, computer or other similar means. For internet trucking applicants like Hodges, the employer must provide the applicant, within three (3) days of taking adverse action, an oral, written or electronic notification:

1. that adverse action was taken in whole or in part on the report received from a CRA;

2. of the name, address and telephone number of the CRA that furnished the report;

3. that the CRA did not make the adverse decision and cannot provide the applicant with a specific reason the adverse action was taken; and

4. that the consumer may, upon providing proper identification, request a free copy of the report and dispute with the CRA the accuracy or completeness of the report.

5

15 U.S.C. § 1681b(b)(3)(B).  Prior to September 2011, Swift had no policy or procedure that explained the FCRA's adverse action protocol to its nationwide network of recruiters.[4]  Further, Swift's designated witness testified that prior to September 2011, Swift uniformly informed applicants verbally that Swift "had elected not to hire you at this time", and would never advise applicants when such decision was based in whole or in part on a consumer report. *See* Dooley Declaration, ¶ 10(e).

Hodges' experience is representative.   Swift's own internal notes regarding Hodges' application status are consistent with Swift's testimony.   See Cordova Dep. Exhibit 10.   These notes demonstrate that less than two hours after receiving Hodges' criminal background report, Swift concluded, "Applicant not approved for hire by investigations."  Id.  Thereafter, Hodges was never advised that the  adverse action was taken based in whole or in part on the consumer report, (2) the name, address, and telephone number of the consumer reporting agency, (3) that the consumer reporting agency did not make the decision to take adverse action and would be unable to provide the consumer with specific reasons why the adverse action was taken, (4) that the consumer could request a free copy of the report and (5) that the consumer can dispute the accuracy or completeness of the report.

---

[4] In addition, at this juncture, Plaintiffs are entitled to an inference that they did not exist. *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 632 (6th Cir. 2000); ("[T]he general rule is that '[w]here relevant information ... is in the possession of one party and not provided, then an adverse inference may be drawn that such information would be harmful to the party who fails to provide it." citations omitted.)

## III.    CLASS CERTIFICATION IS APPROPRIATE.

Federal Courts have, for good reason, found that FCRA cases are appropriate and proper for class treatment.[5]

### A.    The requirements of Fed. R. Civ. P. 23(a) are satisfied.

Federal Rule of Civil Procedure 23(a) requires that a movant demonstrates numerosity, commonality, typicality and adequacy of representation.[6]  Among the three primary types of class actions, Plaintiffs seek certification under Fed. R. Civ. P. 23(b)(3), as common questions of law or fact predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Eisen v. Carlisle Jacquelin*, 417 U.S. 156 (1974).

### 1.    Numerosity is established.

Rule 23 permits class certification if "the class is so numerous that joinder of all

---

[5]*Reardon v. ClosetMaid Corp.*, 2011 U.S. Dist. LEXIS 45373 (W.D. Pa. Apr. 27, 2011); *Williams v. LexisNexis Risk Mgmt.*, 2007 U.S. Dist. LEXIS 62193 (E.D. Va. Aug. 23, 2007); *Soutter v. Equifax Info. Servs.*, LLC, 2011 U.S. Dist. LEXIS 34267 (E.D. Va. Mar. 30, 2011); *Summerfield v. Equifax Info. Services LLC*, 264 F.R.D. 133, 136 (D.N.J. 2009); *Chakejian v. Equifax Information Services*, LLC, 256 F.R.D. 492 (E.D Pa. 2009); *Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105 (E.D.Pa. 2005); *Gillespie v. Equifax Info. Services, LLC*, 05 C 138, 2008 WL 4614327 (N.D. Ill. Oct. 15, 2008).

[6] In considering a class certification motion, "[T]he Court conducts a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class, *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), and has broad discretion in certifying a class, but applies class certification standards liberally, *Gary Plastic Packaging Corp. v. Merrill Lynch*, 903 F.2d 176, 179 (2d Cir.1990). *Haro v. Sebelius*, 789 F. Supp. 2d 1179, 1196 (D. Ariz. 2011).

members is impracticable." Fed. R. Civ. P. 23(a)(1).  "Generally, 40 or more members will satisfy the numerosity requirement." *Perez v. First American Title Ins. Co.,* 2009 WL 2486003, *2 (D.Ariz.2009). "The party seeking class certification need not identify the precise number of potential class members." *Guadiana v. State Farm Fire & Cas. Co.,* 2010 WL 5071069 (D. Ariz. Dec. 7, 2010). See also *Salt River Pima-Maricopa Indian Cmty. v. United States,* 266 F.R.D. 375, 378 (D. Ariz. 2010) (A class that "includes more than 1000 members … satisfies the numerosity requirement.").

