John F. Lomax, Jr. (#020224)
Brian J. Foster (#012143)
Joseph A. Kroeger (#026036)
SNELL & WILMER
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070
Email: jlomax@swlaw.com
        bfoster@swlaw.com
        jkroeger@swlaw.com
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KELVIN D. DANIEL, et al<br><br>Plaintiffs,<br><br>v.<br><br>SWIFT TRANSPORTATION CORPORATION,<br><br>Defendant. | Case No.  2:11-cv-01548-PHX-ROS<br><br>**DEFENDANT SWIFT TRANSPORTATION CO. OF ARIZONA, LLC'S THIRD AMENDED RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES** |

Defendant Swift Transportation Co. of Arizona, LLC ("Swift") hereby responds to Plaintiffs' First Set of Interrogatories as follows. All amended information is in **bold**:

**PRELIMINARY STATEMENT**

In responding to Plaintiffs' discovery requests, Swift has conducted a reasonable inquiry and investigation relating to the information requested. This inquiry and investigation is ongoing. The responses set forth herein are made on the basis of Swift's current knowledge. Swift reserves the right to refer to, conduct discovery with reference to, or offer as evidence, such information that may have, in good faith, not been included in the following responses. Swift expressly reserves the right to amend or supplement its responses, as appropriate, based on further inquiry and investigation. The information contained in these responses is also subject to correction for errors or omissions.

*Snell & Wilmer*
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1   Nothing herein shall be construed as an admission or waiver of: (i) objections

2   regarding admissibility, competency, relevance, privilege, materiality, or authenticity; (ii)

3   objections due to vagueness, ambiguity, or undue burden; or (iii) Swift's right to object to

4   the use of these documents during any subsequent proceeding, including the trial of this or

5   any other action.

6                                    **INTERROGATORIES**

7   **INTERROGATORY NO. 1:**

8        Identify every person who has interacted with or otherwise performed work

9   regarding the Named Plaintiffs' job applications or consumer reports (other than in

10  defense of the litigation in this case), including his or her name, job title, description and

11  department/division, formal employer, work performed and location of employment.

12  **ANSWER:**

13       Swift objects to Interrogatory No. 1 as overly broad and unduly burdensome to the

14  extent that it seeks information regarding non-Swift employees that Swift has no

15  knowledge or information about.  Interrogatory No. 1 is also overly broad and unduly

16  burdensome because not every person who has interacted with or otherwise performed

17  work regarding the Named Plaintiffs' job applications or consumer reports will be

18  relevant or material to Plaintiffs' claims or efforts to certify the purported class.

19       Swift further objects to Interrogatory No. 1 to the extent that the information

20  requested is already known by, or available to, the Named Plaintiffs, as they are in the

21  best position to know who interacted with them, and as evidenced in Swift's disclosure

22  statements and documents produced contemporaneously therewith.

23       Notwithstanding these objections and without waiving them, Swift responds that,

24  based on the facts presently known, the following people interacted with or otherwise

25  performed work regarding the Named Plaintiffs' job applications or consumer reports:

26  • Michelle Adamson works in Swift's security department at Swift's corporate office

27      in Phoenix, Arizona.  Michelle noted on Plaintiff Kelvin Daniel's employment

28      application that Mr. Daniel would have to call Swift for an interview.

- 2 -

EXHIBIT F

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

- Chad Bumgarner is a safety compliance coordinator at Swift who works at a Swift recruitment center in Lathrop, California. Chad interacted with Plaintiff Kelvin Daniel at a Swift orientation that Mr. Daniel attended. At that orientation, Mr. Daniel voluntarily disclosed several convictions in response to Swift's admonition that applicants accurately fill out and disclose information on their applications.

- Bill Cody was a recruiter at Swift who worked at a Swift recruitment center in Columbus, Ohio. Bill may have been the recruiter for Plaintiff Tanna Hodges' September 2009 application. Bill no longer works at Swift.

- Javier Covian is a recruit processor at Swift who works at Swift's corporate office in Phoenix, Arizona. Javier processed Plaintiff Kelvin Daniel's employment application.

- Douglas Driscoll is a recruiter at Swift who works at a Swift recruitment center in Sumner, Washington. Douglas was the recruiter for Plaintiff Kelvin Daniel.

- Tammy Ferguson works in the recruiting department at Swift's corporate office in Phoenix, Arizona. Tammy ordered consumer reports for Plaintiff Kelvin Daniel on December 28, 2010.

- Angelica Flores works in Swift's security department at Swift's corporate office in Phoenix, Arizona. Angelica determined that Plaintiff Kelvin Daniel was not approved for hire.

- Mary Johnson was an administrative assistant who worked at a Swift recruitment center in Memphis, Tennessee. Mary worked on the job application for Plaintiff Tanna Hodges. Mary no longer works at Swift.

- Kris Keplar is a recruiter at Swift who works at a Swift recruitment center in Columbus, Ohio. Kris was the recruiter for Plaintiff Tanna Hodges.

- Delois Lindsey was a recruit processor at Swift who worked at Swift's corporate office in Phoenix, Arizona. Delois was the processor for Plaintiff Tanna Hodges' employment application. Delois no longer works at Swift.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

EXHIBIT F

- Patricia Ramos worked in Swift's security department at Swift's corporate office in Phoenix, Arizona. Patricia interviewed Plaintiff Tanna Hodges on December 14, 2009. Patricia no longer works at Swift.

- Berenice Ruiz worked in Swift's security department at Swift's corporate office in Phoenix, Arizona. Berenice interviewed Plaintiff Kelvin Daniel on January 27, 2011. Berenice no longer works at Swift.

- Tamara Strickland is a recruiter at Swift who works at a Swift recruitment center in Memphis, Tennessee. Tamara Strickland left a voicemail message for Plaintiff Kelvin Daniel on December 28, 2010.

**INTERROGATORY NO. 2:**

To the extent you believe that Swift Transportation Corporation is an improper defendant in this action, please state the basis for such contention and identify any entity, which you believe would be a proper defendant to the allegations set forth in Plaintiffs' First Amended Complaint.

**ANSWER:**

Swift objects to Interrogatory No. 2 as overly broad and unduly burdensome and to the extent that it requests Swift make a legal conclusion as to what corporate entities should be a proper defendant for every allegation set forth in Plaintiffs' First Amended Complaint. If Plaintiffs can identify with some particularity what conduct or whose actions they are concerned about, as opposed to all allegations in the Complaint, Defendants will supplement this response.

Notwithstanding these objections, Swift responds that the currently named Defendant, Swift Transportation Corporation is no longer the name of a company. Swift Transportation Co. of Arizona, LLC is the name of the entity that would have employed the Named Plaintiffs if they had been qualified for hire and accepted job offers from Swift. To the extent the Named Plaintiffs wish to represent applicants for employment or employees in positions other than drivers, then the proper defendant may not be Swift Transportation Co. of Arizona, LLC.

EXHIBIT F

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

**INTERROGATORY NO. 3:**

For the time period between August 8, 2006 and the present, identify in detail your procedure for hiring or screening job applicants, including the employment application, all consumer reports/criminal background reports that are obtained, the FCRA disclosures that are given, the communication to the applicant of the hiring decision, and all paperwork or documentation that changes hands between you and the applicant from the beginning of the process until the applicant is either hired, rejected for employment or the process otherwise ends. If the procedures differ in geographic areas, explain the differences. If the procedures changed during the applicable time period, please detail the date and nature of the changes.

**ANSWER:**

Swift objects to Interrogatory No. 3 as overly broad as it requests a detailed step-by-step hiring procedure with respect to all job applicants over a 5+ year period. Swift's hiring process also involves over one-hundred current and former employees.

Plaintiffs request information for the time period from August 8, 2006 to the present. As the parties have discussed, Swift takes the position that Plaintiffs may not certify a five-year class, as the two-year statute of limitations set forth in 15 U.S.C. § 1681p applies to Plaintiffs' claims. The requested information prior to that date is therefore not relevant nor calculated to lead to the discovery of admissible evidence. Pursuant to a Stipulation between the parties, the parties agreed Swift would only be required to produce documents from August 8, 2009 forward to Plaintiffs. However, if a five-year class is certified by the Court, Swift agrees to provide to Plaintiffs the remaining documentation from August 8, 2006 to August 8, 2009. The objection contained in this paragraph will be referred to subsequently as the "Two-Year SOL Objection," and reference to the Two-Year SOL Objection shall incorporate the contents of this entire paragraph.

As the parties have previously discussed, Swift takes the position that Plaintiffs may not certify a class that includes non-driver applicants or employees, and therefore

EXHIBIT F

1    objects on the ground that information sought by Plaintiffs as to non-drivers is irrelevant

2    and not calculated to lead to the discovery of admissible evidence. Notwithstanding this

3    position, Swift has agreed, without waiver of these objections, to provide non-driver

4    information to Plaintiffs. Nevertheless, Swift's objection to provision of this information

5    stands. The objection contained in this paragraph will subsequently be referred to as the

6    "Non-Driver Objection," and reference to the Non-Driver Objection shall incorporate the

7    contents of this entire paragraph.

