# EXHIBIT B

Kelvin Daniel                    Daniel v. Swift                    6/12/2012

---

**Page 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

KELVIN D. DANIEL, on Behalf )
of Himself and All Others    )
Similarly Situated,          )
                             )
        and                  )
                             ) No. 2:11-cv-01548-PHX-ROS
TANNA HODGES, on Behalf of   )
Herself and All Others       )
Similarly Situated,          )    THE DEPOSITION
                             )       OF
        and                  )    KELVIN DANIEL
ROBERT R. BELL, JR., on Behalf ) (videotaped)
of Himself and All Others    )
Similarly Situated,          )
                             )
        Plaintiffs,          )    Phoenix, Arizona
        vs.                  )    June 12, 2012
                             )    9:32 a.m.
SWIFT TRANSPORTATION         )
CORPORATION,                 )
                             )
        Defendant.           )
        _____)

(CONDENSED COPY)
PREPARED FOR:              REPORTED BY:
                          Marty Herder, CCR #50162
                          Jennifer Smith, CCR #50180
MR. BRIAN J. FOSTER       Certified Court Reporters
Attorney at Law

© AZ LITIGATION SUPPORT (480)481-0649

---

**Page 2**

```
1                I N D E X
2   Examination By:              Page:
3   Mr. Kroeger                     5
4
5
6
7
8              E X H I B I T S
9   No. 25  Photocopy of three pictures, Bates
            labeled SDT-CRE000008        21
10
    No. 26  Plaintiff Kelvin D. Daniel's Answers to
11          Defendant Swift Transportation Co. of
            Arizona, LLC's First Set of Non-Uniform
12          Interrogatories             27
13  No. 27  Driver application, dated 2-21-11; Bates
            labeled SDT-CRE000019 through SDT-CRE000023  61
14
    No. 28  USIS Widescreen National Criminal Search  88
15
    No. 29  Important Notice Regarding Background
16          Reports From PSP Online Service, 2-21-11  92
17  No. 30  HireRight DAC Trucking Disclosure and
            Authorization For Release of Information
18          For Employment Purposes, 2-22-11  96
19  No. 31  (No exhibit 31 was marked.)
20  No. 32  (No exhibit 32 was marked.)
21  No. 33  Swift Online Application, 12-27-10  118
22  No. 34  Widescreen National Criminal Search
            12-28-10                    133
23
24
25
```

---

**Page 3**

```
1            THE DEPOSITION OF KELVIN DANIEL,
2   Taken at 9:32 a.m., on June 12, 2012, at the Law Offices of
3   SNELL & WILMER L.L.P., 400 East Van Buren, Suite 1900,
4   Phoenix, Arizona, 85004, before Marty Herder and Jennifer
5   Smith, Certified Court Reporters, pursuant to the Rules of
6   Civil Procedure.
7
8   COUNSEL APPEARING:
9   For the Plaintiffs:
10  STUMPHAUZER O'TOOLE MCLAUGHLIN MCGLAMERY & LOUGHMAN COMPANY
    BY:  Dennis M. O'Toole, Esq.
11  5455 Detroit Road
    Seffield Village, Ohio  44054
12
13  For the Defendant:
14  SNELL & WILMER L.L.P.
    BY:  Brian J. Foster, Esq.
15       Joseph A. Kroeger, Esq.
    400 East Van Buren
16  Suite 1900
    Phoenix, Arizona 85004
17
    Michelle Deutsch, Esq.
18  General Counsel, Swift Transportation
19
20  Also present: Brent Jensen, videographer
21
22
23
24
25
```

---

**Page 4**

```
1                Phoenix, Arizona
                  June 12, 2012
2                  9:32 a.m.
3
4
5              P R O C E E D I N G S
6
7       THE VIDEOGRAPHER:  Good morning.  My name is Brent
8   Jensen, certified legal-video specialist with K-Video
9   Productions.
10      Our court reporter is Marty Herder representing
11  Arizona Litigation Support.  Their address is One East
12  Washington Street in Phoenix, Arizona.
13      We are at the law offices of Snell & Wilmer,
14  400 East Van Buren Street, in Phoenix, Arizona, to take the
15  deposition of Kelvin Daniel, on behalf of the defendants, in
16  the United States District Court of Arizona case of Daniel,
17  et al., versus Swift Transportation Corporation, Case
18  No. 2:11-cv-01548-PHX-ROS.
19      The date is June 12, 2012, and the time is
20  approximately 9:34 a.m.
21      The attorneys will now introduce themselves.
22      Plaintiffs first, please.
23      MR. O'TOOLE:  Dennis O'Toole, attorney for
24  plaintiff.
25      MR. KROEGER:  Joseph Kroeger, Snell & Wilmer,
```

1 (Pages 1 to 4)

Kelvin Daniel                    Daniel v. Swift                    6/12/2012

Page 117

1  situation, but I guess you can ask whatever question you
2  want to ask. Her name is Rachel.
3      Q. And do you know Rachel's last name?
4      A. Devour.
5      Q. And how do you spell that?
6      A. Like devour.
7      Q. D-e-v-o-u-r?
8      A. Yes.
9      Q. And her home town?
10     A. I don't know where she at right now.
11     Q. Is there anything that would help you remember
12 that information?
13     A. I don't know where that woman is.
14     Q. Do you have a phone number?
15     A. I don't have a number, nothing.
16     Q. Do you know anybody who knows her?
17     MR. O'TOOLE: Objection. I'll just show a
18 continuing objection to these lines of questioning.
19     MR. KROEGER: I'll move on as soon as I find out
20 if he has this information.
21     BY MR. KROEGER: Do you know anybody who knows
22 her?
23     A. No. I don't know where she at, whatever. Still
24 don't think it's right.
25     Q. So you submitted a web application to Swift

Page 118

1  Transportation. Do you know if you authorized a criminal
2  background check on that application?
3      A. No.
4      Q. Do you have any specific recollection one way or
5  another?
6      A. I can't even remember, no.
7      MR. KROEGER: Can you mark that 33, please?
8      (Deposition Exhibit No. 33 was marked for
9  identification.)
10     Q. BY MR. KROEGER: Mr. Daniel, you've been handed
11 what has been marked as Exhibit 33. At the top of the page,
12 it says, "Driver Recruiting Process - Online Application".
13 Did I read that correctly?
14     A. Yes, sir.
15     Q. And above that, it has the Swift corporate logo,
16 is that correct?
17     A. Yes, sir.
18     Q. Below that on the right-hand side, it says,
19 "Application date, December 27th, 2010". Do you see that?
20     A. Yes, sir.
21     Q. Does that fresh your recollection as to when you
22 submitted your application to Swift?
23     A. I told you it had to be around that time. I said
24 that's what I was telling him earlier that it was after my
25 birthday.

Page 119

1      Q. Your testimony earlier was that it was December or
2  January and now I'm asking you, does --
3      A. I know it was after my birthday, so --
4      Q. If you could, please, let's just finish the
5  question.
6      Does this application refresh your memory and is
7  December 27th --
8      A. No, this doesn't refresh my memory, but I know I
9  applied after my birthday.
10     Q. Did you apply on December 27th, 2010?
11     A. I guess I did.
12     Q. Do you have any reason to believe that that date
13 is inaccurate in any way?
14     A. I just know it was after my birthday when I
15 applied.
16     Q. That's not my question, Mr. Daniel. It is do you
17 have any reason to believe that date is inaccurate?
18     A. If that's what the system says, then evidently
19 that's when I applied. I can't remember at this time what
20 the exact date was, but I know it was after my birthday.
21     Q. When is your birthday?
22     A. December 25th.
23     Q. Looking at this document, did you submit this
24 online application to Swift?
25     A. I submitted it an online application and this had

Page 120

1  to be the one that I submitted because I was staying in
2  Natomas at the time, Natomas, California.
3      Q. And looking at the last page of that application,
4  do you see down in the middle, do you see the word
5  "Acknowledgement"?
6      A. Yes, sir.
7      Q. Do you remember viewing that acknowledgement?
8      A. I don't remember.
9      Q. Do you see at the very bottom of the page a
10 "Submit" button?
11     A. Yes, sir.
12     Q. Do you remember clicking the submit button?
13     A. I remember submitting the application. I don't
14 remember clicking the button or whatever. I remember
15 submitting the application, yes.
16     Q. You don't remember if you read the acknowledgement
17 language?
18     A. Quite sure I did if I submitted the application.
19     Q. And just above that submit button, right above it,
20 that last paragraph, could you please read that?
21     A. "I have read carefully the above information and
22 understand" -- oh, hold on. "I have read carefully the
23 above information, understand and accept the contents
24 thereof. This certifies that this application was completed
25 by me and that all entries on it and information in it are

30  (Pages 117 to 120)

Kelvin Daniel                    Daniel v. Swift                    6/12/2012

---

## Page 129

1    Q.  You testified earlier that it was common knowledge
2  in the trucking school, that trucking companies would run
3  criminal background checks.  Do you remember that testimony?
4    A.  No, I don't.
5    Q.  You testified this morning that you've always
6  agreed or signed language that requested a criminal
7  background history.  Do you remember that testimony?
8    A.  No.
9    Q.  If you could please turn to the first page of
10 Exhibit 33, down towards the bottom of the page, do you see
11 a button that says "Continue"?
12   A.  Yes.
13   Q.  And two lines above that, there's a question.
14 Could you please read that question?
15   A.  "May we request information on your" -- hold on.
16 "May we request information on you from outside consumer
17 reporting agencies?"
18   Q.  And to the right of that, is yes or no checked?
19   A.  Yes is checked.
20   Q.  Okay.  Do you recall this question?
21   A.  I mean, by me reading it now, I can explain to you
22 probably what I was thinking at that time.
23   Q.  And what was that?
24   A.  It had something to do with work history or -- I
25 can't tell this company what they can do.  I'm trying to get

## Page 130

1  a job from them.  That's pretty much why I answered it, but
2  I don't know what a consumer report agency is.  Actually,
3  that's my first time ever hearing something from that.  I'm
4  from Georgia.  You don't hear stuff like that, so --
5    Q.  You physically clicked on the box that said yes?
6    A.  Yeah, I put yes.  I gave you all the right to do
7  whatever you all want to do.  You can violate, violate me.
8    Q.  If you could turn to the second page, please?
9  About two-thirds of the way down, the question -- there's a
10 question, it's the third from the very last section in the
11 middle section.  I'll point to it here so that -- Mr.
12 Daniel, when you get a chance to look up, I'll show you the
13 area I'm going to read.
14   A.  Yes.
15   Q.  I'm going to read this question now.
16   A.  Still can't see.
17   Q.  It's the third question up from under -- from
18 above, "Please complete this information."  Okay?
19   A.  Okay.
20   Q.  Now, that question reads, "Have you ever been
21 convicted of a criminal offense?"  Did I read that question
22 correctly?
23   A.  Yes, sir.
24   Q.  And to the right of that question, what was your
25 response?

## Page 131

1    A.  No.
2    Q.  Was that response truthful?
3    A.  Yes.  And probably was looked at and read wrong,
4  too, the way it was wrote because I've never been convicted
5  of a crime in California or marijuana related crime,
6  anything about California.  "Have you ever been convicted of
7  a criminal offense in California?"  No.
8    Q.  And that's what you believe the question asks?
9    A.  Right.
10   Q.  On the day that you filled this out, that was what
11 you believe that question asked you?
12   A.  Yes.
13   Q.  And sitting here today, is that what you believe
14 that question asked you?
15   A.  That's the way it looks, but as I see this
16 punctuation, "Have you ever been convicted of a criminal
17 offense", no, no felony convictions.
18   Q.  So this application was submitted on December
19 27th, 2010?
20   A.  Yes.
21   Q.  You mentioned earlier that you had contact with an
22 individual over the phone named Doug Driscoll and you said
23 it was after the application.  How long after the
24 application until you spoke with Doug Driscoll?
25   A.  I can't remember that.  I can't remember that.  I

## Page 132

1  know he got in contact with me.
2    Q.  Was it within a week?
3    A.  Yeah, because New Year's came.  I think it was in
4  January.  No, it was -- I can't remember.  I can't remember,
5  but I know he got a contact to me at the house to submit an
6  application.
7    Q.  Well, did -- in that phone call, did Mr. Driscoll
8  schedule an orientation --
9    A.  Yes.
10   Q.  -- for you?
11   A.  Yes.  Also did a background on me.
12   Q.  And did Mr. Driscoll tell you that he was going to
13 do a background check?
14   A.  He said he cleared me.  I was cleared before I
15 even went to orientation.
16   Q.  Okay.  And do you know if Swift obtained a
17 criminal background check on you?
18   A.  No.  No, I got no information about it, but they
19 -- but I can say they told me -- that's why they sent me
20 back, pull me out of orientation or something and send me
21 back to Sacramento, told me they want to do a further
22 background on me and I called you all's investigators here
23 in Phoenix.
24   Q.  Okay.  And I understand, but my question before,
25 so within -- sometime within a week of your submitting your

© AZ Litigation Support Court Reporters
www.CourtReportersAz.com

Kelvin Daniel                 Daniel v. Swift                    6/12/2012

Page 133

1   application, you talked -- you spoke with Mr. Driscoll, he
2   told you that your criminal background check was clean and
3   he scheduled an orientation?
4       A.  Yeah.
5       Q.  Okay.
6           (Deposition Exhibit No. 34 was marked for
7   identification.)
8       THE WITNESS:  This is boring me.
9       Q.  BY MR. KROEGER:  What's that?
10      A.  This is so boring.
11      Q.  I get accused of that a lot.  So you've been
12  handed what is marked as Exhibit
13      34.  At the top, it says, "Widescreen National
14  Criminal Search", correct?
15      A.  "Widescreen National Criminal Search", yes, sir.
16      Q.  And just below that, it says, "Customer:  Swift
17  Transportation Web", is that correct?
18      A.  Yes.
19      Q.  And coming down a few lines, do you see the line
20  that says "Name"?
21      A.  Yes.
22      Q.  And after that, it says, "Daniel, Kelvin D.",
23  correct?
24      A.  Yes.  Where the "Name" is, it says, "Daniel,
25  Kelvin D." where "Name" is.

Page 134

1       Q.  Good.  Okay.  Now, going down one, two, three
2   lines, do you see the one that begins "Search Area"?
3       A.  "Search Date" -- oh, okay.  Yeah, "Nationwide".
4       Q.  Okay.  And one line below that, do you see where
5   it says "Request Date"?
6       A.  Yes.
7       Q.  And what date does it give for the request day?
8       A.  12/28/2010.
9       Q.  And that is one day after the application that we
10  just looked at?
11      A.  Yes, sir.
12      Q.  And when you spoke with Doug Driscoll, he told you
13  that your criminal background check had already come back
14  clean, is that not right?
15      A.  No, he told me after the fact when they sent me
16  home.  Mr. Driscoll's a professional guy and I'm not doing
17  this to slander him in no kind of way.  When I was asking
18  him questions why they sending my home, why did you all
19  a further background, pretty much like, "Why did you all
20  waste my time", and he was like he really don't know.  I
21  said, "Well, if I had to go through -- why didn't you just
22  tell me this?"  He's like, "I cleared you.  I cleared your
23  background.  I don't even know what's going on, Kelvin."
24      Q.  So he told you that he had viewed your criminal
25  background report and it was clean?

