# EXHIBIT E

1   John F. Lomax, Jr. (#020224)
    Brian J. Foster (#012143)
2   Joseph A. Kroeger (#026036)
    SNELL & WILMER
3   One Arizona Center
    400 E. Van Buren
4   Phoenix, AZ 85004-2202
    Telephone: (602) 382-6000
5   Facsimile: (602) 382-6070
    Email: jlomax@swlaw.com
6          bfoster@swlaw.com
           jkroeger@swlaw.com
7   Attorneys for Defendant

8                    IN THE UNITED STATES DISTRICT COURT

9                         FOR THE DISTRICT OF ARIZONA

10

11                                              Case No.  2:11-cv-01548-PHX-ROS

12  KELVIN D. DANIEL, et al
                                                **DEFENDANT SWIFT
13             Plaintiffs,                       TRANSPORTATION CO. OF
                                                ARIZONA, LLC'S FIRST AMENDED
14  v.                                          AND SUPPLEMENTAL RESPONSES
                                                TO PLAINTIFFS' FIRST SET OF
15  SWIFT TRANSPORTATION                        INTERROGATORIES**
    CORPORATION,
16
               Defendant.
17

18         Defendant Swift Transportation Co. of Arizona, LLC ("Swift") hereby responds to

19  Plaintiffs' First Set of Interrogatories as follows:

20                          **PRELIMINARY STATEMENT**

21         In responding to Plaintiffs' discovery requests, Swift has conducted a reasonable

22  inquiry and investigation relating to the information requested. This inquiry and

23  investigation is ongoing. The responses set forth herein are made on the basis of Swift's

24  current knowledge. Swift reserves the right to refer to, conduct discovery with reference

25  to, or offer as evidence, such information that may have, in good faith, not been included

26  in the following responses. Swift expressly reserves the right to amend or supplement its

27  responses, as appropriate, based on further inquiry and investigation. The information

28  contained in these responses is also subject to correction for errors or omissions.

15487783

Nothing herein shall be construed as an admission or waiver of: (i) objections regarding admissibility, competency, relevance, privilege, materiality, or authenticity; (ii) objections due to vagueness, ambiguity, or undue burden; or (iii) Swift's right to object to the use of these documents during any subsequent proceeding, including the trial of this or any other action.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify every person who has interacted with or otherwise performed work regarding the Named Plaintiffs' job applications or consumer reports (other than in defense of the litigation in this case), including his or her name, job title, description and department/division, formal employer, work performed and location of employment.

### ANSWER:

Swift objects to Interrogatory No. 1 as overly broad and unduly burdensome to the extent that it seeks information regarding non-Swift employees that Swift has no knowledge or information about. Interrogatory No. 1 is also overly broad and unduly burdensome because not every person who has interacted with or otherwise performed work regarding the Named Plaintiffs' job applications or consumer reports will be relevant or material to Plaintiffs' claims or efforts to certify the purported class.

Swift further objects to Interrogatory No. 1 to the extent that the information requested is already known by, or available to, the Named Plaintiffs, as they are in the best position to know who interacted with them, and as evidenced in Swift's disclosure statements and documents produced contemporaneously therewith.

Notwithstanding these objections and without waiving them, Swift responds that, based on the facts presently known, the following people interacted with or otherwise performed work regarding the Named Plaintiffs' job applications or consumer reports:

- Michelle Adamson works in Swift's security department at Swift's corporate office in Phoenix, Arizona. Michelle noted on Plaintiff Kelvin Daniel's employment application that Mr. Daniel would have to call Swift for an interview.

15487783

1   • Chad Bumgarner is a safety compliance coordinator at Swift who works at a Swift
2     recruitment center in Lathrop, California.   Chad interacted with Plaintiff Kelvin
3     Daniel at a Swift orientation that Mr. Daniel attended.   At that orientation, Mr.
4     Daniel voluntarily disclosed several convictions in response to Swift's admonition
5     that applicants accurately fill out and disclose information on their applications.

6   • Bill Cody was a recruiter at Swift who worked at a Swift recruitment center in
7     Columbus, Ohio.   Bill may have been the recruiter for Plaintiff Tanna Hodges'
8     September 2009 application.   Bill no longer works at Swift.

9   • Javier Covian is a recruit processor at Swift who works at Swift's corporate office
10    in Phoenix, Arizona.   Javier processed Plaintiff Kelvin Daniel's employment
11    application.

12  • Douglas Driscoll is a recruiter at Swift who works at a Swift recruitment center in
13    Sumner, Washington.   Douglas was the recruiter for Plaintiff Kelvin Daniel.

14  • Tammy Ferguson works in the recruiting department at Swift's corporate office in
15    Phoenix, Arizona.   Tammy ordered consumer reports for Plaintiff Kelvin Daniel on
16    December 28, 2010.

17  • Angelica Flores works in Swift's security department at Swift's corporate office in
18    Phoenix, Arizona.   Angelica determined that Plaintiff Kelvin Daniel was not
19    approved for hire.

20  • Mary Johnson was an administrative assistant who worked at a Swift recruitment
21    center in Memphis, Tennessee.   Mary worked on the job application for Plaintiff
22    Tanna Hodges.   Mary no longer works at Swift.

23  • Kris Keplar is a recruiter at Swift who works at a Swift recruitment center in
24    Columbus, Ohio.   Kris was the recruiter for Plaintiff Tanna Hodges.

25  • Delois Lindsey was a recruit processor at Swift who worked at Swift's corporate
26    office in Phoenix, Arizona.   Delois was the processor for Plaintiff Tanna Hodges'
27    employment application.   Delois no longer works at Swift.

28  • Patricia Ramos worked in Swift's security department at Swift's corporate office in

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

Phoenix, Arizona.  Patricia interviewed Plaintiff Tanna Hodges on December 14, 2009. Patricia no longer works at Swift.

- Berenice Ruiz worked in Swift's security department at Swift's corporate office in Phoenix, Arizona.  Berenice interviewed Plaintiff Kelvin Daniel on January 27, 2011. Berenice no longer works at Swift.

- Tamara Strickland is a recruiter at Swift who works at a Swift recruitment center in Memphis, Tennessee.  Tamara Strickland left a voicemail message for Plaintiff Kelvin Daniel on December 28, 2010.

**INTERROGATORY NO. 2:**

To the extent you believe that Swift Transportation Corporation is an improper defendant in this action, please state the basis for such contention and identify any entity, which you believe would be a proper defendant to the allegations set forth in Plaintiffs' First Amended Complaint.

**ANSWER:**

Swift objects to Interrogatory No. 2 as overly broad and unduly burdensome and to the extent that it requests Swift make a legal conclusion as to what corporate entities should be a proper defendant for every allegation set forth in Plaintiffs' First Amended Complaint.  If Plaintiffs can identify with some particularity what conduct or whose actions they are concerned about, as opposed to all allegations in the Complaint, Defendants will supplement this response.

Notwithstanding these objections, Swift responds that the currently named Defendant, Swift Transportation Corporation is no longer the name of a company.  Swift Transportation Co. of Arizona, LLC is the name of the entity that would have employed the Named Plaintiffs if they had been qualified for hire and accepted job offers from Swift.  To the extent the Named Plaintiffs wish to represent applicants for employment or employees in positions other than drivers, then the proper defendant may not be Swift Transportation Co. of Arizona, LLC.

