LUBIN AND ENOCH, P.C.
Stanley Lubin (AZ 003076)
349 North 4th Avenue
Phoenix, Arizona 85003-1505
Telephone:   (602) 234-0008
Facsimile:    (602) 626-3586
Email:          Stan@lubinandenoch.com

STUMPHAUZER | O'TOOLE
Matthew A. Dooley (OH 0081482)
Anthony R. Pecora (OH 0069660)
Dennis M. O'Toole (OH 0003274)
5455 Detroit Road
Sheffield Village, Ohio  44054
Telephone:   (440) 930-4001
Facsimile:    (440) 934-7208
Email:          mdooley@sheffieldlaw.com
                    apecora@sheffieldlaw.com
                    dotoole@sheffieldlaw.com

CONSUMER LITIGATION ASSOCIATES, P.C.
Leonard A. Bennett (VA 27523)
Susan M. Rotkis  (VA 40693)
763 J. Clyde Morris Blvd. 1-A
Newport News, Virginia 23601
Telephone:   (757) 930-3660
Facsimile:    (757) 930-3662
Email:          lenbennett@clalegal.com
                    srotkis@clalegal.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KELVIN D. DANIEL, et al<br><br>Plaintiffs,<br><br>v.<br><br>SWIFT TRANSPORTATION CO. OF ARIZONA, LLC<br><br>Defendant. | Case No.  2:11-cv-01548-PHX-ROS<br><br>**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Assigned to:  Hon. Roslyn O. Silver |

1

**A.      Plaintiffs' Motion is timely and should not be a surprise Swift.**

Actual discovery regarding Plaintiffs' individual claims remains open through May 31, 2013.  Class discovery ended September 14, 2012, with Plaintiffs' Rule 23 motion due by and filed on October 1, 2012.  Plaintiffs contemporaneously sought leave to amend their complaint to remove claims, which Swift's production and disclosed evidence revealed would not apply to Plaintiffs, and to expressly plead that, which Swift's counsel already understood – Plaintiffs are members of the class and subclass on whose behalf Counts III and IV were originally brought.  Plaintiffs endeavored to state their claims and the class definition that Swift has, in the late stages of class discovery, asserted to be most applicable and appropriate.  Now, in opposing what should have been an agreed motion, Swift claims surprise and asserts that Plaintiffs should have known what Swift belatedly disclosed.

Swift's surprising opposition is founded on two false factual premises: (1) that Plaintiffs knew fully of Swift's procedures and timing for the use of their consumer reports – and the reports of putative class members – before Swift's August and September disclosures of documents and depositions of Swift's witnesses such that they should of known much earlier that they were members of the classes described in the original Counts III and IV; and (2) that in the context of what Swift has asserted, disclosed, negotiated with Plaintiffs and understood as Plaintiffs' case, the Plaintiffs' Motion was unduly and prejudicially delayed.  Plaintiffs acted promptly upon the completion of the depositions and belated receipt of Swift's production to amend their complaint and Swift cannot truthfully represent to the Court that it was in the remotest way surprised.

2

Swift completed Plaintiffs' depositions – each taking over nearly 6 hours in its counsel's Arizona office – and served and received substantive and complete responses to 19 Interrogatories and 19 Requests for Production. Swift served document subpoenas upon Plaintiffs' every known past and present employer and received substantive responses accordingly. Swift truthfully exhausted all discovery options and turned over every rock it could find looking for evidence as to Plaintiffs. It cannot legitimately assert it would have (or even could have) done anything differently had Plaintiffs moved to conform the complaint any sooner, or any later.

On the other hand, Plaintiffs have had to push and pull their way through discovery, requiring multiple meet and confer conferences, tolerating no less than 10 supplemental disclosure sets (objecting finally to the 11th) and having to narrow greatly the range of deposition testimony they would force from Swift, even less than three weeks before moving to amend their complaint. After a long struggle to obtain documentary and witness evidence, Plaintiffs were able to take critical depositions of Swift's employees and received several hundred thousand pages of Swift documents in August. Thereafter, Plaintiffs served their follow-up Rule 30(b)(6) Notice of Deposition (the "Notice") upon Swift on August 30, 2012. (Doc. 78). The timing of this deposition was founded on the rolling nature of Swift's document production and Swift's disclosures. Indeed, after Plaintiffs conducted various Rule 30(b)(1) depositions on August 1, 2012, Swift served the following discovery documents totaling approximately 332,302 pages:

