1  John F. Lomax, Jr. (#020224)
   Brian J. Foster (#012143)
2  Joseph A. Kroeger (#026036)
   SNELL & WILMER L.L.P.
3  One Arizona Center
   400 E. Van Buren
4  Phoenix, AZ  85004-2202
   Telephone:  (602) 382-6000
5  Facsimile:  (602) 382-6070
   E-Mail: jlomax@swlaw.com
6          bfoster@swlaw.com
           jkroeger@swlaw.com
7
   Attorneys for Defendant
8

9                IN THE UNITED STATES DISTRICT COURT

10               FOR THE DISTRICT OF ARIZONA

11 KELVIN D. DANIEL, et al.,                  No. 2:11-CV-01548-PHX-ROS

12                      Plaintiffs,           **DEFENDANT SWIFT
                                              TRANSPORTATION CO. OF ARIZONA,
13 v.                                         LLC'S OPPOSITION TO PLAINTIFFS'
                                              MOTION FOR CLASS CERTIFICATION**
14 SWIFT TRANSPORTATION
   CORPORATION,                               Assigned to:  Hon. Roslyn O. Silver
15                                            **(Oral Argument Requested)**
                        Defendant.
16

17

18 **I.    Standard for Certification**

19        The burden to establish each of the requirements of Fed. R. Civ. P. ("Rule") 23 rests

20 upon Plaintiffs.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011); *Zinser v.*

21 *Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001); *Martinelli v. Petland,*

22 *Inc.*, 274 F.R.D. 658, 660 (D. Ariz. 2011).  To determine whether Plaintiffs have met their

23 burden under Rule 23, the Court must conduct a "rigorous analysis" of the evidence that

24 Plaintiffs present in support of their Motion for Class Certification.  *Dukes*, 131 S. Ct. at

25 2551.  For the reasons set forth below, Plaintiffs have not met their burden.

26        In their motion to certify, Plaintiffs abandoned: (1) Counts I and II related to in-

27 person Swift applicants; (2) their failure-to-obtain-consent claim under Count III; (3) all

28 claims for negligent violations under §1681o of the FCRA; (4) all claims related to

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona  85701-1630
520.882.1200

1    applicants who applied after July 21, 2012; and (5) their claims for punitive damages.[1]

2    Doc. 92 at 2; Doc. 92-1 at 6-7 n.1 and n.3.  Relying on a proposed[2] Second Amended

3    Complaint, Plaintiffs now seek to certify claims for failure to: (1) provide notice to not-in-

4    person applicants under §1681b(b)(2)(B)(i); and (2) provide adverse action notice to not-

5    in-person applicants under §1681b(b)(3)(B).

6    ## II.    Threshold Matters Bar the Certification of Count III.

7            Plaintiffs cannot state a failure-to-provide-notice claim, Count III, as a matter of

8    law.  Plaintiffs' motion is premised on the allegation that Swift failed to provide "a

9    summary of the consumer's rights under section 1681m(a)(3)" to not-in-person applicants.

10   Doc. 92-1 at 6:17-20.[3]  But there is no private right of action for alleged violations of

11   §1681m.  In 2003 Congress amended the FCRA and "intended to preempt private causes of

12   action to enforce § 1681m."  *Perry v. First Nat. Bank*, 459 F.3d 816, 823 (7th Cir. 2006).

13   District courts across the country have consistently upheld and reaffirmed the Seventh

14   Circuit's holding.  Doc. 14 at 5:4-8:3, incorporated by reference here.  Only federal

15   agencies and officials may enforce violations of §1681m.  15 U.S.C. §1681m(h)(8).

16           Plaintiffs cannot use § 1681b(b)(2)(B)(i) as a backdoor to state an otherwise

17   impermissible private claim to enforce § 1681m(a)(3).  *Reinke v. Cargill, Inc.*, 2011 U.S.

18   Dist. LEXIS 66313 *9-12 (E.D. Wis. 2011).  Plaintiffs now seek to enforce § 1681m via §

19   1681b(b)(2)(B)(i), but a year ago they acknowledged in two ways such private actions

20   were not proper.  First, neither the Complaint nor the First Amended Complaint has ever

21   included a failure-to-provide-notice claim under § 1681b(b)(2)(B)(i).  Doc. 1 and 19.

22   Second, the original Complaint alleged at ¶ 62-63 that Swift did not provide adverse action

23   notices and based that claim on alleged violations of § 1681m(a)(3).  Swift opposed that

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

---

[1] While the proposed amended complaint requests punitive damages, the motion clarifies that "Plaintiffs seeks [sic] only statutory damages". Doc. 92-1 at 20:11.

[2] Plaintiffs cannot certify claims alleged in a not-yet-filed amended pleading. *Munoz v. Giumarra Vineyards Corp.*, 2012 U.S. Dist. LEXIS 93043 at *53 (E.D. Cal. 2012).  As stated in its October 5, 2012 brief, Swift does not concede that the pleading should be amended.  Doc. 98.

[3] Plaintiffs correctly note in footnote 2 that, from August 8, 2006 to July 21, 2011, 15 U.S.C. § 1681m(a)(3) required notice that (i) a free copy of the report could be obtained and (ii) the consumer could dispute the notice.  Though not relevant here, what is required by §1681b(b)(2)(B)(i) and §1681m(a)(3) after July 21, 2011 is less than clear.

claim noting the overwhelming authority rejecting efforts to enforce privately claims based on violations of § 1681m.   Doc. 14.   In response, Plaintiffs unilaterally amended their complaint deleting ¶ 62-63.   Doc. 19.   While Plaintiffs can argue the statute may require employers to provide the notices contained in § 1681m(a)(3), they may not privately enforce this requirement via a lawsuit.   Only federal agencies can enforce § 1681m's notice requirements.   Plaintiffs cannot certify Count III as no private right of action exists for that claim.

### III.   Plaintiffs Have Failed to Satisfy the Rule 23(a) Requirements.

To certify a class Plaintiffs must prove: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.   *Dukes*, 131 S. Ct. at 2550.   "[A]ctual, not presumed, conformance with Rule 23(a) remains … indispensable." *Id.* at 2551.

### A.   Commonality

To show commonality, Plaintiffs may not merely state that there are common factual and legal issues. *Dukes*, 131 S. Ct. at 2550-51.   Rather, commonality requires Plaintiffs to: (1) identify what legal and factual issues will be contested in the case; and (2) show that the contested legal and factual issues are susceptible to proof on a class-wide basis or capable of class-wide resolution.  *Id.* at 2550-52.

> Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury."  This does not mean merely that they have all suffered a violation of the same provision of law … Their claims must depend upon a common contention … That common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.
>
> What matters to class certification … is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.

*Id.* at 2551.[4]

Plaintiffs cannot establish commonality under the *Dukes* standard.   They simply cite to some "common issues" and "claims" and make only a limited effort to explain how a

---

[4] All of the FCRA cases Plaintiffs cite at Doc. 92-1 at 13:17–14:4 were decided before *Dukes*.

Snell & Wilmer

L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

classwide resolution will allow the Court to determine validity of each of the two remaining claims. Doc. 92-1 at 13:17-15:3. Their burden is to identify how the classwide proceeding would generate common *answers*. *Dukes*, 131 S. Ct. at 2551; *In re Whirlpool Corp. Prods. Liab. Litig.*, 678 F.3d 409, 418-19 (6th Cir. 2012). Plaintiffs fail to do so.

Consider the foregoing in light of the claims Plaintiffs hope to certify. On Count III, Plaintiffs' analysis of commonality hinges on their assertions that Swift uniformly did not provide notice to consumers of their FCRA rights before obtaining the consumer reports and whether Swift acted willfully in not doing so. Doc. 92-1 at 14:18-15:3. But consider the omissions from Plaintiffs' presentation of the issues:

- From August 2006 to March 2011, via a question on the application, Internet applicants authorized Swift to obtain consumer reports about them from a consumer reporting agency. Ex. A at ¶¶13-14.

- Both Plaintiffs answered "yes" to that question and testified that they understood they authorized Swift to obtain their consumer reports. Ex. B at 184:18-187:18; Ex. C at 120:9-130:7.

- From March 2011 to the present, Internet applicants completed a form that references consumer reporting agencies and that the applicant has a right to a free copy of the consumer report and a right to dispute the accuracy of that information.[5] Ex. A at ¶¶16-18; Doc. 92-3 at 102:14-103:15. If nothing else, this record utterly contradicts Plaintiffs' assertions that there are "no documents and no testimony" that Swift provided the § 1681b(b)(2)(B)(i) disclosures to applicants.[6]

- Evidence showing that there is no uniform script that Swift recruiters must follow and that some of the company's 100 plus recruiters orally told

---

[5] This point destroys the common issues and answers Plaintiffs hope to present. The evidence shows that since March 2011, Internet applicants to Swift, the vast majority of applicants, have been provided the two rights required by the then-applicable versions of § 1681b(b)(2)(B)(i) and § 1681m(a)(3) – the right to a free copy of the report and the right to dispute the report. Ex. A at ¶¶16-18.

[6] In depositions, Plaintiffs never bothered to ask company officials whether the two disclosures set forth in § 1681m(a)(3) were ever made.

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona  85701-1630
520.882.1200

applicants they would be obtaining consumer reports from a third party. Doc. 92-3 at 61:4-10, 76:20-77:11, 83:3-25; Ex. E at 7:13-9:5.

- Swift's paper applications -- used for some not-in-person applicants who applied via mail or facsimile -- changed three times during the proposed class period; yet all released Swift to obtain related background information from other companies.[7]  Ex. A at ¶¶ 19-20.

That record stymies Plaintiffs' suggestions that Swift uniformly failed to provide the required notices over the proposed five-year class period and that Swift acted willfully. More importantly, for certification purposes, it shows that the viability of Plaintiffs' claims will hinge on many different individual issues such as: (i) when the applicant applied; (ii) whether the applicant applied via the Internet, by mail, facsimile or other means, as how they applied may dictate which forms they used; (iii) which forms were used with respect to the applicant; (iv) how the applicant interpreted the language in the forms; (v) which recruiter worked with the applicant; (vi) what the recruiter conveyed to the applicant orally or in writing; (vii) what understanding each Swift recruiter had with respect to the company's legal obligations under the FCRA; and (viii) whether the recruiter's conduct was willful.  Answers to those questions will vary by applicant, recruiter, date applied, form used, method applied, and will consequently be unique for each applicant.  Such permutations defy commonality, particularly when the posed common question is supposed to generate a common answer.

With respect to Count IV, Plaintiffs' assertions of commonality face even more significant hurdles.  There is no question that can drive a common answer to the issue of whether Swift took adverse action against an individual based in whole or in part on a consumer report.  Not surprisingly, Plaintiffs omit any discussion of Swift's recruiting and hiring process.  Ex. E at 5-11.  As part of this process, Swift's Security Department

---

[7] Swift's decisions to update its forms, both before and after this lawsuit, weigh against class certification. "Deterrence is one of the public policy objectives of class action[s] . . . Defendant's post-lawsuit compliance efforts also supports denial of class certification in this case." *Seig v. Yard House Rancho Cucamonga, LLC*, 2007 WL 6894503 at *6 (C.D. Cal. 2007).

interviews *every individual* considered for hire who either self-discloses criminal convictions during the application process or whose criminal background report reveals criminal convictions.  Doc. 92-5 at 12:9-23, 46:15-20, 51:7-52:10; Ex. E at 8:10-26, 10:3-15**;** Ex. F at ¶¶ 7-14; Ex. H at ¶¶ 7-10; Ex. I at ¶¶ 3-5.[8]  In those interviews, applicants are asked open-ended questions about past criminal convictions.  *Id.*  The questions are not derived directly from the consumer reports themselves.  *Id.*

Swift's interviews result in employment decisions that are not based on the consumer reports.  Often, as with Daniel, applicants disclose criminal information not contained in their criminal reports.  *Id.*  During his or her interview, each individual has an opportunity to dispute or explain any criminal information contained in their report and to provide documentation to dispute any such information.  *Id.*  Based on the information obtained from that interview, Swift makes a decision whether the individual is eligible for hire or not.  *Id.*  An individual can be disqualified from hiring for a number of reasons other than criminal convictions, such as falsifying his or her application, voluntarily disclosing criminal or other disqualifying information, misconduct at an orientation, or failing to pass a physical, drug test or driving test.  Ex. E at 10:16-28; Ex. A at ¶¶ 2-12; Ex. I at 13-25.

Merely consulting a consumer report is not sufficient to show liability.

