EXHIBIT E

John F. Lomax, Jr. (#020224)
Brian J. Foster (#012143)
Joseph A. Kroeger (#026036)
SNELL & WILMER
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070
Email: jlomax@swlaw.com
        bfoster@swlaw.com
        jkroeger@swlaw.com
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KELVIN D. DANIEL, et al<br><br>Plaintiffs,<br><br>v.<br><br>SWIFT TRANSPORTATION<br>CORPORATION,<br><br>Defendant. | Case No. 2:11-cv-01548-PHX-ROS<br><br>**DEFENDANT SWIFT TRANSPORTATION CO. OF ARIZONA, LLC'S FIRST AMENDED AND SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES** |

Defendant Swift Transportation Co. of Arizona, LLC ("Swift") hereby responds to Plaintiffs' First Set of Interrogatories as follows:

**PRELIMINARY STATEMENT**

In responding to Plaintiffs' discovery requests, Swift has conducted a reasonable inquiry and investigation relating to the information requested. This inquiry and investigation is ongoing. The responses set forth herein are made on the basis of Swift's current knowledge. Swift reserves the right to refer to, conduct discovery with reference to, or offer as evidence, such information that may have, in good faith, not been included in the following responses. Swift expressly reserves the right to amend or supplement its responses, as appropriate, based on further inquiry and investigation. The information contained in these responses is also subject to correction for errors or omissions.

15487783

1    Nothing herein shall be construed as an admission or waiver of: (i) objections

2    regarding admissibility, competency, relevance, privilege, materiality, or authenticity; (ii)

3    objections due to vagueness, ambiguity, or undue burden; or (iii) Swift's right to object to

4    the use of these documents during any subsequent proceeding, including the trial of this or

5    any other action.

6                                   **INTERROGATORIES**

7    **INTERROGATORY NO. 1:**

8    Identify every person who has interacted with or otherwise performed work

9    regarding the Named Plaintiffs' job applications or consumer reports (other than in

10   defense of the litigation in this case), including his or her name, job title, description and

11   department/division, formal employer, work performed and location of employment.

12   **ANSWER:**

13   Swift objects to Interrogatory No. 1 as overly broad and unduly burdensome to the

14   extent that it seeks information regarding non-Swift employees that Swift has no

15   knowledge or information about.  Interrogatory No. 1 is also overly broad and unduly

16   burdensome because not every person who has interacted with or otherwise performed

17   work regarding the Named Plaintiffs' job applications or consumer reports will be

18   relevant or material to Plaintiffs' claims or efforts to certify the purported class.

19   Swift further objects to Interrogatory No. 1 to the extent that the information

20   requested is already known by, or available to, the Named Plaintiffs, as they are in the

21   best position to know who interacted with them, and as evidenced in Swift's disclosure

22   statements and documents produced contemporaneously therewith.

23   Notwithstanding these objections and without waiving them, Swift responds that,

24   based on the facts presently known, the following people interacted with or otherwise

25   performed work regarding the Named Plaintiffs' job applications or consumer reports:

26   • Michelle Adamson works in Swift's security department at Swift's corporate office

27      in Phoenix, Arizona.  Michelle noted on Plaintiff Kelvin Daniel's employment

28      application that Mr. Daniel would have to call Swift for an interview.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

- Chad Bumgarner is a safety compliance coordinator at Swift who works at a Swift recruitment center in Lathrop, California. Chad interacted with Plaintiff Kelvin Daniel at a Swift orientation that Mr. Daniel attended. At that orientation, Mr. Daniel voluntarily disclosed several convictions in response to Swift's admonition that applicants accurately fill out and disclose information on their applications.

- Bill Cody was a recruiter at Swift who worked at a Swift recruitment center in Columbus, Ohio. Bill may have been the recruiter for Plaintiff Tanna Hodges' September 2009 application. Bill no longer works at Swift.

- Javier Covian is a recruit processor at Swift who works at Swift's corporate office in Phoenix, Arizona. Javier processed Plaintiff Kelvin Daniel's employment application.

- Douglas Driscoll is a recruiter at Swift who works at a Swift recruitment center in Sumner, Washington. Douglas was the recruiter for Plaintiff Kelvin Daniel.

- Tammy Ferguson works in the recruiting department at Swift's corporate office in Phoenix, Arizona. Tammy ordered consumer reports for Plaintiff Kelvin Daniel on December 28, 2010.

- Angelica Flores works in Swift's security department at Swift's corporate office in Phoenix, Arizona. Angelica determined that Plaintiff Kelvin Daniel was not approved for hire.

- Mary Johnson was an administrative assistant who worked at a Swift recruitment center in Memphis, Tennessee. Mary worked on the job application for Plaintiff Tanna Hodges. Mary no longer works at Swift.

- Kris Keplar is a recruiter at Swift who works at a Swift recruitment center in Columbus, Ohio. Kris was the recruiter for Plaintiff Tanna Hodges.

- Delois Lindsey was a recruit processor at Swift who worked at Swift's corporate office in Phoenix, Arizona. Delois was the processor for Plaintiff Tanna Hodges' employment application. Delois no longer works at Swift.

- Patricia Ramos worked in Swift's security department at Swift's corporate office in

- 3 -

15487783

1    Phoenix, Arizona.  Patricia interviewed Plaintiff Tanna Hodges on December 14,

2    2009.  Patricia no longer works at Swift.

3  •  Berenice Ruiz worked in Swift's security department at Swift's corporate office in

4    Phoenix, Arizona.  Berenice interviewed Plaintiff Kelvin Daniel on January 27,

5    2011.  Berenice no longer works at Swift.

6  •  Tamara Strickland is a recruiter at Swift who works at a Swift recruitment center in

7    Memphis, Tennessee.  Tamara Strickland left a voicemail message for Plaintiff

8    Kelvin Daniel on December 28, 2010.

9  **INTERROGATORY NO. 2:**

10    To the extent you believe that Swift Transportation Corporation is an improper

11  defendant in this action, please state the basis for such contention and identify any entity,

12  which you believe would be a proper defendant to the allegations set forth in Plaintiffs'

13  First Amended Complaint.

14  **ANSWER:**

15    Swift objects to Interrogatory No. 2 as overly broad and unduly burdensome and to

16  the extent that it requests Swift make a legal conclusion as to what corporate entities

17  should be a proper defendant for every allegation set forth in Plaintiffs' First Amended

18  Complaint.  If Plaintiffs can identify with some particularity what conduct or whose

19  actions they are concerned about, as opposed to all allegations in the Complaint,

20  Defendants will supplement this response.

21    Notwithstanding these objections, Swift responds that the currently named

22  Defendant, Swift Transportation Corporation is no longer the name of a company.  Swift

23  Transportation Co. of Arizona, LLC is the name of the entity that would have employed

24  the Named Plaintiffs if they had been qualified for hire and accepted job offers from

25  Swift.  To the extent the Named Plaintiffs wish to represent applicants for employment or

26  employees in positions other than drivers, then the proper defendant may not be Swift

27  Transportation Co. of Arizona, LLC.

28  / / /

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

-4-

15487783

**INTERROGATORY NO. 3:**

For the time period between August 8, 2006 and the present, identify in detail your procedure for hiring or screening job applicants, including the employment application, all consumer reports/criminal background reports that are obtained, the FCRA disclosures that are given, the communication to the applicant of the hiring decision, and all paperwork or documentation that changes hands between you and the applicant from the beginning of the process until the applicant is either hired, rejected for employment or the process otherwise ends. If the procedures differ in geographic areas, explain the differences. If the procedures changed during the applicable time period, please detail the date and nature of the changes.