Swift has stipulated to numerosity as to the disclosure Class (Count III of the FAC). See Dooley Declaration, ¶ 27.   Further, discovery from Third Party HireRight, the reporting agency used by Swift, confirms that the Count III class size is in the order of hundreds of thousands of consumers.[7] See Dooley Declaration, ¶ 20.   While Swift would not similarly stipulate as to numerosity as to Count II of the SAC (the Adverse Action claim), the evidence strongly supports Plaintiffs' allegation that class membership is numerous.  *See* Dooley Declaration, ¶¶24-26. "Each individual class member need not be identifiable at the class certification stage, however, provided she

---

[7] Plaintiff has used a five-year class period as the FCRA permits a claim under the FCRA within 5 years of the violation, or within 2 years "after the date of discovery by the plaintiff of the violation that is the basis for such liability." 15 U.S.C. § 1681p. Earlier in the case, Swift challenged this period and asserted the more limited two-year period. (Swift's Amended Answer to FAC, Doc. 50, Defenses ¶ 5).  However, such a statute of limitations "defense" is not germane to the types of FCRA claims in this case. *Hall, et al. v. Vitran Express, Inc.,* N.D. Ohio Case No. 1:09-CV-00800 (Oct. 29, 2010). Further, since Swift first asserted such a defense, the Ninth Circuit has explained that unless Defendant can conclusively prove that a class member would have known of Defendant's internal procedures and policies, he or she could not have "discovered" the violation. *Drew v. Equifax Info. Services, LLC,* 690 F.3d 1100, 1111 (9th Cir. 2012) (In the context of a consumer dispute investigation).

can be identified when judgment is rendered. *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation,* 241 F.R.D. 185, 196 (S.D.N.Y.2007)." *Guadiana v. State Farm Fire & Cas. Co,* 2010 WL 5071069 (D. Ariz. Dec. 7, 2010).

> **2.**     **The commonality requirement is satisfied because the claims arise from the application of identical statutory provisions to standardized forms and conduct.**

The plaintiff must demonstrate "the capacity of classwide proceedings to generate common answers" to common questions of law or fact that are "apt to drive the resolution of the litigation." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588-89 (9th Cir. 2012). [citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (U.S. 2011))]. But commonality only requires a single significant question of law or fact. *Id.* at 589.   The "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."   *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).

Commonality is satisfied in a FCRA case alleging a uniform violation of the FCRA's disclosure and notice provisions. *Gillespie v. Equifax Info. Services, LLC*, 05 C 138, 2008 WL 4614327 at *4. *See also Williams v. LexisNexis Risk Mgmt.*, 2007 U.S. Dist. LEXIS 62193 (E.D. Va. Aug. 23, 2007); *Chakejian v. Equifax Information Services, LLC,* 256 F.R.D. at 498.   In a 15 U.S.C. § 1681b(b) case as this one, common issues include:

> Whether the forms used by [the employer] to obtain consent to procure a consumer report from the class member violated the FCRA; whether [the employer] relied on derogatory information in consumer reports to deny employment to the sub-class members in violation of the FCRA; whether [the employer] was required by the FCRA

to provide a copy of the consumer report to sub-class members at least five (5) days before refusing to hire the subclass members; and whether [the employer] acted willfully.

*Reardon v. ClosetMaid Corp.*, 2011 U.S. Dist. LEXIS 45373 (W.D. Pa. Apr. 27, 2011).

Common issues can include whether or not a Defendant has a "duty to disclose." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012); *Grimmelmann v. Pulte Home Corp.*, CV-08-1878-PHX-FJM, 2010 WL 2744943 (D. Ariz. July 9, 2010). And a "defendants' knowledge (or reckless disregard) of the illegality" of its conduct or system. *Facciola v. Greenberg Traurig LLP*, 281 F.R.D. 363, 369 (D. Ariz. 2012).

In contrast to the limited uniformity in some cases, the claims alleged by the Plaintiffs are nearly if not actually identical to those asserted on behalf of the putative class. The success of the Plaintiffs' claims would be similarly dispositive for the class. Plaintiffs seeks to represent a class of individuals who – between August 8, 2006 and July 21, 2011 – were the subject of consumer reports obtained by Swift for employment purposes. Among this group are those to whom Swift did not provide notice of their FCRA rights *before* obtaining the report. Further, the class also consists of a smaller subclass of applicants who did not receive adverse action notice from Swift within 3 days of Swift's determination to decline employment based upon a consumer report. At each level, the putative class members' claims share common questions of law and fact that predominate over all individual issues, including by example only: whether Swift had a duty to provide the FCRA disclosures to applicants before it obtained their consumer report or the FCRA's "adverse action" disclosures after it had used their report in whole or in part in an adverse hiring decision; whether Swift's asserted partial

compliance with some of the FCRA disclosure provisions excuses its omission of the rest; and of course, whether Swift's procedures and conduct were reckless or knowing such as to establish a willful violation of the law.