8        Swift further objects to Interrogatory No. 3 to the extent that it seeks confidential,

9    proprietary, or otherwise privileged information that is not otherwise known or publicly

10   available to its competitors, such as Swift's policies and procedures for hiring drivers.

11   Interrogatory No. 3 is also objectionable because it is compound in requesting the hiring

12   process in different regions and different timeframes.

13       Notwithstanding these objections and without waiving them, Swift responds as

14   follows regarding its hiring process for drivers:

15       Swift accepts driver applications through a variety of mediums, including through

16   paper, in-person, mail, facsimile, trucking driving schools, and over the internet (web

17   applications). Swift accepts web applications through multiple websites and links. Swift

18   also accepts web applications from Randall Riley, a recruiting services vendor, which uses

19   a generic application intended for a variety of trucking companies.

20       Depending on the type of applicant, they may have to undergo a different

21   application process. Swift has four different classes of driver applicants:

22   (1)   **Academy Drivers**. These drivers do not currently possess a Commercial

23         Driver's License ("CDL") and are seeking enrollment in a Swift trucking

24         academy in order to obtain a CDL and subsequent employment with Swift;

25   (2)   **Trainee Drivers**. These drivers have recently obtained their CDL from a

26         non-Swift driving school, but do not have proper driving experience, and

27         will have to have driver training provided by Swift as part of their initial

28         employment;

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

EXHIBIT F

(3)     **Experienced Drivers**.  These drivers have possessed a CDL for at least 6 months and have driven during the last 12 months;

(4)     **Re-Hire Drivers**.  These drivers have previously worked for Swift.

The application process for each type of driver is somewhat different.

Once submitted, applications are typically imported onto Swift's proprietary and customized electronic databases.   Further, a recruiter is generally assigned to the application.  This can happen in multiple ways:  (1) the database can assign an application to a Swift recruiter; (2) an applicant can designate their recruiter on their application, typically where there has been prior contact with that recruiter, and that recruiter will be assigned to the application; and (3) a recruiter can go into Swift's database and assign themselves to a particular application.  Assignment of an application to a recruiter can occur either before or after importation of the application into Swift's electronic database.

The recruiter is responsible for initiating a live contact with the applicant, typically by telephone.  During this initial live contact, the recruiter directly asks the applicant certain questions, including all of the pre-qualifying questions on the application (including criminal conviction history).  The recruiter will also typically explain Swift's application process and the information required by Swift, including work and driving history and criminal background information.  The recruiter will normally also explain that Swift will be obtaining employment history ("DAC reports"), driving records ("MVR reports") and criminal background reports ("Widescreen reports").  Finally, the recruiter will typically, as part of the application materials, obtain the applicant's consent to procure these consumer reports.

After the initial contact, it is the recruiter's responsibility to ensure that the application is 100% complete and also to determine whether the applicant is eligible for employment with Swift and meets Swift's and the Department of Transportation's ("DOT") minimum qualifications.  This process is called "pre-qualifying."  Applicants may be disqualified from employment with Swift for a variety of reasons based upon their application or initial contact, such as possessing a bad driving record or having a DUI or

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

DWI conviction in the past 5 years.   Swift has previously produced to Plaintiffs its Company Hiring Criteria as STC000085-90 and STC000150-209.

Once the applicant meets Swift's basic eligibility standards, the recruiter reviews and processes the application to determine whether the applicant meets Swift's basic hiring criteria.  Following the recruiter review, a recruiting processor then reviews the application and confirms that it meets Swift's basic hiring criteria.  The recruiter and the recruiting processor both review the application in its entirety for a variety of issues, such as gaps in employment, driver experience, and criminal background.  The recruiter and the recruiting processor may contact the applicant again for additional follow-up information.

As just one example of the various routes that an individual's application process may take, if the application reveals a conviction, or the applicant disclosed a conviction during the live initial contact, the applicant must fill out a Conviction Form disclosing his/her criminal history.  If the Conviction Form reveals solely a misdemeanor more than 2 years old, the recruiter may, but is not required to, approve the applicant for further processing.   In all other circumstances, the Conviction Form is then submitted to Investigations (also called the Security Department) for review.  If Investigations requires an interview, they will send an e-mail to the recruiter to have the applicant contact Investigations for an interview.  A Swift recruiter will then instruct the applicant to contact Investigations for an interview, where the applicant is asked questions regarding any conviction(s) the applicant disclosed on their application and/or Conviction Form, as well as any other convictions the applicant discloses during the interview.  During that interview, Swift allows the applicant to explain the circumstances surrounding any convictions or charges s/he has disclosed, and further gives the applicant an opportunity to provide (or later obtain and provide) any documentation disputing the accuracy of any conviction or charge.  Investigations must clear the applicant after the interview in order for the application to continue through the hiring process.

EXHIBIT F

1    In addition, throughout the recruiting and/or investigation process, if the applicant

2    cannot be reached or is unwilling or unable to respond to the recruiter's or Investigation's

3    questions, the applicant may also be disqualified from further processing.

4    At some time during the pre-qualification process, the applicant is required to

5    provide written consent to Swift's procurement of consumer reports. An application may

6    not proceed beyond the pre-qualification stage unless and until an applicant has provided

7    this consent.

8    Swift has utilized different forms and language to obtain an applicant's consent to

9    procure consumer reports over time. Prior to September 2011, applicants authorized Swift

10   to perform background checks via language contained on Swift's employment

11   applications. Additionally, electronic applicants affirmatively checked "Yes" to the

12   question, "May we request information on you from outside consumer reporting

13   agencies?" Beginning in March 2011, Swift began utilizing a new web application

14   containing new FCRA consent language. STC000101-06.

15   Beginning in September 2011, Swift used the FCRA Disclosure & Authorization

16   form document Bates-labeled as STC000126-000130. In February 2012, Swift revised its

17   FCRA Disclosure & Authorization form to the document Bates-labeled STC000131-

18   000133. All applications during the relevant time period contained acknowledgments that

19   the applicant had to consent to before Swift would accept their application and process it

20   further. The language of these acknowledgments varied over time, as can be seen on

21   documents Bates-labeled STC000001-000005, STC000038-000042, and STC000096-

22   000125.

23   Swift Academy Driver applicants must also take a mandatory online course and

24   score 80% or higher for the application to proceed in the hiring process.

25   After the recruiter has completed the pre-qualification process, and after receiving

26   the applicant's written consent to procure consumer reports, the recruiter may click a

27   button in the electronic database to order consumer reports from HireRight. The recruiter

28   will receive a DAC and MVR report and review those reports for any concerns or

EXHIBIT F

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1   disqualifying information under the Company Driver Hiring Criteria.  The recruiter and/or
2   processor then confirms the application's information and other driver hiring criteria as
3   provided in the Swift Company Driver Hiring Criteria, produced as documents Bates-
4   labeled STC000085-000090 and STC000136-000209.   The recruiter can decline the
5   applicant if the applicant fails to meet any Hiring Criteria or if the DAC or MVR reveals
6   that the applicant has provided false information on their application.

7        At the same time, a Widescreen criminal background report is ordered from
8   HireRight, but the Widescreen report goes directly to Investigations only, not to the
9   recruiter.   Investigations reviews the Widescreen report to verify whether there is any
10  criminal conviction information regarding the applicant.  If there is any such information,
11  Investigations sends an e-mail to the assigned recruiter telling that recruiter to have the
12  applicant contact Investigations for an interview.

13       The Investigations interview when a conviction appears on the Widescreen report
14  is largely the same as the process described above when an applicant voluntarily discloses
15  a conviction on their application and fills out a Conviction Form.   Investigations
16  interviews the applicant and allows the applicant to explain the circumstances surrounding
17  any convictions or charges, including an opportunity to provide any documentation
18  disputing the accuracy of any conviction or charge.   Investigations must clear the
19  applicant after the interview in order for the applicant to continue through the hiring
20  process.  On a case-by-case basis, the decision whether or not to approve an applicant may
21  receive additional review(s), called a Level 1 or Level 2 review.

22       In addition, an applicant must pass a DOT physical and drug test screening.  If an
23  applicant fails either of these tests, they are declined pursuant to DOT regulations.

24       After confirmation that the applicant has met all Swift hiring and screening criteria,
25  Swift schedules the applicant to attend orientation.   An offer of employment is
26  conditioned upon successful completion of orientation.  An applicant could be disqualified
27  at orientation for a variety of reasons.   An applicant could fail the road test that is
28  administered during orientation.   An applicant could disclose information during

- 10 -

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

orientation that reveals that s/he falsified the contents of his/her application.  An applicant could fail the DOT mandated drug screen and/or physical.  Or, as with Mr. Daniel, an applicant could disclose criminal conviction information at orientation that was not disclosed during the initial recruiter contact, on the employment application or on the Widescreen report.  If that occurs, the Investigation interview process is followed and the applicant must be approved by Investigations to continue in the hiring process.

In the event Swift based a decision not to hire an applicant on information obtained in a consumer report, Swift takes different approaches for in-person applicants and other applicants.  For in-person applicants, beginning in November 2011, Swift issues a pre-adverse action notice to the applicant and subsequently issues an adverse action letter.  For not-in-person applicants, also beginning in November 2011, Swift issues the applicant an adverse action letter, as well as an FCRA summary of rights, within three days of its determination to take adverse action.  Prior to November 2011, any notices of adverse action, if given, would have been oral.