Page 135

1       A.  He told me I was clear before I went to
2   orientation.  He really didn't know what was going on.
3       Q.  Okay.  To be clear, he told you that he had
4   reviewed it before scheduling you for orientation and it was
5   clean?
6       A.  I was clean before I went to orientation.
7       Q.  And looking at this document, I would agree with
8   you, it appears to my eyes to be clean.  Would you agree
9   that there is no identification of any criminal convictions
10  on this one sheet of paper in front of you, Exhibit 34?
11      A.  No record found.
12      Q.  Okay.  It says, "No record found in jurisdiction
13  searched", correct?
14      A.  Correct.
15      Q.  Now, looking at this document, as you just said,
16  Swift had no way -- would have no way of knowing that you
17  had any criminal convictions, correct?
18      A.  Looking at this document, I guess not, no record
19  found in jurisdiction searched.
20      Q.  And looking back at Exhibit 33, the application,
21  you answered no to the question, "Have you ever been
22  convicted of a criminal offense", do you remember that?
23      A.  Yes.
24      Q.  So Swift having your application and your criminal
25  background report had no way of knowing about any prior

Page 136

1   criminal history on your part?
2       A.  I don't know what they have -- what they know, but
3   I know I don't have a criminal record.
4       Q.  And Swift invited you to attend an orientation?
5       A.  I was in orientation.
6       Q.  When did --
7       A.  I got a card.  I got a card, debit card,
8   everything.  Asked me to get on the road.  That's what
9   happened, sir.
10      Q.  When did the orientation occur?
11      A.  I couldn't tell you that, sir.  I have to do some
12  research, paperwork stuff I got put up.  Quite sure I got it
13  somewhere.
14      Q.  Would January 25th, 2011 sound accurate?
15      A.  I can't raise my hand on that, sir.  Sorry.
16      Q.  It's approximately one month later.  Does that
17  sound right?
18      A.  I can't remember that date, sir.  I'm sorry.
19  That's not -- I can't remember that date, but I do -- I can
20  do my research and give it to my attorneys and everything if
21  I haven't already done so.
22      MR. KROEGER:  Dennis, I can either pull out the
23  complaint to confirm it or I can have it -- or if you can
24  stipulate the January 25th since that's what the complaint
25  states.

34  (Pages 133 to 136)

Kelvin Daniel                    Daniel v. Swift                    6/12/2012

Page 137

1    MR. O'TOOLE:  Whatever the date is, I think he's
2  saying that he went, he just doesn't recall the date.  If
3  it's January 25th and you've got a record of that, that's
4  fine.  I mean, I'll be glad to stipulate to it.
5    MR. KROEGER:  I'm going off --
6    MR. O'TOOLE:  I don't think he would lie about it.
7  That's fine.  Whenever it was, it was.
8    Q.  BY MR. KROEGER:  Tell me what you remember about
9  Swift's orientation.
10   A.  It was very foggy that day, thick.  Me being a
11 truck driver now and my experiences I've been through, it
12 was wise of them to not put us on the road that morning
13 until the fog let up.  Okay.  So he said, "When noontime
14 comes, we gonna see if the fog let up."  He said, "This is a
15 big class."  He said, "This class -- we don't have enough
16 trainers here today to put everybody on the road."  So
17 that's when I guess the guy of operations came in and said,
18 "No, we did" -- he passed out stuff and all that, did, you
19 know, what you do in orientation and he said -- you hear me,
20 sir?  You hear me?
21   Q.  Yeah, I did and I do apologize.  I did get
22 distracted.  I just -- this is not because of anything you
23 said.  I'm just trying to get a clear record.
24     Do you have any reason to believe that your
25 orientation did not begin on January 24th, 2011?

Page 138

1    A.  I thought you said 25th?
2    Q.  I did.  I did.  And that's why I'm correcting
3  myself.  Do you have any reason to believe your orientation
4  did not begin on January 24th?
5    A.  I just can't remember the dates.
6    Q.  And I'm not asking you to.  I'm saying do you have
7  any reason to believe that it occurred on January --
8  that it began on --
9    A.  I mean, I would like to -- I would like to
10 actually see the facts before I raise my hand to that.
11    MR. O'TOOLE:  I'll state on the record that I
12 think it was the 24th.  That's what we alleged in the
13 complaint, just to let you know.
14    THE WITNESS:  Okay.  All right.
15   Q.  BY MR. KROEGER:  Okay.  Now, the orientation
16 itself, you explained some of your recollection.  Do you
17 remember a portion of the orientation when you sat in the
18 classroom?
19   A.  Do I remember the orientation?
20   Q.  Do you remember a portion where you sat in the
21 classroom?
22   A.  We were just sitting wait -- socializing waiting
23 for the fog to lift up because it was just too dangerous to
24 put rookies out there like that in that fog for a road test.
25 We was there for a road test.

Page 139

1    Q.  Do you remember sitting in a classroom and being
2  spoken to by representatives of Swift?
3    A.  Yes.
4    Q.  Do you remember a portion of that presentation
5  when a Swift employee walked you through the Swift
6  employment application?
7    A.  Yes, sir.
8    Q.  And do you remember an individual named Chad
9  Baumgarner?
10   A.  That name Chad rings a bell.
11   Q.  Do you remember if he was the person who went
12 through that employment application?
13   A.  The guy that was in charge, not the head guy, the
14 top guy, but I think he was Chad.  It was Chad.
15   Q.  And do you remember him putting the application
16 questions up on a projector screen?
17   A.  Yes, sir.
18   Q.  And there were highlighted sections of the
19 application?
20   A.  I don't remember that if it was highlighted
21 sections.
22   Q.  Do you remember him discussing the criminal
23 conviction question on the application?
24   A.  Yes.
25   Q.  And he told all of the applicants that they had to

Page 140

1  be honest on that question, correct?
2    A.  Well, actually, I asked him a question, you know?
3  Like I said, if I don't understand something, that's me, I'm
4  gonna raise my hand.  I'm gonna ask a question.  So I said
5  -- he was saying, "Okay.  This is the time now.  Whatever
6  you put on the application, put it down now", and then I
7  asked the question was, "Do it matter when it happen?"  He
8  said, "Don't matter.  Put down anything you think, you know,
9  whatever would have happened."  He just said -- I'm sorry.
10 I know you typing over there.  And that's when I said,
11 "Okay."  I said, "So it doesn't matter how long it's been?"
12 He said, "Don't matter," so I just start putting out old
13 stuff.
14   Q.  So in response to --
15   A.  Trying to be honest.
16   Q.  And I appreciate that.  In response to Chad's
17 prompting, you revealed to him the criminal background that
18 we discussed earlier?
19   A.  No, I revealed to him things that has happened
20 more than ten years ago, longer than ten years ago.  Sorry.
21   Q.  How about the information from the public
22 intoxication in 2008, did you discuss that with Mr.
23 Baumgarner?
24   A.  I believe I did.
25   Q.  So it wasn't just things more than ten years ago,

35 (Pages 137 to 140)

Kelvin Daniel                    Daniel v. Swift                    6/12/2012

## Page 141

1 was it?
2     A.   Well, actually, I was -- I wasn't sure if it was
3 on my record or not and I just wanted to talk to him about
4 that situation that happened because as far as I look at it,
5 it's the past.
6     Q.   How did you inform Chad Baumgarner about this
7 criminal background?
8     A.   You talking about old charges?
9     Q.   Correct.
10    A.   That's what you're talking about?
11    Q.   How did you inform him?
12    A.   Like I said, he said to come clean.  If it's not
13 on the application, put it down now regardless of how long
14 it's been and everything, today is the day to do it and I
15 did it.
16    Q.   And you testified earlier that Doug Driscoll had
17 told you, "Your background check is clean.  Let's go ahead
18 and set you up for" --
19    A.   He said it afterwards.
20    Q.   He said it afterwards?
21    A.   He didn't tell me that not during class or before
22 class.
23    Q.   Right.
24    A.   He just called me back and told me my orientation
25 day is this, Lathrop, California, blah, blah, blah.  Don't

## Page 142

1 type that down when I say, "Blah, blah, blah."  I said,
2 "Well, can you send me to Atlanta?"  He's like, "No, I can't
3 send you to Atlanta", because I was trying to really get
4 away from that girl and a blizzard hit Atlanta at that time,
5 so he kept me out at Lathrop, "You're going to have to train
6 out at Lathrop."
7     Q.   So your conversations with Doug, they were over
8 the phone and you were talking with him about where your
9 orientation would be, correct?
10    A.   Right.
11    Q.   And he scheduled you in California?
12    A.   Lathrop.
13    Q.   And you showed up for your orientation.  Now, that
14 was the first time that you had talked face to face with
15 anyone from Swift, right?
16    A.   No, they had a room.  They assigned me to a room.
17 I had to go check in and they put me in a room to the next
18 morning.  The next morning, I was in orientation.
19    Q.   Okay.  I just want to make sure I have the
20 sequence of things.  December 27th, 2010 is your employment
21 application, right?
22    A.   Right.
23    Q.   Now, December 28th, 2010, there's a background
24 check that we reviewed, right?
25    A.   Right.

## Page 143

1     Q.   And after that, you spoke on the phone with Doug
2 Driscoll and he scheduled you for an orientation?
3     A.   Yes.
4     Q.   And then you appeared at orientation and met with
5 Chad Baumgarner?
6     A.   Yes.
7     Q.   Do you remember Chad Baumgarner filling out
8 something called a conviction form?
9     A.   No, I can't remember, sir.
10    Q.   When you spoke with him, do you recall him filling
11 out any paperwork?
12    A.   All I know is he called me out of the classroom
13 and told me that he got to do a further background on me,
14 further investigation.  He didn't even tell me to pack up
15 and leave the room.  I had to call Doug and ask Doug, I
16 said, "Do I suppose to go back to Sacramento?  Do I stay
17 here until you do the background?"  He says, "No, you gotta
18 go back to Sacramento and call the investigators."  That's
19 when he told me that he had cleared me.  He really didn't
20 know what was going on.
21    Q.   Okay.  I think I understand it.  If I can -- and
22 just to make sure that I understand it better, did you
23 approach Chad in the front of the room?  How did you
24 approach him to tell him?
25    A.   No, it was all in the classroom and I --

## Page 144

1     Q.   You raised your hand?
2     A.   Yes, sir.
3     Q.   And did you talk about it in front of the
4 classroom?
5     A.   Yes, sir.
6     Q.   And then you mentioned being out in the hall.  Did
7 he ask you to step out into the hall?
8     A.   Well, he was -- they started getting rid of
9 people.
10    Q.   Okay.
11    A.   You know, a lot of Hispanics saying they couldn't
12 speak English well enough.
13    Q.   Okay.
14    A.   Which didn't seem right to me because one of the
15 guys was my roommate and we talked like two Americans all
16 night laughing.  So at the end, they called me up and took
17 me in the office.  I guess that was the head guy.  Went in
18 the office with him and Chad turned around, told me, "We
19 gonna have to do a further background on you", and whatever
20 whatever, and I was like, "Why?  I'm clean.  My record's
21 clean."  He was like, "We'll get back in touch with you",
22 this, that and the other, you know, "You need to call the
23 investigators", and stuff like that.  I'm like -- but he
24 didn't tell me to pack up, leave the room, whatever.  He
25 send me back to the room and so I had to call Doug, "Doug,

© AZ Litigation Support Court Reporters
www.CourtReportersAz.com

Kelvin Daniel                    Daniel v. Swift                    6/12/2012

Page 145

1  what do I do next?  Do I stay here?  Do I call the
2  investigators at home or here?"  He said, "You gotta go back
3  to Sacramento, talk with the investigators."
4      Q.  And so did you return to Sacramento at that point?
5      A.  I returned to Sacramento the next day, the next
6  morning.
7      Q.  And did you ever speak with the investigators?
8      A.  I called the investigators here in Phoenix.
9      Q.  And when did you do that?
10     A.  Oh, man, after I was told to leave, I --
11     Q.  When you returned to Sacramento?
12     A.  When I returned to Sacramento, I called the
13  investigator when I got to Sacramento.
14     Q.  Was it that same day, next day, next week?
15     A.  It had to be that same day because she came and
16  got me that morning.  She came and got me that morning.
17     Q.  When you say, "She came and got me", was this by
18  phone?
19     A.  She came to pick me up, my ride.
20     Q.  And who is "she"?
21     A.  Rachel.
22     Q.  Oh, okay.  Rachel.  Rachel Devour.
23     A.  Yep.
24     Q.  So when -- do you recall when you spoke with an
25  investigator from Swift?

Page 146

1      A.  It had to be that same day because I immediately
2  called her.  I immediately got on the phone with them and
3  called her.
4      Q.  You said you called her.  Was the person a female?
5      A.  Yes, she was a female.
6      Q.  Does the name Bernice Ruiz sound familiar?
7      A.  She sounded like she was Hispanic.
8      Q.  And that interview was by phone?
9      A.  Yes.
10     Q.  And what do you remember about that call?
11     A.  She just asked me questions about what I, you
12  know, told Chad about the reckless conduct charge and the
13  simple battery charge.  She just asked me the same thing.  I
14  explained it to her, you know, and I explained it to her.
15  She said, "Well, we be getting back in contact with you in
16  about a week or so", I believe, and I never heard anything.
17  So I did some tracking down myself to find out that I had
18  been denied and could nobody tell me why.
19     Q.  Do you have a belief as to why you were denied
20  employment?
21     A.  I have no idea.
22     Q.  Do you think it had to do with your call to
23  investigations?
24     A.  No.
25     Q.  Do you think it had to do with you revealing this

Page 147

1  criminal information at orientation?
2      A.  I don't know what to think.  I just know I was
3  denied.
4      Q.  Do you -- you admit that as we've discussed
5  before, when Swift had no criminal information about you,
6  that they extended an offer to come to orientation, right?
7      A.  Right.
8      Q.  And you would admit that after orientation and
9  after having criminal information for the first time, that
10  they decided to not proceed with your employment, would you
11  admit that?
12     A.  I don't know if that was the case, but I know I
13  was correcting things.  I was making sure I was having
14  everything right.  I wasn't trying to hide that information
15  at all.  That's what I'm saying.
16     Q.  Do you think Swift thought you were trying to hide
17  information?
18     A.  I don't know what Swift was -- I can't speak how
19  they was thinking.  I just know I was denied and I -- well,
20  nobody tell me anything.  I had to call another Swift office
21  to find out that I was denied and then I had to have that
22  office transfer me to Doug because Doug wasn't answering his
23  phone when he was at first.  Then he told me the same thing
24  that office told me, that I'd been denied.  He can't bring
25  me on.  I was like, "Oh, okay.  Why?"  "I don't know, man."