/ / /

15487783

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

**INTERROGATORY NO. 3:**

For the time period between August 8, 2006 and the present, identify in detail your procedure for hiring or screening job applicants, including the employment application, all consumer reports/criminal background reports that are obtained, the FCRA disclosures that are given, the communication to the applicant of the hiring decision, and all paperwork or documentation that changes hands between you and the applicant from the beginning of the process until the applicant is either hired, rejected for employment or the process otherwise ends. If the procedures differ in geographic areas, explain the differences. If the procedures changed during the applicable time period, please detail the date and nature of the changes.

**ANSWER:**

Swift objects to Interrogatory No. 3 as overly broad as it requests a detailed step-by-step hiring procedure with respect to all job applicants over a 5+ year period. Swift's hiring process also involves over one-hundred current and former employees.

Plaintiffs request information for the time period from August 8, 2006 to the present. As the parties have discussed, Swift takes the position that Plaintiffs may not certify a five-year class, as the two-year statute of limitations set forth in 15 U.S.C. § 1681p applies to Plaintiffs' claims. The requested information prior to that date is therefore not relevant nor calculated to lead to the discovery of admissible evidence. Pursuant to a Stipulation between the parties, the parties agreed Swift would only be required to produce documents from August 8, 2009 forward to Plaintiffs. However, if a five-year class is certified by the Court, Swift agrees to provide to Plaintiffs the remaining documentation from August 8, 2006 to August 8, 2009. The objection contained in this paragraph will be referred to subsequently as the "Two-Year SOL Objection," and reference to the Two-Year SOL Objection shall incorporate the contents of this entire paragraph.

As the parties have previously discussed, Swift takes the position that Plaintiffs may not certify a class that includes non-driver applicants or employees, and therefore

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

1   objects on the ground that information sought by Plaintiffs as to non-drivers is irrelevant

2   and not calculated to lead to the discovery of admissible evidence.  Notwithstanding this

3   position, Swift has agreed, without waiver of these objections, to provide non-driver

4   information to Plaintiffs.  Nevertheless, Swift's objection to provision of this information

5   stands.  The objection contained in this paragraph will subsequently be referred to as the

6   "Non-Driver Objection," and reference to the Non-Driver Objection shall incorporate the

7   contents of this entire paragraph.

8       Swift further objects to Interrogatory No. 3 to the extent that it seeks confidential,

9   proprietary, or otherwise privileged information that is not otherwise known or publicly

10  available to its competitors, such as Swift's policies and procedures for hiring drivers.

11  Interrogatory No. 3 is also objectionable because it is compound in requesting the hiring

12  process in different regions and different timeframes.

13      Notwithstanding these objections and without waiving them, Swift responds as

14  follows regarding its hiring process for drivers:

15      Swift accepts driver applications through a variety of mediums, including through

16  paper, in-person, mail, facsimile, trucking driving schools, and over the internet (web

17  applications).  Swift accepts web applications through multiple websites and links.  Swift

18  also accepts web applications from Randall Riley, a recruiting services vendor, which uses

19  a generic application intended for a variety of trucking companies.

20      Depending on the type of applicant, they may have to undergo a different

21  application process.  Swift has four different classes of driver applicants:

22      (1)   **Academy Drivers**.  These drivers do not currently possess a Commercial

23            Driver's License ("CDL") and are seeking enrollment in a Swift trucking

24            academy in order to obtain a CDL and subsequent employment with Swift;

25      (2)   **Trainee Drivers**.  These drivers have recently obtained their CDL from a

26            non-Swift driving school, but do not have proper driving experience, and

27            will have to have driver training provided by Swift as part of their initial

28            employment;

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

(3)     **Experienced Drivers**.  These drivers have possessed a CDL for at least 6 months and have driven during the last 12 months;

(4)     **Re-Hire Drivers**.  These drivers have previously worked for Swift.

The application process for each type of driver is somewhat different.

Once submitted, applications are typically imported onto Swift's proprietary and customized electronic databases.   Further, a recruiter is generally assigned to the application.  This can happen in multiple ways:  (1) the database can assign an application to a Swift recruiter; (2) an applicant can designate their recruiter on their application, typically where there has been prior contact with that recruiter, and that recruiter will be assigned to the application; and (3) a recruiter can go into Swift's database and assign themselves to a particular application.   Assignment of an application to a recruiter can occur either before or after importation of the application into Swift's electronic database.

The recruiter is responsible for initiating a live contact with the applicant, typically by telephone.   During this initial live contact, the recruiter directly asks the applicant certain questions, including all of the pre-qualifying questions on the application (including criminal conviction history).   The recruiter will also typically explain Swift's application process and the information required by Swift, including work and driving history and criminal background information.   The recruiter will normally also explain that Swift will be obtaining employment history ("DAC reports"), driving records ("MVR reports") and criminal background reports ("Widescreen reports").   Finally, the recruiter will typically, as part of the application materials, obtain the applicant's consent to procure these consumer reports.

After the initial contact, it is the recruiter's responsibility to ensure that the application is 100% complete and also to determine whether the applicant is eligible for employment with Swift and meets Swift's and the Department of Transportation's ("DOT") minimum qualifications.   This process is called "pre-qualifying."   Applicants may be disqualified from employment with Swift for a variety of reasons based upon their application or initial contact, such as possessing a bad driving record or having a DUI or

15487783

1  DWI conviction in the past 5 years.   Swift has previously produced to Plaintiffs its

2  Company Hiring Criteria as STC000085-90 and STC000150-209.

3      Once the applicant meets Swift's basic eligibility standards, the recruiter reviews

4  and processes the application to determine whether the applicant meets Swift's basic

5  hiring criteria.   Following the recruiter review, a recruiting processor then reviews the

6  application and confirms that it meets Swift's basic hiring criteria.   The recruiter and the

7  recruiting processor both review the application in its entirety for a variety of issues, such

8  as gaps in employment, driver experience, and criminal background.   The recruiter and the

9  recruiting processor may contact the applicant again for additional follow-up information.

10      As just one example of the various routes that an individual's application process

11  may take, if the application reveals a conviction, or the applicant disclosed a conviction

12  during the live initial contact, the applicant must fill out a Conviction Form disclosing

13  his/her criminal history.   If the Conviction Form reveals solely a misdemeanor more than

14  2 years old, the recruiter may, but is not required to, approve the applicant for further

15  processing.   In all other circumstances, the Conviction Form is then submitted to

16  Investigations (also called the Security Department) for review.   If Investigations requires

17  an interview, they will send an e-mail to the recruiter to have the applicant contact

18  Investigations for an interview.   A Swift recruiter will then instruct the applicant to

19  contact Investigations for an interview, where the applicant is asked questions regarding

20  any conviction(s) the applicant disclosed on their application and/or Conviction Form, as

21  well as any other convictions the applicant discloses during the interview.   During that

22  interview, Swift allows the applicant to explain the circumstances surrounding any

23  convictions or charges s/he has disclosed, and further gives the applicant an opportunity to

24  provide (or later obtain and provide) any documentation disputing the accuracy of any

25  conviction or charge.   Investigations must clear the applicant after the interview in order

26  for the application to continue through the hiring process.

27      In addition, throughout the recruiting and/or investigation process, if the applicant

28  cannot be reached or is unwilling or unable to respond to the recruiter's or Investigation's

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

1    questions, the applicant may also be disqualified from further processing.