- 8th Supplemental Responses to Request for Production of Documents (served August 7, 2012)
- 8th Supplemental Disclosures (served August 10, 2012)

3

- 2nd Amended Answers to Interrogatories (served August 15, 2012)
- 9th Supplemental Responses to Request for Production of Documents (served August 22, 2012)
- 10th Supplemental Responses to Request for Production of Documents (served August 30, 2012)
- 9th Supplemental Disclosures (served August 30, 2012)
- 10th Supplemental Disclosures (served September 10, 2012)
- 11th Supplemental Disclosures (served September 11, 2012)
- 3rd Amended Answers to Interrogatories (served September 11, 2012)

The Rule 30(b)(6) deposition is not simply relevant to Plaintiffs' Motion because it supports Plaintiffs' position that they were not dilatory, but also because exchanges between counsel reveal the fact that Swift fully understood what it was defending long before the filing of the corrective complaint. At no point did Swift object to the scope of Plaintiffs' Notice based upon a contention that Plaintiffs were seeking information regarding a class of non-in-person applicants or a class that they would now somehow claim that Plaintiffs do not represent. To the contrary, on September 4, 2012, and specifically referencing Plaintiffs' First Amended Complaint ("FAC"), Swift stated, "In the Notice, Plaintiffs appear to be seeking, for example in Topics 1 and 3, specific numbers of applicants for Counts III and IV. If we had that information, or could easily provide it, Plaintiffs would have it by now."[1] (Ex. A) Swift further confirmed that it had dumped hundreds of thousands of documents on Plaintiffs without ever stating which documents were sufficient to answer the question. *Id.* In short, Swift asserted that after

---

[1] Topic 1 sought "The number of applicants who applied to Swift electronically, by phone, or by facsimile each calendar year from 2006 through 2012."

4

producing these documents, it was up to Plaintiffs to figure out "who, when, where, and why."

After the parties conferred, Plaintiffs wrote to Swift on September 7, 2012 offering to narrow or withdraw many topics originally listed in Plaintiffs' Notice. Plaintiffs specifically stated,

> The Plaintiff has pled four basis classes. I expect that we may not proceed to certification upon the first two of these, the 'Inadequate Disclosure and Authorization In-Person Contact class and the 'Pre-Adverse'. The third class, titled 'Inadequate Disclosure and Authorization Contact by Facsimile, Telephone, Mail, Computer and Similar Means' will be premised upon the class of applicants for whom Swift used one of the limited range of applications produced by you in discovery and to which your client's management deponent has already testified.
>
> *****
> The fourth putative class, currently titled, 'Adverse Action Contact by Facsimile, Telephone, Mail, Computer and Similar Means' class, should also be subject to stipulation.

Swift responded to Plaintiffs' proposal on September 10, 2012 agreeing among other things, to "not contest numerosity of the putative class set forth in ***Count III of the FAC***." (emphasis added) (Ex. B). Shortly thereafter, Swift served its 10th and 11th Supplemental Disclosures, which led to the parties' submission of a discovery dispute to the Court. Prior to the Court's resolution of the dispute, Plaintiffs served an Amended Notice of 30(b)(6) Deposition (the "Amended Notice"), which narrowed or withdrew certain topics, and included additional topics regarding the belated declarations later excluded by the Court. (Doc. 82). Swift again objected to certain topics, but not on the basis that the Amended Notice addressed non-in-person applicants. (Ex. C).

Prior to conducting their 30(b)(6) deposition, Plaintiffs attempted to gather information regarding the uniformity of Swift's procedure to use consumer reports to

5

evaluate non-in-person applicants during the August 1, 2012 30(b)(1) depositions. (August 1, 2012 Cordova Dep. pp. 19-29, 32-33, 35-36, 39-42, 45-72, 73, 76-80, 81-82, 83-85, 92-95, 99-100). The majority of the *documents* evidencing the class-wide nature of the Swift's FCRA violations was produced *after* Plaintiffs conducted their 30(b)(1) depositions.

Lastly, Swift's own interrogatory responses evidence Swift's understanding that Plaintiffs would seek to certify a class of non-in-person applicants. On September 11, 2012, and in its Third Amended response to Plaintiffs' Interrogatory No. 16 inquiring into Swift's challenge to certification, Swift stated, "Further, as discovery has revealed, it may be impossible to ascertain and/or identify the putative class members *for Counts I through IV of the FAC*." (emphasis added).