If the [FCRA] statute has any claim to lucidity, not all "adverse actions" require notice, only those 'based ... on" information in a [consumer] report. Since the statute does not explicitly call for notice when a business acts adversely merely after consulting a report, conditioning the requirement on action "based … on" a report suggests that the duty to report arises from some practical consequence of reading the report, not merely some subsequent adverse occurrence that would have happened anyway . . . Congress meant to require notice and prompt a challenge by the consumer only when the consumer would gain something if the challenge succeeded.

*Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2212 (2007).  Thus, to establish an adverse action, a putative class member would need to show not only that Swift took adverse action based on a consumer report, but that he or she would "gain something" if Swift had

---

[8] The declarants for Exhibits H and I were disclosed to Plaintiffs, along with their anticipated areas of testimony, by July 23, 2012.  *See* Ex. D at 3 – 4, 13.

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

provided adverse action notice to them. In other words, that he or she could have challenged and overcome the information in the report. For example, if the report contained negative information, the applicant would need to show he or she could have subsequently obtained employment at Swift. Stated another way, *Safeco* requires plaintiffs asserting adverse action claims under the FCRA to show causation. *Safeco*, 127 S. Ct. at 2213. As an example, the Supreme Court observed that if a consumer's "record is so poor that no insurer [or employer] would give him anything . . . regardless of the . . . report," then whether the report was reviewed "should have no bearing on whether the consumer must receive the notice." *Id.* at 2213 n.13.

Putative class members will be unable to meet these "gain something" and causation standards. Indeed, each has already had the opportunity to challenge their criminal history in their Security interview. Not surprisingly, applicants regularly provide information in those interviews that causes Swift to hire them despite the information in their criminal background report or to decline to hire them based on information the applicants provide Swift and that does not appear in the report. *See* Ex. A at ¶¶ 2-12; Ex. H at ¶¶ 16-20; Ex. I at ¶¶ 13-25.[9]

A review of Hodges' adverse action claim is instructive under *Safeco*.[10] She cannot establish that the end result, Swift denying her application, would have been any different if Swift had provided her with an adverse action notice. In her deposition, Hodges admitted that she has been charged with criminal offenses at least eighteen different times and to at least seven criminal convictions. Ex. B at 74:4 – 75:4. She admitted that she failed to disclose **any** of this criminal information on her application and that she had been dishonest in omitting the information. *Id.* at 189:15-23. During Hodges' interview with Swift's Security Department, she had an opportunity to explain her criminal history, she confirmed that history, and confirmed that she failed to disclose that history on her

---

[9] As explained in the declarations the examples in this brief were disclosed as part of the Security database disclosed in its native format on June 29, 2012. Ex. I at ¶8.

[10] Reviewing the merits of a claim is required at the certification stage if the merits relate, as they do here, to Rule 23 requirements. *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 981 (9th Cir. 1992).

application.  Ex. J.  Given these facts, Hodges cannot establish that, if Swift had provided her with an adverse action notice, she could have challenged the adverse action <u>and</u> obtained employment with Swift.  Swift chose not to hire Hodges based on the information provided in her interview.  Ex. J; Doc. 92-8 at 28-29, Ex. E at 23; Ex. F at ¶ 19.  Under *Safeco*, Hodges cannot show membership in the proposed class or even state a claim as she cannot show causation and the interview confirmed her criminal background and her failure to disclose that history.

Hodges' experience parallels the plaintiff in *Obabueki v. International Bus. Mach. Corp.*, 145 F. Supp. 2d 371 (S.D.N.Y. 2001).  In *Obabueki,* the plaintiff filled out a job application and answered "no" in response to the question of whether he had any criminal convictions.  *Id.* at 376-77.  After a conditional offer of employment, IBM obtained a criminal background check that revealed a conviction.  *Id.*  IBM contacted the applicant and gave him an opportunity to explain.  *Id.*  Plaintiff provided paperwork that the conviction had been vacated.  *Id.* After consideration, IBM withdrew the offer because "plaintiff lied on his employment application."  *Id.*  The court held that this was "not an adverse action" as the plaintiff had a genuine opportunity to contest the report or explain his conviction. *Id.* at 391-92.  "Such opportunity to discuss and dispute the report is exactly the scenario envisioned by the FCRA."  *Id.* Swift's process is no different.  Doc. 92-5 at 51:7–52:10; Doc. 92-8, Ex. E at 8:21-26; Ex. H at ¶ 17; Ex. I at ¶ 13; Ex. F at ¶10.

That there is no common method or way to determine who has suffered an adverse action is also underscored by Daniel's experience.  After nine months of discovery, Plaintiffs finally acknowledged, in their proposed Second Amended Complaint, that Daniel was not a member of the adverse action class.  Doc. 91-1 at ¶¶ 24, 37.  As Daniel testified, his criminal background report was clean, Swift extended an offer to him, and only after Daniel voluntarily disclosed his criminal convictions did Swift take adverse action against him.  Doc. 99 at 7:24-8:21.

Daniel and Hodges are not the only examples that expose the flawed presumptions Plaintiffs have about membership in Count IV; opting not to hire an applicant after

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona  85701-1630
520.882.1200

ordering and reviewing a consumer report does not mean the decision was based on the consumer report.  For example, Swift might not hire an applicant because the applicant failed to pass a physical, drug test, or driving test. Doc. 92-8 at 10:22-11:6; Ex. E at 10:16-28; Ex. A at ¶¶ 3-6.  Alternatively, it might opt not to hire an applicant because Swift learned that the applicant falsified his application, engaged in misconduct at the orientation, or failed to show up at the orientation. Ex. A at ¶¶ 7-12; Ex. I at ¶¶ 16, 20-21.  None of those reasons ties the alleged adverse action, a failure to hire, to the consumer report.

### B.     Typicality

The typicality requirement considers whether the claims of the class representatives are typical of those of the class and is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes,* 591 F.3d 1105, 1124 (9th Cir. 2010). As set forth above, the unique and different experiences Daniel and Hodges had with Swift show there is no typical claim for Counts III and IV.  The various issues -- outlined in the section on commonality above -- that need to be evaluated to determine whether any putative member even meets either class definition further underscores that no one class member would have a typical experience.