**ANSWER:**

Swift objects to Interrogatory No. 3 as overly broad as it requests a detailed step-by-step hiring procedure with respect to all job applicants over a 5+ year period. Swift's hiring process also involves over one-hundred current and former employees.

Plaintiffs request information for the time period from August 8, 2006 to the present. As the parties have discussed, Swift takes the position that Plaintiffs may not certify a five-year class, as the two-year statute of limitations set forth in 15 U.S.C. § 1681p applies to Plaintiffs' claims. The requested information prior to that date is therefore not relevant nor calculated to lead to the discovery of admissible evidence. Pursuant to a Stipulation between the parties, the parties agreed Swift would only be required to produce documents from August 8, 2009 forward to Plaintiffs. However, if a five-year class is certified by the Court, Swift agrees to provide to Plaintiffs the remaining documentation from August 8, 2006 to August 8, 2009. The objection contained in this paragraph will be referred to subsequently as the "Two-Year SOL Objection," and reference to the Two-Year SOL Objection shall incorporate the contents of this entire paragraph.

As the parties have previously discussed, Swift takes the position that Plaintiffs may not certify a class that includes non-driver applicants or employees, and therefore

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

- 5 -

15487783

1    objects on the ground that information sought by Plaintiffs as to non-drivers is irrelevant

2    and not calculated to lead to the discovery of admissible evidence. Notwithstanding this

3    position, Swift has agreed, without waiver of these objections, to provide non-driver

4    information to Plaintiffs. Nevertheless, Swift's objection to provision of this information

5    stands. The objection contained in this paragraph will subsequently be referred to as the

6    "Non-Driver Objection," and reference to the Non-Driver Objection shall incorporate the

7    contents of this entire paragraph.

8        Swift further objects to Interrogatory No. 3 to the extent that it seeks confidential,

9    proprietary, or otherwise privileged information that is not otherwise known or publicly

10   available to its competitors, such as Swift's policies and procedures for hiring drivers.

11   Interrogatory No. 3 is also objectionable because it is compound in requesting the hiring

12   process in different regions and different timeframes.

13       Notwithstanding these objections and without waiving them, Swift responds as

14   follows regarding its hiring process for drivers:

15       Swift accepts driver applications through a variety of mediums, including through

16   paper, in-person, mail, facsimile, trucking driving schools, and over the internet (web

17   applications). Swift accepts web applications through multiple websites and links. Swift

18   also accepts web applications from Randall Riley, a recruiting services vendor, which uses

19   a generic application intended for a variety of trucking companies.

20       Depending on the type of applicant, they may have to undergo a different

21   application process. Swift has four different classes of driver applicants:

22       (1)   **Academy Drivers**. These drivers do not currently possess a Commercial

23             Driver's License ("CDL") and are seeking enrollment in a Swift trucking

24             academy in order to obtain a CDL and subsequent employment with Swift;

25       (2)   **Trainee Drivers**. These drivers have recently obtained their CDL from a

26             non-Swift driving school, but do not have proper driving experience, and

27             will have to have driver training provided by Swift as part of their initial

28             employment;

- 6 -

15487783

(3)    **Experienced Drivers**.  These drivers have possessed a CDL for at least 6 months and have driven during the last 12 months;

(4)    **Re-Hire Drivers**.  These drivers have previously worked for Swift.

The application process for each type of driver is somewhat different.

Once submitted, applications are typically imported onto Swift's proprietary and customized electronic databases.  Further, a recruiter is generally assigned to the application.  This can happen in multiple ways:  (1) the database can assign an application to a Swift recruiter; (2) an applicant can designate their recruiter on their application, typically where there has been prior contact with that recruiter, and that recruiter will be assigned to the application; and (3) a recruiter can go into Swift's database and assign themselves to a particular application.  Assignment of an application to a recruiter can occur either before or after importation of the application into Swift's electronic database.

The recruiter is responsible for initiating a live contact with the applicant, typically by telephone.  During this initial live contact, the recruiter directly asks the applicant certain questions, including all of the pre-qualifying questions on the application (including criminal conviction history).  The recruiter will also typically explain Swift's application process and the information required by Swift, including work and driving history and criminal background information.  The recruiter will normally also explain that Swift will be obtaining employment history ("DAC reports"), driving records ("MVR reports") and criminal background reports ("Widescreen reports").  Finally, the recruiter will typically, as part of the application materials, obtain the applicant's consent to procure these consumer reports.

After the initial contact, it is the recruiter's responsibility to ensure that the application is 100% complete and also to determine whether the applicant is eligible for employment with Swift and meets Swift's and the Department of Transportation's ("DOT") minimum qualifications.  This process is called "pre-qualifying."  Applicants may be disqualified from employment with Swift for a variety of reasons based upon their application or initial contact, such as possessing a bad driving record or having a DUI or

15487783

1   DWI conviction in the past 5 years.   Swift has previously produced to Plaintiffs its

2   Company Hiring Criteria as STC000085-90 and STC000150-209.

3        Once the applicant meets Swift's basic eligibility standards, the recruiter reviews

4   and processes the application to determine whether the applicant meets Swift's basic

5   hiring criteria.   Following the recruiter review, a recruiting processor then reviews the

6   application and confirms that it meets Swift's basic hiring criteria.   The recruiter and the

7   recruiting processor both review the application in its entirety for a variety of issues, such

8   as gaps in employment, driver experience, and criminal background.   The recruiter and the

9   recruiting processor may contact the applicant again for additional follow-up information.

10       As just one example of the various routes that an individual's application process

11  may take, if the application reveals a conviction, or the applicant disclosed a conviction

12  during the live initial contact, the applicant must fill out a Conviction Form disclosing

13  his/her criminal history.   If the Conviction Form reveals solely a misdemeanor more than

14  2 years old, the recruiter may, but is not required to, approve the applicant for further

15  processing.    In all other circumstances, the Conviction Form is then submitted to

16  Investigations (also called the Security Department) for review.   If Investigations requires

17  an interview, they will send an e-mail to the recruiter to have the applicant contact

18  Investigations for an interview.    A Swift recruiter will then instruct the applicant to

19  contact Investigations for an interview, where the applicant is asked questions regarding

20  any conviction(s) the applicant disclosed on their application and/or Conviction Form, as

21  well as any other convictions the applicant discloses during the interview.   During that

22  interview, Swift allows the applicant to explain the circumstances surrounding any

23  convictions or charges s/he has disclosed, and further gives the applicant an opportunity to

24  provide (or later obtain and provide) any documentation disputing the accuracy of any

25  conviction or charge.   Investigations must clear the applicant after the interview in order

26  for the application to continue through the hiring process.