### 3.      Typicality is established.

The typicality requirement considers whether "the claims of the class representatives [are] typical of those of the class, and [is] 'satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.' " *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citations omitted).  Typicality is " 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.' " *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citations omitted).

The scope of Plaintiffs' claims is coextensive with those of the class; their claims are *identical* to those putative class members they each seek to represent and their interests are squarely aligned. Typicality has been found in other similar contested FCRA actions. *Reardon v. ClosetMaid Corp.*, 2011 U.S. Dist. LEXIS 45373 (W.D. Pa. Apr. 27, 2011); *Gillespie v. Equifax Info. Services, LLC*, 05 C 138, 2008 WL 4614327 at *4; *Chakejian*, 256 F.R.D. at 498.   In particular, Plaintiffs' claims arise out of the exact same hiring practices, which guided Swift's actions in the course of obtaining and using consumer reports to make employment decisions. And as well, against Swift's series of forms that uniformly omitted the same FCRA disclosures. *Grimmelmann v. Pulte Home Corp.*, 2010 WL 2744943 (D. Ariz. July 9, 2010) (Rejecting contention that

11

the numerous inconsistencies among the various versions of reports defeated typicality and finding instead that, "[b]ecause the injuries plaintiffs claim to have suffered occurred in each case as a result of Pulte's alleged failure to disclose the same information, we conclude that their claims are sufficiently typical[.]")

### 4.   Adequacy of Representation

Rule 23(a) permits class certification when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see Facciola v. Greenberg Traurig LLP*, 281 F.R.D. 363, 370 (D. Ariz. 2012). " 'The adequacy requirement depends on: (1) whether the class representatives and their counsel have any conflicts of interest with other class members; and (2) whether the class representatives and their counsel will prosecute the action vigorously on behalf of the class.' " *Shapiro v. Matrixx Initiatives, Inc.*, 2012 WL 3149925 (D. Ariz. July 31, 2012) (Citations omitted).

Plaintiffs have retained counsel experienced in FCRA class action litigation, and competent to represent the interests of the class.  Counsel for Plaintiffs in this case are experienced in handling class action lawsuits and have competently handled many similar cases throughout the United States. (Exhibits 1, 2, 3 and 4 Declarations of Matthew A. Dooley, Anthony R. Pecora, Leonard A. Bennett and Dennis M. O'Toole respectively).   Further, the Plaintiffs have been and remain fully committed to and have actively participated in this litigation. *See* Dooley Declaration, ¶ 30.

**B.**     **The requirements of Fed. R. Civ. P. 23(b)(3) are satisfied.**

To satisfy Rule 23(b)(3), "common questions 'must predominate over any question affecting only individual members,' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir.1998) (quoting Fed.R.Civ.P. 23(b)(3)). As this Court explained, "This test is met when there is a "common nucleus of fact" and a "fair examination of alternatives" points to a class action as being the "preferred procedure" for resolving the parties' differences." *Salt River Pima-Maricopa Indian Cmty. v. United States*, 266 F.R.D. 375, 378-79 (D. Ariz. 2010).  The present FCRA claims satisfy these thresholds – common issues predominate and class treatment is superior to other alternatives.

The elements of Plaintiffs' substantive claims are subject to proof by generalized, common evidence.  In this case, all putative class members, by definition, were not provided with proper FCRA disclosures during the course of Swift's hiring process. The question of whether or not this uniform omission violates the FCRA, and whether or not it willfully does so, are both either purely legal questions, or questions that look solely to the Defendant and its own state of mind.

Statutory damages arising under identical circumstances for each Class member, there are almost no individual issues that arise.  Indeed, the certification of this class requires no individualized inquiry into damages.  Common evidence can be adduced at trial demonstrating that Swift acted "willfully" within the meaning of the FCRA. *See* 15 U.S.C. § 1681n.  The critical questions all relate to the state of the law, the FCRA,

and Defendant's knowledge of it. *Williams v. LexisNexis Risk Mgmt.*, 2007 U.S. Dist. LEXIS 62193 (E.D. Va. Aug. 23, 2007) ("The Plaintiffs' class allegations charge that these standard procedures violated the FCRA, and that, in adopting these procedures, LexisNexis willfully violated the FCRA. It is not readily apparent how an inquiry directed at LexisNexis' state of mind in adopting standard procedures is affected by any particular case in which those standard procedures were applied."); *Chakejian v. Equifax Info. Services LLC*, 256 F.R.D. 492, 500 (E.D. Pa. 2009) ("[T]he inquiry is to Equifax's state of mind in implementing its policies and procedures, not on the customer's particular interaction with the CRA. ... the relevant inquiry in this case is what Equifax's state of mind: what information Equifax disclosed or failed to disclose to customers with respect to its reinvestigation procedures, and whether it knew, or consciously disregarded the fact that those disclosures were misleading. To prove willfulness here, a consumer-by-consumer inquiry is not necessary."). As the court in *Gillespie* observed in a third FCRA case:

> In sum, the outcome of this suit, whatever it may be, will turn on common evidence regarding Equifax's standard file disclosure practice, the legality of that practice, and if illegal whether Equifax's adoption of that standard practice amounted to a willful violation of the FCRA as *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (U.S. 2007) defines willfulness. It is hard to imagine a case in which the predominance of common over individual issues has been more clearly shown.

*Gillespie*, 2008 WL 4614327 *7. The same holds true here.[8]

---

[8] In litigation, Swift has forecast its argument that a determination of whether or not a consumer is a member of the class or subclass would require an individualized inquiry. That is – it would require a file-by-file review of the code used to deny an employment

14

Similarly, class treatment will be measurably superior to individual litigation. There are hundreds of thousands of putative class members, all with tolled claims. Swift is based in this District.   If even a small fraction of these cases were litigated individually it would shut down the District's already heavily burdened docket. *Salt River Pima-Maricopa Indian Cmty. v. United States*, 266 F.R.D. 375, 379 (D. Ariz. 2010) ("The alternative to a class action-individual claims by each [class member]-would 'unnecessarily burden the judiciary[.]'").   Additionally, given the limited appeal of $1,000 in statutory damages as a lure to commence a federal court case, class treatment also offers a superior posture for FCRA cases, providing an economically viable way to prosecute consumer claims. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury.   Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."); *see also Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 719 (9th Cir. 2010) ("Congress, in its legislative judgment, specified the range of damages [in the FCRA] that it considered sufficient to have a deterrent effect. Despite Congress's

application or to determine whether or not a consumer report was procured.  But these individual inquiries are not individual questions.  They cannot predominate over the broad and dispositive classwide issues.   Rather, the file review burden is largely inevitable in a major class case and is more properly discounted as a manageability task rather than an obstacle to class certification. *Perez v. First Am. Title Ins. Co.*, 2009 WL 2486003 (D. Ariz. Aug. 12, 2009) *amended*, 2010 WL 1507012 (D. Ariz. Apr. 14, 2010) ("In short, while this issue may involve a file-by-file review, it will not require a file-by-file trial. The Court concludes that a class action will be manageable and is the superior method for resolving the dispute." (See citations therein)).

awareness of the availability of class actions, it set no cap on the total amount of aggregate damages, no limit on the size of a class, and no limit on the number of individual suits that could be brought against a merchant. Allowing denial of class certification because of the sheer number of violations and amount of potential statutory damages would allow the largest violators of FACTA to escape the pressure of defending class actions and, in all likelihood, to escape liability for most violations. In other words, whatever risk of overdeterrence class certification poses, refusing to certify a class on these grounds poses the risk of significant underdeterrence.").

Here, Plaintiffs seeks only statutory damages per violation of no less than $100 and no more than $1,000 for each class and subclass member. Indeed, the amount in controversy for any individual claimant is small. And this potential recovery pales in comparison to the costs of discovery and litigation. None of the individual claimants posses any controlling interest in the litigation. Likewise, the absence of any competing classes or other individual claims suggests that without the certification of this case as a class, it is unlikely that the class members would obtain any form of relief. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 345 (7th Cir. 1997). Unless the Court certifies this class, it is highly probable that the class members will receive no relief of any kind.

## IV.   CONCLUSION

Based upon the foregoing argument, Plaintiffs respectfully requests that the Court enter an order certifying the class as defined above, deem Plaintiffs adequate representative of the class and subclass, and appoint the undersigned as class counsel.

Respectfully Submitted,

16

STUMPHAUZER O'TOOLE MCLAUGHLIN
McGLAMERY & LOUGHMAN CO LPA

/s/ Dennis M. O'Toole
/s/ Matthew A. Dooley
/s/ Anthony R. Pecora


LUBIN AND ENOCH, P.C.

/s/ Stanley Lubin


LITIGATION ASSOCIATES, P.C.

/s/ Leonard A. Bennett

*Counsel for Plaintiffs*


## **CERTIFICATE OF SERVICE**

This will certify that a copy of the foregoing Memorandum of Law in Support of

Plaintiffs' Motion for an Extension of Time was filed electronically this 1st day of

October, 2012. Notice of this filing will be sent to all counsel of record by operation of

the Court's electronic filing system.

/s/ Matthew A. Dooley
*Counsel for Plaintiffs*