Non-driver hiring at Swift is not handled by the Recruiting Department, but rather Talent Acquisition and Development within the Human Resources Department.

Non-driver applications are reviewed and assessed, and Swift makes a conditional offer of employment, prior to procuring any consumer reports with respect to the applicant.  Once Swift has decided to extend a conditional offer of employment to a non-driver applicant, that individual is then sent a conditional offer letter.  See, e.g., STC342454-342459.  In the vast majority of cases, that offer letter is electronically e-mailed to the applicant.  In rare circumstances, such as for high-level executive employees, the letter is sent in hard copy form, but the contents of the offer letter are identical for all relevant purposes no matter the form in which it is sent.  During the entire relevant time period, and no matter the format of the letter, the offer letter has always contained the language, "Your Swift employment is contingent upon satisfactory completion of a background investigation . . ."

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

EXHIBIT F

In addition, non-driver applicants have always received a separate form authorizing a background investigation to be conducted. From at least 2007 through April 2012, that form was called Background Investigation Release Form, and it accompanied the offer letter. That Release Form was previously produced as STC342467. It states, *inter alia*, "I authorize Swift Transportation to obtain a drivers' License check, Consumer Credit Report and/or Background Report in arriving at a decision Regarding [sic] my employment or continuation of employment." Applicants were required to consent to a background check via this form before being processed further for employment with Swift. In April 2012, Swift replaced the Background Investigation Release Form with the same FCRA authorization form utilized by the Recruiting Department. See STC342468.

In all cases except the rare hard copy letter discussed above, a non-driver applicant clicks on an electronic link to signal their assent to Swift conducting a background check. (Hard copy letters require a signed and returned version of the same consent form prior to continued processing.) Upon clicking to provide their consent, a link is sent to Swift's Investigations Department indicating that consent to obtain consumer reports has been received. Upon receipt of that link, the Investigations Department will then order from HireRight a criminal background report. Swift does not procure any other consumer reports, *e.g.*, a DAC or an MVR report, for non-drivers, except, in very rare circumstances, it will obtain a credit report for relevant positions.

If the criminal background report is clean, Investigations will approve the applicant and they will continue through the hiring process. If the report reveals criminal conviction information, Investigations will first review the applicant's application to determine whether or not the applicant disclosed the criminal conviction and then contact the applicant for an interview. This interview process is conducted identically to the Recruiting interview process set forth above. At the end of the interview, the applicant is either approved or not approved for further consideration.

In certain circumstances, such as where business needs require a prompt hiring and the criminal background report is not yet available, Swift will communicate to an

- 12 -

EXHIBIT F

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1  applicant that they may start working pending the results of their background check.  If

2  the background check for such an individual later reveals criminal conviction information,

3  the individual would undergo the interview process and either be approved or not

4  approved for continued employment.

5       Prior to January 2012, any pre-adverse action or adverse actions notices, if given,

6  would have been oral.  Beginning in January 2012, Swift began issuing adverse action

7  notices to non-drivers who are not hired based in whole or in part on a consumer report.

8  Swift later began issuing a pre-adverse action notice to applicants and then issuing an

9  adverse action notice five business days later.

10      Applicants must still successfully pass a drug screen, reference checks and attend

11  orientation, and some must pass a pre-employment physical.

12  **INTERROGATORY NO. 4:**

13      For the time period between August 8, 2006 and the present, provide the names and

14  addresses of all recruiting personnel, human resource personnel or your other employees

15  who process any of the following documents pertaining to job applicants seeking

16  employment with you:

17      a.      Requests for criminal background reports, driving records or any other

18  consumer report;

19      b.      Job applications received in person, electronically, orally, by facsimile, or

20  by mail; and

21      c.      Adverse Action or "Pre-Adverse action" notices.

22  **ANSWER:**

23      Swift objects to Interrogatory No. 4 as overly broad and unduly burdensome as not

24  all recruiting personnel, human resource personnel, or other Swift employees who process

25  certain consumer reports, job applications, and adverse action or pre-adverse action

26  notices will have information that is relevant or material to Plaintiffs' claims or efforts to

27  certify the purported class.

28      Swift asserts the Two-Year SOL Objection, as well as the Non-Driver Objection to

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

EXHIBIT F

Interrogatory No. 4.

Notwithstanding these objections and without waiving them, Swift responds that the following Swift recruiting employees process or processed documents, including consumer reports, job applications and pre-adverse and/or adverse action notices during the relevant time period:

| NAME | LOCATION OF EMPLOYMENT |
|---|---|
| Donald Anderson | Phoenix, Arizona |
| Irene Arredondo | Phoenix, Arizona |
| Emily Baker | Edwardsville, Kansas |
| Paul Barta | Phoenix, Arizona |
| Cindy Bouch | Phoenix, Arizona |
| Riley Branch | Lancaster, Texas |
| Karina Torres Breceda | Phoenix, Arizona |
| Jerrald Calvillo | 6119 Pasqual Ave. Columbus, OH  43213 |
| Roy Carrasco | Phoenix, Arizona |
| Crege Carter | Memphis, Tennessee |
| Melissa Castillo | Phoenix, Arizona |
| Brooke Chamberlain | Phoenix, Arizona |
| Ronnie Chandler | Phoenix, Arizona |
| Shannon Cologna | Phoenix, Arizona |
| Javier Covian | Phoenix, Arizona |
| Brandon Cragun | Menasha, Wisconsin |
| Jacqueline Curry | Phoenix, Arizona |
| Kimberly Deducca | Lancaster, Texas |
| Araceli Deleon | Phoenix, Arizona |
| Douglas Driscoll | Sumner, Washington |

EXHIBIT F

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

| Joey Fowler | Greer, South Carolina |
|---|---|
| Sherry Goggin-Rysedorph | Phoenix, Arizona |
| Melody Gonzalez | Phoenix, Arizona |
| Sherry Haldeman | Harrisburg, Pennsylvania |
| Kevin Harring | Phoenix, Arizona |
| William Hartley | Lewiston, Idaho |
| Benjamin Harvey | Atlanta, Georgia |
| Christopher Hedges | Phoenix, Arizona |
| Kris Keplar | (614) 308-2341<br>Swift Transportation, Co., Inc.<br>4141 Parkwest Drive<br>Columbus, Ohio 43228 |
| Dawn Linville | Edwardsville, Kansas |
| Lizanne Luke | Phoenix, Arizona |
| Ludivina Marin | Phoenix, Arizona |
| Veronica Martinez | Phoenix, Arizona |
| Autumn Matte | Phoenix, Arizona |
| Erica McCoy | Phoenix, Arizona |
| Donna Moore | Phoenix, Arizona |
| Mayra Nieto | Phoenix, Arizona |
| Abraham Ornelas | Phoenix, Arizona |
| Steven Ornelas | Phoenix, Arizona |
| Mario Padilla | Phoenix, Arizona |
| Sonya Pantoja | Phoenix, Arizona |
| Stephanie Pedroza | Phoenix, Arizona |
| Nancy Perkins | Syracuse, New York |
| Michael Person | Phoenix, Arizona |
| Lloyd Pumphrey | Fontana, California |

EXHIBIT F

| Deanna Rada | Phoenix, Arizona |
|---|---|
| Daniel Ramirez | Phoenix, Arizona |
| Corina Salgado | Phoenix, Arizona |
| Thomas Selander | Phoenix, Arizona |
| Michael Short | Phoenix, Arizona |
| Amber Smith | Phoenix, Arizona |
| Tamara Strickland | Memphis, Tennessee |
| Shannon Sund | Phoenix, Arizona |
| Lisa Taylor | Lathrop, California |
| Gilbert Toscano | Phoenix, Arizona |
| Rachelle Valle | Phoenix, Arizona |
| Tamala Wilchert | Memphis, Tennessee |

Further, the following Swift recruiting processors also process or processed documents including consumer reports, job applications and pre-adverse and/or adverse action notices during the relevant time period:

| NAME | LOCATION OF EMPLOYMENT |
|---|---|
| Mayra A. Hurtarte | Glendale, Arizona |
| Allena K. Escajeda | Tolleson, Arizona |
| Enedina Rodriguez-Moore | Phoenix, Arizona |
| Jon M. Steinke | Goodyear, Arizona |
| Raquel Uballe | Buckeye, Arizona |
| Delois A. Tate | Memphis, Tennessee |
| Brittany J. Perry | Buckeye, Arizona |
| Melissa A. Castillo | Glendale, Arizona |
| Alexis M. Zamora | Peoria, Arizona |