Page 148

1  That's what happened.
2      Q.  If you wouldn't mind turning back to the Swift
3  application which looks like the one on the left there, if
4  could you turn to the last page, the "Acknowledgement"?
5  Now, the third paragraph from the bottom, it starts with, "I
6  understand."  Do you see that?
7      A.  Yeah, I see it.  Well, actually, you said the
8  third one?
9      Q.  From the bottom that starts, "I understand" --
10     A.  Okay.  It's small.
11     Q.  You're right.  Could you please read the first
12  sentence of that paragraph out loud, please?
13     A.  "I understand that any offer of employment" --
14     Q.  No.  I'm sorry.
15     A.  -- "intended up" --
16     Q.  If you could please stop.  I'm sorry.  Two
17  paragraphs below that, it also starts with, "I understand
18  and agree."
19     A.  "I understand and agree that any misrepresented,
20  inaccurate, misleading, incomplete or omitted information
21  provided by me in this application will be sufficient cause
22  for cancellation of this application and/or separation from
23  the company service if employed.  Further, I understand" --
24     Q.  That's it.  Just that sentence, please.  Do you
25  understand what that sentence says?

37 (Pages 145 to 148)

**EXHIBIT C**

Tanna Hodges                    Daniel v. Swift                    6/11/2012

---

**Page 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

KELVIN D. DANIEL, on Behalf )
of Himself and All Others )
Similarly Situated, )
and )
) No. 2:11-cv-01548-PHX-ROS
TANNA HODGES, on Behalf of )
Herself and All Others )
Similarly Situated, )
and ) THE DEPOSITION
) OF
) TANNA HODGES
ROBERT R. BELL, JR., on Behalf ) (videotaped)
of Himself and All Others )
Similarly Situated, )
)
Plaintiffs, ) Phoenix, Arizona
vs. ) June 11, 2012
) 9:21 a.m.
SWIFT TRANSPORTATION )
CORPORATION, )
)
Defendant. )
_____)

(CONDENSED COPY)
PREPARED FOR            REPORTED BY:
Az Litigation Support, LLC
            Marty Herder, CCR
MR. BRIAN J. FOSTER   Certified Court Reporter
Attorney at Law       CCR No. 50162

© AZ LITIGATION SUPPORT (480)481-0649

---

**Page 2**

            I N D E X
Examination By:                    Page:
Mr. Foster                           6

            E X H I B I T S
No. 1  Employment application, dated 9-29-09   130
No. 2  Consent form, dated 10-13-08            32
No. 3  Employment application, dated 7-31-08   36
No. 4  Employment application, dated 11-6-08   105
No. 5  Plaintiff Tanna Hodges' Answers to
       Defendant Swift Transportation's First
       Set of Nonuniform Interrogatories       41
No. 6  Pre-employment drug testing and background
       screening form                          46
No. 7  Authorization, dated 6-23-10            47
No. 8  SafeScreen background report, dated
       6-24-10                                 49
No. 9  20/20 Insight report                    59
No. 10 Employment application, dated 7-31-08   78
No. 11 Employment application, dated 7-31-08   86
No. 12 Letter from USA Truck, Inc.             90
No. 13 Employment application, dated 7-31-08   91
No. 14 Employment application, dated 11-6-08   96

---

**Page 3**

            Exhibits (continued)
No. 15 Employment application, dated 11-6-08   100
No. 16 Werner Enterprises Pre-Approval         111
No. 17 Letter to Tanna Hodges from Werner
       Enterprises, dated 11-7-08              112
No. 18 Letter to Tanna Hodges from Werner
       Enterprises                             113
No. 19 New hire interview questionnaire,
       dated 6-23-10                           117
No. 20 Internal document from Bellisio Foods   119
No. 21 (skipped)
No. 22 Employment application, dated 6-12-10   122
No. 23 Online application, dated 12-12-09      182

---

**Page 4**

THE DEPOSITION OF TANNA HODGES,
Taken at 9:21 a.m., on June 11, 2012, at the Law Offices of
SNELL & WILMER L.L.P., 400 East Van Buren, Suite 1900,
Phoenix, Arizona, 85004, before Marty Herder, Certified
Court Reporter, pursuant to the Rules of Civil Procedure.

COUNSEL APPEARING
For the Plaintiffs:
STUMPHAUZER O'TOOLE MCLAUGHLIN MCGLAMERY & LOUGHMAN COMPANY
BY:  Dennis M. O'Toole, Esq
     5455 Detroit Road
     Sefield Village, Ohio  44054

For the Defendant:
SNELL & WILMER L.L.P.
BY:  Brian J. Foster, Esq
     Joseph A. Kroeger, Esq
     400 East Van Buren
     Suite 1900
     Phoenix, Arizona 85004

SWIFT TRANSPORTATION
BY:  Michelle Tamara Deutsch, Esq
     2200 South 75th Avenue
     Phoenix, Arizona 85043

Also present:  Brent Jonson, videographer

1 (Pages 1 to 4)

Tanna Hodges                    Daniel v. Swift                    6/11/2012

|  | Page 129 |
|---|---|
| 1 | A.  I think twice. |
| 2 | Q.  And what position did you apply for there? |
| 3 | A.  Over-the-road driver. |
| 4 | Q.  On both occasions? |
| 5 | A.  Yes. |
| 6 | Q.  Have you ever applied for a job at Swift other |
| 7 | than over-the-road driver? |
| 8 | A.  No. |
| 9 | Q.  When was the first time that you applied for a job |
| 10 | at Swift? |
| 11 | A.  I don't recall. |
| 12 | I think the first time was when I was in school. |
| 13 | Right? |
| 14 | Q.  Was what? |
| 15 | A.  I think it was when I was in school. |
| 16 | Q.  How did you submit your application for employment |
| 17 | at Swift the first time? |
| 18 | A.  Online. |
| 19 | Q.  The first time you applied online. |
| 20 | A.  Yes. |
| 21 | Q.  How did you submit your application for Swift the |
| 22 | second time? |
| 23 | A.  I went in person. |
| 24 | Q.  I'm going to go ahead and show you what I've |
| 25 | marked as Exhibit 1 to your deposition. |

|  | Page 131 |
|---|---|
| 1 | Q.  Take a look at this application. |
| 2 | My question to you is:  Is this the first |
| 3 | application you filled out at Swift? |
| 4 | A.  I don't recall. |
| 5 | Q.  This is not an online application; correct? |
| 6 | A.  Yes. |
| 7 | Q.  It's not? |
| 8 | A.  I don't guess it is.  I don't know. |
| 9 | Q.  Well, no, it's handwritten.  It's your writing; |
| 10 | right? |
| 11 | A.  Okay.  Okay. |
| 12 | Q.  So this is not an online -- |
| 13 | A.  Okay. |
| 14 | Q.  -- application; correct? |
| 15 | A.  Okay. |
| 16 | Q.  Is that true? |
| 17 | A.  Yes. |
| 18 | Q.  Okay.  So on September 25th, 2009, you filled out |
| 19 | this application; right? |
| 20 | A.  Yes. |
| 21 | Q.  And who did you turn it in to? |
| 22 | A.  I believe it was the San Antonio office. |
| 23 | Q.  How would you have of in person turned it in in |
| 24 | San Antonio? |
| 25 | A.  I was there. |

|  | Page 130 |
|---|---|
| 1 | (Deposition Exhibit No. 1 was marked for |
| 2 | identification by the reporter.) |
| 3 | BY MR. FOSTER: |
| 4 | Q.  Did you recognize Exhibit 1 -- |
| 5 | A.  Yes. |
| 6 | Q.  -- as a -- hang on a second.  Let me have that one |
| 7 | back for a second. |
| 8 | I'm going to show you what I'm going to have |
| 9 | marked as Exhibit 24 to your deposition. |
| 10 | (Deposition Exhibit No. 24 was marked for |
| 11 | identification by the reporter.) |
| 12 | BY MR. FOSTER: |
| 13 | Q.  Do you recognize Exhibit 24 as an application for |
| 14 | employment at Swift that you filled out on September 25, |
| 15 | 2009? |
| 16 | A.  Yes. |
| 17 | Q.  Is that your handwriting? |
| 18 | A.  Yes. |
| 19 | Q.  And if you go to the last page of this |
| 20 | application, does it have your name and date? |
| 21 | A.  Yes. |
| 22 | Q.  What's the date? |
| 23 | A.  9-25-09. |
| 24 | Q.  And is that your signature there? |
| 25 | A.  Yes, it is. |

|  | Page 132 |
|---|---|
| 1 | Q.  Okay. |
| 2 | So you believe you went to Swift's office in |
| 3 | San Antonio and handed them this document. |
| 4 | A.  Yes. |
| 5 | I filled it out there. |
| 6 | Q.  Oh, you filled it out at the office. |
| 7 | A.  Yes. |
| 8 | Q.  Yes, ma'am? |
| 9 | A.  Yes. |
| 10 | Q.  The top left corner there's something, it mentions |
| 11 | a Bill Cody. |
| 12 | Do you know who that is? |
| 13 | A.  That's the district manager of Swift |
| 14 | Transportation in Phoenix. |
| 15 | Q.  In Phoenix. |
| 16 | Now, were you living in San Antonio at the time |
| 17 | you filled this out? |
| 18 | A.  Yes. |
| 19 | Q.  And that's why you think you physically walked it |
| 20 | into the San Antonio office. |
| 21 | A.  I believe so. |
| 22 | Q.  Do you recall who you gave it to? |
| 23 | A.  I have no idea.  I believe her name was Virginia. |
| 24 | I'm not for sure. |
| 25 | Q.  Was it just somebody at the counter or somebody at |

33  (Pages 129 to 132)

Tanna Hodges                    Daniel v. Swift                    6/11/2012

## Page 149

1      So my question to you is: After you submitted
2 this application, do you have any basis for believing that
3 Swift acted on your application?
4      A. No, I don't. Except that they was going to put me
5 back through school. And why would you put somebody back
6 through school, spend another $5,000 and me pay it back when
7 I already got my CDLs. That don't make any sense.
8      Q. That's what she told you before you --
9      A. Yes.
10      Q. -- turned your application in.
11      A. No. That's what she told me after I turned my
12 application in, that she would -- you know, I would be
13 hired, I would go back through the training and back to the
14 schooling, Swift training, Swift schooling.
15      Q. If you were offered a job.
16      A. No, that's what I would -- that's what she told me
17 I would do.
18      Q. No. Did she offer you a job before you left? Did
19 she hire you?
20      A. She, she --
21      Q. Did she hire you?
22      A. Will you let me answer?
23      Q. Yeah. Did she hire you? Yes or no.
24      A. She hired me to go back to school.
25      Q. Where is -- what paperwork do you have showing you

## Page 150

1 were hired?
2      A. I don't have any paperwork.
3      Q. You never talked to her ever again.
4      A. No, I didn't.
5      Q. Then you're saying she hired you, you didn't get
6 any paperwork, and you never spoke to her again.
7      A. I didn't go back through the school.
8      Q. No. You're claiming she hired you on the spot.
9      MR. O'TOOLE: Brian, she didn't say that.
10 She didn't say she hired her.
11      MR. FOSTER: Well, she said -- okay.
12      MR. O'TOOLE: I apologize. I'll just object.
13 BY MR. FOSTER:
14      Q. You're saying that right there on the spot when
15 you turned your application in she said I'm going to give
16 you $5,000 and I'm going to pay for you to go back to
17 school.
18      A. No. She didn't say that.
19 She said she would put me back through training.
20 And I had just come out of school. Why should I
21 spend $5,000 again to go back through school when I just had
22 my CDLs and then go with a trainer for them?
23      Q. Okay. Did she offer you anything?
24      A. She offered me the -- to go back through school
25 and to be put with a trainer for four to six weeks. Yes,

## Page 151

1 she did.
2      Q. If you got hired.
3      A. No. It was after I had went to school. You have
4 to go back through Swift training school. Okay?
5      Q. And you never spoke to this woman again.
6      A. No.
7 I mean, why should I spend another $5,000 to, just
8 like I said before, why should I spend $5,000 and be hired
9 with Swift and then pay back $5,000 that I've already got my
10 CDLs? Why don't you just put me with a trainer?
11 I was willing to go with a trainer. And she was
12 willing to put me with a trainer.
13      Q. Why didn't that happen?
14      A. I don't know.
15      Q. You have no reason -- no idea why that didn't
16 happen.
17      A. No, I don't.
18      Q. Do you know whether Swift ran a --
19      A. I don't know.
20      Q. Let me answer -- let me ask.
21 Do you know whether Swift ran a background search
22 after you submitted this Exhibit 24?
23 Do you know?
24      A. No.
25      Q. If I told you that Swift didn't run a background

## Page 152

1 search after you submitted this application, would you have
2 any reason to dispute that?
3      A. No.
4      MR. O'TOOLE: I need a break when it's convenient.
5 BY MR. FOSTER:
6      Q. If I told you that Swift didn't act on your
7 application because it was incomplete, because you left that
8 section blank, would you have any reason to dispute that?
9      MR. O'TOOLE: Objection.
10      THE WITNESS: I don't -- I don't believe they -- I
11 don't believe they acted on it.
12 I mean, if I left it blank, why didn't they hand
13 me back the application to fill in?
14 BY MR. FOSTER:
15      Q. My --
16      A. Common sense question.
17      Q. So your answer is just common sense, but you don't
18 have any, any basis for believing that Swift didn't
19 disregard your application because it was incomplete.
20      A. No.
21      Q. You don't know one way or the other.
22      A. No. I don't believe I -- I don't believe they
23 did.
24      Q. But you don't know. That's your belief.
25      A. No, I don't know.

38 (Pages 149 to 152)

Tanna Hodges                  Daniel v. Swift                  6/11/2012

## Page 157

1    Q.  And you didn't think it was important to list your
2    most recent employers?
3    A.  No.
4    Q.  Why?
5    A.  I just didn't.
6    Q.  So you thought it was important to list your jobs
7    from 20 years earlier, but not your jobs from one or two
8    years earlier; is that right?
9    A.  Yes.
10   Q.  Does that make any sense?
11   A.  Not really.
12   Q.  Do you think your employer would be more
13   interested in your most recent jobs or your jobs from
14   20 years ago?
15   A.  Probably from 20 years ago.
16   Q.  And, again, there's the section of this
17   application on the last page where it says that:  I
18   understand that if I -- I understand and agree that any
19   misrepresented, inaccurate, misleading, incomplete or
20   omitted information provided by me in this application will
21   be sufficient cause for cancellation of this application.
22        Do you see that?
23   A.  I see it.
24        Like I said, I didn't read it.
25   Q.  Whether you read it or not, that's what it says;

## Page 158

1    right?
2    A.  Yes, that's what it says, but I still didn't read
3    it.
4    Q.  Okay.
5        Do you think that you should be excused from a
6    document because you didn't read it?
7    A.  No.
8    Q.  Do you know who Bill Cody is?
9    A.  It's the head man over Swift Transportation.
10   Q.  Okay.
11        You never talked to him.
12   A.  I don't, I don't know whether I did or not.
13        I talked to -- I've talked to so many people with
14   Swift.  Okay?
15   Q.  So far you've talked about Virginia.
16        With this application --
17   A.  Okay.
18   Q.  -- you talked to Virginia; right?
19   A.  Okay.  I might have talked to Bill Cody.
20        You don't remember.
21   A.  No, I don't.
22   Q.  Well, with this application, you went there, you
23   filled it out, you turned it in, and after you turned it in
24   you talked with a woman, Virginia, who was working there;
25   right?