2          At some time during the pre-qualification process, the applicant is required to
3    provide written consent to Swift's procurement of consumer reports.  An application may
4    not proceed beyond the pre-qualification stage unless and until an applicant has provided
5    this consent.

6          Swift has utilized different forms and language to obtain an applicant's consent to
7    procure consumer reports over time.  Prior to September 2011, applicants authorized Swift
8    to perform background checks via language contained on Swift's employment
9    applications.    Additionally, electronic applicants affirmatively checked "Yes" to the
10   question, "May we request information on you from outside consumer reporting
11   agencies?"   Beginning in September 2011, Swift used the FCRA Disclosure &
12   Authorization form document Bates-labeled as STC000126-000130.  In February 2012,
13   Swift revised its FCRA Disclosure & Authorization form to the document Bates-labeled
14   STC000131-000133.    All applications during the relevant time period contained
15   acknowledgments that the applicant had to consent to before Swift would accept their
16   application and process it further.  The language of these acknowledgments varied over
17   time, as can be seen on documents Bates-labeled STC000001-000005, STC000038-
18   000042, and STC000096-000125.

19         Swift Academy Driver applicants must also take a mandatory online course and
20   score 80% or higher for the application to proceed in the hiring process.

21         After the recruiter has completed the pre-qualification process, and after receiving
22   the applicant's written consent to procure consumer reports, the recruiter may click a
23   button in the electronic database to order consumer reports from HireRight.  The recruiter
24   will receive a DAC and MVR report and review those reports for any concerns or
25   disqualifying information under the Company Driver Hiring Criteria.  The recruiter and/or
26   processor then confirms the application's information and other driver hiring criteria as
27   provided in the Swift Company Driver Hiring Criteria, produced as documents Bates-
28   labeled STC000085-000090 and STC000136-000209.   The recruiter can decline the

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

1    applicant if the applicant fails to meet any Hiring Criteria or if the DAC or MVR reveals

2    that the applicant has provided false information on their application.

3        At the same time, a Widescreen criminal background report is ordered from

4    HireRight, but the Widescreen report goes directly to Investigations only, not to the

5    recruiter.   Investigations reviews the Widescreen report to verify whether there is any

6    criminal conviction information regarding the applicant.  If there is any such information,

7    Investigations sends an e-mail to the assigned recruiter telling that recruiter to have the

8    applicant contact Investigations for an interview.

9        The Investigations interview when a conviction appears on the Widescreen report

10   is largely the same as the process described above when an applicant voluntarily discloses

11   a conviction on their application and fills out a Conviction Form.    Swift interviews the

12   applicant and allows the applicant to explain the circumstances surrounding any

13   convictions or charges, including an opportunity to provide any documentation disputing

14   the accuracy of any conviction or charge.  Investigations must clear the applicant after the

15   interview in order for the applicant to continue through the hiring process.

16       In addition, an applicant must pass a DOT physical and drug test screening.  If an

17   applicant fails either of these tests, they are declined pursuant to DOT regulations.

18       After confirmation that the applicant has met all Swift hiring and screening criteria,

19   Swift schedules the applicant to attend orientation.    An offer of employment is

20   conditioned upon successful completion of orientation.  An applicant could be disqualified

21   at orientation for a variety of reasons.   An applicant could fail the road test that is

22   administered during orientation.    An applicant could disclose information during

23   orientation that reveals that s/he falsified the contents of his/her application.  An applicant

24   could fail the DOT mandated drug screen and/or physical. Or, as with Mr. Daniel, an

25   applicant could disclose criminal conviction information at orientation that was not

26   disclosed during the initial recruiter contact, on the employment application or on the

27   Widescreen report.  If that occurs, the Investigation interview process is followed and the

28   applicant must be approved by Investigations to continue in the hiring process.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

In the event Swift based a decision not to hire an applicant on information obtained in a consumer report, Swift takes different approaches for in-person applicants and other applicants. For in-person applicants, beginning in November 2011, Swift issues a pre-adverse action notice to the applicant and subsequently issues an adverse action letter. For not-in-person applicants, also beginning in November 2011, Swift issues the applicant an adverse action letter, as well as an FCRA summary of rights, within three days of its determination to take adverse action. Prior to November 2011, any notices of adverse action, if given, would have been oral.

The foregoing relates to applicants for driver positions. Swift will supplement this response to describe its process regarding applicants for non-driver positions.

**INTERROGATORY NO. 4:**

For the time period between August 8, 2006 and the present, provide the names and addresses of all recruiting personnel, human resource personnel or your other employees who process any of the following documents pertaining to job applicants seeking employment with you:

a.      Requests for criminal background reports, driving records or any other consumer report;

b.      Job applications received in person, electronically, orally, by facsimile, or by mail; and

c.      Adverse Action or "Pre-Adverse action" notices.

**ANSWER:**

Swift objects to Interrogatory No. 4 as overly broad and unduly burdensome as not all recruiting personnel, human resource personnel, or other Swift employees who process certain consumer reports, job applications, and adverse action or pre-adverse action notices will have information that is relevant or material to Plaintiffs' claims or efforts to certify the purported class.

Swift asserts the Two-Year SOL Objection, as well as the Non-Driver Objection to Interrogatory No. 4.

15487783

Notwithstanding these objections and without waiving them, Swift responds that the following Swift employees process or processed documents including consumer reports, job applications and pre-adverse and/or adverse action notices:

| NAME | LOCATION OF EMPLOYMENT |
|---|---|
| Donald Anderson | Phoenix, Arizona |
| Irene Arredondo | Phoenix, Arizona |
| Emily Baker | Edwardsville, Kansas |
| Paul Barta | Phoenix, Arizona |
| Cindy Bouch | Phoenix, Arizona |
| Riley Branch | Lancaster, Texas |
| Karina Torres Breceda | Phoenix, Arizona |
| Jerrald Calvillo | Columbus, Ohio |
| Roy Carrasco | Phoenix, Arizona |
| Crege Carter | Memphis, Tennessee |
| Melissa Castillo | Phoenix, Arizona |
| Brooke Chamberlain | Phoenix, Arizona |
| Ronnie Chandler | Phoenix, Arizona |
| Shannon Cologna | Phoenix, Arizona |
| Javier Covian | Phoenix, Arizona |
| Brandon Cragun | Menasha, Wisconsin |
| Jacqueline Curry | Phoenix, Arizona |
| Kimberly Deducca | Lancaster, Texas |
| Araceli Deleon | Phoenix, Arizona |
| Douglas Driscoll | Sumner, Washington |
| Joey Fowler | Greer, South Carolina |
| Sherry Goggin-Rysedorph | Phoenix, Arizona |