**B.     Plaintiffs have good cause to amend their complaint.**

Under Rule 16(b)(4), a scheduling order may be modified "only for good cause and with the judge's consent." As Swift points out in its opposition, this Court addressed the dynamic between Rules 15 and 16 and the "good cause" standard in *Johns v. AutoNation USA Corp.*, 246 F.R.D. 608, 609-10 (D. Ariz. 2006) ("the focus of the [Rule 16] inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.").

At the core, Swift contends that after providing certain documents regarding Plaintiffs' job applications, Plaintiffs were on notice that their First Amended Complaint was defective. However, Swift's arguments wholly ignore the class action nature of this litigation, and fail to address its own delayed production of information necessary to

confirm that the allegations set forth in Plaintiffs' Second Amended Complaint ("SAC") are in fact accurate.[2]

### 1. The timing of Plaintiffs' Motion.

While the timing of Plaintiffs' motion is an important consideration, it is not dispositive of the issue of good cause. Considering timing as a sheer number of days or months without any factual context is misleading. Whether the timing of a request exhibits diligence on behalf of the movant depends entirely on the facts and circumstances of the case.

Over a lengthy, arduous, nine-month discovery period, Swift produced over 1,000,000 pages of documents, some of which were relevant to this action, and very much of which was clearly not. During this period, "what happened at Swift" regarding not only Plaintiffs' applications, but the entire putative class continued to develop. For example, Michelle Cordova confirmed on August 1, 2012 the date, time and type of consumers Swift regarding Daniel. (August 1, 2012 Cordova Dep. p. 66-68). Similarly, during the last phase of discovery, Swift's treatment of Hodges' application status became clear and more salient.[3] Swift implies that Plaintiffs knew and understood Hodges' and Daniel's application status much earlier, but this is simply not true. Moreover, critical to class certification discovery was Swift's uniform policy and procedure to use consumer

---

[2] A redlined version of the SAC is attached hereto as Exhibit D.
[3] Through the discovery process, it was also determined that Swift did not procure Hodge's criminal background report until December 14, 2009, while processing her December 12, 2009 online application. Even today, the parties dispute whether Hodges' prior in-person contact with Swift was sufficient to require Swift to provide Hodges with a clear, conspicuous and stand alone written disclosure in accordance with 15 U.S.C. § 1681b(b)(2)(A). Nonetheless, both the SAC and Plaintiffs' Motion for Class Certification accept Swift's viewpoint.

reports in a manner inconsistent with the FCRA. This class-wide practice was ferreted out over the *entire* course of class discovery. Moreover, Swift points to arguments made in their early Motion to Dismiss (Doc. 24) as well as applications produced amongst the millions of pages of discovery, but Swift's use of Plaintiffs' consumer reports were amongst facts disputed by the parties even into the last phase of discovery.[4]

### 2. No new claims or factual allegations not fully known or subjected to discovery were added to the SAC.

Swift also claims that the SAC asserts "new facts and a new theory of liability against Swift, claiming that Swift failed to provide notice to non-in-person applicants as required by 15 U.S.C. § 1681b(b)(2)(B)(i)." (Doc. 98 p. 12). Plaintiffs have consistently alleged that Swift procured non-in-person applicants' consumer reports without the applicants' authorization. (FAC, Doc. 19, Count III). Simply put, Swift's failure to provide the required disclosures prior to obtaining consumer reports tainted any perceived authorization from the applicants. The SAC merely states the obvious.

As reviewed in painstaking detail with Swift's 30(b)(6) designee on September 14, 2012, Plaintiffs focused the entirety of their cross-examination on the means of identifying non-in-person (primarily internet) applicants. Moreover, Plaintiffs' cross examination of Swift's 30(b)(1) witnesses likewise concentrated on Swift's internet application process. (August 1, 2012 Cordova Dep. pp. 19-29, 32-33, 35-36, 39-42, 45-

---

[4] In addition to ignoring the factual context, Swift seeks to pre-empt a decision on the merits based on a mere technicality. *Foman v. Davis*, 371, U.S. 178, 181 (U.S. 1962). Swift's opposition is contrary to the spirit of the Federal Rules of Civil Procedure and intended to extinguish the rights of thousands of consumers.

72, 73, 76-80, 81-82, 83-85, 92-95, 99-100).[5]  Swift withheld producing the call script used to communicate with applicants until September 10, 2012 well after the 30(b)(1) depositions had concluded.  (Ex. E).  And while the Court excluded the belated declarations, it is notable that Swift has been contacting putative class members who applied online – not in person.