That type of individualized analysis destroys typicality:

In pursuing their own claims, the named plaintiffs could not advance the interests of the entire . . . class. Each claim, after all, ***depended on each individual's particular interactions with [defendant]*** – and these, as we have said, varied from person to person.  A named plaintiff who proved his own claim would not necessarily have proved anybody else's claim.  The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class.  That premise is not valid here.

*Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (emphasis added). Similarly, as another court found in the context of a FCRA class action, "it appears that each individual will have to submit separate proofs to establish liability.  That the Court would be required to take additional testimony and evidence … relevant to each individual strongly suggests the impropriety of class certification in this case." *Molina v. Roskum*

Snell & Wilmer

L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

1  *Baking Co.*, 2011 WL 5979087 *4 (W.D. Mich. 2011)**.**

2       The typicality analysis is not limited to an evaluation of the claims; defenses may

3  also destroy typicality.  "Typicality may also be found lacking … if there is a danger that

4  absent class members will suffer if their representative is preoccupied with defenses unique

5  to [him or her]."  *In re Northrop Grunman Corp.*, 2011 WL 3505264 at *9 (C.D. Cal.

6  2011); *Molina,* 2011 WL 5979087 at *5.  As outlined in the section below on adequacy of

7  the representatives, Plaintiffs will be occupied with rehabilitating their credibility, given

8  their frequent misrepresentations or omissions.  Those defenses destroy typicality.

9       Further, the Court need not be limited to an evaluation of the defenses to be raised

10  with respect to the named Plaintiffs.  *Id.*  Here, Plaintiffs seek to represent a class of not-in-

11  person applicants spanning nearly five years.  Doc. 92-2.  Swift will have statute of

12  limitations defenses with respect to any putative class member based on a variety of

13  questions not pertinent to the named Plaintiffs.  For example, when and how did each

14  putative class member learn or discover the alleged violation?

15       Plaintiffs cite *Drew v. Equifax Info. Serv., LLC*, 690 F.3d 1100, 1111 (9th Cir. 2012)

16  implying that a five-year class can be certified under the FCRA.  Doc. 92-1 at 12:20-28

17  (intimating that unless Swift "can conclusively prove that a class member would have

18  known of [its] internal procedures and policies," the individual should be presumed to be a

19  member of the five-year class).  *Drew* does not support Plaintiffs' position; it undermines

20  it.[11]  Plaintiffs err in analyzing *Drew,* as the statute of limitations issue would have easily

21  been resolved if the court relied on the five-year statute of repose under § 1681p.  Instead

22  of relying on the FCRA's alternative five-year provision, the court held the defendant

23  could not prevail on a summary judgment motion that the consumer had discovered the

24  violation within the two-year statute of limitations.  690 F.3d at 1109 (finding that that the

25  two-year period was equitably tolled for a condition that hospitalized the consumer for 5.5

26

27  [11] Nor is the *Hall v. Vitran* order, Case No. 09-cv-800 (N.D. Ohio Oct. 29, 2010) cited by Plaintiffs
relevant.  That order merely addressed amendment of a pleading and did not involve or address
28  class certification in any way, let alone provide support for the proposition that certification of a
five-year class is appropriate.

Snell & Wilmer

L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona  85701-1630
520.882.1200

1  months).   That analysis shows the consumer's knowledge or discovery of the alleged

2  violation would have been moot if either the district court or the Ninth Circuit had simply

3  invoked the five-year statute of repose under the FCRA.  Tellingly, neither the district nor

4  the appellate court did, opting to analyze the issue under the two-year limitations period.

5      If *Drew* damages Plaintiffs' position, the *Molina* decision drives the nail in the

6  coffin.  The *Molina* court analyzed whether a five-year class could be certified under the

7  FCRA, the exact issue before this Court.  The *Molina* court held the:

> Complaint proposes a five-year class period . . . but a five-year class . . .
> period would apply only if (unlike Plaintiff) the purported class member did
> not discover the violation that gave rise to his or her claim at some earlier
> point.  Defendant properly points out that if Plaintiff's proposed classes are
> certified, there would need to be an ***individualized determination for each
> class member*** of when the violation that gave rise to his or her claim was
> discovered.  Plaintiff's assertion that the proposed class members have not
> yet discovered the facts supporting the violations . . . does not ameliorate
> this task.  Rather, the Court agrees with Defendant that because the question
> of Defendant's liability to a substantial portion of the class ***turns on the
> individual question*** of when certain class members "discovered" or "should
> have discovered" Defendant's alleged misconduct, a ***class action is not the
> best method*** of trying the suit.

15 *Molina*, 2011 WL 5979087 at *5 (emphasis added).  The *Molina* court's reasoning is

16 squarely on point here and shows that certification of a five-year class is inappropriate. *See

17 O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 411 (C.D. Cal. 2000) ("[C]ourts have

18 denied class certification on the ground that the limitations defense made class treatment

19 inappropriate" (collecting cases)).

20     In *Molina*, ***as here***, the class representative discovered the alleged FCRA violation

21 within two years.  *Id.* at *5.  Plaintiffs ask this Court to assume that all the remaining class

22 members never discovered an FCRA violation within two years of the filing of the suit

23 (Doc. 92-1 at 12:20-28), but proffer class representatives who undisputedly ***discovered***

24 their alleged FCRA violations within two years.[12]   Daniel's and Hodges' position on the

25 statute of limitations is not typical of the proposed class.  Indeed, they seek to represent a

[12] Plaintiffs filed the lawsuit on August 8, 2011 less than two years after Swift procured their respective consumer reports. Docs. 1,  91-1 at ¶9 and at ¶¶14-16.

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

class where a substantial portion of the proposed class members[13] applied between August 9, 2006 and August 8, 2009, and thus could be subject to the two-year limitations defense. As a matter of due process Swift will want to know whether each of those individuals knew or should have known of any alleged violation.   Having Hodges and Daniel represent a five-year class destroys typicality.[14]

### C.   Numerosity

Swift does not contest numerosity as to Count III.

As to Count IV Plaintiffs have identified only one person, Hodges, who meets the proposed definition of the class.  That shortcoming goes to the very heart of why Count IV cannot be certified; without evaluating whether the adverse action, the alleged failure to hire, was actually "based on" a consumer report, membership in the proposed class covering Count IV cannot be ascertained.[15]   As shown above, the experience of Hodges, the lone representative for Count IV, exemplifies this point as, following an interview, she was declined for falsifying her application.