27       In addition, throughout the recruiting and/or investigation process, if the applicant

28  cannot be reached or is unwilling or unable to respond to the recruiter's or Investigation's

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

1    questions, the applicant may also be disqualified from further processing.

2        At some time during the pre-qualification process, the applicant is required to
3    provide written consent to Swift's procurement of consumer reports.  An application may
4    not proceed beyond the pre-qualification stage unless and until an applicant has provided
5    this consent.

6        Swift has utilized different forms and language to obtain an applicant's consent to
7    procure consumer reports over time.  Prior to September 2011, applicants authorized Swift
8    to perform background checks via language contained on Swift's employment
9    applications.   Additionally, electronic applicants affirmatively checked "Yes" to the
10   question, "May we request information on you from outside consumer reporting
11   agencies?"   Beginning in September 2011, Swift used the FCRA Disclosure &
12   Authorization form document Bates-labeled as STC000126-000130.  In February 2012,
13   Swift revised its FCRA Disclosure & Authorization form to the document Bates-labeled
14   STC000131-000133.   All applications during the relevant time period contained
15   acknowledgments that the applicant had to consent to before Swift would accept their
16   application and process it further.  The language of these acknowledgments varied over
17   time, as can be seen on documents Bates-labeled STC000001-000005, STC000038-
18   000042, and STC000096-000125.

19       Swift Academy Driver applicants must also take a mandatory online course and
20   score 80% or higher for the application to proceed in the hiring process.

21       After the recruiter has completed the pre-qualification process, and after receiving
22   the applicant's written consent to procure consumer reports, the recruiter may click a
23   button in the electronic database to order consumer reports from HireRight.  The recruiter
24   will receive a DAC and MVR report and review those reports for any concerns or
25   disqualifying information under the Company Driver Hiring Criteria.  The recruiter and/or
26   processor then confirms the application's information and other driver hiring criteria as
27   provided in the Swift Company Driver Hiring Criteria, produced as documents Bates-
28   labeled STC000085-000090 and STC000136-000209.   The recruiter can decline the

- 9 -

15487783

1   applicant if the applicant fails to meet any Hiring Criteria or if the DAC or MVR reveals
2   that the applicant has provided false information on their application.

3        At the same time, a Widescreen criminal background report is ordered from
4   HireRight, but the Widescreen report goes directly to Investigations only, not to the
5   recruiter.   Investigations reviews the Widescreen report to verify whether there is any
6   criminal conviction information regarding the applicant.  If there is any such information,
7   Investigations sends an e-mail to the assigned recruiter telling that recruiter to have the
8   applicant contact Investigations for an interview.

9        The Investigations interview when a conviction appears on the Widescreen report
10  is largely the same as the process described above when an applicant voluntarily discloses
11  a conviction on their application and fills out a Conviction Form.   Swift interviews the
12  applicant and allows the applicant to explain the circumstances surrounding any
13  convictions or charges, including an opportunity to provide any documentation disputing
14  the accuracy of any conviction or charge.  Investigations must clear the applicant after the
15  interview in order for the applicant to continue through the hiring process.

16       In addition, an applicant must pass a DOT physical and drug test screening.  If an
17  applicant fails either of these tests, they are declined pursuant to DOT regulations.

18       After confirmation that the applicant has met all Swift hiring and screening criteria,
19  Swift schedules the applicant to attend orientation.    An offer of employment is
20  conditioned upon successful completion of orientation. An applicant could be disqualified
21  at orientation for a variety of reasons.   An applicant could fail the road test that is
22  administered during orientation.    An applicant could disclose information during
23  orientation that reveals that s/he falsified the contents of his/her application. An applicant
24  could fail the DOT mandated drug screen and/or physical. Or, as with Mr. Daniel, an
25  applicant could disclose criminal conviction information at orientation that was not
26  disclosed during the initial recruiter contact, on the employment application or on the
27  Widescreen report.  If that occurs, the Investigation interview process is followed and the
28  applicant must be approved by Investigations to continue in the hiring process.

- 10 -

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1    In the event Swift based a decision not to hire an applicant on information obtained

2    in a consumer report, Swift takes different approaches for in-person applicants and other

3    applicants.  For in-person applicants, beginning in November 2011, Swift issues a pre-

4    adverse action notice to the applicant and subsequently issues an adverse action letter.

5    For not-in-person applicants, also beginning in November 2011, Swift issues the applicant

6    an adverse action letter, as well as an FCRA summary of rights, within three days of its

7    determination to take adverse action.  Prior to November 2011, any notices of adverse

8    action, if given, would have been oral.

9    The foregoing relates to applicants for driver positions.  Swift will supplement this

10   response to describe its process regarding applicants for non-driver positions.

11   **INTERROGATORY NO. 4:**

12   For the time period between August 8, 2006 and the present, provide the names and

13   addresses of all recruiting personnel, human resource personnel or your other employees

14   who process any of the following documents pertaining to job applicants seeking

15   employment with you:

16       a.    Requests for criminal background reports, driving records or any other

17   consumer report;

18       b.    Job applications received in person, electronically, orally, by facsimile, or

19   by mail; and

20       c.    Adverse Action or "Pre-Adverse action" notices.

21   **ANSWER:**

22   Swift objects to Interrogatory No. 4 as overly broad and unduly burdensome as not

23   all recruiting personnel, human resource personnel, or other Swift employees who process

24   certain consumer reports, job applications, and adverse action or pre-adverse action

25   notices will have information that is relevant or material to Plaintiffs' claims or efforts to

26   certify the purported class.

27   Swift asserts the Two-Year SOL Objection, as well as the Non-Driver Objection to

28   Interrogatory No. 4.

- 11 -

Notwithstanding these objections and without waiving them, Swift responds that the following Swift employees process or processed documents including consumer reports, job applications and pre-adverse and/or adverse action notices:

| NAME | LOCATION OF EMPLOYMENT |
| --- | --- |
| Donald Anderson | Phoenix, Arizona |
| Irene Arredondo | Phoenix, Arizona |
| Emily Baker | Edwardsville, Kansas |
| Paul Barta | Phoenix, Arizona |
| Cindy Bouch | Phoenix, Arizona |
| Riley Branch | Lancaster, Texas |
| Karina Torres Breceda | Phoenix, Arizona |
| Jerrald Calvillo | Columbus, Ohio |
| Roy Carrasco | Phoenix, Arizona |
| Crege Carter | Memphis, Tennessee |
| Melissa Castillo | Phoenix, Arizona |
| Brooke Chamberlain | Phoenix, Arizona |
| Ronnie Chandler | Phoenix, Arizona |
| Shannon Cologna | Phoenix, Arizona |
| Javier Covian | Phoenix, Arizona |
| Brandon Cragun | Menasha, Wisconsin |
| Jacqueline Curry | Phoenix, Arizona |
| Kimberly Deducca | Lancaster, Texas |
| Araceli Deleon | Phoenix, Arizona |
| Douglas Driscoll | Sumner, Washington |
| Joey Fowler | Greer, South Carolina |
| Sherry Goggin-Rysedorph | Phoenix, Arizona |