EXHIBIT F

| Ronnie D. Chandler | Tolleson, Arizona |
|---|---|
| Araceli Deleon | Tolleson, Arizona |
| Leatrice B. Ferguson | Peoria, Arizona |
| Sonia R. Cordova | Peoria, Arizona |
| Autumn M. Matte | Tolleson, Arizona |
| Erica C. McCoy | Avondale, Arizona |
| Javiar Covian | Avondale, Arizona |
| Candace L. Smith | Phoenix, Arizona |
| Karina Torres Breceda | Tolleson, Arizona |
| Cody R. Weinberger | Peoria, Arizona |
| Irene Arrendondo | Goodyear, Arizona |
| Steven J. Ornelas | Peoria, Arizona |
| Henderson Brittany L. | Avondale, Arizona |
| Rachelle B. Valle | Tolleson, Arizona |
| Gilbert F. Toscano | Glendale, Arizona |
| Stephanie B. Pedroza | Phoenix, Arizona |
| Amber N. Smith | Phoenix, Arizona |
| Toni L. Robbins | Glendale, Arizona |
| Ludivina A. Marin | Surprise, Arizona |
| Brittney J. Harrington | Litchfield Park, Arizona |
| Robert A. Martino | Aurora, Colorado |
| Christopher M. Hedges | Phoenix, Arizona |
| Arleen F. Rhoades | Avondale, Arizona |
| Adriana Barnett | Buckeye, Arizona |
| Geoffrey L. Hurtt | Phoenix, Arizona |
| Thomas C. Selander | Litchfield Park, Arizona |
| Ebony T. Sallis | Laveen, Arizona |

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

EXHIBIT F

| | |
|---|---|
| Brooke R. Chamberlain | Phoenix, Arizona |
| Diann M. Fuentes | Avondale, Arizona |
| Shaylin Bell | Phoenix, Arizona |
| Roy Carrasco | Buckeye, Arizona |
| Shannon L. Sund | Avondale, Arizona |
| Shannon K. Cologna | Peoria, Arizona |
| Veronica Bell | Avondale, Arizona |
| Natosha L. Foulks | Southaven, Mississippi |
| Liquita L. Hall | Memphis, Tennessee |
| Tameka L. Stevenson | Stone Mountain, Georgia |
| Brenda L. Howard | Memphis, Tennessee |
| Toriann L. Fitzpatrick | Memphis, Tennessee |
| Vicki N. Metcalf | Memphis, Tennessee |
| Camisha L. Williford | Memphis, Tennessee |
| Amber C. Bohanon | Memphis, Tennessee |
| Dana J. Avant | Cordova, Tennessee |
| Qiana J. Anderson | Memphis, Tennessee |
| McNeal Sherondia R. | Memphis, Tennessee |
| Cleather Jamison | Memphis, Tennessee |
| Angela L. Bean | Southaven, Mississippi |
| Tangela N. Spencer | Memphis, Tennessee |
| Fannie D. Jackson | Memphis, Tennessee |
| Michael D. Person | Avondale, Arizona |
| Felicia R. Rivers | Memphis, Tennessee |
| Horlisa Weaver | Memphis, Tennessee |
| Sharmeka Burse | Memphis, Tennessee |
| Iris M. Washington | Memphis, Tennessee |

EXHIBIT F

| Melanie C. Robinson | Memphis, Tennessee |
| Yolanda M. Young | Memphis, Tennessee |
| Shalonda K. Grant | Hornlake, Mississippi |
| Shante D. Holloway | Memphis, Tennessee |
| Tabbatha L. Johnson | Memphis, Tennessee |
| Milvia J. Evans | Memphis, Tennessee |
| Angela M. Edwards | Lancaster, Texas |
| Donald M. Anderson | Avondale, Arizona |
| Erica D. Jackson | Memphis, Tennessee |
| Mary J. Johnson | Memphis, Tennessee |
| Sharon R. Niter | Memphis, Tennessee |
| Shalay R. Jackson | Memphis, Tennessee |
| Lakisha M. Smith | Memphis, Tennessee |

Further, the following Swift employees also order or ordered consumer reports and issue or issued pre-adverse and/or adverse action notices during the relevant time period:

| NAME | LOCATION OF EMPLOYMENT |
| --- | --- |
| Rochelle Jenkins | Memphis, Tennessee |
| Mary Johnson | Memphis, Tennessee |
| Veronica Bell | Phoenix, Arizona |
| Holly Baki | Phoenix, Arizona |
| Tammy Ferguson | Phoenix, Arizona |
| Jared Ruchensky | Phoenix, Arizona |
| Erika Deneweth | Phoenix, Arizona |
| Teresa Moore | Phoenix, Arizona |
| Amy Gruver | Phoenix, Arizona |
| Michelle Cordova | Phoenix, Arizona |

EXHIBIT F

| Nicole Burleson | Phoenix, Arizona |

The following individuals in the Security Department processed criminal background reports, driving records, and other consumer reports. They also would have been involved in part with processing applications and may have been involved in giving adverse action notices.

| NAME | LOCATION OF EMPLOYMENT |
| --- | --- |
| Michelle Adamson | Phoenix, Arizona |
| Mark Donahue | Fontana, California |
| Shawn Driscoll | Phoenix, Arizona |
| Angelica Flores | Phoenix, Arizona |
| Aaron Peterson | Phoenix, Arizona |
| Patricia Ramos | Phoenix, Arizona |
| Berenice Ruiz | Phoenix, Arizona |

**INTERROGATORY NO. 5:**

For the period between August 8, 2006 and the present, provide the names and addresses of all persons who applied for an employment position with you and about whom you obtained a consumer report, including the date the consumer report was obtained, and whether you had in-person contact with such persons prior to obtaining the consumer report.

**ANSWER:**

Swift objects to Interrogatory No. 5 as overly broad and unduly burdensome as Swift receives thousands of applications for employment each year. Compliance with this interrogatory is onerous and overly burdensome as it requires identifying thousands of individuals and the corresponding information requested by Plaintiffs about each individual, regardless of the position they applied for and when.

Swift asserts the Two-Year SOL Objection, as well as the Non-Driver Objection.

EXHIBIT F

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Swift also objects to Interrogatory No. 5 to the extent that it seeks confidential, proprietary, or otherwise privileged information that is not otherwise known or publicly available to its competitors, such as the names of, and information regarding, persons that were provided to Swift by any consumer reporting agency.  Certain information is also subject to the confidentiality provision and other terms of the written contracts between Swift and certain consumer reporting agencies.

In addition, Swift objects to Interrogatory No. 5 as overly broad and unduly burdensome because the purported class is not appropriate for class action treatment. Among other issues, the decision to offer employment, and if accepted, to hire driver applicants involves multiple individualized inquiries as to that driver's qualifications and employment application including, but not limited to, whether Swift ordered a background report for the applicant, whether the applicant provided false information on the employment application, whether any disclosed information was automatically disqualifying, whether the applicant meets DOT standards, and whether the applicant met Swift's standards.  Various individualized inquiries also apply to each applicant's involvement in the class action, such as when the applicant was on inquiry notice of a possible violation of the FCRA and whether the applicant only seeks statutory and punitive damages, as opposed to actual damages.

Swift further objects to the extent this request seeks electronic information as it may call for information that is not readily accessible.

Notwithstanding these objections and without waiving them, Swift responds that the information requested in Interrogatory No. 5 may be obtained from documents containing the data from applications submitted by individuals seeking driver positions at Swift, as they exist in the proprietary electronic databases Swift employees use during the recruiting and hiring process.  *See, e.g.*, documents Bates-labeled STC000456-099883, STC104789-113111;  STC126681-178720;  STC212832-254274;  STC256180-312963. Accordingly, Swift incorporates by reference its responses, objections, and the responsive documents produced pursuant to Requests for Production Nos. 3-6, as if fully set forth

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1  herein.

2      Swift has also produced two searchable databases containing responsive

3  information: (1) a web recruiting database containing screen shots of the internet

4  applications for each individual who applied for a driver position at Swift from August 8,

5  2009 through February 2011; and (2) a database used by Swift's security department that

6  contains a spreadsheet detailing the individuals that had contact with Swift's security

7  department during the application process.   *See*, *e.g.*, documents Bates-labeled

8  STC256174-256175.   Accordingly, Swift incorporates by reference its responses,

9  objections, and responsive documents produced pursuant to Requests for Production Nos.

10  3-6 & 22, as if fully set forth herein.

11  **INTERROGATORY NO. 6:**

12      For the period between August 8, 2006 and the present, provide the following

13  information pertaining to your policies or procedures to ensure compliance with the Fair

14  Credit Reporting Act:

15          a.      the date the policy or procedure was first created;

16          b.      identify individuals who drafted and/or revised the policy or procedure;

17          c.      identify any changes made to the policy or procedure (inclusive of what was

18  added, deleted, or replaced) and provide the dates of such changes;

19          d.      identify the individuals who have access to and whose function is to review

20  consumer reports for employment purposes; and

21          e.      identify all documents containing such policies or procedures.

22  **ANSWER:**

23      Swift asserts the Two-Year SOL Objection, as well as the Non-Driver Objection.

24      In addition, Swift objects to Interrogatory No. 6 to the extent that it seeks

25  information protected by the attorney-client privilege and/or the work-product doctrine.

26  Interrogatory No. 6 is also objectionable to the extent that it seeks confidential,

27  proprietary, or otherwise privileged information that is not otherwise known or publicly

28  available to its competitors.   Certain information is also subject to the confidentiality

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

EXHIBIT F

1    provision and other terms of the written contracts between Swift and certain consumer

2    reporting agencies.