## Page 159

1    A.  Right.
2    Q.  And she talked to you about Swift's truck driving
3    school; right?
4        Yes?
5    A.  Yes.
6    Q.  And you weren't interested in that; right?
7    A.  No.  I just got -- I had just gotten my CDL.
8    Q.  No, you were not interested in Swift's truck
9    driving school.
10   A.  Yes, I told them that I would go back to school.
11   Q.  And you would pay for it.
12   A.  Well, it would come out of my check.
13        That's the way they work down there.
14        You go to work, you're on the truck training with
15   a trainer, and then it comes out of your, your paycheck.
16   Q.  Okay.  I'm going to show you what has been marked
17   as Exhibit 1 to your deposition.  And I'd like you to keep
18   Exhibit 24 in front of you there too.
19        Those are -- Exhibit 1 is a September 29, 2009,
20   application for employment that you filled out with Swift
21   Transportation; correct?
22   A.  Yes.
23   Q.  Is that your handwriting on Exhibit 1?
24   A.  Yes.
25   Q.  You filled that in yourself.

## Page 160

1    A.  Yes.
2    Q.  And you signed it and dated it on the last page.
3    A.  Yes.
4    Q.  So this one was submitted on what date?
5    A.  The 29th, September 29th.
6    Q.  Of 2009?
7    A.  '9.
8    Q.  And the one we just looked at, Exhibit 24, was
9    submitted four days earlier on September 25, 2009 --
10   A.  Right.
11   Q.  -- right?
12   A.  Right.
13   Q.  Where did you fill this one out?
14   A.  This one?
15   Q.  Exhibit 1.
16   A.  Columbus, Ohio.
17   Q.  In Ohio.
18   A.  Yes.
19   Q.  Okay.  And where did you turn it in at?
20   A.  Columbus, Ohio.
21   Q.  The terminal at Columbus, Ohio.
22   A.  Yes.  Yes.
23   Q.  So Exhibit 1 you turned in in Columbus, Ohio;
24   correct?
25   A.  Yes.

40 (Pages 157 to 160)

Tanna Hodges                    Daniel v. Swift                    6/11/2012

Page 173

1   application, you attempted to contact Ms. Kepler, and you
2   never heard back from her.
3       A.  No, I didn't.
4       Q.  Do you have any reason to believe -- well, strike
5   that.
6           Do you have any reason to believe that Swift ran a
7   background check, a criminal background check on you after
8   you submitted your September 29 application?
9       A.  No.
10      Q.  You don't know one way or the other.
11      A.  No, because it doesn't say on here doing a
12  complete background check.
13      Q.  Okay.  So --
14      A.  Aren't you supposed to have that other sheet of
15  paper that says you going to do a Usis or database or some
16  type of application stating they're going to do a background
17  check?
18      Q.  I'm not sure I understand you.
19          But my question to you was:  You don't have any
20  reason to believe that Swift ran a background check on you
21  after you submitted Exhibit 1 --
22      A.  I believe they run where I was driving, and my,
23  and my driving history, my work history.  Okay?
24      Q.  How do you know that?
25      A.  Well, I just figured they did.

Page 174

1   I mean, she sits there and hires me in as an
2   eight-year experienced driver.  Okay?  And then I don't hear
3   back from her.  Come on.
4       Q.  Maybe that's because you weren't hired.
5       A.  No, it's because she did hire me sitting there at
6   the table.
7       Q.  Back to my question.
8           Do you have any reason to believe that Swift ran
9   any type of a background check on you?
10      A.  I don't know.
11      Q.  Criminal or otherwise.
12      A.  I don't know.
13      Q.  And that's the same for your September 25, 2009,
14  application and your September 29, 2009, application.
15  You just don't know; correct?
16      A.  I don't know if they run a background check or
17  not, but. . .
18      Q.  Do you know whether this Kris Kepler had authority
19  to hire people at Swift?
20      A.  I -- yes, I do believe she did.
21      Q.  How do you know that?
22      A.  Well, because I spoke to her.
23          Why would she sit there and lie?
24      Q.  So that's, that's the only basis for your
25  believing that --

Page 175

1       A.  My brother's girlfriend was sitting there with me
2   when all this took place.
3       Q.  Do you know who, who makes hiring decisions at
4   Swift?
5       A.  I have no idea.
6       Q.  Do you know if Swift has a separate recruiting and
7   hiring department?
8       A.  I don't know.
9           Like I said, you know, she was a recruiter.  I
10  talked to her.  And this is what she told me.  So. . .
11      Q.  But you don't know if she actually had authority
12  to hire anybody, do you?
13          MR. O'TOOLE:  She already answered that question,
14  Brian.  How many times do we have to do this?
15          MR. FOSTER:  I don't think she has answered it.
16          MR. O'TOOLE:  Come on.
17          THE WITNESS:  I did answer it.  What do you want
18  me to do?
19  BY MR. FOSTER:
20      Q.  What did you say?
21      A.  What I did say?  You, you tell me what I said.
22          MR. O'TOOLE:  Please answer the question.
23          THE WITNESS:  I went in there and I spoke to her,
24  I filled out my application, and I went back in there, and
25  spoke to her.  And my brother's girlfriend was with me.  And

Page 176

1   she hired me in.  She told me she would put me in as an
2   eight-year experienced driver, put me with a trainer for
3   four to six weeks and go from there.
4   BY MR. FOSTER:
5       Q.  My question was:  Did you know whether she had
6   authority to hire?
7       A.  No, I don't know whether she had authority, but I
8   figure that if someone tells you they're going to hire you,
9   you know, that gives -- does that not give her authority to
10  hire me?
11      Q.  No, it doesn't.
12      A.  Then she lied.
13          MR. O'TOOLE:  Here we go again.  Stop.  Please.
14  It's getting totally out of hand, totally uncalled for, and
15  you're unprofessional.  You're arguing with the witness,
16  Brian.
17          MR. FOSTER:  I disagree with your
18  characterization.
19          MR. O'TOOLE:  I understand.
20  BY MR. FOSTER:
21      Q.  Now, did you review the complaint, the lawsuit
22  that was filed in this case?
23      A.  Did I review it?
24      Q.  Yes.
25          This big first amended complaint, or first amended

44 (Pages 173 to 176)

Tanna Hodges                    Daniel v. Swift                    6/11/2012

|  | Page 177 |
|---|---|
| 1 | class action complaint for jury, did you see that? |
| 2 | A. I probably did. |
| 3 | Q. Okay. |
| 4 | In paragraph 16 of this first amended class action |
| 5 | complaint for jury, it states that on September 25, 2009, |
| 6 | Hodges applied in person for a commercial truck driver |
| 7 | position with Swift, a copy of Hodges' application is |
| 8 | attached as Exhibit A. |
| 9 | Are you aware that the complaint filed in this |
| 10 | case only refers to your first application, the |
| 11 | September 25, 2009 -- |
| 12 | A. No, I didn't. |
| 13 | Q. -- application? |
| 14 | A. No, I didn't. |
| 15 | Q. Do you know why that happened or why -- |
| 16 | A. No, I don't. |
| 17 | Q. -- that's the case? |
| 18 | So you -- your testimony is that you submitted |
| 19 | both of these applications, Exhibit 1 and 24. |
| 20 | A. Yes. |
| 21 | Q. And after you submitted both of these |
| 22 | applications, you never heard back from anybody at Swift. |
| 23 | A. No. |
| 24 | Q. Correct? |
| 25 | A. No. |

|  | Page 178 |
|---|---|
| 1 | Q. It's correct you didn't hear back? |
| 2 | A. No, I didn't. |
| 3 | Q. No, you didn't hear back? |
| 4 | A. No, I didn't hear back. |
| 5 | Q. Do you have any facts that suggest that Swift |
| 6 | ordered a criminal background report -- |
| 7 | A. No. |
| 8 | Q. -- from HireRight? |
| 9 | A. No, I don't. |
| 10 | Q. Or from anybody? |
| 11 | A. No. |
| 12 | Q. Do you know whether the Fair Credit Reporting Act |
| 13 | applies if Swift denies your employment without obtaining a |
| 14 | criminal background report? |
| 15 | MR. O'TOOLE: Seriously? |
| 16 | MR. FOSTER: Oh, no -- |
| 17 | MR. O'TOOLE: Objection. Objection. How would |
| 18 | she -- objection. |
| 19 | BY MR. FOSTER: |
| 20 | Q. Let me ask you a question. |
| 21 | Do you know whether -- |
| 22 | A. What's my credit got to do with driving truck? |
| 23 | Q. Okay. I appreciate that, but try to answer my |
| 24 | question. |
| 25 | A. I did. |

|  | Page 179 |
|---|---|
| 1 | MR. FOSTER: And I don't appreciate the speaking |
| 2 | objection either, Dennis. I've given you some latitude -- |
| 3 | MR. O'TOOLE: I apologize for that. Just -- I |
| 4 | apologize for that. It was uncalled for. |
| 5 | BY MR. FOSTER: |
| 6 | Q. Do you know whether the Fair Credit Reporting Act |
| 7 | would apply if Swift denied your -- |
| 8 | A. No. |
| 9 | Q. -- if Swift denied your employment application -- |
| 10 | A. No. |
| 11 | Q. -- without running a background check? |
| 12 | A. No, no. |
| 13 | Q. You don't know what? |
| 14 | A. I don't know why they would do a credit report on |
| 15 | me anyway? |
| 16 | What's that got to do with driving truck? |
| 17 | Nothing. |
| 18 | Q. Criminal background check? |
| 19 | A. No, your -- you said credit. |
| 20 | You didn't say anything about criminal. You said |
| 21 | credit. |
| 22 | Q. So you submitted two applications, and as far as |
| 23 | you know Swift never ran a criminal background check on |
| 24 | either one. |
| 25 | A. I don't know. |

|  | Page 180 |
|---|---|
| 1 | They never got back with me, so I don't know. |
| 2 | Q. Were these the only two times you applied? |
| 3 | A. No, I believe I filed online. And don't ask me |
| 4 | the date because I don't know. |
| 5 | Q. Are you at all familiar with Swift's recruiting |
| 6 | policies or procedures? |
| 7 | A. I know they put you with a trainer for four to six |
| 8 | weeks. |
| 9 | Q. Anything other than that? |
| 10 | A. No. |
| 11 | Q. Do you know what the term prequalifying means? |
| 12 | A. Well, yes. |
| 13 | Q. What did you think that meant? |
| 14 | A. That I was qualified to drive truck. |
| 15 | Q. Do you know when during the application process |
| 16 | Swift orders criminal background reports? |
| 17 | A. I figured within the next two or three days. |
| 18 | Q. What's the basis for that? |
| 19 | A. To check your driving history, your work related |
| 20 | jobs. |
| 21 | Q. No, what's the basis for you believing that? |
| 22 | What's the basis for you believing that they'd run it within |
| 23 | two or three days? |
| 24 | A. I just figured they would. |
| 25 | Q. Other than you figuring that -- |

45 (Pages 177 to 180)

Tanna Hodges                    Daniel v. Swift                    6/11/2012

| Page 181 | Page 183 |
|---|---|

**Page 181**

1    A.   I mean, how long is it going to take? Six months?
2    Q.   Other than you figuring that they would run it,
3  did anybody ever tell you they would?
4    A.   No.
5    Q.   Did you ever speak with anybody with Swift
6  security or investigation department?
7    A.   No.
8    Q.   Nobody ever called you up and talked to you about
9  your criminal history or background.
10   A.   No, no.
11       Not that I recall.
12   Q.   You don't recall speaking with somebody in
13  September of 2009 about that.
14   A.   No.
15       Are you referring to Tom Cook?
16   Q.   No, I'm just asking what you remember.
17   A.   No.
18   Q.   Okay. So you think you applied for work at Swift
19  at some point after September 25, 2009.
20   A.   I think so.
21   Q.   Did you, did you ever take an online test as part
22  of your application with Swift?
23   A.   No.
24   Q.   Were you ever asked to?
25   A.   No.

**Page 182**

1    Q.   Let's, let's take a look at Exhibit 23 to your
2  deposition.
3        I'll have that marked for you.
4        (Deposition Exhibit No. 23 was marked for
5  identification by the reporter.)
6  BY MR. FOSTER:
7    Q.   Do you, Ms. Hodges, recognize Exhibit 23 as a
8  December 12, 2009, online application that you typed in and
9  submitted?
10   A.   Yes, I typed it in.
11   Q.   Actually it's dated December 12, 2009. I
12  apologize.
13       Do you see that on the front page?
14   A.   Yes.
15   Q.   At the very top.
16   A.   Yes.
17   Q.   Okay.
18       So, you applied twice in September, September 25
19  and 29; correct?
20   A.   Okay.
21   Q.   Is that right?
22   A.   Yes.
23   Q.   And then again, Ms. Hodges, on December 12, 2009,
24  you applied online; is that right?
25   A.   Yes.

**Page 183**

1    Q.   Okay. So at the top on Page 1, Ms. Hodges, it's
2  got your name, first name, last name, middle initial.
3        Do you see that?
4    A.   Yes.
5    Q.   Does this refresh your memory that you applied
6  back on this date?
7    A.   Yeah.
8    Q.   Okay.
9        And you submitted this, what they call a web
10  application or website application.
11   A.   Okay.
12   Q.   Right?
13   A.   Right.
14   Q.   And did you, did you type in and fill this
15  application out, Ms. Hodges?
16   A.   Most of it.
17   Q.   Okay. Who else would have typed it in?
18   A.   I just quit.
19   Q.   Okay.
20       When you say you quit, what do you mean?
21   A.   I quit on Page 2. I didn't answer the rest of the
22  questions.
23   Q.   Okay. Well, let's, let's finish getting through
24  this thing here, Ms. Hodges.
25       Did you type it in at home?

**Page 184**

1    A.   I believe so.
2    Q.   On the computer that you said got stolen.
3    A.   Yes.
4    Q.   And you submitted it from there.
5    A.   Yes.
6    Q.   Do you know whether you authorized a criminal
7  background check in this application?
8    A.   I don't know whether I did or not.
9    Q.   Okay. Did you interact with a Swift recruiter
10  during this application --
11   A.   No.
12   Q.   -- process?
13   A.   No. I didn't.
14   Q.   Okay. This was just done online; is that right,
15  Ms. Hodges?
16   A.   Yes, yes.
17   Q.   Okay.
18       Looking at the last page of the application, at
19  the top, do you see where it says acknowledgment?
20   A.   Yes.
21   Q.   Okay.
22       Can you read that first sentence there?
23   A.   I give Swift Transportation, Inc., the company,
24  the right to investigate all references and to secure
25  additional information about me if job related.