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

| Melody Gonzalez | Phoenix, Arizona |
| --- | --- |
| Sherry Haldeman | Harrisburg, Pennsylvania |
| Kevin Harring | Phoenix, Arizona |
| William Hartley | Lewiston, Idaho |
| Benjamin Harvey | Atlanta, Georgia |
| Christopher Hedges | Phoenix, Arizona |
| Kris Keplar | Columbus, Ohio |
| Dawn Linville | Edwardsville, Kansas |
| Lizanne Luke | Phoenix, Arizona |
| Ludivina Marin | Phoenix, Arizona |
| Veronica Martinez | Phoenix, Arizona |
| Autumn Matte | Phoenix, Arizona |
| Erica McCoy | Phoenix, Arizona |
| Donna Moore | Phoenix, Arizona |
| Mayra Nieto | Phoenix, Arizona |
| Abraham Ornelas | Phoenix, Arizona |
| Steven Ornelas | Phoenix, Arizona |
| Mario Padilla | Phoenix, Arizona |
| Sonya Pantoja | Phoenix, Arizona |
| Stephanie Pedroza | Phoenix, Arizona |
| Nancy Perkins | Syracuse, New York |
| Michael Person | Phoenix, Arizona |
| Lloyd Pumphrey | Fontana, California |
| Deanna Rada | Phoenix, Arizona |
| Daniel Ramirez | Phoenix, Arizona |
| Corina Salgado | Phoenix, Arizona |
| Thomas Selander | Phoenix, Arizona |

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

| Michael Short | Phoenix, Arizona |
|---|---|
| Amber Smith | Phoenix, Arizona |
| Tamara Strickland | Memphis, Tennessee |
| Shannon Sund | Phoenix, Arizona |
| Lisa Taylor | Lathrop, California |
| Gilbert Toscano | Phoenix, Arizona |
| Rachelle Valle | Phoenix, Arizona |
| Tamala Wilchert | Memphis, Tennessee |

The following individuals in the Security Department processed criminal background reports, driving records, and other consumer reports. They also would have been involved in part with processing applications and may have been involved in giving adverse action notices.

| NAME | LOCATION OF EMPLOYMENT |
|---|---|
| Michelle Adamson | Phoenix, Arizona |
| Mark Donahue | Fontana, California |
| Shawn Driscoll | Phoenix, Arizona |
| Angelica Flores | Phoenix, Arizona |
| Aaron Peterson | Phoenix, Arizona |
| Patricia Ramos | Phoenix, Arizona |
| Berenice Ruiz | Phoenix, Arizona |

**INTERROGATORY NO. 5:**

For the period between August 8, 2006 and the present, provide the names and addresses of all persons who applied for an employment position with you and about whom you obtained a consumer report, including the date the consumer report was obtained, and whether you had in-person contact with such persons prior to obtaining the

- 14 -

15487783

consumer report.

**ANSWER:**

Swift objects to Interrogatory No. 5 as overly broad and unduly burdensome as Swift receives thousands of applications for employment each year. Compliance with this interrogatory is onerous and overly burdensome as it requires identifying thousands of individuals and the corresponding information requested by Plaintiffs about each individual, regardless of the position they applied for and when.

Swift asserts the Two-Year SOL Objection, as well as the Non-Driver Objection.

Swift also objects to Interrogatory No. 5 to the extent that it seeks confidential, proprietary, or otherwise privileged information that is not otherwise known or publicly available to its competitors, such as the names of, and information regarding, persons that were provided to Swift by any consumer reporting agency. Certain information is also subject to the confidentiality provision and other terms of the written contracts between Swift and certain consumer reporting agencies.

In addition, Swift objects to Interrogatory No. 5 as overly broad and unduly burdensome because the purported class is not appropriate for class action treatment. Among other issues, the decision to offer employment, and if accepted, to hire driver applicants involves multiple individualized inquiries as to that driver's qualifications and employment application including, but not limited to, whether Swift ordered a background report for the applicant, whether the applicant provided false information on the employment application, whether any disclosed information was automatically disqualifying, whether the applicant meets DOT standards, and whether the applicant met Swift's standards. Various individualized inquiries also apply to each applicant's involvement in the class action, such as when the applicant was on inquiry notice of a possible violation of the FCRA and whether the applicant only seeks statutory and punitive damages, as opposed to actual damages.

Swift further objects to the extent this request seeks electronic information as it may call for information that is not readily accessible.

15487783

Notwithstanding these objections and without waiving them, Swift responds that the information requested in Interrogatory No. 5 may be obtained from documents containing the data from applications submitted by individuals seeking driver positions at Swift, as they exist in the proprietary electronic databases Swift employees use during the recruiting and hiring process. *See, e.g.*, documents Bates-labeled STC000456-099883, STC104789-113111; STC126681-178720; STC212832-254274. Accordingly, Swift incorporates by reference its responses, objections, and the responsive documents produced pursuant to Requests for Production Nos. 3-6, as if fully set forth herein.

Swift has also produced two searchable databases containing responsive information: (1) a web recruiting database containing screen shots of the internet applications for each individual who applied for a driver position at Swift from August 8, 2009 through February 2011; and (2) a database used by Swift's security department that contains a spreadsheet detailing the individuals that had contact with Swift's security department during the application process. *See, e.g.*, documents Bates-labeled STC256174-256175. Accordingly, Swift incorporates by reference its responses, objections, and responsive documents produced pursuant to Requests for Production Nos. 3-6 & 22, as if fully set forth herein.

**<u>INTERROGATORY NO. 6:</u>**

For the period between August 8, 2006 and the present, provide the following information pertaining to your policies or procedures to ensure compliance with the Fair Credit Reporting Act:

a. the date the policy or procedure was first created;

b. identify individuals who drafted and/or revised the policy or procedure;

c. identify any changes made to the policy or procedure (inclusive of what was added, deleted, or replaced) and provide the dates of such changes;

d. identify the individuals who have access to and whose function is to review consumer reports for employment purposes; and

e. identify all documents containing such policies or procedures.

15487783

**ANSWER:**

Swift asserts the Two-Year SOL Objection, as well as the Non-Driver Objection.

In addition, Swift objects to Interrogatory No. 6 to the extent that it seeks information protected by the attorney-client privilege and/or the work-product doctrine. Interrogatory No. 6 is also objectionable to the extent that it seeks confidential, proprietary, or otherwise privileged information that is not otherwise known or publicly available to its competitors. Certain information is also subject to the confidentiality provision and other terms of the written contracts between Swift and certain consumer reporting agencies.

Notwithstanding these objections and without waiving them, Swift has maintained various disclosure forms and applications for a number of years by which applicants authorize Swift to obtain job-related information about the applicants. For driver applications, Swift received authorization to perform background checks if job-related. Prior to September 2011, the driver applications contained acknowledgments that the applicant had to answer before finalizing their application submission. The language of these acknowledgments varied over time, as can be seen on documents Bates-labeled STC000001-000005, STC000038-000042, and STC000096-000125. Swift revised its policy in September 2011 by providing driver applicants during the application process with an FCRA Disclosure and Authorization form. *See, e.g.,* document Bates-labeled STC000126-000130. In February 2012, Swift revised its policy, which included providing driver applicants with a different FCRA disclosure form. *See, e.g.,* document Bates-labeled STC000131-000133.

Beginning in November 2011, when recruiters access Swift's proprietary and customized electronic databases and ensure an applicant's information is complete and accurate, the recruiters select whether the applicant is an in-person or non-in-person applicant at the time of application. This selection then determines the type of notice an applicant receives if adverse action is taken against them. For in-person applicants, Swift issues a pre-adverse action notice to the applicant and then subsequently issues an adverse

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

1    action letter.  For other not-in-person applicants, also beginning in November 2011, Swift

2    issues the applicant a letter within three days of its determination to take adverse action.

3    Gary Fitzsimmons, Shawn Driscoll and Swift's in-house counsel revised these policies

4    and procedures as to driver applications.