Even Plaintiffs' 30(b)(6) Notice and Amended Notice addressed non-in-person applicants – a subject never challenged by Swift.  The notion that Swift is somehow surprised and prejudiced by the allegations set forth in the SAC is disingenuous at best.  But even if the Court grants Plaintiffs' Motion for Class Certification, merits discovery does not close until May 31, 2013.

As explained by Plaintiffs above, Swift expertly timed its disclosure of relevant documents and electronic information such that Plaintiffs were forced to use every single day of the 9-month discovery period to obtain the information necessary to prosecute their claims.  Indeed, Plaintiffs were unable to complete their Rule 30(b)(6) deposition until September 14, 2012, the last day of discovery, due to Swift's belated Tenth and Eleventh Supplemental Disclosures.  Swift's delay tactics became so prejudicial that Plaintiffs were forced to submit a discovery dispute to the Court.

---

[5] The content of Swift's telephonic disclosure to non-in-person applicants was specifically discussed with Summer Mate, one of Swift's recruiters:

> Q.  Okay.  Aside from telling the applicant that you're going order the DAC report and the MVR report, do you say anything else to the applicant about those reports?
>
> A.  No.

August 1, 2012 Mate Dep. p. 54-55.

Swift suggests that a class representative must move to amend his complaint before class certification is complete, and thus before he has a true understanding of a defendant's class-wide conduct. Here, the Court bifurcated the discovery process such that merits discovery may proceed until May 31, 2013 if Plaintiffs' Motion for Class Certification is granted. (Doc. 40, p. 2). Consequently, Plaintiffs' proposed SAC would not necessitate any extensions to the remaining deadlines established by the Court's Rule 16 Order, and no additional discovery should be required. Indeed, both parties have proceeded with class certification discovery, accepting the probability that Plaintiffs would ultimately define the class to include non-in-person applicants. This fact was underscored by the claims of Robert Bell, who was previously a class representative of consumers who applied to Swift online, by facsimile, telephone, or other non-in-person means.[6]

Moreover, nearly every page of Swift's document production and rolling disclosures pertained to online applicants, even well after Bell dismissed his claims. In fact, there is absolutely nothing Swift would have done differently in the case. All of its defenses and disclosures have been limited to the view that Swift's evidence would establish that Daniel, Hodges and nearly every similar consumer was a non-in-person applicant.

### C. Swift's opposition is a misguided collateral attack against class certification.

Swift's opposition to Plaintiffs' motion for leave is likely intended to bolster its opposition to class certification. But Swift's approach ignores an important facet of the

---

[6] Upon receiving information that Swift did not procure Bell's consumer report, Plaintiffs voluntarily dismissed his claims on May 21, 2012. (Doc. 57).

10

certification process: the Court maintains discretion to modify class definitions beyond those set forth in the pleadings under Rule 23. Courts analyzing this "broad discretion" in similar procedural postures have held that a court may (1) amend a class definition anytime before a decision on the merits is rendered, (2) amend or alter a certification order before final judgment, or (3) even modify the class after the conclusion of discovery. *See Jordan v. Commonwealth Fin. Sys.*, 237 F.R.D. 132, 136 at *FN3 (E.D. Pa. 2006); *see also* Fed R. Civ. 23(c)(1); *see also* Newberg on Class Actions § 6:14 (4th ed. 2006).

For example, in *Jordan*, the plaintiff filed a class action complaint under the Fair Debt Collection Practices Act (FDCPA) and the Pennsylvania Fair Credit Extension Uniformity Act (FCEUA). *Jordan* at 136. In his complaint, the plaintiff proposed only two classes, but later moved for certification of a third class. *Id.* The court, granted the plaintiff's motion for class certification approving all three classes, not just the two classes alleged in the plaintiff's complaint. *Id.* at 136, 140. The only relevant fact to this determination is whether Plaintiffs are members of the class they seek to represent at the time the class is certified by the district court, and they are. *See e.g. Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216-17 (1974) (to have standing to represent a class, a proposed class representative must be part of the class – i.e. possess the same interest and suffer the same injury shared by all the members of the class he represents).

Respectfully submitted,

By: /s/ Matthew A. Dooley

/s/ Leonard A. Bennett

**CERTIFICATE OF SERVICE**

This will certify that a copy of the foregoing Reply in Support of Plaintiffs' Motion for Leave Amend Pleadings was filed electronically this 12th day of October, 2012. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ Matthew A. Dooley
*Counsel for Plaintiffs*