To support numerosity on Count IV, Plaintiffs argue only that the "evidence strongly supports Plaintiffs' allegation that class is numerous."  Doc. 92-1 at 12:17-18 (referencing a spreadsheet from Swift's Security department that is "sufficiently detailed ... to determine whether an applicant was rejected due to his or her criminal background"). The right question, however, is whether Swift rejected the applicant based on the ***consumer report.***   The spreadsheet, also known as the Security Database, does not answer that question.  Ex. I at ¶ 19; Doc. 92-5 at 23:2-17, 27:15-28:13.   And for those who applied from August 2006 to February 2009, the Database did not exist.  Ex. H at ¶ 21.  Again, Daniel is a prime example.  Reviewing the Security Database notes from his interview

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona  85701-1630
520.882.1200

---

[13] If an equal number of consumer reports were pulled on applicants each year, then approximately 60% of the proposed class would be subject to a two-year statute of limitations defense.

[14] *See also Godec v. Bayer Corp.*, 2011 U.S. Dist. LEXIS 131198 at *20-21 (N.D. Ohio 2011).

[15] Some courts have treated the need for the class definition to be precise, not overly broad, objective, and presently ascertainable as a threshold matter apart from the requirements of Rule 23(a).  *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009).  The definition of the proposed class for Count III does not meet that standard as the proposed definition does not require a showing that the class members failed to receive either: (i) a notice that a consumer report may be obtained; or (ii) a notice of the rights required by § 1681m(a)(3).

would confirm that he reported his convictions, but failed to list those convictions on his application, and those factors, not his consumer report, which contained no convictions, caused Swift not to hire him.  Ex. K; Ex. E at 22:19-28; Doc. 99 at 7:24-8:21.

Further, Swift's 30(b)(6) deponent confirmed that there are no codes, fields or uniform way to determine from Swift files when an applicant has been declined based upon a consumer report.  Doc. 92-5 at 23:2-17, 27:16-28:13; Ex. A at ¶ 2; Ex. I at ¶ 19. Plaintiffs have offered no evidence explaining how they would make this determination. Indeed, the Security Department database contains people who Swift: (i) approved for further processing and offered jobs but who were not actually hired; (ii) declined from further processing but based on factors other than the report; and (iii) actually hired despite whatever criminal background may exist.  Ex. A at ¶¶ 2-12; Ex. H at ¶¶ 16-20; Ex. I at ¶¶ 7-25.  To the extent the database notes that a candidate was declined, that still would not be sufficient, because as Swift explains in more detail above Swift only makes those decisions based on personal interviews.  Ex. H at ¶¶ 5, 8-13; Ex. I at ¶¶ 4-7.  Plaintiffs' "showing" of numerosity pales in comparison to the cases they cited on the topic.  *Guidana v. State Farm*, 2010 U.S. Dist. LEXIS 129588 *8-9 (D. Ariz. 2010) (plaintiffs presented detailed estimates of the class size based on the evidence); *Perez v. First American Title Ins. Co.*, 2009 U.S. Dist. LEXIS 75353 *6 (D. Ariz. 2009) ("presented evidence showing that more than 700 individuals appear to fall within the proposed class"); *The Salt River Pima-Maricopa Ind. C'mty v. United States*, 266 F.R.D. 375, 377-78 (D. Ariz. 2010) (identifying 1000 property owners affected by the alleged trespass).  Missing this most basic element of certification on Count IV warrants denying certification of that claim.

**D.   Adequacy**

> The "adequacy of representation" requirement was designed to protect the due process rights of absent class members … The class representative acts as a fiduciary for the entire class … If a proposed class representative is subject to a defense that is unique to the representative and that could become a focus of the litigation, the class representative will not satisfy the adequacy-of-representation requirement . . . class treatment will be denied if a unique defense is even arguably present.

5 *Moore's Federal Practice – Civil* § 23.25 (3[d] ed. 2012).   Here, Plaintiffs lack an

Snell & Wilmer

L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

1  understanding of the claims they assert and their role in class litigation.  Plus, their claims
2  are subject to unique defenses given their discovery responses and other examples of
3  misrepresentations.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

4                            1.    <u>Lack of Knowledge of Claims and Role</u>

5       "An essential element of adequacy … is that the class representative[s] be
6  sufficiently familiar with the case as to exercise independent control over the attorney[s]."
7  *Scott v. New York City Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 355
8  (S.D.N.Y. 2004).   "Knowledge of issues central to the case and the role of class
9  representatives is crucial."  *Id.* at 356.

10      Neither Plaintiff understood the claims in this case at their deposition.  In response
11  to the question, "What's your understanding of . . . what this lawsuit is about?", Hodges
12  replied, "Discrimination." Ex. B at 22:4-6.  When asked, "Do you know whether the Fair
13  Credit Reporting Act would apply . . .  if Swift denied your employment application?",
14  Hodges responded, "No."  *Id.* at 179:6-10.  When Hodges was asked, "Do you know what
15  type of damages the plaintiffs are asking for in this case?", she responded, "I have no idea.
16  I have no idea." *Id.* at 195:14-16.  Finally, when asked what damages she thought she was
17  personally entitled to, Hodges replied, "Well, I think this [criminal information] ought to
18  be taken off of my record."  *Id.* at 195:17-20.

19      Similarly, when Daniel was asked, "to the best of your understanding, what are your
20  claims against Swift Transportation?", he responded "I was denied employment with Swift,
21  and I don't know why." Ex. C at 12:19-24.  When asked, "what damages do you think you
22  have suffered as a result of Swift –?", Daniel stated, "I can't speak on that sir. You know, I
23  really can't. Q. Do you believe you suffered damages? A. I can't really answer that
24  question, sir. I'm just a representative." *Id.* at 152:20-153:1.

25      Courts  are  also  "more  troubled  if  the  proposed  representative  lacks  any
26  understanding of the representative's role in class litigation." *Newberg on Class Actions* §
27  3:67 (5th ed. 2011).  The Court "must feel *certain* that the class representative[s] will
28  discharge [their] fiduciary obligations by fairly and adequately protecting the interests of

Snell & Wilmer

L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona  85701-1630
520.882.1200

the class." *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 154 (N.D. Cal. 1991).  Plaintiffs fall far short of that standard.