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

| | |
|---|---|
| Melody Gonzalez | Phoenix, Arizona |
| Sherry Haldeman | Harrisburg, Pennsylvania |
| Kevin Harring | Phoenix, Arizona |
| William Hartley | Lewiston, Idaho |
| Benjamin Harvey | Atlanta, Georgia |
| Christopher Hedges | Phoenix, Arizona |
| Kris Keplar | Columbus, Ohio |
| Dawn Linville | Edwardsville, Kansas |
| Lizanne Luke | Phoenix, Arizona |
| Ludivina Marin | Phoenix, Arizona |
| Veronica Martinez | Phoenix, Arizona |
| Autumn Matte | Phoenix, Arizona |
| Erica McCoy | Phoenix, Arizona |
| Donna Moore | Phoenix, Arizona |
| Mayra Nieto | Phoenix, Arizona |
| Abraham Ornelas | Phoenix, Arizona |
| Steven Ornelas | Phoenix, Arizona |
| Mario Padilla | Phoenix, Arizona |
| Sonya Pantoja | Phoenix, Arizona |
| Stephanie Pedroza | Phoenix, Arizona |
| Nancy Perkins | Syracuse, New York |
| Michael Person | Phoenix, Arizona |
| Lloyd Pumphrey | Fontana, California |
| Deanna Rada | Phoenix, Arizona |
| Daniel Ramirez | Phoenix, Arizona |
| Corina Salgado | Phoenix, Arizona |
| Thomas Selander | Phoenix, Arizona |

15487783

| Michael Short | Phoenix, Arizona |
|---|---|
| Amber Smith | Phoenix, Arizona |
| Tamara Strickland | Memphis, Tennessee |
| Shannon Sund | Phoenix, Arizona |
| Lisa Taylor | Lathrop, California |
| Gilbert Toscano | Phoenix, Arizona |
| Rachelle Valle | Phoenix, Arizona |
| Tamala Wilchert | Memphis, Tennessee |

The following individuals in the Security Department processed criminal background reports, driving records, and other consumer reports. They also would have been involved in part with processing applications and may have been involved in giving adverse action notices.

| NAME | LOCATION OF EMPLOYMENT |
|---|---|
| Michelle Adamson | Phoenix, Arizona |
| Mark Donahue | Fontana, California |
| Shawn Driscoll | Phoenix, Arizona |
| Angelica Flores | Phoenix, Arizona |
| Aaron Peterson | Phoenix, Arizona |
| Patricia Ramos | Phoenix, Arizona |
| Berenice Ruiz | Phoenix, Arizona |

**INTERROGATORY NO. 5:**

For the period between August 8, 2006 and the present, provide the names and addresses of all persons who applied for an employment position with you and about whom you obtained a consumer report, including the date the consumer report was obtained, and whether you had in-person contact with such persons prior to obtaining the

- 14 -

15487783

1    consumer report.

2    **ANSWER:**

3         Swift objects to Interrogatory No. 5 as overly broad and unduly burdensome as

4    Swift receives thousands of applications for employment each year. Compliance with this

5    interrogatory is onerous and overly burdensome as it requires identifying thousands of

6    individuals and the corresponding information requested by Plaintiffs about each

7    individual, regardless of the position they applied for and when.

8         Swift asserts the Two-Year SOL Objection, as well as the Non-Driver Objection.

9         Swift also objects to Interrogatory No. 5 to the extent that it seeks confidential,

10   proprietary, or otherwise privileged information that is not otherwise known or publicly

11   available to its competitors, such as the names of, and information regarding, persons that

12   were provided to Swift by any consumer reporting agency. Certain information is also

13   subject to the confidentiality provision and other terms of the written contracts between

14   Swift and certain consumer reporting agencies.

15        In addition, Swift objects to Interrogatory No. 5 as overly broad and unduly

16   burdensome because the purported class is not appropriate for class action treatment.

17   Among other issues, the decision to offer employment, and if accepted, to hire driver

18   applicants involves multiple individualized inquiries as to that driver's qualifications and

19   employment application including, but not limited to, whether Swift ordered a background

20   report for the applicant, whether the applicant provided false information on the

21   employment application, whether any disclosed information was automatically

22   disqualifying, whether the applicant meets DOT standards, and whether the applicant met

23   Swift's standards. Various individualized inquiries also apply to each applicant's

24   involvement in the class action, such as when the applicant was on inquiry notice of a

25   possible violation of the FCRA and whether the applicant only seeks statutory and

26   punitive damages, as opposed to actual damages.

27        Swift further objects to the extent this request seeks electronic information as it

28   may call for information that is not readily accessible.

- 15 -

15487783

1    Notwithstanding these objections and without waiving them, Swift responds that

2  the information requested in Interrogatory No. 5 may be obtained from documents

3  containing the data from applications submitted by individuals seeking driver positions at

4  Swift, as they exist in the proprietary electronic databases Swift employees use during the

5  recruiting and hiring process. *See, e.g.*, documents Bates-labeled STC000456-099883,

6  STC104789-113111; STC126681-178720; STC212832-254274.   Accordingly, Swift

7  incorporates by reference its responses, objections, and the responsive documents

8  produced pursuant to Requests for Production Nos. 3-6, as if fully set forth herein.

9    Swift has also produced two searchable databases containing responsive

10  information: (1) a web recruiting database containing screen shots of the internet

11  applications for each individual who applied for a driver position at Swift from August 8,

12  2009 through February 2011; and (2) a database used by Swift's security department that

13  contains a spreadsheet detailing the individuals that had contact with Swift's security

14  department during the application process.   *See, e.g.*, documents Bates-labeled

15  STC256174-256175. Accordingly, Swift incorporates by reference its responses,

16  objections, and responsive documents produced pursuant to Requests for Production Nos.

17  3-6 & 22, as if fully set forth herein.

18  **INTERROGATORY NO. 6:**

19    For the period between August 8, 2006 and the present, provide the following

20  information pertaining to your policies or procedures to ensure compliance with the Fair

21  Credit Reporting Act:

22        a.      the date the policy or procedure was first created;

23        b.      identify individuals who drafted and/or revised the policy or procedure;

24        c.      identify any changes made to the policy or procedure (inclusive of what was

25  added, deleted, or replaced) and provide the dates of such changes;

26        d.      identify the individuals who have access to and whose function is to review

27  consumer reports for employment purposes; and

28        e.      identify all documents containing such policies or procedures.

- 16 -

15487783

**ANSWER:**

Swift asserts the Two-Year SOL Objection, as well as the Non-Driver Objection.