3          Notwithstanding these objections and without waiving them, Swift has maintained

4    various disclosure forms and applications for a number of years by which applicants

5    authorize Swift to obtain job-related information about the applicants.   For driver

6    applications, Swift received authorization to perform background checks if job-related.

7    Prior to September 2011, the driver applications contained acknowledgments that the

8    applicant had to answer before finalizing their application submission.  The language of

9    these acknowledgments varied over time, as can be seen on documents Bates-labeled

10   STC000001-000005, STC000038-000042, and STC000096-000125.   Swift revised its

11   policy in September 2011 by providing driver applicants during the application process

12   with an FCRA Disclosure and Authorization form.  *See, e.g.*, document Bates-labeled

13   STC000126-000130.   In February 2012, Swift revised its policy, which included

14   providing driver applicants with a different FCRA disclosure form.  *See, e.g.*, document

15   Bates-labeled STC000131-000133.

16         Beginning in November 2011, when recruiters access Swift's proprietary and

17   customized electronic databases and ensure an applicant's information is complete and

18   accurate, the recruiters select whether the applicant is an in-person or non-in-person

19   applicant at the time of application.  This selection then determines the type of notice an

20   applicant receives if adverse action is taken against them.  For in-person applicants, Swift

21   issues a pre-adverse action notice to the applicant and then subsequently issues an adverse

22   action letter.  For other not-in-person applicants, also beginning in November 2011, Swift

23   issues the applicant a letter within three days of its determination to take adverse action.

24   Gary Fitzsimmons, Shawn Driscoll and Swift's in-house counsel revised these policies

25   and procedures as to driver applications.

26         Swift also incorporates by reference its responses and objections to Interrogatory

27   Nos. 3, 12, & 13, as if fully set forth herein.  As to individuals who have access to and

28   whose function is to review background reports, Swift incorporates by reference its

EXHIBIT F

1   responses and objections to the second list of individuals, Interrogatory No. 4, as if fully

2   set forth herein.   Further, documents containing Swift's policies or procedures have

3   already been produced in this matter.   *See, e.g.,* Swift's First Supplemental Disclosure

4   Statement and documents Bates-labeled as STC000085-000090 and STC000126-000209.

5         The foregoing relates to applicants for driver positions.   For non-drivers, <u>see</u>

6   Swift's response to Interrogatory No. 3.

7   **INTERROGATORY NO. 7:**

8         Identify all experts and non-experts known to you who have knowledge of facts

9   relevant to this case, and state the subject of testimony or knowledge, giving a brief

10  description thereof, and identify all documents received from or communicated to such

11  person by you regarding the Named Plaintiffs, or the subject matter of this case.   If you

12  intend to qualify any of these persons as experts, please so indicate, giving their areas of

13  expertise and their credentials as experts.

14  **ANSWER:**

15        Swift objects to Interrogatory No. 7 as overly broad and unduly burdensome as the

16  list of <u>all</u> experts <u>and</u> non-experts who have knowledge of facts relevant to this case is

17  likely to be so lengthy that a proper response is onerous and borders on harassment.   Swift

18  receives thousands of applications for employment each year, and these individuals may

19  have some knowledge regarding the facts relevant to this case.   Swift also has over one-

20  hundred current employees, as well as former employees, who potentially have

21  knowledge of facts relevant to this case.   Identifying each of these thousands of

22  individuals, and the corresponding information requested by Plaintiffs, is unduly

23  burdensome.

24        Swift also objects to Interrogatory No. 7 to the extent that it seeks information

25  protected by the attorney-client privilege and/or the work-product doctrine.   Swift further

26  objects to Interrogatory No. 7 to the extent that it seeks confidential, proprietary, or

27  otherwise privileged information that is not otherwise known or publicly available to its

28  competitors, such as policies outlining Swift's hiring procedures or the written contracts

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

between Swift and any consumer reporting agencies. Certain information is also subject to the confidentiality provision and other terms of the contracts between Swift and certain consumer reporting agencies. Interrogatory No. 7 is also objectionable to the extent that the information requested is already known by, or available to, Plaintiffs, as evidenced in Swift's disclosure statements and documents produced contemporaneously therewith.

Notwithstanding these objections, Swift responds that it has not yet engaged or retained any experts in this case. Expert disclosures are not due until April 1, 2013. Swift will supplement its response in the event that Swift engages or retains a testifying expert in this case. As for non-experts with knowledge of facts relevant to this case, Swift incorporates by reference its responses and objections to Interrogatory Nos. 1, 4, 5, and 10, and information provided in Swift's disclosure statements, as if fully set forth herein.

**INTERROGATORY NO. 8:**

Identify all of your employees, representatives, or the like, who communicated with Named Plaintiffs, and/or with any third party communicating on behalf of the Named Plaintiffs, regarding their employment applications and/or consumer reports and for each such person, state his or her job title and job description and the subject, nature and content of the communications.

**ANSWER:**

Swift objects to Interrogatory No. 8 to the extent that the information requested is already known by, or available to, the Named Plaintiffs, as they are in the best position to know who communicated with them, and as evidenced in Swift's disclosure statements and documents produced contemporaneously therewith.

Notwithstanding these objections and without waiving them, in response to Interrogatory No. 8, Swift incorporates by reference its response and objections to Interrogatory No. 1 to the extent the individuals identified in Interrogatory No. 1 communicated with the Named Plaintiffs.

**INTERROGATORY NO. 9:**

Did you take adverse action as to Named Plaintiffs? If yes, state the date and

- 25 -

1   provide a full description of the actions taken.  If your answer is no, state all facts and

2   legal basis which support your answer.

3   **ANSWER:**

4       Swift objects to Interrogatory No. 9 to the extent that it  requests Swift make a

5   legal conclusion regarding whether Swift took adverse action against the Named

6   Plaintiffs.

7       Notwithstanding this objection and without waiving it, Swift responds that Swift

8   did not hire Kelvin Daniel, but that decision was not an adverse action that required

9   compliance with the Fair Credit Reporting Act.  On January 24, 2011, at a Swift

10  orientation, Mr. Daniel voluntarily disclosed several convictions in response to Swift's

11  admonition that applicants accurately fill out and disclose information on their

12  applications.  Based on those disclosures, which did not appear on his application or his

13  criminal background report, Swift told Mr. Daniel and told him he would need to follow

14  up with Swift's Security Department.  On January 27, 2011, during his telephonic

15  interview with the Security Department, Mr. Daniel admitted that he failed to disclose

16  these convictions on his employment application, and his conditional job offer was then

17  revoked.  That decision was not based in whole or in part on his consumer report.

18      Swift did not hire Plaintiff Tanna Hodges following her December 2009

19  application, but that decision was not an adverse action requiring compliance with the Fair

20  Credit Reporting Act.  Ms. Hodges' September 2009 applications, while received, were

21  not processed beyond the application stage and no consumer report was ever ordered by

22  Swift with respect to these applications.  With regard to her December 12, 2009 web

23  application, Ms. Hodges answered "No" to the question of whether she had ever been

24  convicted of a criminal offense.  Following the processing of that web application, Swift

25  procured consumer reports on Ms. Hodges that revealed a number of prior criminal

26  convictions.  Swift requested that Ms. Hodges contact and interview with its Security

27  Department.   On December 14, 2009, during her security interview regarding her

28  application, Ms. Hodges confirmed that she had multiple different criminal convictions,

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

EXHIBIT F

1 despite responding in the negative on her web application to the question, "Have you ever

2 been convicted of a criminal offense?"  At this point, Ms. Hodges was disqualified from

3 employment with Swift.

4 **INTERROGATORY NO. 10:**

5   For Named Plaintiffs and each putative class member you terminated, denied or

6 delayed employment based in whole or in part upon information contained in a consumer

7 report between August 8, 2006 and the present, identify each person's name and address,

8 and separately state the dates, on which you:

9   a.  obtained their written consent to obtain a consumer report;

10   b.  obtained a consumer report;

11   c.  provided the employee or applicant with a copy of the consumer report;

12   d.  discharged, denied or delayed employment to the employee or applicant;

13   e.  provided the employee or applicant with a written summary of FCRA rights;

14   f.  sent the post-adverse notices required by 15 U.S.C. §1681m to the

15 individual.

16 **ANSWER:**

17   Swift objects to Interrogatory No. 10 as overly broad and unduly burdensome as

18 Swift receives thousands of applications for employment each year.  Compliance with this

19 interrogatory is onerous and overly burdensome as it requires identifying thousands of

20 individuals and the corresponding information requested by Plaintiffs about each

21 individual, regardless of the position they applied for and when.  The breadth of this

22 request borders on harassment.

23   Swift asserts the Two-Year SOL Objection, as well as the Non-Driver Objection.

24   Swift also objects to Interrogatory No. 10 to the extent that it seeks confidential,

25 proprietary, or otherwise privileged information that is not otherwise known or publicly

26 available to its competitors, such as the names of, and information regarding, persons that

27 were provided to Swift by any consumer reporting agency.  Certain information is also

28 subject to the confidentiality provision and other terms of the written contracts between

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

EXHIBIT F

1    Swift and certain consumer reporting agencies.

2         In addition, Swift objects to Interrogatory No. 10 as overly broad and unduly

3    burdensome because the purported class is not appropriate for class action treatment.