46  (Pages 181 to 184)

# EMPLOYMENT APPLICATION

QUALIFIED APPLICANTS ARE CONSIDERED WITHOUT REGARD TO RACE, COLOR, RELIGION, SEX, NATIONAL OR ORIGIN, AGE, MARITAL STATUS, VETERAN STATUS OR DISABILITY
EQUAL EMPLOYMENT OPPORTUNITY EMPLOYER

How did you hear about our Company?

Join Swift.com   Jon Cook

**SWIFT**

800 4416

405

2200 S. 75th Ave. • Phoenix, AZ 85043

ALL AREAS IN RED
MUST BE COMPLETED

**Kris Keplar**
**Phone #614-308-2341**
**Fax #888-478-4543**

900 302043

Date of Application: 9 - 29 - 09

Name __Hodges  TANNA  Lee__
LAST   FIRST   MIDDLE

Social Security No. |7|6|8|-|5|8|-|5|7|2|9|

Present Address __3185 Valley Chaple Rd__   Phone (740) 701-2357
STREET   CITY   STATE   ZIP

Previous Address(es) during last 3 years (FMCSR 391.21(b) (3)) __Jackson Ohio 45640__

New Address 3371IRA APT F SanAfton 10 TX 78209

Date of Birth (required by FMCSR 391.21 (b) (2) to verify motor vehicle report) __FeB. 18, 1953,__

In case of emergency notify __Shirley Hunter  23 WarrenDR__   (740)642-5194
NAME   ADDRESS   PHONE

Alternate Emergency Phone # __210-907-5020__  Name __Cary Bias / Daughter__
838.5647

Have you applied for work and/or worked for this company before? ☑ Yes ☐ No   When ? _____

If hired, can you present evidence of your U.S. Citizenship or proof of your legal right to live and work in this country? ☑ Yes ☐ No

Position which applying for: __Over the Road Driver__

re you able to perform the essential functions and duties of the job as contained in the job description with or without reasonable accommodation? ☑ Yes ☐ No

How did you find out about Swift? ☐ Newspaper ☑ Truck Driving Publication ☐ Employee Referral ☐ Other __Southern States__

A. ☐ Yes ☑ No   Have you ever been denied a license, permit or privilege to operate a motor vehicle?   If yes, explain (49CFR391.21(b)(9)) _____
B. ☐ Yes ☑ No   Has any license, permit or privilege suspended or revoked?
C. ☐ Yes ☑ No   Have you ever been stopped while intoxicated? ☐ Yes ☐ No   Were you driving a Commercial Motor Vehicle?
D. ☐ Yes ☑ No   Have you ever used any illegal drugs (including marijuana)?   If yes, when was the last time? _____
E. ☐ Yes ☑ No   Have you ever been convicted for possession of, sale, or use of a narcotic drug, amphetamine, or a derivative thereof?
F. ☑ Yes ☐ No   Have you ever been convicted of a criminal offense? (A conviction will not necessarily disqualify you from employment.)
G. ☐ Yes ☑ No   Do you currently have any criminal actions pending in which you are a defendant? (A "yes" answer will not necessarily disqualify you from employment.)
H. ☐ Yes ☑ No   Are you currently on probation or parole status? (A "yes" answer will not necessarily disqualify you from employment.)
I. ☐ Yes ☑ No   Have you tested positive, or refused to test, on any preemployment drug or alcohol test administered by an employer to which you applied for, but
did not obtain, safety, sensitive transportation work covered by DOT agency drug and alcohol testing rules in the last three years? (49 C.F.R. 40.25(J))
Yes to any of the above questions, state circumstances and dates: _____

## EDUCATION

Circle highest grade completed   1 2 3 4 5 6 7 8   High School 1 2 ③ 4   College 1 2 3 4   Graduate School 1 2 3   170

List other specialty training or schools __MTA TRUCK DRIVING School / out of Business Columbus__
__Southern States community College / 200 Hobart Drive, Hillboro, Ohio__

## MILITARY STATUS

Have you served in the U.S. Armed Forces? ☑ Yes ☐ No   Branch _____   Dates: From _____ To _____

Duties _____

HODGES RFP - 000006

EXHIBIT# __1__

WITNESS __Hodges__

Social Security No. [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ]

## DRIVING EXPERIENCE

| CLASS OF EQUIPMENT | TYPE OF EQUIPMENT VAN-TANK-FLAT-ETC. | FROM | DATES | TO | APPROX. NO. OF MILES TOTAL |
|---|---|---|---|---|---|
| STRAIGHT TRUCK | | | | | |
| TRACTOR AND TRAILER | PeterBilt   1985 | 8-10-83 | | 8-15-89- | million |
| TRACTOR AND TWO TRAILERS | | | | | |
| OTHER | | | | | |

## LICENSE LIST ALL DRIVERS LICENSES HELD IN PAST FIVE YEARS (NOTE A COPY of your valid drivers license or CDL must be attached to your application to be considered.)

| STATE | LICENSE NUMBER | TYPE | ENDORSEMENTS | ISSUE DATE | EXPIRATION DATE |
|---|---|---|---|---|---|
| NC | 9966185 | OR | | 1994 | 2008 |
| OhiO | PA 412037 | CLASS A | Tank, HAS, Doubles | 8-17-09 | 12-11011 2-7BO11 |

## MOVING TRAFFIC CONVICTIONS (LIST FOR PAST FIVE (5) YEARS. IF NONE WRITE NONE)

| STATE | DATE | LOCATION (STATE) | CHARGE | PENALTY |
|---|---|---|---|---|
| Va | 8-25-05 | Virginia Beach Va | Rador Decti Jam | W/current |
| NC | 3-7-05 | Lenoir NC. | Speeding | Went to Driving CLASS |
| NC | 3-20-05 | " " | No IN. | Diss missed |

## ACCIDENT RECORD IF NONE WRITE NONE
LIST ALL INVOLVEMENT WITH TRUCK AND CAR INCLUDING PROPERTY DAMAGE FOR PAST FIVE YEARS. INCLUDING PREVENTABLE AND NON-PREVENTABLE.

| DATE | TYPE VEHICLE | NATURE OF ACCIDENT HEAD ON REAR END UPSET ETC.) | INDICATE PREVENTABLE OR NON-PREVENTABLE | FATALITIES | INJURIES | AMOUNT OF PROPERTY DAMAGE |
|---|---|---|---|---|---|---|
| 6-12-85 | PeterBilt | upset | Von-Preventable | NONE | minor | Totaled out every Thing. |

## STATES IN WHICH YOU HAVE OPERATED A CLASS-A MOTOR VEHICLE IN THE PAST FIVE YEARS

LIST ALL STATES         None

## REFERENCES (Please list 2 people able to verify your employment and personal history. Such as co-worker, neighbor, customer or an outstanding citizen of your community. Do not list relatives.)

1. Name Joe Cable                   Relationship Friend
   Address 2300 Tacks Fork Rd       Phone # 828-758-2949
           Lenoir NC. 28645

2. Name William Robinson            Relationship Friend
   Address 93 Kreider Rd  Wellston Ohio   Phone # 740-4185137 / 740 344
                                                                  5796

## ACKNOWLEDGEMENT

I give Swift Transportation, Inc. (the Company) the right to investigate all references and to secure additional information about me. If job-related, I release from liability the Company and its representatives for seeking such information and all other persons, corporations or organizations for furnishing such information. A copy of this paper serves as my authorization for release of this information. I agree to sign all documents and consent forms which the Company deems necessary to verify the facts provided in this application. I give my consent and release from liability the Company and its representatives, that will respond to any inquiries made about me as part of a reference check by any subsequent or potential employer.

From time to time the company may find it necessary to conduct investigations. If it does, employees are expected to truthfully participate and cooperate in such investigations, including submission to searches of property. Failure to do so may subject employees to disciplinary action, which may include termination of employment.

I realize as a condition of employment I will be required to undergo a post offer/pre-employment medical examination and substance abuse screening test at the expense of and as prescribed by the Company, and that I will agree, as a condition of employment conditioned upon the successful completion of these tests. I agree to furnish such additional information and undergo any other examinations or tests to complete the employment file, or to continue my employment with the Company. If employed. These tests may include, but are not necessarily limited to random, for cause, reasonable suspicion or post accident alcohol and substance screening tests. Further, I release the Company, its agents or employees from any and all claims or actions arising out of such alcohol and substance abuse tests including, but not limited to, the testing procedures, the analysis or the disclosure of test results.

I understand that any offer of employment is contingent upon my ability to produce documentation verifying my identity and legal authorization to be employed, as required by the Immigration Reform & Control Act of 1986 (IRCA).

This application is active for sixty (60) days from the date it is completed, or until the specific position opening for which it was submitted is closed, whichever is earlier. Subsequent to the preceding consideration period, I must submit a new application to be considered for this, or any other position.

I understand and agree that any misrepresented, inaccurate, misleading, incomplete or omitted information provided by me in this application will be sufficient cause for cancellation of this application and/or separation from the Company's service if employed. Further, I understand that just as I am free to resign at any time, for any reason, with or without prior notice, the Company reserves the right to terminate my employment at any time, for any reason, with or without prior notice. I understand that no representative of the Company has the authority to make any verbal or written assurances to the contrary. I recognize the employment relationship to be an at-will relationship and not for a specific period of time. This application represents the complete and final expression of the intent of the parties and may not be modified except by a writing duly executed by the undersigned and the President of the Company.

I hereby agree to submit to binding arbitration all disputes and claims arising out of the submission of this or formal application. I further agree, in the event that I am offered employment by the company, as a condition of that employment, and disputes that cannot be resolved by informal internal resolution which might arise out of my employment with the company, whether during or after that employment, will be submitted to binding arbitration in lieu of any Federal or State investigative, administrative or legal proceeding. I agree that such arbitration shall be conducted under the rules of the American Arbitration Association. This application contains the entire agreement between the parties with regard to dispute resolution, and there are no other agreements as to dispute resolution, either oral or written.

I have read carefully the above information, understand and accept the contents thereof. This verifies that this application was completed by me, and that all entries on it and the information provided in it are true and complete to the best of my knowledge.

Tanna Ledholge                    Date 9-29-09

HODGES RFP - 000007

## Driver Recruiting Process - Online Application

*All information in RED letters is required*

Application Date: 12/12/2009

**Do you know the name of your recruiter?**   I don't know

Job(s) applying for:
(Ctrl-Click to select more
than one job)

AAA I need to attend school

**Experience level:**   Has Class A CDL but needs training

### Drivers Personal Information

| | | | |
|---|---|---|---|
| First Name | Tanna | Last Name | Hodges |
| Middle Initial | L | | |
| Birthdate | (MM/DD/YYYY) | Social Security # | |
| Comment | I HAVE GOT MY CDL S | | |

### Driver's License & CDL Information

No. PA412037   State Ohio   Expires 02/18/2011   (MM/DD/YYYY)

CDL Holder?   Yes

CDL Endorsements   ☑HAZMAT ☐Doubles ☐Triples ☑Tankers

**Contact Info**

### Driver Address

| | | | | |
|---|---|---|---|---|
| Street Address | 337 IRA APT.F | | | |
| City | SAN ANTONIO | State Texas | Zip 78209 | |
| County | BEXAX | | | |
| How long at this address? | 1 MONTH | | | |

| | | | | |
|---|---|---|---|---|
| Street Address | 3185 VALLEY CHAPLE RD. | | | |
| City | JACKSON | State Ohio | Zip 45540 | |
| County | JACKSON | | | |
| How long at this address? | 4 YRS | | | |

| | | | | |
|---|---|---|---|---|
| Street Address | 1473 RED MARTIN PL. | | | |
| City | LENOIR | State North Carolina | Zip 28645 | |
| County | CALDWELL | | | |
| How long at this address? | 13 YRS | | | |

| | | | | |
|---|---|---|---|---|
| Street Address | | | | |
| City | | State | Zip | |
| County | | | | |
| How long at this address? | | | | |

### Contact Information

| | | | |
|---|---|---|---|
| Home Phone | 748/781/2357 | Fax | |
| Cell # | | 2nd Phone | |
| Email Address | TBNX, DRIFTER718YAH | | |

May we request information on you from outside consumer reporting agencies?   ☑Yes ☐No

Comments:

[Continue]

EXHIBIT# 23
WITNESS Hodges
REDACTED
STC212825

**Driver Recruiting Process – Online Application**
*All information in RED letters is required.*                    Application Date: 12/12/2009

Do you know the name of your recruiter?     I don't know ▼

Job(s) applying for:                          AAA I need to attend school ▼
(Ctrl-Click to select more
than one job)

Experience level:                            Has Class A CDL but needs training ▼

**Driver Personal Information**

First Name    Tanna           Last Name      Hodges

Middle Initial   L

Birthdate                     Social Security #
             (MM/DD/YYYY)

Comment      I HAVE GOT MY CDL.S

**Driver's License & CDL Information**

No.  PA412037          State   Ohio ▼          Expires 02/18/2011     (MM/DD/YYYY)

CDL Holder?            Yes ▼

CDL Endorsements        ☑ HAZMAT  ☐ Doubles  ☐ Triples  ☑ Tankers

**Pre-Hire Questionnaire**

Have you ever applied for work and/or worked for this company before?           ◉ Yes  ○ No

If yes, when? 09/29/2009

If hired, can you present evidence of your U.S. Citizenship or proof of your legal right to        ◉ Yes  ○ No
live and work in this country?

Are you able to perform the essential functions and duties of the job as contained in the         ◉ Yes  ○ No
job description with reasonable accommodations?
Click here to view job description

Have you ever been denied a license, permit or privilege to operate a motor vehicle?           ○ Yes  ◉ No

If yes, then when and why?

Has any license, permit or privilege ever been suspended or revoked?             ○ Yes  ◉ No

If yes, then when and why?

Have you ever been stopped while intoxicated?                    ○ Yes  ◉ No

If yes, then when?

Have you ever used any illegal drug (including marijuana)? If yes, when was the last time?      ○ Yes  ◉ No

If yes, then when?

Have you ever been convicted for possession, sale, or use of a narcotic drug, amphetamine       ○ Yes  ◉ No
or a derivative thereof?

Comments:

Have you ever been convicted of a criminal offense? In California, 'crime' shall exclude         ○ Yes  ◉ No
convictions for marijuana-related offenses that are more than two years old, as defined in California
Heath and Safety Code section 11357 (b) and (c) and 11360 (d), or in California Heath and Safety
Code sections 11364, 11365, or 11550 of the Health and Safety Code as they related to marijuana prior
to January 1, 1976, or the statutory predecessors.