5         Swift also incorporates by reference its responses and objections to Interrogatory

6    Nos. 3, 12, & 13, as if fully set forth herein.  As to individuals who have access to and

7    whose function is to review background reports, Swift incorporates by reference its

8    responses and objections to the second list of individuals, Interrogatory No. 4, as if fully

9    set forth herein.   Further, documents containing Swift's policies or procedures have

10   already been produced in this matter.  *See, e.g.,* Swift's First Supplemental Disclosure

11   Statement and documents Bates-labeled as STC000085-000090 and STC000126-000209.

12        The foregoing relates to applicants for driver positions.  Swift will supplement this

13   response to describe its process regarding applicants for non-driver positions.

14   **INTERROGATORY NO. 7:**

15        Identify all experts and non-experts known to you who have knowledge of facts

16   relevant to this case, and state the subject of testimony or knowledge, giving a brief

17   description thereof, and identify all documents received from or communicated to such

18   person by you regarding the Named Plaintiffs, or the subject matter of this case.  If you

19   intend to qualify any of these persons as experts, please so indicate, giving their areas of

20   expertise and their credentials as experts.

21   **ANSWER:**

22        Swift objects to Interrogatory No. 7 as overly broad and unduly burdensome as the

23   list of <u>all</u> experts <u>and</u> non-experts who have knowledge of facts relevant to this case is

24   likely to be so lengthy that a proper response is onerous and borders on harassment.  Swift

25   receives thousands of applications for employment each year, and these individuals may

26   have some knowledge regarding the facts relevant to this case.  Swift also has over one-

27   hundred current employees, as well as former employees, who potentially have

28   knowledge of facts relevant to this case.   Identifying each of these thousands of

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

1   individuals, and the corresponding information requested by Plaintiffs, is unduly
2   burdensome.

3       Swift also objects to Interrogatory No. 7 to the extent that it seeks information
4   protected by the attorney-client privilege and/or the work-product doctrine.  Swift further
5   objects to Interrogatory No. 7 to the extent that it seeks confidential, proprietary, or
6   otherwise privileged information that is not otherwise known or publicly available to its
7   competitors, such as policies outlining Swift's hiring procedures or the written contracts
8   between Swift and any consumer reporting agencies.  Certain information is also subject
9   to the confidentiality provision and other terms of the contracts between Swift and certain
10  consumer reporting agencies.  Interrogatory No. 7 is also objectionable to the extent that
11  the information requested is already known by, or available to, Plaintiffs, as evidenced in
12  Swift's disclosure statements and documents produced contemporaneously therewith.

13      Notwithstanding these objections, Swift responds that it has not yet engaged or
14  retained any experts in this case.  Expert disclosures are not due until April 1, 2013.  Swift
15  will supplement its response in the event that Swift engages or retains a testifying expert
16  in this case.  As for non-experts with knowledge of facts relevant to this case, Swift
17  incorporates by reference its responses and objections to Interrogatory Nos. 1, 4, 5, and
18  10, and information provided in Swift's disclosure statements, as if fully set forth herein.

19  **INTERROGATORY NO. 8:**

20      Identify all of your employees, representatives, or the like, who communicated
21  with Named Plaintiffs, and/or with any third party communicating on behalf of the Named
22  Plaintiffs, regarding their employment applications and/or consumer reports and for each
23  such person, state his or her job title and job description and the subject, nature and
24  content of the communications.

25  **ANSWER:**

26      Swift objects to Interrogatory No. 8 to the extent that the information requested is
27  already known by, or available to, the Named Plaintiffs, as they are in the best position to
28  know who communicated with them, and as evidenced in Swift's disclosure statements

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

1   and documents produced contemporaneously therewith.

2       Notwithstanding these objections and without waiving them, in response to

3   Interrogatory No. 8, Swift incorporates by reference its response and objections to

4   Interrogatory No. 1 to the extent the individuals identified in Interrogatory No. 1

5   communicated with the Named Plaintiffs.

6   **INTERROGATORY NO. 9:**

7       Did you take adverse action as to Named Plaintiffs?  If yes, state the date and

8   provide a full description of the actions taken.  If your answer is no, state all facts and

9   legal basis which support your answer.

10   **ANSWER:**

11       Swift objects to Interrogatory No. 9 to the extent that it  requests Swift make a

12   legal conclusion regarding whether Swift took adverse action against the Named

13   Plaintiffs.

14       Notwithstanding this objection and without waiving it, Swift responds that Swift

15   did not hire Kelvin Daniel, but that decision was not an adverse action that required

16   compliance with the Fair Credit Reporting Act.   On January 24, 2011, at a Swift

17   orientation, Mr. Daniel voluntarily disclosed several convictions in response to Swift's

18   admonition that applicants accurately fill out and disclose information on their

19   applications.  Based on those disclosures, which did not appear on his application or his

20   criminal background report, Swift told Mr. Daniel and told him he would need to follow

21   up with Swift's Security Department.   On January 27, 2011, during his telephonic

22   interview with the Security Department, Mr. Daniel admitted that he failed to disclose

23   these convictions on his employment application, and his conditional job offer was then

24   revoked.  That decision was not based in whole or in part on his consumer report.

25       Swift did not hire Plaintiff Tanna Hodges following her December 2009

26   application, but that decision was not an adverse action requiring compliance with the Fair

27   Credit Reporting Act.  Ms. Hodges' September 2009 applications, while received, were

28   not processed beyond the application stage and no consumer report was ever ordered by

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

1    Swift with respect to these applications.   With regard to her December 12, 2009 web

2    application, Ms. Hodges answered "No" to the question of whether she had ever been

3    convicted of a criminal offense.   Following the processing of that web application, Swift

4    procured consumer reports on Ms. Hodges that revealed a number of prior criminal

5    convictions.   Swift requested that Ms. Hodges contact and interview with its Security

6    Department.   On December 14, 2009, during her security interview regarding her

7    application, Ms. Hodges confirmed that she had multiple different criminal convictions,

8    despite responding in the negative on her web application to the question, "Have you ever

9    been convicted of a criminal offense?"   At this point, Ms. Hodges was disqualified from

10   employment with Swift.

11   **INTERROGATORY NO. 10:**

12        For Named Plaintiffs and each putative class member you terminated, denied or

13   delayed employment based in whole or in part upon information contained in a consumer

14   report between August 8, 2006 and the present, identify each person's name and address,

15   and separately state the dates, on which you:

16        a.      obtained their written consent to obtain a consumer report;

17        b.      obtained a consumer report;

18        c.      provided the employee or applicant with a copy of the consumer report;

19        d.      discharged, denied or delayed employment to the employee or applicant;

20        e.      provided the employee or applicant with a written summary of FCRA rights;

21        f.      sent the post-adverse notices required by 15 U.S.C. §1681m to the

22   individual.

23   **ANSWER:**

24        Swift objects to Interrogatory No. 10 as overly broad and unduly burdensome as

25   Swift receives thousands of applications for employment each year.   Compliance with this

26   interrogatory is onerous and overly burdensome as it requires identifying thousands of

27   individuals and the corresponding information requested by Plaintiffs about each

28   individual, regardless of the position they applied for and when.   The breadth of this

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

1    request borders on harassment.