When Daniel was asked, "Do you understand that you are a class representative in this case?", he responded, "I don't understand that question, sir. Can you help me understand?"  Ex. C at 12:3-7.  When counsel for Swift followed up, "[t]o the best of your understanding, can you tell me what a class representative is?", Daniel answered, "I guess someone that's part of a class action lawsuit.  That's, that's my biggest guess right there." *Id.* at 12:8-11.  Perhaps most damaging, however, in analyzing whether Daniel can serve in a fiduciary capacity on behalf of the class, when he was asked, "And do you represent a group of people that have damages?", he testified, "I know I – well, I ***represent me right now and what happened to me***." *Id.* at 153:2-5 (emphasis added).  Daniel clearly does not understand his fiduciary class representative role and what it entails.

Similarly, Hodges was asked:

> Q. Have you ever spoken to the other representative in this case?  A. That I'm being – no.  Q. You don't know or— A.  I'm not – I guess I'm not the only one.  Q. Okay. Have you ever spoken to any of the other class representatives in this case?  A. No. Q.  Who else have you talked to about this case besides your lawyer?  A. No one.

Ex. B at 15:23-16:17.  The foregoing does not describe knowledgeable Plaintiffs actively involved in the case and prepared to serve as fiduciaries in a class proceeding.

Plaintiffs stand in stark contrast to the representative found adequate in *Tsirekidze v. Syntax-Brillian Corp.*, 2009 WL 2151838 at *5 (D. Ariz. 2009) (representative "is updated regularly regarding the case, and he monitors [counsel's] work.  Moreover, [representative] understands that [plaintiff] owes a fiduciary duty to all members of the putative class").  Courts have found class representatives who were similarly ill informed as Plaintiffs about their claims and role as class representatives to be inadequate.  *See Burkhalter*, 141 F.R.D. at 153-54 (plaintiff inadequate as he was "not entirely clear about who he seeks to represent" and had an "alarming unfamiliarity with the suit"); *Byes v. Telecheck Recovery Sys., Inc.*, 173 F.R.D. 421, 427 (E.D. La. 1997).

2. <u>Lack of Credibility and/or Trustworthiness</u>

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

> Any dishonesty or lack of credibility on the part of the class representatives may create unique defenses against them or raise doubts about their ability to fulfill their fiduciary obligations as class representatives, vitiating the adequacy of their representation. Thus, if the credibility or honesty of the class representatives threatens to become a focus of the litigation, the class representatives will be inadequate representatives.

5 *Moore's Federal Practice – Civil* § 23.25 (3[d] ed. 2012).

Hodges' deposition confirmed time and again that she either does not understand her obligation to be truthful under oath or disregards it.

> Q. Did you disclose this finding of guilty in your interrogatory answers?
>
> A. No. …
>
> Q. So now we're up to six items, six criminal convictions that you failed to disclose in your interrogatory answers that you knew you were giving under oath, right? … You knew when you gave those interrogatory answers that you were under oath, correct?
>
> A. Yes.
>
> Q. And we've identified six … criminal items that you didn't identify [in your sworn interrogatory response]?
>
> A. Yes.

Ex. B at 68:6-25,[16] 84:8 – 85:6 (Depo. Ex. 10). As shown in the deposition excerpts, Hodges' dishonesty was not limited to her written discovery responses about her convictions[17] but also to nearly every employment application she has completed in the last five years. More troubling, she seemed indifferent to telling the truth. After being confronted with several misrepresentations in her deposition, Hodges stated, "I mean, ***doesn't everybody lie somewhere along through their life***? *Id.* at 123:10 – 125:5 (Depo. Ex. 22) (emphasis added). But not everyone seeks to serve in a fiduciary role as a class representative. If they do, one would expect they might be a little more scrupulous about their interrogatory and deposition answers. Yet, after admitting repeatedly that she had misrepresented the facts on the applications she reviewed in her deposition, Hodges still

---

[16] *See Friedman-Katz v. Lindt & Sprungli*, 270 F.R.D. 150, 156-61 (S.D.N.Y. 2010) (false interrogatory responses call into question adequacy of class representatives and counsel).

[17] Class representatives' prior crimes of dishonesty – such as Hodges' convictions for credit card fraud and passing a bad check – have been held by courts to impact their ability to serve as adequate class representatives. *Pagan v. The New Wilson's Meats, Inc.*, 2011 U.S. Dist. LEXIS 52438 at *26 (E.D. Pa. 2011); *Kirkpatrick v. Ironwood Commc'ns, Inc.*, 2006 U.S. Dist. LEXIS 57713 at *19-21 (W.D. Wash. 2006).

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona  85701-1630
520.882.1200

1   protested "I didn't lie on my application. Not one of them." *Id.* at 154:19-20.

2       Daniel's testimony was not any better than Hodges on credibility issues. In one

3   exchange, after confirming Daniel's prior criminal history, counsel for Swift asked Daniel

4   to review his verified interrogatory response regarding that same history. During that

5   exchange, Daniel: (1) admitted that he failed to disclose criminal conviction information in

6   his interrogatory response, including three months spent in jail; (2) took the position that

7   his own sworn interrogatory answers were "not true"; and (3) indicated that,

8   notwithstanding verifying and notarizing the responses, he did not actually write them, nor

9   review them for accuracy -- further establishing his inability to fulfill his role as class

10   representative. Ex. C at 78:4 – 88:3, (Depo. Ex. 26 at 3:22 – 4:6).[18]

11       Plaintiffs' lack of knowledge regarding their case and their role as class

12   representatives and the presence of unique defenses to the class representatives' adequacy

13   will become a focus of this litigation. Therefore, neither Plaintiff can fulfill the role of

14   representing proposed class members properly. *Hanon*, 976 F.2d at 508 (9th Cir. 1992); *see*

15   *Smyth v. Carter*, 168 F.R.D. 28, 33 (W.D. Va. 1996) (observing that characteristics such as

16   evasiveness, untruthfulness and lack of credibility "weigh[] heavily against them as

17   adequate class representatives"); *Kaplan v. Pomerantz*, 132 F.R.D. 504, 510-11 (N.D. Ill.