In addition, Swift objects to Interrogatory No. 6 to the extent that it seeks information protected by the attorney-client privilege and/or the work-product doctrine. Interrogatory No. 6 is also objectionable to the extent that it seeks confidential, proprietary, or otherwise privileged information that is not otherwise known or publicly available to its competitors. Certain information is also subject to the confidentiality provision and other terms of the written contracts between Swift and certain consumer reporting agencies.

Notwithstanding these objections and without waiving them, Swift has maintained various disclosure forms and applications for a number of years by which applicants authorize Swift to obtain job-related information about the applicants. For driver applications, Swift received authorization to perform background checks if job-related. Prior to September 2011, the driver applications contained acknowledgments that the applicant had to answer before finalizing their application submission. The language of these acknowledgments varied over time, as can be seen on documents Bates-labeled STC000001-000005, STC000038-000042, and STC000096-000125. Swift revised its policy in September 2011 by providing driver applicants during the application process with an FCRA Disclosure and Authorization form. *See, e.g.*, document Bates-labeled STC000126-000130. In February 2012, Swift revised its policy, which included providing driver applicants with a different FCRA disclosure form. *See, e.g.*, document Bates-labeled STC000131-000133.

Beginning in November 2011, when recruiters access Swift's proprietary and customized electronic databases and ensure an applicant's information is complete and accurate, the recruiters select whether the applicant is an in-person or non-in-person applicant at the time of application. This selection then determines the type of notice an applicant receives if adverse action is taken against them. For in-person applicants, Swift issues a pre-adverse action notice to the applicant and then subsequently issues an adverse

- 17 -

15487783

1   action letter.  For other not-in-person applicants, also beginning in November 2011, Swift

2   issues the applicant a letter within three days of its determination to take adverse action.

3   Gary Fitzsimmons, Shawn Driscoll and Swift's in-house counsel revised these policies

4   and procedures as to driver applications.

5        Swift also incorporates by reference its responses and objections to Interrogatory

6   Nos. 3, 12, & 13, as if fully set forth herein.  As to individuals who have access to and

7   whose function is to review background reports, Swift incorporates by reference its

8   responses and objections to the second list of individuals, Interrogatory No. 4, as if fully

9   set forth herein.  Further, documents containing Swift's policies or procedures have

10  already been produced in this matter.  *See, e.g.,* Swift's First Supplemental Disclosure

11  Statement and documents Bates-labeled as STC000085-000090 and STC000126-000209.

12       The foregoing relates to applicants for driver positions.  Swift will supplement this

13  response to describe its process regarding applicants for non-driver positions.

14  **INTERROGATORY NO. 7:**

15       Identify all experts and non-experts known to you who have knowledge of facts

16  relevant to this case, and state the subject of testimony or knowledge, giving a brief

17  description thereof, and identify all documents received from or communicated to such

18  person by you regarding the Named Plaintiffs, or the subject matter of this case.  If you

19  intend to qualify any of these persons as experts, please so indicate, giving their areas of

20  expertise and their credentials as experts.

21  **ANSWER:**

22       Swift objects to Interrogatory No. 7 as overly broad and unduly burdensome as the

23  list of all experts and non-experts who have knowledge of facts relevant to this case is

24  likely to be so lengthy that a proper response is onerous and borders on harassment.  Swift

25  receives thousands of applications for employment each year, and these individuals may

26  have some knowledge regarding the facts relevant to this case.  Swift also has over one-

27  hundred current employees, as well as former employees, who potentially have

28  knowledge of facts relevant to this case.  Identifying each of these thousands of

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

15487783

1  individuals, and the corresponding information requested by Plaintiffs, is unduly
2  burdensome.

3      Swift also objects to Interrogatory No. 7 to the extent that it seeks information
4  protected by the attorney-client privilege and/or the work-product doctrine. Swift further
5  objects to Interrogatory No. 7 to the extent that it seeks confidential, proprietary, or
6  otherwise privileged information that is not otherwise known or publicly available to its
7  competitors, such as policies outlining Swift's hiring procedures or the written contracts
8  between Swift and any consumer reporting agencies. Certain information is also subject
9  to the confidentiality provision and other terms of the contracts between Swift and certain
10 consumer reporting agencies. Interrogatory No. 7 is also objectionable to the extent that
11 the information requested is already known by, or available to, Plaintiffs, as evidenced in
12 Swift's disclosure statements and documents produced contemporaneously therewith.

13     Notwithstanding these objections, Swift responds that it has not yet engaged or
14 retained any experts in this case. Expert disclosures are not due until April 1, 2013. Swift
15 will supplement its response in the event that Swift engages or retains a testifying expert
16 in this case. As for non-experts with knowledge of facts relevant to this case, Swift
17 incorporates by reference its responses and objections to Interrogatory Nos. 1, 4, 5, and
18 10, and information provided in Swift's disclosure statements, as if fully set forth herein.

19 **INTERROGATORY NO. 8:**

20     Identify all of your employees, representatives, or the like, who communicated
21 with Named Plaintiffs, and/or with any third party communicating on behalf of the Named
22 Plaintiffs, regarding their employment applications and/or consumer reports and for each
23 such person, state his or her job title and job description and the subject, nature and
24 content of the communications.

25 **ANSWER:**

26     Swift objects to Interrogatory No. 8 to the extent that the information requested is
27 already known by, or available to, the Named Plaintiffs, as they are in the best position to
28 know who communicated with them, and as evidenced in Swift's disclosure statements

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

- 19 -

15487783

1   and documents produced contemporaneously therewith.

2       Notwithstanding these objections and without waiving them, in response to
3   Interrogatory No. 8, Swift incorporates by reference its response and objections to
4   Interrogatory No. 1 to the extent the individuals identified in Interrogatory No. 1
5   communicated with the Named Plaintiffs.

6   **INTERROGATORY NO. 9:**

7       Did you take adverse action as to Named Plaintiffs?   If yes, state the date and
8   provide a full description of the actions taken.   If your answer is no, state all facts and
9   legal basis which support your answer.

10  **ANSWER:**

11      Swift objects to Interrogatory No. 9 to the extent that it  requests Swift make a
12  legal conclusion regarding whether Swift took adverse action against the Named
13  Plaintiffs.

14      Notwithstanding this objection and without waiving it, Swift responds that Swift
15  did not hire Kelvin Daniel, but that decision was not an adverse action that required
16  compliance with the Fair Credit Reporting Act.   On January 24, 2011, at a Swift
17  orientation, Mr. Daniel voluntarily disclosed several convictions in response to Swift's
18  admonition that applicants accurately fill out and disclose information on their
19  applications.  Based on those disclosures, which did not appear on his application or his
20  criminal background report, Swift told Mr. Daniel and told him he would need to follow
21  up with Swift's Security Department.   On January 27, 2011, during his telephonic
22  interview with the Security Department, Mr. Daniel admitted that he failed to disclose
23  these convictions on his employment application, and his conditional job offer was then
24  revoked.  That decision was not based in whole or in part on his consumer report.