4    Swift further objects to the extent this request seeks electronic information as it may call

5    for information that is not readily accessible.

6         Swift also objects to the interrogatory as phrased because it assumes facts about the

7    hiring process.  As set forth in Swift's Answer to Interrogatory No. 3, hiring at Swift

8    involves multiple steps and multiple people and the contents of background reports do not

9    necessarily determine the decisions Swift makes.

10        Notwithstanding these objections and without waiving them, Swift responds as

11   follows:

12   - Kelvin Daniel, 700 Wapello Circle, Natomas, CA 95835.  Swift obtained
13     Mr. Daniel's consent to investigate all references and to secure additional
       job-related information about Mr. Daniel with his application on December
14     27, 2010.  He also consented and authorized Swift to obtain information on
       him from outside consumer reporting agencies.  Swift ordered a Widescreen
15     report from HireRight Solutions, Inc. ("HireRight") on Mr. Daniel on
       December 28, 2010.  That report revealed no criminal convictions and
16     played no role in the decision not to hire Mr. Daniel.  On January 28, 2011,
       Swift decided not to hire Mr. Daniel and revoked his conditional offer of
17     employment due to Mr. Daniel's voluntary disclosure of criminal
18     convictions during orientation on January 24, 2011, his confirmation of
       those convictions during a telephonic interview with the Security
19     Department on January 27, 2011, and consequently his admission that he
       had falsified his employment application by failing to disclose any of his
20     criminal convictions on the application.
21

22   - Tanna Hodges, 337 IRA Apt. F, San Antonio, TX 78209.  Swift never
       procured a consumer report with respect to Ms. Hodges' September 25 and
23     29, 2009 employment applications.  Swift obtained Ms. Hodges' consent to
       investigate all references and to secure additional information about Ms.
24     Hodges with her web application on December 14, 2009.  She also
25     consented and authorized Swift to obtain information about her from outside
       consumer reporting agencies.  Swift ordered a criminal background report
26     from HireRight on Ms. Hodges on December 14, 2009.  On December 14,
27     2009, after Ms. Hodges confirmed her prior criminal convictions in an
       interview with Swift's Security Department, Swift decided not to hire Ms.
28

- 28 -

1   Hodges due to her failure to disclose her convictions on her employment
2   application and because she did not meet Swift hiring criteria.

3   Additional information requested in Interrogatory No. 10 may be obtained from
4   documents containing the data from applications submitted by individuals seeking driver
5   positions at Swift, as they exist in the proprietary electronic databases Swift employees
6   use during the recruiting and hiring process.   *See, e.g.*, documents Bates-labeled
7   STC000456-099883, STC104789-113111; STC126681-178720; STC212832-254274;
8   STC256180-312963.   Accordingly, Swift incorporates by reference its responses,
9   objections, and the responsive documents produced pursuant to Requests for Production
10  Nos. 3-6, as if fully set forth herein.

11  Swift also produced two searchable databases containing responsive information:
12  (1) a web recruiting database containing screen shots of the internet applications for each
13  individual who applied for a driver position at Swift from August 8, 2009 through
14  February 2011 and (2) a database used by Swift's security department that contains a
15  spreadsheet detailing the individuals that had contact with Swift's security department
16  during the application process.   *See, e.g.*, documents Bates-labeled STC256174-256175.
17  Accordingly, Swift incorporates by reference its responses, objections, and responsive
18  documents produced pursuant to Requests for Production Nos. 3-6 & 22, as if fully set
19  forth herein.

20  **INTERROGATORY NO. 11:**

21  Identify all documents in your possession or control from which any of the
22  information requested in Interrogatory No. 10 can be derived, and for each such
23  document, identify the following:

24          a.      the location of the document;

25          b.      the custodian of the document; and

26          c.      your specific estimate of the time and expense required to access and
27  copy the document.

28  **ANSWER:**

EXHIBIT F

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Swift objects to Interrogatory No. 11 as overly broad and unduly burdensome as not all documents in Swift's possession or control from which the information requested in Interrogatory No. 10 can be derived will be relevant or material to Plaintiffs' claims or efforts to certify the purported class.   Swift receives thousands of applications for employment each year.   Compliance with this interrogatory is onerous and overly burdensome as it requires Swift to access and process data that is not readily accessible to determine whether and to what extent documents exist that may arguably be relevant to the facts of this case.   Interrogatory No. 11 requires Swift to identify thousands of applications and obtain all corresponding information regarding each applicant.  Further, multiple documents contain the same information, rendering many documents duplicative of one another.

Swift asserts the Two-Year SOL Objection, as well as the Non-Driver Objection.

Swift also objects to Interrogatory No. 11 to the extent that it seeks confidential, proprietary, or otherwise privileged information that is not otherwise known or publicly available to its competitors, such as the names of, and information regarding, persons that were provided to Swift by any consumer reporting agency.  Certain information is also subject to the confidentiality provision and other terms of the written contracts between Swift and certain consumer reporting agencies.

In addition, Swift objects to Interrogatory No. 11 as overly broad and unduly burdensome because the purported class is not appropriate for class action treatment. Swift further objects to the extent this request seeks electronic information as it may call for information that is not readily accessible. Interrogatory No. 11 is also objectionable to the extent that it calls for legal conclusions about whether adverse action was taken, what action occurred, and why.

Notwithstanding these objections and without waiving them, Swift responds that the requested information can be derived from the employment applications Swift received from driver applicants.  The employment applications, including authorizations, releases, criminal background reports, and other associated documents, are located on

EXHIBIT F

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1  Swift's proprietary and customized electronic databases.  Swift has produced employment

2  applications and related documents, and Swift incorporates by reference its responses,

3  objections, and responsive documents to Plaintiffs' Requests for Production Nos. 3-6 as if

4  fully set forth herein.

5      Swift also produced two searchable databases containing responsive information:

6  (1) a web recruiting database containing screen shots of the internet applications for each

7  individual who applied for a driver position at Swift from August 8, 2009 through

8  February 2011 and (2) a database used by Swift's security department that contains a

9  spreadsheet detailing the individuals that had contact with Swift's security department

10  during the application process.  *See, e.g.*, documents Bates-labeled STC256174-256175.

11  Accordingly, Swift incorporates by reference its responses, objections, and responsive

12  documents produced pursuant to Requests for Production Nos. 3-6 & 22, as if fully set

13  forth herein.

14  **INTERROGATORY NO. 12:**

15      Identify and describe all efforts by you to comply with the FCRA since August 8,

16  2006, including internal audits and audits by outside companies or individuals and

17  identify all communications and other documents that regard same.

18  **ANSWER:**

19      Swift objects to Interrogatory No. 12 as overly broad and unduly burdensome as

20  not all efforts to comply with the FCRA will be relevant or material to Plaintiffs' claims

21  or efforts to certify the purported class.  Swift's efforts to comply with other aspects of the

22  FCRA, other than the issues raised by Plaintiffs, are not relevant or material to this

23  dispute.

24      Swift asserts the Two-Year SOL Objection, as well as the Non-Driver Objection.

25      Swift further objects to Interrogatory No. 12 to the extent that it seeks information

26  protected by the attorney-client privilege and/or the work-product doctrine.  In addition,

27  Swift objects to Interrogatory No. 12 to the extent that it seeks confidential, proprietary, or

28  otherwise privileged information that is not otherwise known or publicly available to its

EXHIBIT F

competitors, such as Swift's policies and procedures for complying with the FCRA. Certain information is also subject to the confidentiality provision and other terms of the written contracts between Swift and certain consumer reporting agencies. Interrogatory No. 12 is also objectionable because it is compound in requesting that Swift both identify all efforts to comply with the FCRA and communications and other documents regarding the same.

Notwithstanding these objections and without waiving them, Swift incorporates by reference its responses and objections to Interrogatory Nos. 3, 6, & 13 as if fully set forth herein. Swift further responds that various Swift employees, including in-house counsel, Gary Fitzsimmons, Shawn Driscoll, and employees in recruiting have discussed compliance with the FCRA. Other than its privileged communications with in-house and external counsel, Swift has not conducted a review or audit by an outside company or individual to comply with the FCRA.

**INTERROGATORY NO. 13:**

Identify and describe the training that you provided to your employees since August 8, 2006 about the FCRA and your compliance with the FCRA.

**ANSWER:**

Swift asserts the Two-Year SOL Objection, as well as the Non-Driver Objection.

Swift further objects to Interrogatory No. 13 to the extent that it seeks information protected by the attorney-client privilege and/or the work-product doctrine. In addition, Swift objects to Interrogatory No. 13 to the extent that it seeks confidential, proprietary, or otherwise privileged information that is not otherwise known or publicly available to its competitors, such as training Swift provides to its employees about the FCRA and associated policies and procedures. Certain information is also subject to the confidentiality provision and other terms of the written contracts between Swift and certain consumer reporting agencies. Interrogatory No. 13 is also objectionable because it is compound in requesting that Swift identify and describe training "about the FCRA" and Swift's training for "compliance with the FCRA."