Comments:

Do you currently have any criminal actions pending in which you are a defendant?        ○ Yes  ◉ No

If yes, explain:

Are you currently on probation or parole?                    ○ Yes  ◉ No

If yes, explain:

[ << Continue >> ]

REDACTED                          STC212826

# Driver Recruiting Process – Online Application
All information in red letters is required                    Application Date: 12/12/2009

**Do you know the name of your recruiter?**   I don't know ▼

**Job(s) applying for:**                                              ▼
(Ctrl-Click to select more
than one job)                                   AAA I need to attend school ▼

**Experience level:**                           Has Class A CDL but needs training ▼

**Personal Information**

| | | | |
|---|---|---|---|
| **First Name** | Tanna | **Last Name** | Hodges |
| **Middle Initial** | L | | |
| **Birthdate** | (MM/DD/YYYY) | **Social Security #** | |
| **Comment** | I HAVE GOT MY CDL.S | | |

**Current License & CDL Information**

| | | | | |
|---|---|---|---|---|
| No. PA412037 | State Ohio ▼ | | Expires 02/18/2011 | (MM/DD/YYYY) |
| CDL Holder? | Yes ▼ | | | |

**CDL Endorsements**   ☑ HAZMAT ☐ Doubles ☐ Triples ☑ Tankers

**Driver Information**

Please complete the driving experience information below:

**Have you had licenses in other states in the last 5 years?**   Yes ▼

| State | License Type | License Number |
|---|---|---|
| North Carolina ▼ | OP. | 9966185 |
| Ohio ▼ | CDL | PA412037 |
| Arkansas ▼ | CDL | N/A |

**List all states in which you have operated a Class A motor vehicle in the past 5 years:**
NONE JUST GOT OUT OF SCHOOL...

| CLASS OF EQUIPMENT | TYPE OF EQUIPMENT: Van, Tank, Flat, etc. | FROM: (MM/DD/YYYY) | TO: (MM/DD/YYYY) | APPROX. NO. OF MILES TOTAL |
|---|---|---|---|---|
| STRAIGHT TRUCK | | | | 0 |
| TRACTOR AND SEMI TRAILER | VAN | 03/30/84 | 06/15/09 | |
| TRACTOR AND TWO TRAILERS | | | | 0 |
| OTHER | | | | |

**How many moving violations have you had in the last 5 years?**   0

| DATE (MM/DD/YYYY) | LOCATION (STATE) | CHARGE | PENALTY |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**How many accidents have you had in the last 5 years?**   1

| DATE (MM/DD/YYYY) | TYPE VEHICLE | NATURE OF ACCIDENT (HEAD-ON, REAR END, UPSET, ETC.) | INDICATE PREVENTABLE OR NON-PREVENTABLE | FATALITIES | INJURIES | AMOUNT OF PROPERTY DAMAGE |
|---|---|---|---|---|---|---|
| 12 15 2006 | FORD CAR | | | NO | NO | TURN SINGLE LITE BAD |
| | | | | | | |
| | | | | | | |

REDACTED                                    STC212827

**Driver Recruiting Process – Online Application**
*All information in RED letters is required*                      Application Date: 12/12/2009

**Do you know the name of your recruiter?**          ! don't know

**Job(s) applying for:**
(Ctrl-Click to select more                          AAA I need to attend school
than one job)

**Experience level:**                               Has Class A CDL but needs training

## Driver Name and Information

| | | | |
|---|---|---|---|
| **First Name** | Tanna | **Last Name** | Hodges |
| **Middle Initial** | L | | |
| **Birthdate** | (MM/DD/YYYY) | **Social Security :** | |
| **Comment** | I HAVE GOT MY CDL.S | | |

## Driver's License & CDL Information

| | | | |
|---|---|---|---|
| **No.** PA412037 | **State** Ohio | **Expires** 02/16/2011 | (MM/DD/YYYY) |
| **CDL Holder?** | Yes | | |
| **CDL Endorsements** | ☑HAZMAT ☐Doubles ☐Triples ☑Tankers | | |

## Work History

3 years of work history are required. 10 years of work history are required if any commercial driving experience was during that time period.

### Work History

| Company Name: | 76 TRUCK STOP | | From: 07/15/1991 (MM/DD/YYYY) | To: 09/15/1993 (MM/DD/YYYY) | May we contact this employer? ● Yes ○ No |
|---|---|---|---|---|---|
| Street Address: | I /40 GALLAWAY /VAVINTINE RD. | | | | |
| City | LITTLE ROCK  AR. | State | | Zip 78209 | |
| Phone: | 1800/872/7012 | Supervisor's Name: | | | |
| Position: | WAITRESS | Type of Equip. Driven: | | | |
| Reason for leaving: | MOVED TO N.C | | | | |

| Company Name: | WILLIOWBEY | | From: 10 25 1988 (MM/DD/YYYY) | To: 03 10 1988 (MM/DD/YYYY) | May we contact this employer? ● Yes ○ No |
|---|---|---|---|---|---|
| Street Address: | SEYMORE IN. | | | | |
| City | OUT OF BUSSINESS | State | | Zip 78209 | |
| Phone: | | Supervisor's Name: | | | |
| Position: | | Type of Equip. Driven: | | | |
| Reason for leaving: | | | | | |

| Company Name: | MID WEST CONT | | From: 03/30/1984 (MM/DD/YYYY) | To: 8/15/ 1985 (MM/DD/YYYY) | May we contact this employer? ● Yes ○ No |
|---|---|---|---|---|---|
| Street Address: | 333941 PREBLON DR. | | | | |
| City | SIOUX CITY IOWA | State  Iowa | | Zip 78209 | |
| Phone: | 1712/239/1613 | Supervisor's Name: CHAR HORRNEY | | | |
| Position: | O.T ROAD | Type of Equip. Driven: PETERBILT 1985 | | | |
| Reason for leaving: | CAME OFF THE ROAD TO RAISE KIDS | | | | |

| Company Name: | | | From: (MM/DD/YYYY) | To: (MM/DD/YYYY) | May we contact this employer? ○ Yes ○ No |
|---|---|---|---|---|---|
| Street Address: | | | | | |
| City | | State | | Zip 78209 | |
| Phone: | | Supervisor's Name: | | | |
| Position: | | Type of Equip. Driven: | | | |
| Reason for leaving: | | | | | |

| Company Name: | | | From: (MM/DD/YYYY) | To: (MM/DD/YYYY) | May we contact this employer? ○ Yes ○ No |
|---|---|---|---|---|---|
| Street Address: | | | | | |
| City | | State | | Zip 78209 | |
| Phone: | | Supervisor's Name: | | | |
| Position: | | Type of Equip. Driven: | | | |
| Reason for leaving: | | | | | |

REDACTED

STC212828

Comment
(MM/DD/YYYY)
I HAVE GOT MY CDL.S

**Driver's License & CDL Information**

No. PA412037        State  Ohio        Expires 02/18/2011      (MM/DD/YYYY)

CDL Holder?        Yes ▾

CDL Endorsements        ☑HAZMAT ☐Doubles ☐Triples ☑Tankers

| | | | | Education/Military Service | |
|--|--|--|--|--|--|

What is the highest grade you've completed? 11TH

High School

| Name | Graduate? | Degree | Major/Minor |
|------|-----------|--------|-------------|
| JACKSON | ○ Yes ◉ No | | |

College

| Name | Graduate? | Degree | Major/Minor |
|------|-----------|--------|-------------|
| | ○ Yes ○ No | | |

Graduate School

| Name | Graduate? | Degree | Major/Minor |
|------|-----------|--------|-------------|
| SOUTHERN STATES | ◉ Yes ○ No | YES | TRUCK DRIVER |

Technical/Trade School/Truck Driving School

| Name | Graduate? | Degree | Major/Minor |
|------|-----------|--------|-------------|
| SOUTHERN STATES | ◉ Yes ○ No | YES | TRUCK DRIVER |

Have you served in the U.S. Armed Forces?
○ Yes ◉ No

| Branch | Dates Served From: | Dates Served To: |
|--------|--------------------|-----------------|
| | | |

Continue

**SWIFT**

## Driver Recruiting Process - Online Application
*All Information in RED letters is required*          Application Date: 12/12/2009

**Do you know the name of your recruiter?**      I don't know

**Job(s) applying for:**
(Ctrl-Click to select more
than one job)          AAA I need to attend school

**Experience level:**          Has Class A CDL but needs training

**Driver Personal Information**

| | | | |
|---|---|---|---|
| **First Name** | Tanna | **Last Name** | Hodges |
| **Middle Initial** | L | | |
| **Birthdate** | | **Social Security #** | |
| | (MM/DD/YYYY) | | |
| **Comment** | I HAVE GOT MY CDLS | | |

**Driver License & CDL Information**

| | | | | |
|---|---|---|---|---|
| No. PA412037 | **State** Ohio | | **Expires** 02/18/2011 | (MM/DD/YYYY) |
| **CDL Holder?** | Yes | | | |

**CDL Endorsements**      ☑HAZMAT  ☐Doubles  ☐Triples  ☑Tankers

**Education/Military Service**

What is the highest grade you've completed? 11TH
**High School**

| Name | Graduate? | Degree | Major/Minor |
|---|---|---|---|
| JACKSON | ○ Yes ◉ No | | |

**College**

| Name | Graduate? | Degree | Major/Minor |
|---|---|---|---|
| | ○ Yes ○ No | | |

**Graduate School**

| Name | Graduate? | Degree | Major/Minor |
|---|---|---|---|
| SOUTHERN STATES | ◉ Yes ○ No | YES | TRUCK DRIVER |

**Technical/Trade School/Truck Driving School**

| Name | Graduate? | Degree | Major/Minor |
|---|---|---|---|
| SOUTHERN STATES | ◉ Yes ○ No | YES | TRUCK DRIVER |

Have you served in the U.S. Armed Forces?
○ Yes ◉ No

| Branch | Dates Served From: | Dates Served To: |
|---|---|---|
| | | |

Continue

REDACTED

STC212830

**SWIFT**

## Driver Recruiting Process – Online Application
*All information in RED letters is required*

Application Date: 12/12/2009

**Do you know the name of your recruiter?**   : don't know

**Job(s) applying for:**   AAA I need to attend school
(Ctrl-Click to select more
than one job)

**Experience level:**   Has Class A CDL but needs training

### Driver Personal Information

| First Name | Tonna | Last Name | Hodges |
|---|---|---|---|

**Middle Initial**   L

**Birthdate**   (MM/DD/YYYY)

**Social Security #**

**Comment**   I HAVE GOT MY CDL-S

### Driver's License & ID Information

**No.** PA412037   **State** Ohio   **Expires** 02/18/2011   (MM/DD/YYYY)

**CDL Holder?**   Yes

**CDL Endorsements**   ☑ HAZMAT   ☐ Doubles   ☐ Triples   ☑ Tankers

Submit Application

## ACKNOWLEDGEMENT

I give Swift Transportation, Inc. (the Company) the right to investigate all references and to secure additional information about me, if job-related. I release from liability the Company and its representative for seeking such information and all other persons, corporations or organizations for furnishing such information. A copy of this page serves as my authorization to seek/provide this information. I agree to sign all documents and consent forms which the Company deems necessary to verify the facts provided in this application. I give my consent and release from liability the Company and its representative, to respond to any inquiries made about me as part of a reference check by any subsequent or potential employer.

From time to time the Company may find it necessary to conduct investigations. If it does, employees are expected to truthfully participate and cooperate in such investigations, including submission to searches of property. Failure to do so may subject employees to disciplinary action, which may include termination of employment.

I realize as a condition of employment I will be required to undergo a post offer/pre-employment medical examination and substance abuse screening test at the expense of and as prescribed by the Company, and that any offer of employment is conditioned upon the successful completion of these tests. I agree to furnish such additional information and undergo any other examinations or test to complete the employment file, or to continue my employment with the Company, if employed. These tests may include, but are not necessarily limited to random, for cause, reasonable suspicion or post accident alcohol and substance abuse screening tests. Further, I waive the Company, its agents or employees from any and all claims or actions arising out of such alcohol and substance abuse tests including, but not limited to, the testing procedures, the analysis or the disclosure of test results.

I understand that any offer of employment is contingent upon my ability to produce documentation verifying my identity and legal authorization to be employed, as required by the Immigration Reform and Control Act of 1986, (IRCA).

This application is active for sixty (60) days from the date it is completed, or until the specific position opening for which it was submitted is closed, whichever is earlier. Subsequent to the preceding sixty (60) day period, I must submit a new application to be considered for this, or any other position.

I understand and agree that any of the information, concerning company policies, incomplete or omitted information provided by me in this application will be sufficient cause for cancellation of my application or separation from the Company's service if employed. Further, I understand that just as I am free to resign at any time, for any reason, with or without prior notice, I understand that the Company reserves the right to terminate my employment at any time, for any reason, with or without prior notice. I understand that no representative of the Company, other than the President of the Company, has the authority to make any assurances to the contrary. I recognize the employment relationship to be terminable at will. This relationship may not be changed by any written or oral agreement, unless specifically authorized in writing and signed by the President of the Company. This application represents the complete and final expression of the intent of the parties and may not be contradicted by any oral agreement. 

I hereby agree to submit any claims arising out of the submission of this or any prior application. I further agree, in the event that I am in any way associated with the Company, to submit to final and binding arbitration any dispute that cannot be resolved by informal internal resolution which might arise out of my association with the Company, during or after arbitration, in lieu of any Federal or State court action. I agree that any arbitration shall be conducted under the rules of the American Arbitration Association. This application contains the entire agreement between the parties with regard to dispute resolution, and there are no other agreements as to dispute resolution, either oral or written.

I have read carefully the above information, understand and accept the contents thereof. This certifies that this application was completed by me, and that all entries on it and information in it are true and complete to the best of my knowledge.