2         Swift asserts the Two-Year SOL Objection, as well as the Non-Driver Objection.

3         Swift also objects to Interrogatory No. 10 to the extent that it seeks confidential,

4    proprietary, or otherwise privileged information that is not otherwise known or publicly

5    available to its competitors, such as the names of, and information regarding, persons that

6    were provided to Swift by any consumer reporting agency.   Certain information is also

7    subject to the confidentiality provision and other terms of the written contracts between

8    Swift and certain consumer reporting agencies.

9         In addition, Swift objects to Interrogatory No. 10 as overly broad and unduly

10   burdensome because the purported class is not appropriate for class action treatment.

11   Swift further objects to the extent this request seeks electronic information as it may call

12   for information that is not readily accessible.

13        Swift also objects to the interrogatory as phrased because it assumes facts about the

14   hiring process.   As set forth in Swift's Answer to Interrogatory No. 3, hiring at Swift

15   involves multiple steps and multiple people and the contents of background reports do not

16   necessarily determine the decisions Swift makes.

17        Notwithstanding these objections and without waiving them, Swift responds as

18   follows:

19   - Kelvin Daniel, 700 Wapello Circle, Natomas, CA 95835.  Swift obtained
20     Mr. Daniel's consent to investigate all references and to secure additional
         job-related information about Mr. Daniel with his application on December
21       27, 2010.  He also consented and authorized Swift to obtain information on
         him from outside consumer reporting agencies.  Swift ordered a Widescreen
22       report from HireRight Solutions, Inc. ("HireRight") on Mr. Daniel on
         December 28, 2010.  That report revealed no criminal convictions and
23       played no role in the decision not to hire Mr. Daniel.  On January 28, 2011,
24       Swift decided not to hire Mr. Daniel and revoked his conditional offer of
         employment due to Mr. Daniel's voluntary disclosure of criminal
25       convictions during orientation on January 24, 2011, his confirmation of
         those convictions during a telephonic interview with the Security
26       Department on January 27, 2011, and consequently his admission that he
         had falsified his employment application by failing to disclose any of his
27       criminal convictions on the application.
28

15487783

- Tanna Hodges, 337 IRA Apt. F, San Antonio, TX 78209. Swift never procured a consumer report with respect to Ms. Hodges' September 25 and 29, 2009 employment applications. Swift obtained Ms. Hodges' consent to investigate all references and to secure additional information about Ms. Hodges with her web application on December 14, 2009. She also consented and authorized Swift to obtain information about her from outside consumer reporting agencies. Swift ordered a criminal background report from HireRight on Ms. Hodges on December 14, 2009. On December 14, 2009, after Ms. Hodges confirmed her prior criminal convictions in an interview with Swift's Security Department, Swift decided not to hire Ms. Hodges due to her failure to disclose her convictions on her employment application and because she did not meet Swift hiring criteria.

Additional information requested in Interrogatory No. 10 may be obtained from documents containing the data from applications submitted by individuals seeking driver positions at Swift, as they exist in the proprietary electronic databases Swift employees use during the recruiting and hiring process. *See, e.g.*, documents Bates-labeled STC000456-099883, STC104789-113111; STC126681-178720; STC212832-254274. Accordingly, Swift incorporates by reference its responses, objections, and the responsive documents produced pursuant to Requests for Production Nos. 3-6, as if fully set forth herein.

Swift also produced two searchable databases containing responsive information: (1) a web recruiting database containing screen shots of the internet applications for each individual who applied for a driver position at Swift from August 8, 2009 through February 2011 and (2) a database used by Swift's security department that contains a spreadsheet detailing the individuals that had contact with Swift's security department during the application process. *See, e.g.*, documents Bates-labeled STC256174-256175. Accordingly, Swift incorporates by reference its responses, objections, and responsive documents produced pursuant to Requests for Production Nos. 3-6 & 22, as if fully set forth herein.

The foregoing relates to applicants for driver positions. Swift will supplement with respect to applicants for non-driver positions.

15487783

**INTERROGATORY NO. 11:**

Identify all documents in your possession or control from which any of the information requested in Interrogatory No. 10 can be derived, and for each such document, identify the following:

        a.      the location of the document;

        b.      the custodian of the document; and

        c.      your specific estimate of the time and expense required to access and copy the document.

**ANSWER:**

Swift objects to Interrogatory No. 11 as overly broad and unduly burdensome as not all documents in Swift's possession or control from which the information requested in Interrogatory No. 10 can be derived will be relevant or material to Plaintiffs' claims or efforts to certify the purported class. Swift receives thousands of applications for employment each year. Compliance with this interrogatory is onerous and overly burdensome as it requires Swift to access and process data that is not readily accessible to determine whether and to what extent documents exist that may arguably be relevant to the facts of this case. Interrogatory No. 11 requires Swift to identify thousands of applications and obtain all corresponding information regarding each applicant. Further, multiple documents contain the same information, rendering many documents duplicative of one another.

Swift asserts the Two-Year SOL Objection, as well as the Non-Driver Objection.

Swift also objects to Interrogatory No. 11 to the extent that it seeks confidential, proprietary, or otherwise privileged information that is not otherwise known or publicly available to its competitors, such as the names of, and information regarding, persons that were provided to Swift by any consumer reporting agency. Certain information is also subject to the confidentiality provision and other terms of the written contracts between Swift and certain consumer reporting agencies.

In addition, Swift objects to Interrogatory No. 11 as overly broad and unduly

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

1  burdensome because the purported class is not appropriate for class action treatment.

2  Swift further objects to the extent this request seeks electronic information as it may call

3  for information that is not readily accessible. Interrogatory No. 11 is also objectionable to

4  the extent that it calls for legal conclusions about whether adverse action was taken, what

5  action occurred, and why.

6  Notwithstanding these objections and without waiving them, Swift responds that

7  the requested information can be derived from the employment applications Swift

8  received from driver applicants.  The employment applications, including authorizations,

9  releases, criminal background reports, and other associated documents, are located on

10 Swift's proprietary and customized electronic databases.  Swift has produced employment

11 applications and related documents, and Swift incorporates by reference its responses,

12 objections, and responsive documents to Plaintiffs' Requests for Production Nos. 3-6 as if

13 fully set forth herein.

14 Swift also produced two searchable databases containing responsive information:

15 (1) a web recruiting database containing screen shots of the internet applications for each

16 individual who applied for a driver position at Swift from August 8, 2009 through

17 February 2011 and (2) a database used by Swift's security department that contains a

18 spreadsheet detailing the individuals that had contact with Swift's security department

19 during the application process.  *See, e.g.*, documents Bates-labeled STC256174-256175.

20 Accordingly, Swift incorporates by reference its responses, objections, and responsive

21 documents produced pursuant to Requests for Production Nos. 3-6 & 22, as if fully set

22 forth herein.

23 The foregoing relates to applicants for driver positions.  Swift will supplement with

24 respect to applicants for non-driver positions.

25 **INTERROGATORY NO. 12:**

26 Identify and describe all efforts by you to comply with the FCRA since August 8,

27 2006, including internal audits and audits by outside companies or individuals and

28 identify all communications and other documents that regard same.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

**ANSWER:**

Swift objects to Interrogatory No. 12 as overly broad and unduly burdensome as not all efforts to comply with the FCRA will be relevant or material to Plaintiffs' claims or efforts to certify the purported class. Swift's efforts to comply with other aspects of the FCRA, other than the issues raised by Plaintiffs, are not relevant or material to this dispute.