18   1990) (plaintiff's statements "go beyond mere inconsistencies," but rather "evince[d] a

19   willingness to give intentionally false and misleading testimony"); *In re Fleetboston Fin.*

20   *Corp. Secs. Litig.*, 253 F.R.D. 315, 329-331 (D.N.J. 2008) (totality of facts, including

21   criminal convictions, "paint a cumulative picture of a [class representative] prone to []

22   exercising poor judgment . . . and [] overlooking significant, occasionally vital, factual and

23

---

24   [18] At his deposition on June 12, 2012, Daniel and his counsel agreed to supplement his
   Interrogatory No. 3 response (as well as other responses). Daniel failed to supplement his
25   responses until August 31, 2012, and only did so after Swift reminded Daniel's counsel of his
   supplementation obligation in an August 15, 2012 letter. Ex. L. Daniel still failed to verify his
26   responses until September 14, 2012, the last day of discovery, and only did so after two further
   written requests from Swift's counsel. *Id.* Daniel's supplemental response to Interrogatory No. 3
27   confirmed that, contrary to his deposition testimony, he was found "Guilty" of the three criminal
   charges and further confirmed that he should properly have disclosed his parole violation, six-
28   month jail sentence and three months served in his prior verified response. *Compare* Ex. M at 3
   with Ex. C, Depo. Ex. 26 at 3-4.

Snell & Wilmer

L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

1    legal details"); *Searcy v. eFunds Corp.*, 2010 WL 1337684 at *5 (N.D. Ill. 2010).

2                     3.    Incentive Agreements

3          The Ninth Circuit has held that incentive agreements to class representatives can

4    create a conflict with the class.  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 960 (9th

5    Cir. 2009).  "The danger is exacerbated if the named plaintiffs have an advance guarantee

6    that a request for a relatively large incentive award will be made that is untethered to any

7    service or value they will provide to the class." *Id.*

8          Swift sought information regarding any incentive agreements provided to Plaintiffs,

9    but Plaintiffs flatly refused to disclose this information. Exs. N and O, Response No. 3.

10   Plaintiffs objected that the information was "irrelevant" and "not reasonably calculated to

11   lead to the discovery of admissible evidence." *Id.* "[F]ailing to disclose the incentive

12   arrangements in connection with class certification compounded these problems by

13   depriving the court, and the class, of the safeguard of informed judicial consideration of the

14   adequacy of the class representation."  563 F.3d at 960.  That failure to disclose permits an

15   inference in Swift's favor on whether Plaintiffs have an incentive agreement in place.

16   *McMahon & Co. v. Po Folks, Inc.*, 206 F.3d 627, 632 (6th Cir. 2000).  Plaintiffs' refusal to

17   disclose incentive agreements undermines their assertions of adequacy as representatives.

18   **IV.   Plaintiffs Have Failed to Satisfy the Requirements Under Rule 23(b).**

19         Plaintiffs must further satisfy the "far more demanding" standard of Rule 23(b)(3)

20   and prove that common legal and factual issues predominate over individual issues and that

21   a class action is an otherwise superior form of adjudication.  *Dukes*, 131 S. Ct. at 2560;

22   *Wolin v. Jaguar Land River North America, Inc.,* 617 F.3d 1168, 1172 (9th Cir. 2010).

23         **A.    Predominance**

24         The predominance requirement of Rule 23(b)(3) is "'far more demanding'" than the

25   "'commonality'" requirement of Rule 23(a)." *Id.*  If, in order to establish Swift's liability,

26   "the members of the proposed class will need to present evidence ***that varies from member***

27   ***to member***, then it is an individual question." *Messner v. Northshore Univ. Healthsystem*,

28   669 F.3d 802, 815 (7th Cir. 2012) (emphasis added).

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

Snell & Wilmer

L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

1   Individualized issues would predominate if the Court certifies the proposed classes.

2   Consider the presumptions that Plaintiffs have had to make to present a proposed class.

3   For Count III, Plaintiffs presume that 1) each proposed class member received precisely the

4   same form, 2) that form did not disclose that Swift would be obtaining a consumer report,

5   that they could challenge the report, or obtain a free copy; and 3) that every one of the 100

6   plus recruiters Swift employed read the same script with each applicant.   Plaintiffs'

7   presumed portrayal of the facts is fundamentally at odds with the discovery they sought

8   and obtained.   For example, all Internet applicants, including Daniel and Hodges,

9   throughout the proposed class period have affirmatively consented to the ordering of a

10  report from a consumer reporting agency before the report was ordered.  Ex. A at ¶¶ 14-15.

11  Internet applicants since March 2011 not only consented to the ordering of a report but

12  were also advised in writing that they could obtain a free copy of the report and could

13  challenge those reports – the essence of what § 1681m(a)(3) required until July 21, 2011.

14  *Id*. at ¶¶ 16-18; Doc. 92-3 at 102:14-103:15.   And as for the script, under cross-

15  examination the company's witness patiently explained the script was a guideline and

16  recruiters did not, nor were they required to, talk only about the topics outlined in the

17  script.  As she put it, recruiters are in a sales job -- and for recruiters "only to be able to

18  speak of what's on the script, it doesn't happen." Ex. 92:3 at 61:8-10.

19      That evidence exposes the problems of certifying Count III built on Plaintiffs'

20  presumptions of uniformity.   More importantly, that evidence shows that each class

21  member would have to navigate a series of individual questions to prove his or her

22  membership in the proposed class for Count III, not to mention the merits of his or her

23  claim.   Those issues include but are not limited to: (i) when the applicant applied; (ii)

24  whether the applicant applied via the Internet or by mail, facsimile, or other means; (iii)

25  which forms were used with respect to the applicant – the March 2011 form that expressly

26  contains the § 1681m(a)(3) disclosures or another form; (iv) how the applicant understood

27  the language in the forms; (v) which recruiter worked with the applicant; (vi) what the

28  recruiter conveyed to the applicant orally or in writing; (vii) when each class member

1  discovered the alleged violation; (viii) whether the two-year or five-year statute of

2  limitation applies; (ix) whether the defense to each of Plaintiffs' claims including their

3  consent and lack of credibility become the focus of the litigation; (x) what understanding

4  each Swift recruiter had with respect to the company's legal obligations under the FCRA;

5  and (xi) whether the recruiter's conduct was willful.  Those questions would predominate

6  in any litigation of class claims on Count III.