25      Swift did not hire Plaintiff Tanna Hodges following her December 2009
26  application, but that decision was not an adverse action requiring compliance with the Fair
27  Credit Reporting Act.  Ms. Hodges' September 2009 applications, while received, were
28  not processed beyond the application stage and no consumer report was ever ordered by

- 20 -

15487783

1   Swift with respect to these applications.  With regard to her December 12, 2009 web
2   application, Ms. Hodges answered "No" to the question of whether she had ever been
3   convicted of a criminal offense.  Following the processing of that web application, Swift
4   procured consumer reports on Ms. Hodges that revealed a number of prior criminal
5   convictions.  Swift requested that Ms. Hodges contact and interview with its Security
6   Department.   On December 14, 2009, during her security interview regarding her
7   application, Ms. Hodges confirmed that she had multiple different criminal convictions,
8   despite responding in the negative on her web application to the question, "Have you ever
9   been convicted of a criminal offense?"  At this point, Ms. Hodges was disqualified from
10  employment with Swift.

11  **INTERROGATORY NO. 10:**

12      For Named Plaintiffs and each putative class member you terminated, denied or
13  delayed employment based in whole or in part upon information contained in a consumer
14  report between August 8, 2006 and the present, identify each person's name and address,
15  and separately state the dates, on which you:

16      a.    obtained their written consent to obtain a consumer report;

17      b.    obtained a consumer report;

18      c.    provided the employee or applicant with a copy of the consumer report;

19      d.    discharged, denied or delayed employment to the employee or applicant;

20      e.    provided the employee or applicant with a written summary of FCRA rights;

21      f.    sent the post-adverse notices required by 15 U.S.C. §1681m to the
22  individual.

23  **ANSWER:**

24      Swift objects to Interrogatory No. 10 as overly broad and unduly burdensome as
25  Swift receives thousands of applications for employment each year.  Compliance with this
26  interrogatory is onerous and overly burdensome as it requires identifying thousands of
27  individuals and the corresponding information requested by Plaintiffs about each
28  individual, regardless of the position they applied for and when.  The breadth of this

- 21 -

15487783

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1   request borders on harassment.

2       Swift asserts the Two-Year SOL Objection, as well as the Non-Driver Objection.

3       Swift also objects to Interrogatory No. 10 to the extent that it seeks confidential,

4   proprietary, or otherwise privileged information that is not otherwise known or publicly

5   available to its competitors, such as the names of, and information regarding, persons that

6   were provided to Swift by any consumer reporting agency.  Certain information is also

7   subject to the confidentiality provision and other terms of the written contracts between

8   Swift and certain consumer reporting agencies.

9       In addition, Swift objects to Interrogatory No. 10 as overly broad and unduly

10  burdensome because the purported class is not appropriate for class action treatment.

11  Swift further objects to the extent this request seeks electronic information as it may call

12  for information that is not readily accessible.

13      Swift also objects to the interrogatory as phrased because it assumes facts about the

14  hiring process.  As set forth in Swift's Answer to Interrogatory No. 3, hiring at Swift

15  involves multiple steps and multiple people and the contents of background reports do not

16  necessarily determine the decisions Swift makes.

17      Notwithstanding these objections and without waiving them, Swift responds as

18  follows:

19      • Kelvin Daniel, 700 Wapello Circle, Natomas, CA 95835.  Swift obtained
20        Mr. Daniel's consent to investigate all references and to secure additional
      job-related information about Mr. Daniel with his application on December
21        27, 2010.  He also consented and authorized Swift to obtain information on
22        him from outside consumer reporting agencies.  Swift ordered a Widescreen
      report from HireRight Solutions, Inc. ("HireRight") on Mr. Daniel on
23        December 28, 2010.  That report revealed no criminal convictions and
24        played no role in the decision not to hire Mr. Daniel.  On January 28, 2011,
      Swift decided not to hire Mr. Daniel and revoked his conditional offer of
25        employment due to Mr. Daniel's voluntary disclosure of criminal
26        convictions during orientation on January 24, 2011, his confirmation of
      those convictions during a telephonic interview with the Security
27        Department on January 27, 2011, and consequently his admission that he
      had falsified his employment application by failing to disclose any of his
28        criminal convictions on the application.

- 22 -

15487783

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

- Tanna Hodges, 337 IRA Apt. F, San Antonio, TX 78209. Swift never procured a consumer report with respect to Ms. Hodges' September 25 and 29, 2009 employment applications. Swift obtained Ms. Hodges' consent to investigate all references and to secure additional information about Ms. Hodges with her web application on December 14, 2009. She also consented and authorized Swift to obtain information about her from outside consumer reporting agencies. Swift ordered a criminal background report from HireRight on Ms. Hodges on December 14, 2009. On December 14, 2009, after Ms. Hodges confirmed her prior criminal convictions in an interview with Swift's Security Department, Swift decided not to hire Ms. Hodges due to her failure to disclose her convictions on her employment application and because she did not meet Swift hiring criteria.

Additional information requested in Interrogatory No. 10 may be obtained from documents containing the data from applications submitted by individuals seeking driver positions at Swift, as they exist in the proprietary electronic databases Swift employees use during the recruiting and hiring process. *See, e.g.*, documents Bates-labeled STC000456-099883, STC104789-113111; STC126681-178720; STC212832-254274. Accordingly, Swift incorporates by reference its responses, objections, and the responsive documents produced pursuant to Requests for Production Nos. 3-6, as if fully set forth herein.

Swift also produced two searchable databases containing responsive information: (1) a web recruiting database containing screen shots of the internet applications for each individual who applied for a driver position at Swift from August 8, 2009 through February 2011 and (2) a database used by Swift's security department that contains a spreadsheet detailing the individuals that had contact with Swift's security department during the application process. *See, e.g.*, documents Bates-labeled STC256174-256175. Accordingly, Swift incorporates by reference its responses, objections, and responsive documents produced pursuant to Requests for Production Nos. 3-6 & 22, as if fully set forth herein.

The foregoing relates to applicants for driver positions. Swift will supplement with respect to applicants for non-driver positions.

- 23 -

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

**INTERROGATORY NO. 11:**

Identify all documents in your possession or control from which any of the information requested in Interrogatory No. 10 can be derived, and for each such document, identify the following:

        a.     the location of the document;

        b.     the custodian of the document; and

        c.     your specific estimate of the time and expense required to access and copy the document.

**ANSWER:**

Swift objects to Interrogatory No. 11 as overly broad and unduly burdensome as not all documents in Swift's possession or control from which the information requested in Interrogatory No. 10 can be derived will be relevant or material to Plaintiffs' claims or efforts to certify the purported class. Swift receives thousands of applications for employment each year. Compliance with this interrogatory is onerous and overly burdensome as it requires Swift to access and process data that is not readily accessible to determine whether and to what extent documents exist that may arguably be relevant to the facts of this case. Interrogatory No. 11 requires Swift to identify thousands of applications and obtain all corresponding information regarding each applicant. Further, multiple documents contain the same information, rendering many documents duplicative of one another.