EXHIBIT F

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Notwithstanding these objections and without waiving them, Swift responds that its employees use standard operating procedures for processing driver and non-driver applications that have at different times included different disclosures and forms that have always required recruiters to obtain authorization from an applicant prior to requesting consumer reports and interviewing any applicants and giving them an opportunity to explain and contest the contents of any Widescreen report before Swift declines to hire an individual based upon their criminal record. *See*, *e.g.*, documents Bates-labeled STC000085-000090, and STC000126-000209.

**INTERROGATORY NO. 14:**

Identify all legal opinions or other compliance opinions you received, internally or otherwise, to support the legality of your application procedures or use of consumer reports for employment purposes. If you agree to forgo any defense to "willfulness" that is based in full or part on advice of counsel and would thus assert a claim of privilege, please state such in lieu of a substantive answer.

**ANSWER:**

Swift objects to Interrogatory No. 14 as overly broad and unduly burdensome to the extent it requests Swift identify <u>all</u> legal or compliance opinions it received about application procedures or consumer reports without any time limitation.

Swift further objects to Interrogatory No. 14 to the extent that it seeks information protected by the attorney-client privilege and/or the work-product doctrine. In addition, Swift objects to Interrogatory No. 14 to the extent that it seeks confidential, proprietary, or otherwise privileged information that is not otherwise known or publicly available to its competitors, such as legal and other compliance opinions Swift relies upon for compliance with the FCRA. Interrogatory No. 14 is also objectionable to the extent that it calls for speculation or requests Swift make a legal conclusion regarding the applicability of any defenses before the purported class is even certified and while discovery is ongoing.

Notwithstanding these objections and without waiving them, Swift responds that it does not have information responsive to this request dated before August 9, 2011. To the

EXHIBIT F

1  extent any such privileged opinions have been received before that date, Swift will log

2  them on its privilege log.   Swift has received other legal opinions from time to time, but

3  for different purposes that are not within the scope of this request, and any such opinions

4  are privileged.  Swift does not forego or waive any defense to "willfulness."

5  **INTERROGATORY NO. 15:**

6       State in full detail every action, communication and decision that you took or made

7  regarding the Named Plaintiffs' applications for employment, including the dates of all

8  such actions or events, the person(s) involved and all documents that pertain to the action

9  taken.

10  **ANSWER:**

11       Swift objects to Interrogatory No. 15 as overly broad and unduly burdensome as

12  not every action, communication or decision Swift took or made regarding the Named

13  Plaintiffs' application for employment will be relevant or material to Plaintiffs' claims or

14  efforts to certify the purported class.  Multiple Swift employees worked on the Named

15  Plaintiffs' applications for employment, several of whom no longer work at Swift.

16       Swift also objects to Interrogatory No. 15 to the extent that the information

17  requested is already known by, or available to, the Named Plaintiffs, as they are in the

18  best position to know what was communicated to them by Swift.

19       Notwithstanding these objections, Swift incorporates by reference its responses and

20  objections to Interrogatory Nos. 1, 8, & 9 and Requests for Production Nos. 2 & 15, as if

21  fully set forth herein.

22  **INTERROGATORY NO. 16:**

23       If you deny that a class action can be properly certified in this case, state all facts

24  and all legal contentions as applied to the facts that support your denial.

25  **ANSWER:**

26       Swift objects to Interrogatory No. 16 as overly broad and unduly burdensome to

27  the extent that it requests Swift identify <u>all</u> facts supporting a denial of class certification

28  in this case.   Swift receives thousands of applications for employment each year.

EXHIBIT F

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1   Compliance with this interrogatory is onerous on Swift as it requires identifying thousands
2   of applications, the corresponding information requested by Plaintiffs for each individual,
3   and the basis for why each individual applicant is not a member of the purported class.
4   Such a request borders on harassment.

5       Swift also objects to Interrogatory No. 16 to the extent it seeks information
6   protected by the attorney-client privilege and/or the work-product doctrine. Swift further
7   objects to Interrogatory No. 16 to the extent that it calls for speculation or requests Swift
8   make a legal conclusion as to facts or legal contentions that support denial of Plaintiffs'
9   purported class.

10      In addition, Swift objects to Interrogatory No. 16 as overly broad and unduly
11  burdensome on the Two-Year SOL Objection and the Non-Driver Objection and because
12  the purported class is not appropriate for class action treatment. Swift further objects to
13  the extent this request seeks electronic information as it may call for information that is
14  not readily accessible.

15      Notwithstanding these objections, Swift responds that the burden of establishing
16  entitlement to class certification rests with Plaintiffs. *Zinser v. Accufix Research Institute,*
17  *Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001)**; *Martinelli v. Petland, Inc.*, 274 F.R.D. 658,**
18  **660 (D. Ariz. 2011).** ~~At this early juncture of discovery,~~ Swift cannot be expected to
19  anticipate, much less respond to, Plaintiffs' various arguments related to their entitlement
20  to class certification. At present, Plaintiffs have not produced evidence sufficient to
21  establish*, inter alia*, commonality, typicality or adequacy of representation under Rule
22  23(a) of the Federal Rules of Civil Procedure, not to mention whether class treatment is
23  appropriate under Rule 23(b).

24      **"Commonality requires the plaintiff to demonstrate that the class members**
25  **have suffered the same injury." *Wal-Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551**
26  **(2011) (internal quotations and citations omitted). "What matters to class**
27  **certification . . . is not the raising of common 'questions' -- even in droves -- but,**
28  **rather the capacity of a classwide proceeding to generate common *answers* apt to**

EXHIBIT F

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1    drive the resolution of the litigation." *Id.* (emphasis in original) (citation omitted).

2    The "[d]issimilarities within the proposed class are what have the potential to

3    impede the generation of common answers." *Id.* (citation omitted).

4         The claims or defenses must also be typical, which occurs when they "are

5    reasonably coextensive with those of absent class members." *McDonald v. Corrs.*

6    *Corp. of Am.*, No. CV-09-00781-PHX-JAT, 2010 U.S. Dist. LEXIS 122674, at *13 (D.

7    Ariz. Nov. 4, 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.

8    1998)). "The test of typicality is whether other members have the same or similar

9    injury, whether the action is based on conduct which is not unique to the named

10    plaintiffs, and whether other class members have been injured by the same course of

11    conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal

12    quotations and citation omitted).

13         The purported class ~~also~~ cannot be properly certified because the decision to offer

14    or deny employment ~~and, if accepted, to hire a driver applicant~~, as well as the

15    determination of whether any adverse action was based in whole or in part on a

16    consumer report, involves multiple individualized inquiries as to that driver. These

17    individualized inquiries destroy both commonality and typicality as to all counts

18    alleged in Plaintiffs' FAC. Individualized inquiries that preclude class certification

19    include but are not limited to:

- Whether the applicant applied in-person, **over the telephone or fax, through the internet, by mail,** or via another method;
- Whether the applicant was qualified to drive under the Company's standards;
- **Whether the applicant was qualified to drive under DOT standards, including whether the applicant had a CDL license and spoke English;**
- Whether Swift ordered a consumer report for the applicant;
- **What version of the employment application the applicant reviewed and submitted;**

EXHIBIT F

- **Whether the applicant properly completed an employment application for submission to Swift;**
- **When the applicant submitted his/her application to Swift;**
- **What information the applicant provided on their employment application;**
- Whether the applicant was automatically disqualified from employment with Swift and, if so, why;
- Whether the applicant **successfully** challenged information contained on a consumer report **and obtained an offer of employment;**
- **Whether the applicant challenged information contained on a consumer report and was denied employment or never responded to further requests for information from Swift;**
- **Whether the applicant completed a Swift Questionnaire, including whether the applicant did so truthfully;**
- Whether the applicant received a copy of the consumer report(**s**);
- What the applicant told the recruiter about his/her application, background, and experience;
- **Whether the applicant was truthful as to all aspects of, and information provided on, their employment application;**
- What information the applicant's consumer report(**s**) contained, if any, that would disqualify the applicant from employment with Swift;
- **What type of notice Swift provided to the applicant that consumer reports would be procured;**
- What type of consent the applicant provided, whether **written,** oral, electronic, or otherwise, ~~from~~ to Swift to obtain ~~a~~ consumer report(**s**);
- **Which authorization or consent the applicant reviewed and agreed to on the differing versions of Swift's employment applications;**
- **What version of the written disclosure and consent form(s) the**

EXHIBIT F

applicant received;

- Whether Swift based any hiring decision on an applicant's consumer report(**s**);

- What factors led to the decision to **offer, not offer,** hire or not hire the applicant**, such as whether the applicant passed a drug or driving test or physical examination;**

- Whether the applicant was interviewed and, if so, **by whom,** what the applicant said during the interview, whether it was truthful, and what impression the applicant made during the interview;

- What the recruiter and/or processor told the applicant about his/her application**, including whether Swift would procure consumer report(s) regarding the applicant;**

- Whether that **any such** information was provided to the applicant in writing;

- **Whether the applicant understood that trucking companies such as Swift would always procure consumer report(s) regarding the applicant as part of an industry practice;**

- **What is common knowledge in the industry among applicants applying for driver positions at trucking companies;**