# EMPLOYMENT APPLICATION

QUALIFIED APPLICANTS ARE CONSIDERED WITHOUT REGARD TO RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, MARITAL STATUS, VETERAN STATUS OR DISABILITY. EQUAL EMPLOYMENT OPPORTUNITY EMPLOYER

*Dec 2009.*

Bill Cody
Fax 614-308-2385
Toll Free 800-446-4051 Ext. 2

**SWIFT**

2200 S. 75th Ave. • Phoenix, AZ 85043

*Turned Down Because of Record*

Date of Application: **9-25-09**

Name **Tanna Lee Hodges**

Social Security No. **2 6 Y - 5 8 - 5 7 2 7**

Present Address **3185 Valley Chipfield**
STREET   FIRST   CITY

Phone **(740) 286-4192**

Previous Address(es) during last 3 years (FMCSR 391.21(b) (3))

Date of Birth (required by FMCSR 391.21 (b) (2) to verify motor vehicle report) **2-18-53-**

In case of emergency notify **Cary Bias**   **SAN ANTONIO TX**   **(210) 707 5030**

Alternate Emergency Phone # **740-642-3792** Name **Shirley Hunter** ADDRESS **23 Warrend. Kingston** PHONE

Have you applied for work and/or worked for this company before? ☐ Yes ☑ No   When? _____

If hired, can you present evidence of your U.S. Citizenship or proof of your legal right to live and work in this country? ☑ Yes ☐ No

Position which applying for: **OTR Driver**

Are you able to perform the essential functions and duties of the job as contained in the job description with or without reasonable accommodation? ☑ Yes ☐ No

How did you find out about Swift? ☐ Newspaper ☑ Truck Driving Publication ☐ Employee Referral ☐ Other **School**

A. Have you ever been denied a license, permit or privilege to operate a motor vehicle? ☐ Yes ☑ No   If yes, explain (49CFR391.21(b)(9))_____

B. Has any license, permit or privilege suspended or revoked? ☐ Yes ☑ No

C. Have you ever been stopped while intoxicated? ☐ Yes ☑ No   Were you driving a Commercial Motor Vehicle? ☐ Yes ☐ No

D. Have you ever used any illegal drugs (including marijuana)? ☐ Yes ☑ No   If yes, when was the last time? _____

E. Have you ever been convicted for possession of, sale, or use of a narcotic drug, amphetamine, or a derivative thereof? ☐ Yes ☑ No

F. Have you ever been convicted of a criminal offense? (A conviction will not necessarily disqualify you from employment.) ☑ Yes ☐ No **Miss** ☐ Yes ☑ No

G. Do you currently have any criminal actions pending in which you are a defendant? (A "yes" answer will not necessarily disqualify you from employment.) ☐ Yes ☑ No

H. Are you currently on probation or parole status? (A "yes" answer will not necessarily disqualify you from employment.) ☐ Yes ☑ No

I. Have you tested positive, or refused to test, on any preemployment drug or alcohol test administered by an employer to which you applied for, but did not obtain, safety, sensitive transportation work covered by DOT agency drug and alcohol testing rules in the last three years? (49 C.F.R. 40.25(J)) ☐ Yes ☑ No

Yes to any of the above questions, state circumstances and dates: _____

Circle highest grade completed   1  2  3  4  5  6  7  8   High School 1  2 ③ 4   College   1  2  3  4   Graduate School  1  2  3

List other specialty training or schools **MTA Driver Training school / Southern States**
**Columbus Ohio**

Have you served in the U.S Armed Forces? ☐ Yes ☑ No Branch _____   Dates: From _____ To _____

Duties _____

HODGES RFP - 000001

EXHIBIT# **24**

WITNESS **Hodges**

Social Security No. ▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

All applicants must list all full and part-time employment including military service, self employment, and periods of unemployment during preceding 10 years.
NOTE: List employers in reverse order starting with the most recent.  Use an additional sheet if necessary.

---

**▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓**          May We Call?   Yes _____   No _____

| | Mo Day Yr | Mo Day Yr |
|---|---|---|
| | From _____ | To _____ |

Name _____
Address _____
    street     city    state    zip code
Position Held _____
Reason For Leaving _____
Gap in Employment From _____ To _____ Explain _____

Phone # ( )
Supervisor _____
Type of Equip. Driven _____

A. FMCSR 391.21 (b)(10) (iv) (A) Were you subject to the Federal Motor Carrier Safety Regulations (FMCSR's) while employed by this previous employer? ☐ Yes  ☐ No
B. FMCSR 391.21 (b) (10) (iv) BWas this job designated as a safety sensitive function in any DOT regulated mode subject to alcohol and controlled substances testing required by 49 CFR part 40 ? ☐ Yes  ☐ No

---

**▓▓▓▓▓▓▓▓▓▓▓▓▓▓**          May We Call?   Yes ✓   No _____

Name __Mid West Cont__
Address __Sioux City Iowa__
    street     city    state    zip code
Position Held __OTR Driver__
Reason For Leaving _____
Gap in Employment From _____ To _____ Explain _____

| | Mo Day Yr | Mo Day Yr |
|---|---|---|
| | From 9-85-85 | To 1-8-88 |

Supervisor __Chris__
Type of Equip. Driven __Retter__

A. FMCSR 391.21 (b)(10) (iv) (A) Were you subject to the Federal Motor Carrier Safety Regulations (FMCSR's) while employed by this previous employer? ☐ Yes  ☐ No
B. FMCSR 391.21 (b) (10) (iv) (B) Was this job designated as a safety sensitive function in any DOT regulated mode subject to alcohol and controlled substances testing required by 49 CFR part 40 ? ☐ Yes  ☐ No

---

**▓▓▓▓▓▓▓▓▓▓▓▓▓▓**          May We Call?   Yes ✓   No _____

Name __B. J. Mc Adams__
Address __Little Rock   AR.__
    street     city    state    zip code
Position Held __OTR Driver__
Reason For Leaving __Went to Willis By Truck Lines__
Gap in Employment From _____ To _____ Explain _____

| | Mo Day Yr | Mo Day Yr |
|---|---|---|
| | From 88 | To 89 |

Supervisor _____
Type of Equip. Driven __Freightliner__

A. FMCSR 391.21 (b)(10) (iv) (A) Were you subject to the Federal Motor Carrier Safety Regulations (FMCSR's) while employed by this previous employer? ☐ Yes  ☐ No
B. FMCSR 391.21 (b) (10) (iv) (B) Was this job designated as a safety sensitive function in any DOT regulated mode subject to alcohol and controlled substances testing required by 49 CFR part 40 ? ☐ Yes  ☐ No

---

**▓▓▓▓▓▓▓▓▓▓▓▓▓**          May We Call?   Yes ✓   No _____

Name __Willis By Truck Lines__
Address __Seymore Ind.__
    street     city    state    zip code
Position Held __OTR. Driver__
Reason For Leaving __made money__
Gap in Employment From _____ To _____ Explain _____

| | Mo Day Yr | Mo Day Yr |
|---|---|---|
| | From ▓▓ | To ▓▓ |

Phone # ( )
Supervisor _____
Type of Equip. Driven _____

A. FMCSR 391.21 (b)(10) (iv) (A) Were you subject to the Federal Motor Carrier Safety Regulations (FMCSR's) while employed by this previous employer? ☐ Yes  ☐ No
B. FMCSR 391.21 (b) (10) (iv) (B) Was this job designated as a safety sensitive function in any DOT regulated mode subject to alcohol and controlled substances testing required by 49 CFRpart 40 ? ☐ Yes  ☐ No

---

**▓▓▓▓▓▓▓▓▓▓▓▓**          May We Call?   Yes ✓   No _____

Name __76 Truck Stop__
Address __Little Rock AR.__
    street     city    state    zip code
Position Held __Waitess__
Reason For Leaving __To Raise Kids__
Gap in Employment From _____ To _____ Explain _____

| | Mo Day Yr | Mo Day Yr |
|---|---|---|
| | From ▓▓ | To ▓3 |

Phone # ( 501 )
Supervisor __Bill__
Type of Equip. Driven _____

A. FMCSR 391.21 (b)(10) (iv) (A) Were you subject to the Federal Motor Carrier Safety Regulations (FMCSR's) while employed by this previous employer? ☐ Yes  ☐ No
B. FMCSR 391.21 (b) (10) (iv) (B) Was this job designated as a safety sensitive function in any DOT regulated mode subject to alcohol and controlled substances testing required by 49 CFR part 40 ? ☐ Yes  ☐ No

---

**▓▓▓▓▓▓▓▓▓▓▓**          May We Call?   Yes _____   No _____

Name __Raiseing grandchild__
Address _____
    street     city    state    zip code
Position Held _____
Reason For Leaving _____
Gap in Employment From _____ To _____ Explain _____

| | Mo Day Yr | Mo Day Yr |
|---|---|---|
| | From 93 | To 2009 |

Phone # ( )
Supervisor _____
Type of Equip. Driven _____

A. FMCSR 391.21 (b)(10) (iv) (A) Were you subject to the Federal Motor Carrier Safety Regulations   while employed by this previous employer? ☐ Yes  ☐ No
B. FMCSR 391.21 (b) (10) (iv) (B) Was this job designated as a safety sensitive function in any DOT regulated mode subject to alcohol and controlled substances testing required by 49 CFR part 40 ? ☐ Yes  ☐ No

HODGES RFP - 000002

Social Security No. ⬚⬚⬚ - ⬚⬚ - ⬚⬚⬚⬚

## ADDITIONAL WORK EXPERIENCE

### SEVENTH PRIOR EMPLOYER

May We Call?   Yes _____   No _____

| | Mo Day Yr | Mo Day Yr |
|---|---|---|

Name _____

Address _____
           street            city       state    zip code

Position Held _____

Reason For Leaving _____

Gap in Employment From_____ To_____ Explain _____

From _____   To _____
Phone # (_____)
Supervisor _____
Type of Equip. Driven _____

A. FMCSR 391.21 (b)(10) (iv) (A) Were you subject to the Federal Motor Carrier Safety Regulations (FMCSR's) while employed by this previous employer?  ☐ Yes  ☐ No
B. FMCSR 391.21 (b) (10) (iv) (B) Was this job designated as a safety sensitive function in any DOT regulated mode subject to alcohol and controlled substances testing required by 49 CFR part 40 ?  ☐ Yes  ☐ No

### EIGHTH PRIOR EMPLOYER

May We Call?   Yes _____   No _____

| | Mo Day Yr | Mo Day Yr |
|---|---|---|

Name _____

Address _____
           street            city       state    zip code

Position Held _____

Reason For Leaving _____

Gap in Employment From_____ To_____ Explain _____

From _____   To _____
Phone # (_____)
Supervisor _____
Type of Equip. Driven _____

A. FMCSR 391.21 (b)(10) (iv) (A) Were you subject to the Federal Motor Carrier Safety Regulations (FMCSR's) while employed by this previous employer?  ☐ Yes  ☐ No
B. FMCSR 391.21 (b) (10) (iv) (B) Was this job designated as a safety sensitive function in any DOT regulated mode subject to alcohol and controlled substances testing required by 49 CFR part 40 ?  ☐ Yes  ☐ No

### NINTH PRIOR EMPLOYER

May We Call?   Yes _____   No _____

| | Mo Day Yr | Mo Day Yr |
|---|---|---|

Name _____

Address _____
           street            city       state    zip code

Position Held _____

Reason For Leaving _____

Gap in Employment From_____ To_____ Explain _____

From _____   To _____
Phone # (_____)
Supervisor _____
Type of Equip. Driven _____

A. FMCSR 391.21 (b)(10) (iv) (A) Were you subject to the Federal Motor Carrier Safety Regulations (FMCSR's) while employed by this previous employer?  ☐ Yes  ☐ No
B. FMCSR 391.21 (b) (10) (iv) (B) Was this job designated as a safety sensitive function in any DOT regulated mode subject to alcohol and controlled substances testing required by 49 CFR part 40 ?  ☐ Yes  ☐ No

### TENTH PRIOR EMPLOYER

May We Call?   Yes _____   No _____

| | Mo Day Yr | Mo Day Yr |
|---|---|---|

Name _____

Address _____
           street            city       state    zip code

Position Held _____

Reason For Leaving _____

Gap in Employment From_____ To_____ Explain _____

From _____   To _____
Phone # (_____)
Supervisor _____
Type of Equip. Driven _____

A. FMCSR 391.21 (b)(10) (iv) (A) Were you subject to the Federal Motor Carrier Safety Regulations (FMCSR's) while employed by this previous employer?  ☐ Yes  ☐ No
B. FMCSR 391.21 (b) (10) (iv) (B) Was this job designated as a safety sensitive function in any DOT regulated mode subject to alcohol and controlled substances testing required by 49 CFR part 40 ?  ☐ Yes  ☐ No

### ELEVENTH PRIOR EMPLOYER

May We Call?   Yes _____   No _____

| | Mo Day Yr | Mo Day Yr |
|---|---|---|

Name _____

Address _____
           street            city       state    zip code

Position Held _____

Reason For Leaving _____

Gap in Employment From_____ To_____ Explain _____

From _____   To _____
Phone # (_____)
Supervisor _____
Type of Equip. Driven _____

A. FMCSR 391.21 (b)(10) (iv) (A) Were you subject to the Federal Motor Carrier Safety Regulations (FMCSR's) while employed by this previous employer?  ☐ Yes  ☐ No
B. FMCSR 391.21 (b) (10) (iv) (B) Was this job designated as a safety sensitive function in any DOT regulated mode subject to alcohol and controlled substances testing required by 49 CFR part 40 ?  ☐ Yes  ☐ No

### TWELFTH PRIOR EMPLOYER

May We Call?   Yes _____   No _____

| | Mo Day Yr | Mo Day Yr |
|---|---|---|

Name _____

Address _____
           street            city       state    zip code

Position Held _____

Reason For Leaving _____

Gap in Employment From_____ To_____ Explain _____

From _____   To _____
Phone # (_____)
Supervisor _____
Type of Equip. Driven _____

A. FMCSR 391.21 (b)(10) (iv) (A) Were you subject to the Federal Motor Carrier Safety Regulations (FMCSR's) while employed by this previous employer?  ☐ Yes  ☐ No
B. FMCSR 391.21 (b) (10) (iv) (B) Was this job designated as a safety sensitive function in any DOT regulated mode subject to alcohol and controlled substances testing required by 49 CFR part 40 ?  ☐ Yes  ☐ No

Social Security No. [ ][ ][ ] - [ ][ ] - [ ][ ][ ][ ]

## DRIVING EXPERIENCE

| CLASS OF EQUIPMENT | TYPE OF EQUIPMENT VAN-TANK-FLAT-ETC. | FROM | DATES | TO | APPROX. NO. OF MILES TOTAL |
|---|---|---|---|---|---|
| STRAIGHT TRUCK | Van | | | | |
| TRACTOR AND SEMI-TRAILER | Van | | 83 | 91 | 1 million |
| TRACTOR AND TWO TRAILERS | | | | | |
| OTHER | | | | | |

## LICENSE LIST ALL DRIVERS LICENSES HELD IN PAST FIVE YEARS NOTE: A copy of your valid drivers license or CDL must be attached for your application to be considered.

| STATE | LICENSE NUMBER | TYPE | ENDORSEMENTS | EXPIRATION DATE |
|---|---|---|---|---|
| NC. A. | 9966185 | OP. | | 2008 |
| Ohio | 8BA02731 | Class A | TANK. | 2011 |

## MOVING TRAFFIC CONVICTIONS LIST FOR PAST FIVE (5) YEARS. IF NONE WRITE NONE.

| STATE | DATE | LOCATION (STATE) | CHARGE | PENALTY |
|---|---|---|---|---|
| Va. | 2004 | VA Beach VA | Rader Det. | Warning |

## ACCIDENT RECORD IF NONE WRITE NONE.
LIST ALL INVOLVEMENT WITH TRUCK AND CAR INCLUDING PROPERTY DAMAGE FOR PAST FIVE YEARS, INCLUDING PREVENTABLE AND NON-PREVENTABLE.

| DATE | TYPE OF VEHICLE | NATURE OF ACCIDENT (HEAD-ON, REAR END, UPSET, ETC.) | INDICATE PREVENTABLE OR NON-PREVENTABLE | FATALITIES | INJURIES | AMOUNT OF PROPERTY DAMAGE |
|---|---|---|---|---|---|---|
| 0 1985 | Poste | Upset Truck | NON Preventable | None | | Total. |

## STATES IN WHICH YOU HAVE OPERATED A CLASS A MOTOR VEHICLE IN THE PAST FIVE YEARS

LIST ALL STATES ____ None ____

## REFERENCES (Please list 2 people able to verify your employment and personal history. Such as co-worker, neighbor, customer or an outstanding citizen of your community. Do not list relatives.)