Swift asserts the Two-Year SOL Objection, as well as the Non-Driver Objection.

Swift further objects to Interrogatory No. 12 to the extent that it seeks information protected by the attorney-client privilege and/or the work-product doctrine. In addition, Swift objects to Interrogatory No. 12 to the extent that it seeks confidential, proprietary, or otherwise privileged information that is not otherwise known or publicly available to its competitors, such as Swift's policies and procedures for complying with the FCRA. Certain information is also subject to the confidentiality provision and other terms of the written contracts between Swift and certain consumer reporting agencies. Interrogatory No. 12 is also objectionable because it is compound in requesting that Swift both identify all efforts to comply with the FCRA and communications and other documents regarding the same.

Notwithstanding these objections and without waiving them, Swift incorporates by reference its responses and objections to Interrogatory Nos. 3, 6, & 13 as if fully set forth herein. Swift further responds that various Swift employees, including in-house counsel, Gary Fitzsimmons, Shawn Driscoll, and employees in recruiting have discussed compliance with the FCRA. Other than its privileged communications with in-house and external counsel, Swift has not conducted a review or audit by an outside company or individual to comply with the FCRA.

**INTERROGATORY NO. 13:**

Identify and describe the training that you provided to your employees since August 8, 2006 about the FCRA and your compliance with the FCRA.

/ / /

- 26 -

15487783

**ANSWER:**

Swift asserts the Two-Year SOL Objection, as well as the Non-Driver Objection.

Swift further objects to Interrogatory No. 13 to the extent that it seeks information protected by the attorney-client privilege and/or the work-product doctrine. In addition, Swift objects to Interrogatory No. 13 to the extent that it seeks confidential, proprietary, or otherwise privileged information that is not otherwise known or publicly available to its competitors, such as training Swift provides to its employees about the FCRA and associated policies and procedures. Certain information is also subject to the confidentiality provision and other terms of the written contracts between Swift and certain consumer reporting agencies. Interrogatory No. 13 is also objectionable because it is compound in requesting that Swift identify and describe training "about the FCRA" and Swift's training for "compliance with the FCRA."

Notwithstanding these objections and without waiving them, Swift responds that its employees use standard operating procedures for processing driver and non-driver applications that have at different times included different disclosures and forms that have always required recruiters to obtain authorization from an applicant prior to requesting consumer reports and interviewing any applicants and giving them an opportunity to explain and contest the contents of any Widescreen report before Swift declines to hire an individual based upon their criminal record. *See, e.g.,* documents Bates-labeled STC000085-000090, and STC000126-000209.

**INTERROGATORY NO. 14:**

Identify all legal opinions or other compliance opinions you received, internally or otherwise, to support the legality of your application procedures or use of consumer reports for employment purposes. If you agree to forgo any defense to "willfulness" that is based in full or part on advice of counsel and would thus assert a claim of privilege, please state such in lieu of a substantive answer.

**ANSWER:**

Swift objects to Interrogatory No. 14 as overly broad and unduly burdensome to

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

1   the extent it requests Swift identify <u>all</u> legal or compliance opinions it received about

2   application procedures or consumer reports without any time limitation.

3        Swift further objects to Interrogatory No. 14 to the extent that it seeks information

4   protected by the attorney-client privilege and/or the work-product doctrine.  In addition,

5   Swift objects to Interrogatory No. 14 to the extent that it seeks confidential, proprietary, or

6   otherwise privileged information that is not otherwise known or publicly available to its

7   competitors, such as legal and other compliance opinions Swift relies upon for compliance

8   with the FCRA.  Interrogatory No. 14 is also objectionable to the extent that it calls for

9   speculation or requests Swift make a legal conclusion regarding the applicability of any

10  defenses before the purported class is even certified and while discovery is ongoing.

11       Notwithstanding these objections and without waiving them, Swift responds that it

12  does not have information responsive to this request dated before August 9, 2011.  To the

13  extent any such privileged opinions have been received before that date, Swift will log

14  them on its privilege log.   Swift has received other legal opinions from time to time, but

15  for different purposes that are not within the scope of this request, and any such opinions

16  are privileged.  Swift does not forego or waive any defense to "willfulness."

17  **INTERROGATORY NO. 15:**

18       State in full detail every action, communication and decision that you took or made

19  regarding the Named Plaintiffs' applications for employment, including the dates of all

20  such actions or events, the person(s) involved and all documents that pertain to the action

21  taken.

22  **ANSWER:**

23       Swift objects to Interrogatory No. 15 as overly broad and unduly burdensome as

24  not every action, communication or decision Swift took or made regarding the Named

25  Plaintiffs' application for employment will be relevant or material to Plaintiffs' claims or

26  efforts to certify the purported class.  Multiple Swift employees worked on the Named

27  Plaintiffs' applications for employment, several of whom no longer work at Swift.

28       Swift also objects to Interrogatory No. 15 to the extent that the information

Snell & Wilmer

L.L.P.

LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

1  requested is already known by, or available to, the Named Plaintiffs, as they are in the
2  best position to know what was communicated to them by Swift.

3      Notwithstanding these objections, Swift incorporates by reference its responses and
4  objections to Interrogatory Nos. 1, 8, & 9 and Requests for Production Nos. 2 & 15, as if
5  fully set forth herein.

6  **INTERROGATORY NO. 16:**

7      If you deny that a class action can be properly certified in this case, state all facts
8  and all legal contentions as applied to the facts that support your denial.

9  **ANSWER:**

10      Swift objects to Interrogatory No. 16 as overly broad and unduly burdensome to
11  the extent that it requests Swift identify <u>all</u> facts supporting a denial of class certification
12  in this case.   Swift receives thousands of applications for employment each year.
13  Compliance with this interrogatory is onerous on Swift as it requires identifying thousands
14  of applications, the corresponding information requested by Plaintiffs for each individual,
15  and the basis for why each individual applicant is not a member of the purported class.
16  Such a request borders on harassment.

17      Swift also objects to Interrogatory No. 16 to the extent it seeks information
18  protected by the attorney-client privilege and/or the work-product doctrine.  Swift further
19  objects to Interrogatory No. 16 to the extent that it calls for speculation or requests Swift
20  make a legal conclusion as to facts or legal contentions that support denial of Plaintiffs'
21  purported class.

22      In addition, Swift objects to Interrogatory No. 16 as overly broad and unduly
23  burdensome on the Two-Year SOL Objection and the Non-Driver Objection and because
24  the purported class is not appropriate for class action treatment.  Swift further objects to
25  the extent this request seeks electronic information as it may call for information that is
26  not readily accessible.

27      Notwithstanding these objections, Swift responds that the burden of establishing
28  entitlement to class certification rests with Plaintiffs.  *Zinser v. Accufix Research Institute,*

15487783

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

*Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).   At this early juncture of discovery, Swift cannot be expected to anticipate, much less respond to, Plaintiffs' various arguments related to their entitlement to class certification.   At present, Plaintiffs have not produced evidence sufficient to establish, *inter alia*, commonality, typicality or adequacy of representation under Rule 23(a) of the Federal Rules of Civil Procedure, not to mention whether class treatment is appropriate under Rule 23(b).