7        With respect to Count IV, Plaintiffs' presumptions are even more pronounced and

8  problematic.  For example, Plaintiffs first presume the company's Security database will

9  allow someone to determine whether the consumer faced an adverse action based on the

10  report.  Second, Plaintiffs presume that anyone who was not offered a job after the criminal

11  background report was ordered should be a member of the class for Count IV.  Third,

12  Plaintiffs presume that any applicants declined after an interview with Security were

13  declined based on the consumer report.  Last, they presume the Security database covers all

14  applicants in the proposed five-year class period.  Those presumptions are misguided and

15  untethered to the facts.  The database does not indicate whether an applicant was declined

16  based on a consumer report. Doc. 92-5 at 23:2-17; Ex. A at ¶ 2; Ex. I at ¶ 19.   The second

17  and third presumptions are utterly at odds with the *Safeco* decision, which requires adverse

18  action plaintiffs to show causation and that they would have been able to gain something

19  by challenging the report.  Even if *Safeco* did not erect a hurdle for Plaintiffs, the person-

20  by-person interaction each applicant has with Security Department undermines their vision

21  of how a class can resolve the issue of determining whether the adverse action was based

22  on the report.  One must know what occurred in those interviews to determine whether any

23  adverse action was based on the report or other factors.  Ex. H at ¶¶ 11-20 and Ex. I at ¶¶ 7-

24  25.  Finally, the Security database has only been in use since February 2009 (Ex. H at ¶

25  21); thus, for those proposed class members applying before that month, the database offers

26  no assistance in evaluating who may have faced an adverse action.

27        Those issues and others show the list of individual issues for Count IV is even more

28  daunting than for Count III: (i) whether an individual was not hired "based ... on" a

Snell & Wilmer

L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona  85701-1630
520.882.1200

consumer report; (ii) with which investigator the applicant spoke; (iii) what transpired during that one-on-one interview; (iv) whether Swift offered the person a job but the applicant did not accept it; (v) whether the applicant disclosed criminal history not previously disclosed on his application or his consumer report (like Daniel); (vi) whether the applicant falsified the application (like Hodges and Daniel); (vii) whether the applicant failed a drug test; (viii) whether applicant failed a driving test; (ix) whether other misconduct led Swift to revoke an offer of employment; (x) whether the applicant failed to appear at orientation; (xi) when an individual discovered any alleged violation of the FCRA to determine whether a two-year limitations defense applies[19]; (xii) whether there are unique defense to both Plaintiffs' claims, destroying typicality and adequacy; (xiii) what understanding each Swift investigator had with respect to the company's legal obligation under the FCRA; (xiv) whether the investigator's conduct was willful; (xv) what the Security Department database reveals about Swift's reasons for alleged adverse actions; and (xvi) whether the applicant applied before February 2009 so that only paper records and witnesses could determine what role, if any, the report played, if any, in any adverse actions.

There are no common ***answers*** that can be supplied by the class action device; the answers can only be determined by individualized inquiries and on a case-by-case basis. Thus, individualized issues would predominate this litigation and certification is improper.

**B.** **Superiority**

As the Ninth Circuit has noted, the ***extent of individualized questions*** may ***preclude certification*** under the ... superiority analysis: "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." Plaintiff claims that common questions predominate. Yet, a closer examination indicates that ***even if a willfulness question is central to this case, it does not give rise to liability independent of individualized fact determinations*** … Because such individualized questions underlie any determination of Defendant's liability, and liability is the main issue in this case, the main issue requires separate adjudication of each class member's claim and certification is inappropriate under the ... 23(b)(3) superiority analysis.

---

[19] *Holman v. Experian Info. Solutions, Inc.*, 2012 U.S. Dist. LEXIS 59401 at *42-43 (N.D. Cal. 2012) (where consumer reports were disclosed more than two years prior to the suit being filed, "the Court finds that individual issues will predominate over common issues") *Id.*

*Seig*, 2007 WL 6894503 at *4 (citing *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (emphasis added)).   Under *Seig's* reasoning, and the foregoing arguments establishing the individualized nature of the failure-to-provide-notice and adverse action claims, a class action is not the superior method for resolving the claims. Indeed, the proposed classes sweep so broadly that they would include applicants who do not have viable claims because i) they received information different from the uniform forms and script imagined by Plaintiffs; ii) any adverse action they faced was not based on the consumer report; iii) that discovered the alleged violations more than two years before the filing; iv) or any number of individual issues addressed in this brief.   More troubling, Plaintiffs have not presented a viable plan for how certification could be managed and protect Swift's constitutional rights to present a defense consistent with its due process rights to a fair jury trial.  *Ellis*, 657 F.3d at 988.

Additionally, Swift notes that attorneys' fees are available to a prevailing plaintiff under the FCRA, and that this undermines the superiority of a class action as well.  Swift acknowledges that there is contrary authority outside the Ninth Circuit, but the *Molina* decision, which like this case involved a FCRA employment-based proposed class action, addressed this precise issue.  That court held that "the FCRA's provision for the award of attorney's fees and costs to successful plaintiffs similarly furnishes an adequate incentive for individual plaintiffs to bring these types of claims."  *Molina*, 2011 WL 5979087 at *6 (collecting other cases relying on availability of attorneys' fees to deny certification).  The *Molina* court weighed the availability of attorneys' fees as yet another factor in finding that the class action was not a superior device for resolving plaintiffs' FCRA claims.  *Id.*

## V.   Conclusion

Plaintiffs have the burden to establish entitlement to class certification under Rule 23.  They have fallen well short of meeting this burden.  Accordingly, Swift respectfully requests this Court to deny Plaintiffs' Motion for Class Certification.

1

RESPECTFULLY submitted this ___ day of October, 2012.

2

SNELL & WILMER L.L.P.

3

4

By:   /s/ John F. Lomax, Jr.

5

John F. Lomax, Jr.

6

Brian J. Foster
Joseph A. Kroeger
One Arizona Center

7

400 E. Van Buren
Phoenix, Arizona  85004-2202

8

Telephone:  520.882.1200
Facsimile:  520.884.1294

9

Attorneys for Defendant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **CERTIFICATE OF MAILING**

I hereby certify that on October 31, 2012, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Dennis M. O'Toole
Anthony R. Pecora
Matthew A. Dooley
Stumphauzer O'Toole McLaughlin
McGlamery & Loughman Company
5455 Detroit Road
Sheffield Village, OH  44054

Leonard Anthony Bennett
Susan Mary Rotkis
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Boulevard
Suite 1-A
Newport News, VA  23601

Stanley Lubin
Nicholas Jason Enoch
Lubin & Enoch, P.C.
349 North Fourth Avenue
Phoenix, AZ  85003


    /s/ Becky Kinningham

16051090