Swift asserts the Two-Year SOL Objection, as well as the Non-Driver Objection.

Swift also objects to Interrogatory No. 11 to the extent that it seeks confidential, proprietary, or otherwise privileged information that is not otherwise known or publicly available to its competitors, such as the names of, and information regarding, persons that were provided to Swift by any consumer reporting agency. Certain information is also subject to the confidentiality provision and other terms of the written contracts between Swift and certain consumer reporting agencies.

In addition, Swift objects to Interrogatory No. 11 as overly broad and unduly

- 24 -

15487783

1   burdensome because the purported class is not appropriate for class action treatment.

2   Swift further objects to the extent this request seeks electronic information as it may call

3   for information that is not readily accessible. Interrogatory No. 11 is also objectionable to

4   the extent that it calls for legal conclusions about whether adverse action was taken, what

5   action occurred, and why.

6        Notwithstanding these objections and without waiving them, Swift responds that

7   the requested information can be derived from the employment applications Swift

8   received from driver applicants.  The employment applications, including authorizations,

9   releases, criminal background reports, and other associated documents, are located on

10  Swift's proprietary and customized electronic databases.  Swift has produced employment

11  applications and related documents, and Swift incorporates by reference its responses,

12  objections, and responsive documents to Plaintiffs' Requests for Production Nos. 3-6 as if

13  fully set forth herein.

14       Swift also produced two searchable databases containing responsive information:

15  (1) a web recruiting database containing screen shots of the internet applications for each

16  individual who applied for a driver position at Swift from August 8, 2009 through

17  February 2011 and (2) a database used by Swift's security department that contains a

18  spreadsheet detailing the individuals that had contact with Swift's security department

19  during the application process.  *See, e.g.*, documents Bates-labeled STC256174-256175.

20  Accordingly, Swift incorporates by reference its responses, objections, and responsive

21  documents produced pursuant to Requests for Production Nos. 3-6 & 22, as if fully set

22  forth herein.

23       The foregoing relates to applicants for driver positions.  Swift will supplement with

24  respect to applicants for non-driver positions.

25  **INTERROGATORY NO. 12:**

26       Identify and describe all efforts by you to comply with the FCRA since August 8,

27  2006, including internal audits and audits by outside companies or individuals and

28  identify all communications and other documents that regard same.

- 25 -

**ANSWER:**

Swift objects to Interrogatory No. 12 as overly broad and unduly burdensome as not all efforts to comply with the FCRA will be relevant or material to Plaintiffs' claims or efforts to certify the purported class. Swift's efforts to comply with other aspects of the FCRA, other than the issues raised by Plaintiffs, are not relevant or material to this dispute.

Swift asserts the Two-Year SOL Objection, as well as the Non-Driver Objection.

Swift further objects to Interrogatory No. 12 to the extent that it seeks information protected by the attorney-client privilege and/or the work-product doctrine. In addition, Swift objects to Interrogatory No. 12 to the extent that it seeks confidential, proprietary, or otherwise privileged information that is not otherwise known or publicly available to its competitors, such as Swift's policies and procedures for complying with the FCRA. Certain information is also subject to the confidentiality provision and other terms of the written contracts between Swift and certain consumer reporting agencies. Interrogatory No. 12 is also objectionable because it is compound in requesting that Swift both identify all efforts to comply with the FCRA and communications and other documents regarding the same.

Notwithstanding these objections and without waiving them, Swift incorporates by reference its responses and objections to Interrogatory Nos. 3, 6, & 13 as if fully set forth herein. Swift further responds that various Swift employees, including in-house counsel, Gary Fitzsimmons, Shawn Driscoll, and employees in recruiting have discussed compliance with the FCRA. Other than its privileged communications with in-house and external counsel, Swift has not conducted a review or audit by an outside company or individual to comply with the FCRA.

**INTERROGATORY NO. 13:**

Identify and describe the training that you provided to your employees since August 8, 2006 about the FCRA and your compliance with the FCRA.

///

- 26 -

15487783

**ANSWER:**

Swift asserts the Two-Year SOL Objection, as well as the Non-Driver Objection.

Swift further objects to Interrogatory No. 13 to the extent that it seeks information protected by the attorney-client privilege and/or the work-product doctrine. In addition, Swift objects to Interrogatory No. 13 to the extent that it seeks confidential, proprietary, or otherwise privileged information that is not otherwise known or publicly available to its competitors, such as training Swift provides to its employees about the FCRA and associated policies and procedures. Certain information is also subject to the confidentiality provision and other terms of the written contracts between Swift and certain consumer reporting agencies. Interrogatory No. 13 is also objectionable because it is compound in requesting that Swift identify and describe training "about the FCRA" and Swift's training for "compliance with the FCRA."

Notwithstanding these objections and without waiving them, Swift responds that its employees use standard operating procedures for processing driver and non-driver applications that have at different times included different disclosures and forms that have always required recruiters to obtain authorization from an applicant prior to requesting consumer reports and interviewing any applicants and giving them an opportunity to explain and contest the contents of any Widescreen report before Swift declines to hire an individual based upon their criminal record. *See, e.g.*, documents Bates-labeled STC000085-000090, and STC000126-000209.

**INTERROGATORY NO. 14:**

Identify all legal opinions or other compliance opinions you received, internally or otherwise, to support the legality of your application procedures or use of consumer reports for employment purposes. If you agree to forgo any defense to "willfulness" that is based in full or part on advice of counsel and would thus assert a claim of privilege, please state such in lieu of a substantive answer.

**ANSWER:**

Swift objects to Interrogatory No. 14 as overly broad and unduly burdensome to

- 27 -

1   the extent it requests Swift identify <u>all</u> legal or compliance opinions it received about

2   application procedures or consumer reports without any time limitation.

3        Swift further objects to Interrogatory No. 14 to the extent that it seeks information

4   protected by the attorney-client privilege and/or the work-product doctrine.  In addition,

5   Swift objects to Interrogatory No. 14 to the extent that it seeks confidential, proprietary, or

6   otherwise privileged information that is not otherwise known or publicly available to its

7   competitors, such as legal and other compliance opinions Swift relies upon for compliance

8   with the FCRA.  Interrogatory No. 14 is also objectionable to the extent that it calls for

9   speculation or requests Swift make a legal conclusion regarding the applicability of any

10   defenses before the purported class is even certified and while discovery is ongoing.

11        Notwithstanding these objections and without waiving them, Swift responds that it

12   does not have information responsive to this request dated before August 9, 2011.  To the

13   extent any such privileged opinions have been received before that date, Swift will log

14   them on its privilege log.   Swift has received other legal opinions from time to time, but

15   for different purposes that are not within the scope of this request, and any such opinions

16   are privileged.  Swift does not forego or waive any defense to "willfulness."