- Whether Swift's Security Department interviewed the applicant;

- What the applicant told the Security Department official;

- What the Security Department official told the applicants;

- **Whether the applicant had a disqualifying criminal conviction;**

- **Whether the applicant had any disqualifying moving or traffic violations;**

- **Whether the applicant attended a Swift orientation or failed to appear;**

- What type of notice the applicant had regarding a possible violation of the FCRA;

- **When the applicant discovered a possible violation of the FCRA;**

- 38 -

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

- **Why Swift decided not to hire the applicant, including falsification of application or revealing disqualifying information, including but not limited to information not contained in a consumer report, in an interview (either to a recruiter or the Security Department);**
- What types of damages **the** applicant seeks, including statutory and punitive damages, ~~as opposed to~~ actual damages **and other types of relief; and**
- **Whether the applicants' injuries are typical due to various applicants receiving differing FCRA disclosures and notices.**

**Further, as discovery has revealed, it may be impossible to ascertain and/or identify the putative class members for Counts I through IV of the FAC. Even if theoretically possible to ascertain and/or identify the class members, the process is unduly cumbersome and burdensome, inefficient, unmanageable and renders a class action vehicle inappropriate for resolution of Plaintiffs' claims under Fed. R. Civ. P. 23(b).**

**To the extent that Plaintiffs seek to certify non-drivers, such individuals may be bound to arbitrate any employment-related disputes.**

In addition, Plaintiffs cannot certify a class for Counts III and IV of their First Amended Complaint ("FAC") because Plaintiffs have failed to identify any class representatives for Counts III and IV. On May 21, 2012, Plaintiffs and Swift stipulated to a dismissal of Robert R. Bell, Jr., the sole class representative for Counts III and IV, from this lawsuit. On May 24, 2012, this Court entered its Order dismissing Mr. Bell from this case, leaving Counts III and IV without a class representative. Plaintiffs have not identified any class representatives to replace Mr. Bell. Because a punitive class without a class representative cannot be certified as a matter of law, Plaintiffs cannot certify their class as to Counts III and IV of their First Amended Complaint.

**Furthermore, Ms. Hodges and Mr. Daniel are not adequate representatives for Counts I and II of the First Amended Complaint. "In determining adequacy, the court must scrutinize the ability of the named representatives to represent the**

EXHIBIT F

1    interest of the class fairly and adequately." *Welling v. Alexy*, 155 F.R.D. 654, 657

2    (N.D. Cal. 1994).  Class certification should not be granted "if there is a danger that

3    absent class members will suffer if their representative is preoccupied with defenses

4    unique to it." *Hanon*, 976 F.2d at 508 (internal quotations and citations omitted).

5         Ms. Hodges is not an adequate representative because there is no record of

6    Swift procuring any consumer report related to Ms. Hodges' September 25, 2009

7    application, the lone application she attempts to state a claim for in the FAC.

8    Because Swift did not procure a consumer report for this in-person application, Ms.

9    Hodges has no claim under Counts I and II, lacks standing and is an inadequate

10   class representative.  In a subsequent non-in-person application submitted by Ms.

11   Hodges, which is not part of the FAC, she failed to disclose her prior criminal

12   convictions, which Swift's Security Department confirmed in an interview with Ms.

13   Hodges on December 14, 2009.  Due to Ms. Hodges' falsified application, Swift did

14   not hire Ms. Hodges.

15        Mr. Daniel is not an adequate representative because, as he conclusively

16   confirmed in his deposition, he was not an in-person applicant, and Counts I and II

17   involve allegations of in-person putative class members.  Nor did Swift base its

18   decision in whole or in part on any consumer reports regarding Mr. Daniel, as Swift

19   decided not to hire Mr. Daniel and revoked his conditional offer of employment due

20   to Mr. Daniel's voluntary disclosure of criminal convictions during orientation on

21   January 24, 2011, his confirmation of those convictions during a telephonic interview

22   with Swift's Security Department on January 27, 2011, and consequently Mr.

23   Daniel's admission that he had falsified his employment application by failing to

24   disclose any of his criminal convictions on his driver application.   Mr. Daniel

25   therefore has no claim under Counts I and II, lacks standing, and is therefore an

26   inadequate class representative.

27        Swift also incorporates by reference the deposition testimony of both Ms.

28   Hodges and Mr. Daniel in their entirety.  Their deposition testimony shows that they

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

EXHIBIT F

are not adequate representatives for any of the proposed classes alleged in the FAC. Both Ms. Hodges and Mr. Daniel, among other things, lack knowledge regarding—and are unfamiliar with—their case, do not understand their role as a class representative in this litigation, and lack credibility and trustworthiness.

For example, Ms. Hodges' deposition testimony revealed, *inter alia*, that she:

- Consented to Swift's procurement of consumer reports;
- Believes her lawsuit is about "discrimination";
- Was not aware that the First Amended Complaint referred solely to her September 25, 2009 employment application with Swift;
- Was not aware whether the Fair Credit Reporting Act would apply if Swift denied her employment application;
- Did not know what type of damages Plaintiffs are seeking in this case;
- Seeks, on behalf of herself as an individual, to have, as a remedy in this case, her criminal information removed from her record and "to make this stop. All the harassment, all the discrimination, everything";
- Did not understand her role as a class representative;
- Stated repeatedly that she did not have a criminal history when contrary documents and testimony were presented to her that established otherwise;
- Failed to disclose multiple convictions on her verified interrogatory responses;
- Testified, falsely, "I didn't lie on my application. Not one of them.";
- Lied on multiple employment applications;
- Was not accurate or complete on her Swift employment application;
- Did not remember undergoing an Investigations interview with Swift, even though she did so;
- Gave false or misleading sworn deposition testimony on numerous other occasions, in addition to the items specifically referenced herein;

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

EXHIBIT F

and

- Generally did not understand, or certainly abide by, her obligation to give complete and truthful sworn testimony.

Mr. Daniel's deposition testimony revealed, *inter alia*, that he:

- Consented to Swift's procurement of consumer reports;
- Voluntarily provided to Swift the information that led Swift to deny him employment and that the consumer reports ordered by Swift played no role in the decision not to hire him;
- Failed to understand the basic nature of his claim against Swift;
- Testified that he "agreed" with the allegations contained in the complaint, when some of the allegations with respect to Mr. Daniel are demonstrably untrue;
- Does not understand what damages he seeks or the class seeks in this action;
- Does not understand what a class representative is or what his role as a class representative requires;
- Seeks only to represent himself;
- Gave testimony that was intentionally evasive and incomplete at times, and false at others;
- Gave incomplete and false discovery responses;
- Falsified his employment application with Swift;
- Failed to review his discovery answers or ensure their accuracy, notwithstanding his signature of a sworn verification for them; and
- Generally did not understand, or certainly abide by, his obligation to give complete and truthful sworn testimony.

In addition, Swift incorporates by reference its response and objections to Interrogatory Nos. 3, 9-10 as if fully set forth herein, all documentation produced in this case, all disclosure statements and all communications to Plaintiffs' counsel.

EXHIBIT F

DATED this 11th day of September, 2012.

SNELL & WILMER L.L.P.

By: _Joseph A. Kroeger_____
John F. Lomax, Jr.
Brian J. Foster
Joseph A. Kroeger
One Arizona Center
400 E. Van Buren
Phoenix, AZ  85004-2202
Attorneys for Defendant

EXHIBIT F

1

## **VERIFICATION**

2

STATE OF ARIZONA            )
                           ) ss.
COUNTY OF MARICOPA          )

3

4

5       I, MICHELLE CORDOVA, being first duly sworn upon my oath, depose and say

6   that:

7       I am a Recruiting Regional Leader for Swift Transportation Co. of Arizona, LLC,

8   the defendant in the matter of *Daniel et al v. Swift Transportation Corp.*, Case No. 2:11-

9   cv-01548-PHX-ROS.  I have reviewed the foregoing Responses to Plaintiffs' First Set of

10  Interrogatories.  I am authorized to verify and do hereby verify same under penalty of

11  perjury as being true and correct to my personal knowledge, except as to those matters as

12  to which I lack personal knowledge, but am informed and believe to be true and correct

13  based upon information and belief, and which I verify on that basis.

14      DATED this ___11___ th day of September, 2012.

15

16                                      _____

17                                      Michelle Cordova

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

- 44 -

15744851

1                 **CERTIFICATE OF SERVICE**

2 I hereby certify that on September 11, 2012, the original of the foregoing will be served via Federal Express to the following counsel of record:

4

5 Anthony R. Pecora
Dennis M. OToole
Matthew A. Dooley

6 Stumphauzer OToole McLaughlin McGlamery & Loughman Company

7 5455 Detroit Rd.
Sheffield Village, OH 44054

8

9 I further certify that on September 11, 2012, a copy of the foregoing will be served via E-Mail on the following counsel of record:

10

11 Stanley Lubin
Lubin & Enoch PC

12 349 N 4th Ave
Phoenix, AZ 85003

13

14 Leonard Anthony Bennett
Susan Mary Rotkis

15 Consumer Litigation Associates PC
12515 Warwick Blvd., Ste. 100
Newport News, VA 23606

16

17

18 15744851

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000