1. Name __Dessie Hall__      Relationship __Friend__
   Address __3788 Valley Chaple Rd Jackson Ohio__   Phone # __740 286-4192__

2. Name __Shirley Hunter__      Relationship __Friend__
   Address __93 Warren DR. Kingston Ohio__   Phone # __740 - 642-5192__

## ACKNOWLEDGEMENT

I give Swift Transportation, Inc. (the Company) the right to investigate all references and to secure additional information about me, if job-related. I release from liability the Company and its representatives for seeking such information and all other persons, corporations or organizations for furnishing such information. A copy of this page serves as my authorization for release of this information. I agree to sign all documents and consent forms which the Company deems necessary to verify the facts provided in this application. I give my consent and release from liability the Company and its representatives, that will respond to any inquiries made about me as part of a reference check by any subsequent or potential employer.

From time to time the company may find it necessary to conduct investigations. If it does, employees are expected to truthfully participate and cooperate in such investigations, including submission to searches of property. Failure to do so may subject employees to disciplinary action, which may include termination of employment.

I realize as a condition of employment I will be required to undergo a post offer/pre-employment medical examination and substance abuse screening test at the expense of and as prescribed by the Company, and that any offer of employment is conditioned upon the successful completion of these tests. I agree to furnish such additional information and undergo any other examinations or tests to complete the employment file, or to continue my employment with the Company, if employed. These tests may include, but are not necessarily limited to random, for cause, reasonable suspicion or post accident alcohol and substance abuse screening tests. If hired, I release the Company, its agents or employees from any and all claims or actions arising out of such alcohol and substance abuse tests including, but not limited to, the testing procedures, the analysis or the disclosure of test results.

I understand that any offer of employment is contingent upon my ability to produce documentation verifying my identity and legal authorization to be employed, as required by the Immigration Reform & Control Act of 1986 (IRCA).

This application is active for sixty (60) days from the date it is completed, or until the specific position opening for which it was submitted is closed, whichever is earlier. Subsequent to the preceding consideration period, I must submit a new application to be considered for this, or any other position.

I understand and agree that any misrepresented, inaccurate, misleading, incomplete or omitted information provided by me in this application will be sufficient cause for cancellation of this application and/or separation from the Company's service if employed. Further, I understand that just as I am free to resign at any time, for any reason, with or without prior notice, the Company reserves the right to terminate my employment at any time, for any reason, with or without prior notice. I understand that no representative of the Company has the authority to make any verbal or written assurances to the contrary. I recognize the employment relationship to be an at-will relationship and not for a specific period of time. This application represents the complete and final expression of the intent of the parties and may not be modified except by a writing duly executed by the undersigned and the President of the Company.

I hereby agree to submit to binding arbitration all disputes and claims arising out of the submission of this or formal application. I further agree, in the event that I am offered employment by the company, as a condition to that employment, all disputes that cannot be resolved by informal internal resolution which might arise out of my employment with the company, whether during or after that employment, will be submitted to binding arbitration in lieu of any Federal or State administrative or legal proceeding. I agree that such arbitration shall be conducted under the rules of the American Arbitration Association. This application contains the entire agreement between the parties with regard to dispute resolution, and there are no other agreements as to dispute resolution, either oral or written.

I have read carefully the above information, understand and accept the contents thereof. This certifies that this application was completed by me, and that all entries on it and the information provided in it are true and complete to the best of my knowledge.

Signature _____Anne Tess Hodges_____      Date __9-25-08__

Social Security No. ☐☐☐ - ☐☐ - ☐☐☐☐

**APPLICANT INVITATION TO IDENTIFY**

To comply with government regulations and reporting requirements, we request that you complete the <u>VOLUNTARY</u> data form. Refusal to provide this information will not subject you to any adverse treatment.  All information provided will be held confidential.

I wish to be considered under the Affirmative Action Program as a:

( ) Male        ☑ Female

( )  **American Indian or Alaskan Native:** A person having origins in any of the original people of North America, and who maintain cultural identification through tribal affiliation or community recognition.

( )  **Asian:** A person having origins in any of the original people of the Far East, Southeast Asia, the Indian subcontinent or the Pacific Islands.

( )  **Black:** A person having origins in any of the black racial groups of Africa, not of Hispanic origin.

( )  **Hispanic:** All persons of Mexican, Puerto Rican, Cuban, Central or South American, or other Spanish culture or origin, regardless of race.

(✓)  **White**

TANNA Lee Hodges                    9-25-09
Print Name                                Date

For Human Resources Department Use Only
**Instructions:  Return to Phoenix - Attn:  HR Compliance**

*HODGES RFP - 000005*

**EXHIBIT D**

1 John F. Lomax, Jr. (#020224)
  Brian J. Foster (#012143)
2 Joseph A. Kroeger (#026036)
  SNELL & WILMER
3 One Arizona Center
  400 E. Van Buren
4 Phoenix, AZ 85004-2202
  Telephone: (602) 382-6000
5 Facsimile: (602) 382-6070
  Email:  jlomax@swlaw.com
6          bfoster@swlaw.com
           jkroeger@swlaw.com
7 Attorneys for Defendant

8            IN THE UNITED STATES DISTRICT COURT

9               FOR THE DISTRICT OF ARIZONA

10

11 KELVIN D. DANIEL, et al                  Case No.  2:11-cv-01548-PHX-ROS

12          Plaintiffs,                      **DEFENDANT SWIFT
                                            TRANSPORTATION CO. OF
13 v.                                        ARIZONA, LLC'S INITIAL
                                            DISCLOSURE STATEMENT**
14 SWIFT TRANSPORTATION
   CORPORATION,

15          Defendant.                       Assigned to:  Hon. Roslyn O. Silver

16

17          Pursuant to Fed. R. Civ. Proc. 16(a), Defendant Swift Transportation Co. of

18 Arizona, LLC ("Swift"), by and through undersigned counsel, hereby submits its Initial

19 Disclosure Statement.

20                        **PRELIMINARY STATEMENT**

21          The content of this Disclosure Statement represents the information currently

22 known by Swift and is therefore provisional and subject to supplementation, amendment,

23 explanation, change, and amplification.  It is not intended to represent all evidence that

24 Swift will present at trial; rather, this is merely a preliminary disclosure statement, which

25 Swift may supplement as further information is obtained through discovery.  The reason

26 for the provisional nature of the statement is that the case is in the preliminary stages of

27 discovery and Swift is not fully aware of Plaintiffs' allegations and damages at this time.

28          Swift makes the following disclosure subject to and without waiving its right to

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

14100570

1   protect from disclosure:  (a) any and all communications protected by the attorney-client

2   privilege;  (b) any and all work product conclusions, opinions, or legal theories of Swift's

3   attorneys or other representatives concerning this litigation; and (c) any and all

4   confidential information.

5        Swift further reserves all objections to the introduction of the documents and

6   testimony of witnesses identified below at any hearing or trial, or in any motion, in this

7   lawsuit.  This Preliminary Statement applies to each and every response provided in this

8   Initial Disclosure Statement and is incorporated by reference as though fully set forth in

9   all responses that follow.  If any part of this statement is ever read to the Court or jury,

10  fairness requires that this Preliminary Statement also be read to indicate that, at the time it

11  was filed, only limited information had been acquired.

12  **I.    INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION THAT SWIFT MAY USE TO SUPPORT ITS CLAIMS OR DEFENSES**

13

14       As this litigation is in the early stages of discovery, Swift reserves the right to

15  supplement this portion of its Disclosure Statement.  No one has been deposed by any

16  party as of the date of this Disclosure Statement.   Swift can tentatively identify the

17  following individuals:

18       **1.    Kelvin D. Daniel**
             **Plaintiff**
19           **c/o Stumphauzer, O'Toole**

20       Mr. Daniel is expected to testify regarding the allegations contained in the

21  Complaint, his application process, orientation, his criminal history and disclosure of

22  same, and Swift's treatment of him consistent with the requirements of the Fair Credit

23  Reporting Act ("FCRA").

24       **2.    Tanna Hodges**
             **Plaintiff**
25           **c/o Stumphauzer, O'Toole**

26       Ms. Hodges is expected to testify regarding the allegations contained in the

27  Complaint, her application process, her criminal history and disclosure of same, and

28  Swift's treatment of her consistent with the requirements of the Fair Credit Reporting Act

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

14100570

- 2 -

1   ("FCRA").

2

3          **3.     Robert R. Bell, Jr.**
                    **Plaintiff**
4                   **c/o Stumphauzer, O'Toole**

5          Mr. Bell is expected to testify regarding the allegations contained in the Complaint,

6   his application process, orientation, his criminal history and disclosure of same, and

7   Swift's treatment of him consistent with the requirements of the Fair Credit Reporting Act

8   ("FCRA").

9          **4.     Shawn Driscoll, Director of Security**
                    **c/o John F. Lomax, Jr., Snell & Wilmer**
10                  **One Arizona Center**
                    **400 E. Van Buren**
11                  **Phoenix, AZ 85004-2202**
                    **(602) 382-6305**
12
            Mr. Driscoll is expected to testify regarding Swift's screening of job applicants
13
    with criminal histories, his knowledge of Plaintiffs' application process and the
14
    allegations contained in the First Amended Complaint.
15
           **5.     Gary Fitzsimmons, Vice-President of Security**
16                  **c/o John F. Lomax, Jr., Snell & Wilmer**
                    **One Arizona Center**
17                  **400 E. Van Buren**
                    **Phoenix, AZ 85004-2202**
18                  **(602) 382-6305**

19         Mr. Fitzsimmons is expected to testify regarding Swift's screening of job

20  applicants with criminal histories, his knowledge of Plaintiffs' application process and the

21  allegations contained in the First Amended Complaint.

22         **6.     Angelica Flores, Security**
                    **c/o John F. Lomax, Jr., Snell & Wilmer**
23                  **One Arizona Center**
                    **400 E. Van Buren**
24                  **Phoenix, AZ 85004-2202**
                    **(602) 382-6305**
25
            Ms. Flores is expected to testify regarding Swift's screening of job applicants with
26
    criminal histories, her knowledge of Plaintiffs' application process and the allegations
27
    contained in the First Amended Complaint.
28

14100570                                      - 3 -

7.  **Michelle Cordoba, Regional Recruiting Manager**
    **c/o John F. Lomax, Jr., Snell & Wilmer**
    **One Arizona Center**
    **400 E. Van Buren**
    **Phoenix, AZ 85004-2202**
    **(602) 382-6305**

Ms. Cordoba is expected to testify regarding her knowledge of Swift's application process and the general number of applicants who apply in-person versus not-in-person, the timing of procurement of consumer reports, the Plaintiffs' application process and materials and the allegations contained in the First Amended Complaint.

8.  **Douglas Driscoll, Recruiting**
    **c/o John F. Lomax, Jr., Snell & Wilmer**
    **One Arizona Center**
    **400 E. Van Buren**
    **Phoenix, AZ 85004-2202**
    **(602) 382-6305**

Mr. Driscoll is expected to testify regarding his knowledge of Swift's application process, the Plaintiffs' application process and materials and the allegations contained in the First Amended Complaint.

9.  Custodians of Records as necessary to establish foundation for the admission of documents.

10. Any witness identified or disclosed in any party's Disclosure Statements, motions, pleadings or discovery responses and not objected to by Defendants.

11. Any witness listed by Plaintiffs, and not objected to by Swift.

12. Any expert disclosed by any party.

13. Any persons subsequently identified through future investigation and discovery and determined to be witnesses and not objected to by Swift.

## II.  DOCUMENTS SWIFT MAY USE TO SUPPORT ITS CLAIMS OR DEFENSES.

As this litigation is in the early stages of discovery, Swift has not yet identified all documents it may rely upon and reserves the right to supplement this portion of its Disclosure Statement.   Listing documents now is not an admission that they are admissible for all purposes or any purpose.   Swift can tentatively identify the following

14100570

documents:

1. Daniel Employment Application, Bates labeled STC000001-000005.

2. Daniel Swift Contact Management, Bates labeled STC000006-000010.

3. Daniel Driver Recruiting Process, Bates labeled STC000011-000014.

4. Daniel US MVR Report, Bates labeled STC000015-000020.

5. Daniel Widescreen National Criminal Search, Bates labeled STC000021.

6. Daniel Security File, Bates labeled STC000022-000024.

7. Bell Employment Application, Bates labeled STC000025-000029.

8. Bell Contact Management, Bates labeled STC000030-000034.

9. Bell Driver Recruiting Process, Bates labeled STC000035-000037.

10. Hodges Employment Application, Bates labeled STC000038-000042.

11. Hodges Contact Management, STC000043-000047

12. Hodges Driver Recruiting Process, Bates labeled STC000048-000051.

13. Hodges US MVR Report, SSN Check, Transportation Employment History, CDLIS+, Bates labeled STC000052-000057.

14. Hodges 20/20 Insight Bundled Request for Information, Bates labeled STC000058-000066.

15. Hodges Security File, Bates labeled STC000067-000084.

16. Company Driver Hiring Criteria, effective date April 1, 2011, Bates labeled STC000085-000090.

17. All tangible items produced in response to requests for production, interrogatories or attached to any party's Disclosure Statement, motion or pleading and not otherwise objected to by Swift.

18. All admissible portions of deposition testimony, not otherwise objected to by Swift.

19. Any exhibit listed by Plaintiffs and not otherwise objected to by Swift.

## III.   COMPUTATION OF DAMAGES.

Swift is not currently claiming any damages against Plaintiffs.  Swift reserves the

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

14100570

- 5 -

1  right to seek to recover its costs and attorneys' fees incurred in connection with the

2  defense of this action.

3  **IV.    INSURANCE AGREEMENT.**

4       Swift has an Employment Practices Liability Policy, but it is not believed that any

5  damages available in this action will exceed the self-insured retention level under that

6  policy.  Swift will supplement this response if doing so becomes appropriate.

7       DATED this 9ᵗʰ day of January, 2012

8                           SNELL & WILMER L.L.P.

9

10                    By: _Joseph A. Kroeger_____

11                           John F. Lomax, Jr.
                           Brian J. Foster

12                           Joseph A. Kroeger
                           One Arizona Center

13                           400 E. Van Buren
                           Phoenix, AZ 85004-2202

14                           Attorneys for Defendant

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14100570

- 6 -

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

## CERTIFICATE OF SERVICE

I hereby certify that January 9, 2012, I sent via U.S. Mail a copy of the foregoing document to the following:

Dennis M. OToole
Anthony R. Pecora
Matthew A. Dooley
Stumphauzer OToole McLaughlin
McGlamery & Loughman Company
5455 Detroit Rd.
Sheffield Village, OH 44054

Leonard Anthony Bennett
Susan Mary Rotkis
Consumer Litigation Associates PC
12515 Warwick Blvd., Ste. 100
Newport News, VA 23606

Nicholas Jason Enoch
Stanley Lubin
Lubin & Enoch PC
349 N 4th Ave
Phoenix, AZ 85003

Kimberly Noah

14100570

- 7 -