The purported class also cannot be properly certified because the decision to offer employment and, if accepted, to hire a driver applicant involves multiple individualized inquiries as to that driver.   Individualized inquiries that preclude class certification include but are not limited to:

- Whether the applicant applied in-person or via another method;
- Whether the applicant was qualified to drive under the Company's standards;
- Whether Swift ordered a consumer report for the applicant;
- What information the applicant provided on their employment application, including any false information;
- Whether the applicant was qualified to drive under DOT standards;
- Whether the applicant was automatically disqualified from employment with Swift and, if so, why?;
- Whether the applicant challenged information contained on a consumer report;
- Whether the applicant received a copy of the consumer report;
- What the applicant told the recruiter about his/her application, background, and experience;
- What information  the applicant's consumer report contained, if any, that would disqualify the applicant from employment with Swift;
- What type of consent the applicant provided, whether oral, electronic, or otherwise, from Swift to obtain a consumer report;

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

- Whether Swift based any hiring decision on an applicant's consumer report;
- What factors led to the decision to hire or not hire the applicant;
- Whether the applicant was interviewed and, if so, what the applicant said during the interview, whether it was truthful, and what impression the applicant made during the interview;
- What the recruiter and/or processor told the applicant about his/her application;
- Whether that information was provided to the applicant in writing;
- Whether Swift's Security Department interviewed the applicant;
- What the applicant told the Security Department official;
- What the Security Department official told the applicants;
- What type of notice the applicant had regarding a possible violation of the FCRA; and
- What types of damages applicant seeks, including statutory and punitive damages, as opposed to actual damages.

In addition, Swift incorporates by reference its response and objections to Interrogatory No. 9 as if fully set forth herein.

DATED this 18th day of July, 2012.

SNELL & WILMER L.L.P.


By: _Joseph A. Kroeger_____
John F. Lomax, Jr.
Brian J. Foster
Joseph A. Kroeger
One Arizona Center
400 E. Van Buren
Phoenix, AZ  85004-2202
Attorneys for Defendant

15487783

**VERIFICATION**

STATE OF ARIZONA    )
                    ) ss.
COUNTY OF MARICOPA  )

I, MICHELLE CORDOVA, being first duly sworn upon my oath, depose and say that:

I am a Recruiting Regional Leader for Swift Transportation Co. of Arizona, LLC, the defendant in the matter of *Daniel et al v. Swift Transportation Corp.*, Case No. 2:11-cv-01548-PHX-ROS. I have reviewed the foregoing Responses to Plaintiffs' First Set of Interrogatories. I am authorized to verify and do hereby verify same under penalty of perjury as being true and correct to my personal knowledge, except as to those matters as to which I lack personal knowledge, but am informed and believe to be true and correct based upon information and belief, and which I verify on that basis.

DATED this 18 th day of July, 2012.

_____
Michelle Cordova

15487783

**CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2012,
the original of the foregoing will be
served via Federal Express to the
following counsel of record:

Anthony R. Pecora
Dennis M. OToole
Matthew A. Dooley
Stumphauzer OToole McLaughlin
McGlamery & Loughman Company
5455 Detroit Rd.
Sheffield Village, OH 44054

I further certify that on July 19, 2012, a
copy of the foregoing will be served
via U.S. Mail on the following counsel of record:

Stanley Lubin
Lubin & Enoch PC
349 N 4th Ave
Phoenix, AZ 85003

Leonard Anthony Bennett
Susan Mary Rotkis
Consumer Litigation Associates PC
12515 Warwick Blvd., Ste. 100
Newport News, VA 23606

15487783

**EXHIBIT F**

1

CV-11-01548-PHX-ROS, January 10, 2012

1          UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF ARIZONA

3          _____

4

5   Kelvin D. Daniel, on behalf of          )
    himself and all others similarly        )
    situated, et al.,                       )

6                                           )
                          Plaintiffs,       )

7                                           )
                vs.                         )   CV-11-01548-PHX-ROS

8                                           )
    Swift Transportation Corporation,       )

9                                           )   Phoenix, Arizona
                          Defendant.        )   January 10, 2012

10   _____    )   11:01 a.m.

11

12

13       BEFORE:   THE HONORABLE ROSLYN O. SILVER, JUDGE

14       REPORTER'S TRANSCRIPT OF PROCEEDINGS

15               STATUS HEARING

16

17

18

19

20

    Official Court Reporter:
21   Elaine Cropper, RDR, CRR, CCP
    Sandra Day O'Connor U.S. Courthouse
22   401 West Washington Street,
    Suite 312, Spc. 35
23   Phoenix, Arizona  85003-2150
    (602) 322-7245
24
    Proceedings Reported by Stenographic Court Reporter
25   Transcript Prepared by Computer-Aided Transcription

                United States District Court

23

CV-11-01548-PHX-ROS, January 10, 2012

1  I mean, are we talking two days, three days?  What are we          11:34:23

2  talking about?

3          MR. O'TOOLE:  Most likely, it would not exceed two or

4  three days, Judge.  It's just it's difficult to figure that out

5  with the size and scope of Swift.                                  11:34:38

6          THE COURT:  Well, I think we need limitations.  I'm

7  going to adopt the defendant's limitations at this time and

8  certainly as you -- as it develops and you think you need more.

9  For example, if you, after reviewing the documentation and

10 learning a little bit more about the inner workings of Swift,     11:34:59

11 then I will extend that time.  So at this point, ten hours per

12 deponent for plaintiffs and up to five Swift employees, but,

13 otherwise, the presumptive limits will apply.

14         I think those are the only disputes that we have in

15 your case management plan.  Have I missed something.              11:35:23

16         MR. O'TOOLE:  You have not, Judge, but I would like

17 to bring up just one issue that was not addressed here.  It's

18 my fault that it wasn't.  I think between Mr. Lomax and I, we

19 may be able to work this out.  But I just wanted to bring it to

20 the Court's attention and that is that when we originally filed  11:35:42

21 the complaint and the amended complaint, the defendant was

22 listed as Swift Transportation Corporation.  Swift

23 Transportation Corporation of Arizona, LLC, is the party that

24 has been served and we believe that to be a proper defendant.

25         There was a little confusion over it because in the      11:36:02

United States District Court

24

CV-11-01548-PHX-ROS, January 10, 2012

1   actual application itself, it talks about another company                    11:36:05

2   called Swifted Transportation, Inc.  So we will probably be

3   cleaning that up, hopefully, within the next 30 days and either

4   substituting the proper party or having some notification to

5   the Court.                                                                   11:36:24

6           THE COURT:  All right.

7           Mr. Lomax, is that correct?

8           MR. LOMAX:  Yes.  I've discussed this with counsel.

9   I anticipate we'll receive some version of an amended complaint

10  and I think we'll be able to iron that issue out.                           11:36:34

11          THE COURT:  Okay.

12          Do you have anything else, Mr. Lomax?

13          MR. LOMAX:  No, Your Honor.

14          THE COURT:  All right.  So, then, if you submit to me

15  the revised Rule 16 order that covers my rulings here today,                11:36:46

16  I've adopted your proposal for timing here, then I need that by

17  the 17th and I will sign it.

18          Okay.  Anything else?  Counsel?

19          MR. LOMAX:  Nothing further, Your Honor.

20          MR. O'TOOLE:  Nothing further, Your Honor.                          11:37:15

21          THE COURT:  This matter is adjourned.

22          (Whereupon, these proceedings recessed at 11:38 a.m.)

23                      *  *  *  *  *

24

25

United States District Court