17   **INTERROGATORY NO. 15:**

18        State in full detail every action, communication and decision that you took or made

19   regarding the Named Plaintiffs' applications for employment, including the dates of all

20   such actions or events, the person(s) involved and all documents that pertain to the action

21   taken.

22   **ANSWER:**

23        Swift objects to Interrogatory No. 15 as overly broad and unduly burdensome as

24   not every action, communication or decision Swift took or made regarding the Named

25   Plaintiffs' application for employment will be relevant or material to Plaintiffs' claims or

26   efforts to certify the purported class.  Multiple Swift employees worked on the Named

27   Plaintiffs' applications for employment, several of whom no longer work at Swift.

28        Swift also objects to Interrogatory No. 15 to the extent that the information

- 28 -

15487783

1  requested is already known by, or available to, the Named Plaintiffs, as they are in the

2  best position to know what was communicated to them by Swift.

3        Notwithstanding these objections, Swift incorporates by reference its responses and

4  objections to Interrogatory Nos. 1, 8, & 9 and Requests for Production Nos. 2 & 15, as if

5  fully set forth herein.

6  **INTERROGATORY NO. 16:**

7        If you deny that a class action can be properly certified in this case, state all facts

8  and all legal contentions as applied to the facts that support your denial.

9  **ANSWER:**

10        Swift objects to Interrogatory No. 16 as overly broad and unduly burdensome to

11  the extent that it requests Swift identify <u>all</u> facts supporting a denial of class certification

12  in this case.   Swift receives thousands of applications for employment each year.

13  Compliance with this interrogatory is onerous on Swift as it requires identifying thousands

14  of applications, the corresponding information requested by Plaintiffs for each individual,

15  and the basis for why each individual applicant is not a member of the purported class.

16  Such a request borders on harassment.

17        Swift also objects to Interrogatory No. 16 to the extent it seeks information

18  protected by the attorney-client privilege and/or the work-product doctrine.  Swift further

19  objects to Interrogatory No. 16 to the extent that it calls for speculation or requests Swift

20  make a legal conclusion as to facts or legal contentions that support denial of Plaintiffs'

21  purported class.

22        In addition, Swift objects to Interrogatory No. 16 as overly broad and unduly

23  burdensome on the Two-Year SOL Objection and the Non-Driver Objection and because

24  the purported class is not appropriate for class action treatment.  Swift further objects to

25  the extent this request seeks electronic information as it may call for information that is

26  not readily accessible.

27        Notwithstanding these objections, Swift responds that the burden of establishing

28  entitlement to class certification rests with Plaintiffs. *Zinser v. Accufix Research Institute,*

15487783

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1  *Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  At this early juncture of discovery, Swift

2  cannot be expected to anticipate, much less respond to, Plaintiffs' various arguments

3  related to their entitlement to class certification.  At present, Plaintiffs have not produced

4  evidence sufficient to establish, *inter alia*, commonality, typicality or adequacy of

5  representation under Rule 23(a) of the Federal Rules of Civil Procedure, not to mention

6  whether class treatment is appropriate under Rule 23(b).

7      The purported class also cannot be properly certified because the decision to offer

8  employment and, if accepted, to hire a driver applicant involves multiple individualized

9  inquiries as to that driver.  Individualized inquiries that preclude class certification include

10  but are not limited to:

11  • Whether the applicant applied in-person or via another method;

12  • Whether the applicant was qualified to drive under the Company's

13   standards;

14  • Whether Swift ordered a consumer report for the applicant;

15  • What information the applicant provided on their employment application,

16   including any false information;

17  • Whether the applicant was qualified to drive under DOT standards;

18  • Whether the applicant was automatically disqualified from employment

19   with Swift and, if so, why?;

20  • Whether the applicant challenged information contained on a consumer

21   report;

22  • Whether the applicant received a copy of the consumer report;

23  • What the applicant told the recruiter about his/her application, background,

24   and experience;

25  • What information  the applicant's consumer report contained, if any, that

26   would disqualify the applicant from employment with Swift;

27  • What type of consent the applicant provided, whether oral, electronic, or

28   otherwise, from Swift to obtain a consumer report;

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

- 30 -

15487783

- Whether Swift based any hiring decision on an applicant's consumer report;
- What factors led to the decision to hire or not hire the applicant;
- Whether the applicant was interviewed and, if so, what the applicant said during the interview, whether it was truthful, and what impression the applicant made during the interview;
- What the recruiter and/or processor told the applicant about his/her application;
- Whether that information was provided to the applicant in writing;
- Whether Swift's Security Department interviewed the applicant;
- What the applicant told the Security Department official;
- What the Security Department official told the applicants;
- What type of notice the applicant had regarding a possible violation of the FCRA; and
- What types of damages applicant seeks, including statutory and punitive damages, as opposed to actual damages.

In addition, Swift incorporates by reference its response and objections to Interrogatory No. 9 as if fully set forth herein.

DATED this 18th day of July, 2012.

SNELL & WILMER L.L.P.

By: _Joseph A. Kroeger_
John F. Lomax, Jr.
Brian J. Foster
Joseph A. Kroeger
One Arizona Center
400 E. Van Buren
Phoenix, AZ  85004-2202
Attorneys for Defendant

- 31 -

15487783

## **VERIFICATION**

STATE OF ARIZONA      )
                      ) ss.
COUNTY OF MARICOPA    )

I, MICHELLE CORDOVA, being first duly sworn upon my oath, depose and say that:

I am a Recruiting Regional Leader for Swift Transportation Co. of Arizona, LLC, the defendant in the matter of *Daniel et al v. Swift Transportation Corp.*, Case No. 2:11-cv-01548-PHX-ROS. I have reviewed the foregoing Responses to Plaintiffs' First Set of Interrogatories. I am authorized to verify and do hereby verify same under penalty of perjury as being true and correct to my personal knowledge, except as to those matters as to which I lack personal knowledge, but am informed and believe to be true and correct based upon information and belief, and which I verify on that basis.

DATED this _18_ th day of July, 2012.

_____
Michelle Cordova

15487783

1

## CERTIFICATE OF SERVICE

2     I hereby certify that on July 19, 2012,
the original of the foregoing will be
3     served via Federal Express to the
following counsel of record:

4

Anthony R. Pecora
5     Dennis M. OToole
Matthew A. Dooley
6     Stumphauzer OToole McLaughlin
McGlamery & Loughman Company
7     5455 Detroit Rd.
Sheffield Village, OH 44054

8

    I further certify that on July 19, 2012, a
9     copy of the foregoing will be served
via U.S. Mail on the following counsel of record:

10

Stanley Lubin
11     Lubin & Enoch PC
349 N 4th Ave
12     Phoenix, AZ 85003

13     Leonard Anthony Bennett
Susan Mary Rotkis
14     Consumer Litigation Associates PC
12515 Warwick Blvd., Ste. 100
15     Newport News, VA 23606

16

17

18

19

20

21

22

23

24

25

26

27

28

15487783